Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

Symantec Corporation,           )
                                )
          Plaintiff,            )
                                )
  VS.                           )      NO. C 11-5310 EMC
                                )
Acronis, Inc.,                  )
                                )
          Defendant.            )
                                )
_____

                         San Francisco, California
                         Thursday, February 23, 2012

                 **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
For Plaintiff:
                    QUINN, EMANUEL, URQUHART
                      & SULLIVAN LLP
                    50 California Street - 22nd Floor
                    San Francisco, California 94111
              BY:   **JENNIFER A. KASH**
                    **ERIC EARL WALL**
                    **ATTORNEYS AT LAW**

For Defendant:
                    FISH & RICHARDSON PC
                    222 Delaware Avenue - 17th Floor
                    PO Box 1114
                    Wilmington, Delaware 19899
              BY:   **THOMAS L. HALKOWSKI**
                    **ATTORNEY AT LAW**

         **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:            Kelly L. Shainline, CSR No. 13476, RPR
                        Court Reporter Pro Tem

          Computerized Transcription By Eclipse

**APPEARANCES**:   (CONTINUED)


                              FISH & RICHARDSON PC
                              12390 El Camino Real
                              San Diego, CA 92130
                         BY:  **OLGA IVANOVANA MAY**
                              **ATTORNEY AT LAW**

<u>Thursday - February 23, 2012</u>                                <u>3:02 p.m.</u>

        **THE CLERK:**  Calling Case C 11-5310, Symantec versus Acronis.

        Counsel, please come to the podium and state your name for the record.

        **MS. KASH:**  Good afternoon, Your Honor.  Jennifer Kash, Quinn Emanuel, for plaintiff Symantec, and with me is Eric Wall.

        **MR. HALKOWSKI:**  Good afternoon, Your Honor.  Tom Halkowski with Fish & Richardson on behalf of Acronis, and with me today is Ms. Olga May.

        **THE COURT:**  Good afternoon.

        **MS. MAY:**  Good afternoon.

        **THE COURT:**  So one of the issues is whether or not there's been a sufficient specificity with respect to identifying the accused products and in contrast to the *Wistron* case that there really was no just kind of generic description to particular products.

        There is a description here, is there not? Paragraph 29, for instance, identifies the offending products, the accused products, as the Acronis Backup & Recovery line. I'll give you as an example, Backup & Recovery 11 Workstation, Recovery 11 Server for Windows, et cetera, et cetera.

        And it's true it says, "including but not limited

to"; but, I mean, isn't that a sufficient description, at least for purposes of where we are today, of the products?

MR. HALKOWSKI:  With regard to a claim of direct infringement, that is -- I don't think we raised any argument that it is not a sufficient description of the products, that's true.

THE COURT:  Okay.  So it's an indirect infringement and it's the lack of allegations, I take it, with respect to specificity with respect to the knowledge and the intent that those are conclusory and that inducement claims, for instance, contributory infringement claims to require some additional degree of specificity --

MR. HALKOWSKI:  Exactly, Your Honor.

THE COURT:  -- over and above direct?

MR. HALKOWSKI:  The motion to dismiss is really totally focused on the indirect infringement claims.  If they have those additional facts, those core facts, to allege in terms of knowledge, fine.  Have them, you know, amend and then let's move on.

If they don't, then let's move them out of the case and let's focus on what's really at issue, and that's direct infringement.

THE COURT:  And given, as I understand the indirect claims, it is stemmed from the fact that Acronis is selling its products to others for resale.  Is that the gist of it?  What's

the basic claim here for indirect infringement?

**MR. WALL:**  The basic claim for indirect infringement is that Acronis is selling software products that are directed to particular uses, such as backup and recovery uses.

And paragraphs 15 through 20 of the Complaint describes the sort of inventions in the patent, and there is a description to sort of functionalities that Acronis' products practice.

Acronis sells those products to its customers and then those customers practice the claims by using Acronis' software.

And unlike the *Wistron* case where what we were -- what the Court and what the complainant seemed to be talking about was a component of the computer.  What we're talking about here is software which is particularly designed to achieve specific purposes.

So in this case I don't think there's really a question that Acronis specially intended its products to practice these -- perform these functionalities because they coded the software to do it.

And I also think that the Complaint sets forth allegations that Acronis markets these products to consumers and businesses to perform exactly the functionalities for which they're coded.

**THE COURT:**  So it's the end users' practicing of the

invention that constitutes the infringement which is being induced by the sales to those end users?

MR. WALL:  That's correct, Your Honor.

THE COURT:  Okay.  What's wrong with that?

MR. HALKOWSKI:  Well, again, if he wants to lay it out in --

THE CLERK:  Excuse me.

MR. HALKOWSKI:  Bless you.

THE CLERK:  Thanks.

MR. HALKOWSKI:  If he wants to lay out his theory in indirect infringement in terms of inducement, who's being induced, and what Acronis is actually doing that actually is causing to be induced, whether they have some product literature or, you know, whatever it is that they're relying upon, if they've got something, lay it out.  If they don't, then, like I said, just take it out of the Complaint; but one way or the other, he ought to step up and lay out those facts on, again, its core issue.

And cases have found that for indirect infringement you can't just simply put it into a long list and say, "This also."

These are specific types of infringement that require knowledge, which is nowhere alleged in the Complaint at all, as to when supposedly we became aware of these patents, which obviously impacts damages and will impact the scope of

discovery, as well as --

**THE COURT:**  Let me take that point right there.   To have inducement, you have to have specific knowledge and intent; but you have to know that this is, indeed, an infringing product that's being then sold or, you know, encouraged -- encouraging others to use.

Do you allege that Acronis at the time of these sales knew full well that this was an infringement?

**MR. WALL:**  Well, I think, Your Honor, that there are two answers to that question.  The first is that I would point the Court to paragraphs 29, 36, 43, 50, and 57 where the language "actively knowingly induces use."

Now, Acronis's contentions to the contrary as to what the state of the law on pleading with respect to Federal Rule 8 is post-*Iqbal* and *Twombly*, courts in this district and, we cite the *Rambus* decision, and actually Acronis cites another decision that's a post-*Iqbal* decision, *Kilopass Technology*, has found that that language suffices to plead knowledge.

But the second point I would like to make is that, in this case Symantec is seeking an injunction for Acronis' actions, and we are entitled to allege contributory infringement and inducement after the filing of the Complaint. And, therefore, the allegation is that Acronis' continued sale of its products, despite the fact that it was served with the Complaint, does constitute an inducement.

They are, as I stated earlier, marketing their product for particular purposes and they now have knowledge of the patent.

Similarly, with respect to contributory infringement, these software products form either a component of one of the apparatus claims or practice the method when used by the customers, and Acronis at this point knows of the patents and knows that these components are infringing.

And my last point would simply be that it's sort of hard to the extent that Acronis -- Acronis really doesn't dispute in its reply this last point about infringement going forward, and it's difficult to tell --

**THE COURT:**  Going forward post-Complaint?

**MR. WALL:**  -- for post-Complaint, other than to say that we should have made some sort of specific allegation in the Complaint regarding that.

But it strikes me that it would serve little purpose to dismiss the Complaint so that we can allege that Acronis gathered knowledge of these patents through the service of the Complaint.

**THE COURT:**  What about pre-Complaint?  What basis do you have to assert or have you even asserted that Acronis knew that the products they were selling end users, in fact, infringed upon patents at issue here?

**MR. WALL:**  At this point, Your Honor, we are

focusing on contributory infringement and inducement after the Complaint.  Obviously --

THE COURT:  Oh, after the Complaint.

MR. WALL:  Yes.  Obviously the question of knowledge and intent is a matter that lies within the hands of the defendants, and Symantec will conduct discovery to determine whether there has been any prefiling.

THE COURT:  All right.  So now we've gotten a clarification.  At least the allegation at this point as we sit here is really focused on contributory and inducement post-Complaint.  In other words, there's no dispute that knowledge was -- there was knowledge at least of the risk here in the allegation, and they continued to -- your clients allegedly continued to sell.

And, so, we go through the exercise of saying you should amend the Complaint and clarify that for now or having stated that on the record, do we need to go through this exercise of -- you know, I don't know if we need to do anything more, but that is a clarification.

That wasn't clear from the Complaint.  It wasn't clear to me coming into this; but now that I see that, you know, it seems to me if that's the allegation, that is sufficient basis to allege the specificity of knowledge and intent at that point, at least with respect to post -- going forward post-Complaint.

**MR. HALKOWSKI:** Precisely, Your Honor. And I think, you know, a lot of times when people are faced with these kinds of motions to dismiss, they go, "Oh, okay. I see that we did not, you know, check the box or we did not formally assert the allegation that we were supposed to," and then they simply amend and then we move on. They didn't do that here. They opposed and we had to file a reply.

And, so, here the answer to your question is, if they want to plead that, you know, yeah, then that takes care of knowledge and we move on from there. I don't have a problem with that.

Our issue was the Complaint was defective; and, you know, the quicker they fix it, the quicker we move on, great. But really it should be fixed so that, you know, we're clear going forward exactly to what they're alleging and what the scope of this case actually is.

**THE COURT:** All right.

**MR. WALL:** Your Honor, if I could just add something there.

I think the concern with going forward in that manner is that's going to lead to delay in the case. We're going to have the Case Management Conference in a moment, and what you're going to see is that Acronis is planning to allege certain patents against Symantec as part counterclaims; and if the Complaint is dismissed, we have to refile. They then get

their 20 days to respond.

What's going to happen is that Acronis is going to have additional time to set forth its disclosures pursuant to the patent local rules and, as a result, to the extent, for example, the Court wants to hold a consolidated Markman hearing, that is going to be delayed.  And according to the schedule that Acronis has proposed, we're not going to have the Markman until a year from when this case was filed.

**THE COURT:**  All right.  Well, here's what I'm going to do:

I'm going to deny the motion to dismiss but I'm going to state in the Minute Order that part of the reason for that denial is that plaintiff has clarified on the record that with respect to its indirect infringement claims, it's really focused on post-Complaint sales, inducement of sales post-Complaint, and that is what is covered.  So it's clear, we're all clear for the record what the scope of that claim is. We're not going through the exercise of having to formally amend and, so, it will be clear for the record.

So that's what I'm going to do.  The motion to dismiss is denied but with the understanding that the scope of the indirect infringement claim is as stated for the record.

So let's talk about CMC now.  So, I guess, the big question is the scheduling question.  I guess there's some issues about scope of discovery and the number of hours of

depositions, but I think the critical question is what we're going to do going forward.

So let me hear from each side, first from the plaintiff, what your position is.

**MS. KASH:**   Thanks, Your Honor.

The issue here is that we have no knowledge, and this is during the entire time that we met and conferred for this particular statement, as to what the claims are, the counterclaims, that defendant has told us they're going to be asserting.  So they could assert one patent against us.  They could assert ten.  We don't know sitting here today.

So what we've proposed is that since that they've had knowledge of that at least for a series of time that they've been discussing the CMC statement with us, we think that the case should more orally proceed in the schedule that would be governed had they responded with -- or counterclaims in the ordinary course as opposed to bringing the motion that they did.

And, so, what our position is, is that we have one schedule that proceeds where the Court has one claim construction hearing and we have the disclosures, the infringement contentions, and the invalidity contentions based on this Case Management Conference as is anticipated by the local rules.

In addition -- so that's why our schedule is

compliant with the rules that this Court has for -- you have your infringement contentions due "X" number of days after the Case Management Conference, which is the schedule that we've set forth in our proposed schedule.

In addition, the plaintiff has proposed a somewhat bizarre plan or idea where we would stay all discovery on everything other than claim construction which is, in our opinion, inconsistent with the practice in this district, Your Honor's own practice in several cases that we've been able to see the docket on Pacer, as well as the cases that the plaintiff cited many -- two of which actually our firm had argued, and it was not the case that there was any stay of discovery during claim construction.

Here, if there were such a stay, it would have the unusual result that the case would be proceeding only on claim construction; and under plaintiff's -- or under defendant's schedule, not until November, a year after the case was filed, we engage in anything other than claim construction discovery, and something like that seems to be a really unnecessary and lengthy delay of the schedule.

**THE COURT:**  Let me ask you, before you get to that question, with respect to the postschedule.  I guess I'm not sure what the critical differences are.  At least the initial disclosure dates on Symantec's part are pretty much the same, is that there's been asserted in here a disclosure with respect

to any counterclaims or patents asserted by Acronis that needs to be weaved into this.

So I'm not sure what -- and I know that extends the -- as we get later down the line, it does extend by a couple of months the process for leading up to claim construction; but if there is going to be -- maybe I should find that out.  How certain is it that your client will be asserting counterclaims?

**MR. HALKOWSKI:**  Certainly, Judge.

We certainly will.  I'm aware of one for sure. We're continuing our analysis and trying to determine exactly how many other patents that we'll assert, but I feel confident there is certainly one that we've identified that we have I believe on a Rule 11 basis at this point, and then we'll continue to do an analysis on the others and that's why we haven't identified anything further.

You know, just one comment in terms of the timing. Of course, we would have been happy to get started sooner. Again, it was really in the plaintiff's ballpark.  If they wanted to just go ahead and correct the Complaint, we could have got off to the races a lot sooner.

But be that as it may, our schedule is really just a matter of a couple months difference at the end of the day and it allows for everything to be handled together.  The patents that we are looking at are the same subject matter as the

patents that Symantec has asserted in terms of backup recovery space.  It certainly would be a lot more efficient if everything was done together.

THE COURT:  What is the ballpark of potential damages here using the whirly method or whatever?  I mean, give me an idea of magnitude.  How many figure cases?

MS. KASH:  There's no monetary damages of Symantec other than for past use.  We're talking about a permanent injunction here for -- my client's market share has been --

THE COURT:  But the past use.

MS. KASH:  Well, the past use we don't have all the sales figures, but we're talking multitudes, tens of millions amount of work.

THE COURT:  Just past use we're talking --

MS. KASH:  Significant.

THE CLERK:  -- eight figures at least?

MS. KASH:  Yes.  It's a significant case.  There's been significant damage to Symantec.  It's five patents that they've asserted.

Can I address one thing that he just raised?

THE COURT:  Yeah.

MS. KASH:  So our concern is not and the difference is not that we don't agree that there should be a consolidated schedule, and perhaps there's some flexibility that we can have in meeting in the middle in terms of when the infringement

contentions are due.

We just don't believe that there should be a situation where they've had this Complaint since November of 2011 and the idea that they don't have to, though they had the idea of asserting infringement counterclaims against us for sometime, to not have to assert those and into the case in chief until May of 2012 when otherwise discovery is going to be proceeding just seems colossally unfair, frankly, to use a legal term.

**THE COURT:** The way I see the schedule, it looks like April is when they have to file.

**MS. KASH:** No. So if you look at it, what it is, is our infringement contentions and the claims that we've asserted, if you look on page 10, would be March 9th, 2012. That's when our infringement contentions would be set forth, setting forth the patents and claims that we're asserting specifically.

Then they don't have to have their patents and their infringement contentions until May 21st. So there will be two and a half months in which they would have our infringement contentions, our statement as to what the scope of this case is going to be about. Our invalidity contentions would even be due before that on April 23rd on the patents. Their invalidity contentions will be due before they ever even have to say, "Hey, Symantec, here's the claim you're infringing," dispute

the fact that by their own statement they're already aware of one patent.

THE COURT:  They would have to file their counterclaim by April 9th certainly identifying the patents at issue.

MS. KASH:  Well, actually they would have to file their counterclaim, I would propose, since you denied their motion to dismiss today, they would have to do that 20 days from today's date actually.

THE COURT:  Okay.  So that moves things up.

MS. KASH:  Yes.

THE COURT:  So once that's filed, how much time does one really need then to file the infringement contentions once the --

MS. KASH:  Fourteen days.

THE COURT:  So is there some reason why we have the May 21 date?  That, even under the rules, even if you were not to file your counterclaim till April, which in this case it's not going to be April, it's going to be much sooner than that.

MR. HALKOWSKI:  Yes, Judge.  This was actually we were trying to kind of guess a little bit about in terms of how things were going to work out; and assuming, you know, that the motion to dismiss was granted and there was, you know, a quick First Amended Complaint and then we quickly answered that, then we would have six weeks from that time to do our asserted

claim, which is the standard amount of time.

Obviously if everything moves up, then we'll just do our assertive claims within six weeks of when we file our answer to the Amended Complaint.

THE COURT: You say six weeks. She says 14 days.

MS. KASH: The standard is, under the patent local rules, it's 14 days from the Case Management Conference when the infringement contentions are due.

Here we've had the Case Management Conference already. So they're actually going to have more than 14 days from the Case Management Conference because they'll have what we're saving is the 20 days from the time present to when they have to assert the infringement contention claims, and then we're saying an additional 14 days from there would be fair given the circumstances.

We don't think that the delay of six weeks from 20 days from now makes any sense given the posture of this case, which has been on this docket since November 2011.

MR. HALKOWSKI: And, again, at least from our perspective, certainly they had, who knows, maybe years to put together their claims, their Complaint. We've had -- we've just recently been engaged by Acronis. We are trying to conduct an analysis to figure out what possible patents we could counterclaim on, and we're prepared to do that as quickly as we possibly can.

**THE COURT:** Okay. But let's keep in mind this Complaint was filed in November of last year.

**MR. HALKOWSKI:** That's true.

**THE COURT:** And, so, whether they retained counsel recently or not, it's not like they just got this yesterday.

**MR. HALKOWSKI:** That's true, Your Honor, but each of these patents, as you will find out I guess soon enough, are fairly complicated.

**THE COURT:** I was afraid of that.

**MR. HALKOWSKI:** This is not simple stuff. It does require a significant and sophisticated level of analysis. As I mentioned, I don't know, maybe we can, I'm sure, hazard a guess, that it was several months in the making for Symantec in order to come up with the claims and their Rule 11 proof.

So, you know, for us to take a few weeks to pull this together I think is certainly reasonable. Like I said, we certainly can adjust it up.

**THE COURT:** All right. Well, here's -- so here's what I'm going to do: Because I have now clarified what the path is going to be, I'd like you to meet and confer, do it after this hearing, to see if you can come up with some agreement that compresses your schedule a bit that takes into account that now you've got a ruling, you don't need all that time to file an Amended Complaint.

The only big question is, how much time between when

you file your counterclaim, how much time you need to do your disclosures. You said 20 days. You said six weeks. Maybe there's something in between that you can work out.

And then it seems to me the rest of that could fall into place; and if you could, you know, submit to me, I'm hoping maybe jointly, an agreed-upon postschedule. The actual claim construction hearing date will depend on mine. I'll pick a date as close as I can to what you all come up with.

But it makes much more sense for you two who know the case to come up with a discovery schedule now that you know, number one, we're moving forward; number two, you know I'm going to press to accelerate some things, but I think you ought to be given some fair amount of time but a reasonable amount of time to come up with your disclosures and everything should flow from there.

So I'd like you to do that. Also, I'm going to tell you right now, I'm not going to bifurcate discovery. Every time I've done that, whether it's in a class action or patent case, we end up getting thrown off schedule for all sorts of reasons.

And this case is big enough in terms of what is at stake at the end of the day that the idea of sort of trying to save the expense by bifurcating at the risk of actually proliferating time and expense I think is just not worth it.

And in terms of setting forth the number of hours

for deposition, I'm inclined, since we don't know the number of claims, to put an arbitrary number on it right now.  It makes more sense to take the approach that's similar to Acronis', which I don't know if these are the numbers, and I'm not sure you actually agree with it, but there ought to be some recognition of what's at stake here to define the scope of the number of deposition hours.

**MS. KASH:**  If I could just say one thing to that.  I don't know if you're planning on ruling on that now or if you want additional submissions on that, but the issue here is that we don't take issue if there's an additional number of hours that needs to be added because of the volume of patents that they decide to add.  We don't, as I said before.

What I take issue with in Acronis' position is that, as you are probably familiar with in patent cases, oftentimes patents are from the same family or have similar inventors.  So to have 21 hours for each patent --

**THE COURT:**  That's why I'm not saying that I agree with that.

**MS. KASH:**  Okay.

**THE COURT:**  There should be some consolidation and maybe we don't have to cross that bridge until we see exactly what's going to be asserted in the next 20 days, and then you perhaps more intelligently can assess.  You've had a chance to look at what the cross-claims are, what the counterclaims are,

how related they are, and how discovery might overlap, et cetera, et cetera, and come up with something that's a little more coherent.

MR. HALKOWSKI:  We're certainly happy to discuss that with Symantec and come up with something.

THE COURT:  Well, why don't we do this:  I'm going to direct you to meet and confer to come up with a new schedule.  Let's reconvene after you've had a chance to do that, look at and think about discovery.  Let's try to resolve that in the next meeting and set a firm schedule at that point maybe in 30 days from now.  So that way you would have --

MR. HALKOWSKI:  That's fine, Judge.

THE COURT:  -- hopefully come up with a schedule, you would have filed your Answer and Counterclaim, and we'll have a better sense.

MS. KASH:  That's fine, Your Honor.

THE COURT:  So why don't we reconvene.

THE CLERK:  March 23rd at 10:30, Your Honor.

MS. KASH:  Is that a Friday?

THE CLERK:  It's a Friday.

MS. KASH:  Okay.  10:30?

THE CLERK:  Yes.

THE COURT:  At that point we'll discuss discovery scope other than the fact I've already told you I'm not going to bifurcate, but this question of depositions, among others,

and set a firm schedule.

**MR. HALKOWSKI:**  And then prior to that date do you want to set a deadline for us to be submitting something to you in terms of our proposed approach.

**THE COURT:**  Seven days before if you could file an updated Status Conference with your proposed dates, and anything you resolve in terms of this discovery issue, include that as well.

**MR. HALKOWSKI:**  Certainly.

**THE COURT:**  All right.  And I take it it sounds like you both agree that ADR is not going to be useful until after claims construction.

**MR. HALKOWSKI:**  I think that's right.

**MS. KASH:**  That's right, Your Honor.

**THE COURT:**  All right.  Okay.  Great.  See you then.

**ALL:**  Thank you, Your Honor.

(Proceedings adjourned at 3:30 p.m.)

## CERTIFICATE OF REPORTER

I, KELLY SHAINLINE, Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 11-5310 EMC, Symantec Corporation v. Acronis Inc., were reported by me, a shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

Kelly Shainline, Court Reporter

Thursday, May 17, 2012