**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL: (415) 875-6600 FAX: (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(415) 875-6312**

WRITER'S INTERNET ADDRESS
**jenniferkash@quinnemanuel.com**

July 27, 2012

<u>VIA CM/ECF</u>

Hon. Jacqueline Scott Corley
United States Magistrate Judge
Northern District of California
San Francisco, CA 94102

Re:   *Symantec Corp. v. Acronis, Inc. et al* Case No. 11-cv-5310
      <u>Joint letter brief regarding Symantec's Expert Disclosures</u>

Dear Magistrate Judge Corley:

## SYMANTEC'S POSITION

Symantec Corporation ("Symantec") asks the court to quash Acronis, Inc. and Acronis International GmbH's (collectively "Acronis") objections to Symantec's request to disclose Acronis's highly confidential technical information to Symantec's technical expert Dr. Martin Kaliski and consultant Mr. Edward Haletky. The disclosure of this information is necessary so that Symantec can prepare for and present its case at trial. Because the only information that Acronis has made available to date regarding its accused infringing products is its highly confidential source code, Acronis's objections to Symantec's expert and consultant have brought Symantec's investigation of its infringement theories to a halt. As explained in their declarations, neither Dr. Kaliski nor Mr. Haletky pose a risk to Acronis's highly confidential information and both individuals have measures in place to guard against that risk. Acronis has no evidence to undermine Dr. Kaliski's and Mr. Haletky's declaration and agreements to be bound by the protective order. Symantec therefore asks the Court for permission to disclose Acronis's Highly Confidential technical information and source code to Dr. Kaliski and Mr. Haletky.

**I.   DISCLOSURE OF ACRONIS'S HIGHLY CONFIDENTIAL TO SYMANTEC'S EXPERT AND CONSULTANT IS NECESSARY SO THAT SYMANTEC CAN PREPARE ITS CASE FOR TRIAL**

Symantec has retained Dr. Kaliski as a testifying expert and Mr. Haletky as a consultant because they have specialized knowledge relevant to the technology at issue in this litigation. Neither person is a past or current employee of either Symantec or Acronis. Neither person anticipates becoming an employee of any party or any party's competitor. Both individuals were disclosed under the terms prescribed by the protective order agreed to by the parties in this matter.

Acronis's failure to allow Mr. Haletky and Dr. Kaliski to review confidential information has crippled Symantec's ability to pursue its infringement case. By denying Symantec's expert and consultant access to Acronis's source code, neither Symantec nor Dr. Kaliski have any discovery to assess whether or not Acronis's accused products infringe Symantec's patents. To the extent Acronis later produces internal documents regarding the operation of the accused infringing products, these documents would also likely be designated highly confidential and Dr. Kaliski would likewise need access to these documents to conduct an infringement analysis and to help Symantec prepare its case for trial. Further, Symantec has asked Mr. Haletky to review Acronis's source code to identify the relevant sections for this case. Mr. Haletky also needs access to Acronis's technical documents

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia 20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666 FAX +7 495 797 3667
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

to assist Symantec's attorneys with confidential pre-trial preparation.

In this district, Courts balance the interest of a party being able to select its own experts with the interest of protecting a party's confidential information from being disclosed. *Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, No. 95-20169 RMW, 1996 U.S. Dist. LEXIS 21459, at *8 (N.D. Cal. Oct. 28, 1996) ("the court must balance ASMA's interest in selecting the experts most beneficial to its case with Applied's interest in protecting its trade secrets from disclosure to competitors"). In *Adv. Semiconductor Materials Am., Inc.*, the Court recognized a party's selection of an expert based on extensive credentials in the industry which made him highly qualified for the case. *See id.* at *8-9. It explained that access to the other side's confidential information was necessary so that the expert could effectively testify regarding the technical claims at issue. *See id.* at *9 (holding that, "absent compelling reasons urging the contrary, ASMA must be permitted to present the experts who it believes possess the ability to convey highly technical information to lay person, and those experts must be permitted access to Applied's confidential information").

Symantec has selected both Mr. Haletky and Dr. Kaliski to assist in the preparation of its case because of their expertise and qualifications. Symantec will be greatly prejudiced if it is not allowed to use the experts that will be most beneficial for its case. Courts recognize this interest and hold that it is only outweighed by "compelling reasons" or actual proof of a risk of unauthorized use of confidential information. *See, e.g.*, *Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, No. 95-20169 RMW, 1996 U.S. Dist. LEXIS 21459 (N.D. Cal. Oct. 28, 1996); *Verigy US, Inc. v. Mayder*, No. 07-4330 RMW, 2008 U.S. Dist. LEXIS 111116 (N.D. Cal. Sept. 8, 2008). Acronis has proven neither. Further, Symantec continues to be prejudiced by the delay that Acronis has created in maintaining its baseless and unsupported objections. Acronis's refusal to consent to Mr. Haletky and Dr. Kaliski and review Acronis's source code has put Symantec's case on hold. Both experts need access to Acronis's confidential information and source code so that they can analyze whether Acronis's products infringe Symantec's patents and prepare opinions and be equipped to testify on the same.

## II.     ACRONIS'S OBJECTIONS TO DR. KALISKI AND MR. HALETKY ARE LEGALLY AND FACTUALLY INSUFFICIENT

Acronis has objected to both Mr. Haletky and Dr. Kaliski having access to Acronis's highly confidential information.

### A.     Acronis's Objection to Mr. Haletky is Based on a Hypothetical Risk of Disclosure and Has Been Rejected in the Northern District of California

Acronis has objected to the disclosure of its confidential information to Mr. Haletky because of his professional consulting and publishing in the field of virtualization. *See* July 12, 2012 email from O. May to K. Cassidy. Specifically, Acronis alleges that there is a "real" risk that Mr. Haletky will disclose Acronis's confidential information to other entities and the public because Acronis's information will "become intertwined and largely inseparable" with his professional work as the vast amount of confidential information will be impossible for him to compartmentalize. *See* Cassidy Decl. ¶¶ 19-21; Ex. 10.

Acronis has no evidence to support its objection to Mr. Haletky and Acronis's argument has been expressly rejected in this district. In *Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, the defendant objected to the disclosure of plaintiff's expert on the grounds that: "if [plaintiff's expert] is given access to [defendant's] confidential information, he will inevitably misuse that information if he consults for [plaintiff's] competitors in the future because the information will be in his head." *Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, No. 95-20169 RMW, 1996 U.S. Dist. LEXIS 21459, at *8 (N.D. Cal. Oct. 28, 1996). The Court rejected this argument and held that "this cannot be the standard to be applied," explaining that "if it was, then a litigant could successfully object to any active industry consultant in any high technology litigation, thereby giving it the power of veto over its adversary's choice of experts." *Id.* at *8, *10 (holding that "the fear that, because it is likely that Dr. Sherman will consult in the CVD industry in the future, he will innocently misuse Applied's information . . . without more, is not sufficient to substantiate a risk of competitive injury to Applied that outweighs ASMA's need for Dr. Sherman's services as an expert witness."). Acronis's attempt to distinguish the holding in *Adv Semiconductor* in view of the decision in *Rice v. United States* 39 Fed. Cl. 747 (Fed. Cl. 1997) is misplaced. In *Rice,* the dispute concerned whether the ***plaintiff*** – Ivan Rice – could have access to the defendant's highly confidential information, not whether an independent expert like Dr. Kaliski or Mr. Haletky could have access to the information. In *Rice,* the Court found that because the plaintiff had "not attempted to locate an acceptable expert to assist his counsel prepare this case" (*Id.* at 752) the Court did not allow the plaintiff to have access to defendant's

highly confidential information . Acronis's argument below that Symantec should have to prove that Mr. Haletky has "knowledge unique from other experts" for him to have access to Acronis's highly confidential information reflects Acronis's misreading of the holding in *Rice* and is not the standard for expert disclosure. In *Rice,* the Court stated that only if the plaintiff can show that there is no other person who can serve as an independent expert, the Court will consider a renewed request by plaintiff to designate himself as an expert for the case.

Acronis's reliance on *Pellerin v. Honeywell Int'l, Inc.* 2012 WL 112539 *2-3 (S.D. Cal, Jan. 12, 2012) and *Alien Tech. Corp. v. Intermec, Inc.* 2007 WL 426192 (D.N.D Nov. 30, 2007) is also misplaced. In both cases, the party retaining the expert had retained a former employee of the opposing party. In both cases, the Courts were concerned that the expert could disclose confidential information of his former employer to the opposing party in the litigation. Here, it is undisputed that Dr. Haletky is not a former employee of Acronis and thus these cases are inapposite.

Acronis' contention that potential experts that consult and publish in the field of the technology at issue should be barred from receiving highly confidential information would preclude Symantec from retaining an expert knowledgeable in this field. Almost any expert that is able to opine on the subject matter of the patents-in-suit and whether a device practices that claimed technology will presumably be involved with professional activities in his field of expertise. Acronis's objection that because Symantec's chosen consultant works in the field there is a risk of disclosure is baseless, in addition to being rejected by controlling law. *See, e.g.*, *id.* at *8, *10; *Verigy US, Inc. v. Mayder*, No. 07-4330 RMW, 2008 U.S. Dist. LEXIS 111116 at *3 (N.D. Cal. Sept. 8, 2008) (finding unpersuasive defendants' argument that "unauthorized disclosure of their claimed confidential information is inevitable because the Automated Test Equipment industry is 'incestuous'").

### B. Acronis's Objections to the Disclosure of Dr. Martin Kaliski are Baseless

Dr. Kaliski disclosed to Acronis his educational background; sample publications; professional affiliations and awards; and a comprehensive summary and detailing of his experience which includes: the dates and affiliations of his professional experience; the dates, organizations, and subject matter for his consulting professional experience; and the cases, dates, firms, subject matter, and assignment descriptions for his litigation-related experience. After receiving all this information, Acronis objected to the disclosure of Dr. Kaliski on grounds not stated in the Protective Order.

Provision 7.4(a)(5) of the Protective Order requires each expert to identify "each person or entity for the past 5 years for whom the Expert has provided professional services." As part of this disclosure, Dr. Kaliski provided a comprehensive list of his clients – the law firms for whom he provided professional services or received compensation for the past five years – along with a general description of the subject matter of those engagements.[1] Acronis contends Dr. Kaliski's list of law-firm clients "only lists law firms and does not provide the actual beneficiaries of Dr. Kaliski's professional services." *See* Cassidy Decl. Ex. 2. However, the Protective Order does not require the disclosure of the "beneficiaries" of an Expert's professional services, and only requires the disclosure of each "person or entity" for whom the Expert has provided professional services.

In an attempt to resolve this dispute without motion practice, Dr. Kaliski prepared a declaration stating why he poses no risk to Acronis's technical information and explains why he cannot disclose the specific additional information Acronis has demanded. Cassidy Decl. Ex. 7. In particular, Dr. Kaliski does not know whether he was disclosed as an expert for each of the nearly 60 matters he worked on for his law-firm clients and he cannot provide this information to Acronis without such clients' permissions. For the reasons explained in Dr. Kaliski's declaration, the burden required to determine this information is great and without permission from ***each and every client***, Dr. Kaliski's disclosure would fall short of Acronis's new self-imposed standards. Furthermore, the identity of Dr. Kaliski in the context of those engagements constitutes the work-product of his law-firm clients and their clients. *See In re Pizza Time Theatre Securities Litigation,* 113 F.R.D. 94, *97-98 (N.D. Cal. 1986); *Brown v. Lance Ringstad* 142 F.R.D. 461, 463-464 (S. D. Io. 1992); *State Auto Insurance Co. v. Briley,* 140 F.R.D. 394, 396 (E.D. Mi. 1992). Dr. Kaliski cannot waive a third-party's work-product immunity absent their permission or court order.

---

[1] Dr. Kaliski also provided a CV addendum detailing the subject matter of the cases for which he was retained. *See* Cassidy Decl. Ex. 2.

3

Further, controlling case law provides that Symantec's disclosure in connection with Dr. Kaliski is more than sufficient for Acronis to determine if there is any risk in disclosing its confidential information to him. In *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, the Court found that an expert's CV which included information "on his education, academic experience, honors and awards, professional societies, publications, conferences, books, patents, research accomplishments, Ph.D students, M.S. students, support to associates and professors, teaching techniques, courses taught, processional service and personal service" provided the reviewing party with the necessary information to access any risk of disclosure. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-cv-335 IEG, 2008 U.S. Dist. LEXIS 93873, at *6 (S.D. Cal. Nov. 18, 2008). Indeed, Fish & Richardson, Acronis's counsel, has engaged Dr. Kaliski every year for the past five years to serve its clients. Fish & Richardson has had sufficient information to assess the risk of disclosing its clients' confidential information to Dr. Kaliski without seeing the list of beneficiaries of Dr. Kaliski's services.

### III.  THERE IS NO RISK OF HARM TO ACRONIS'S HIGHLY CONFIDENTIAL INFORMATION IF THE COURT WERE TO PERMIT DISCLOSURE TO DR. KALISKI AND MR. HALETKY

Mr. Haletky has also provided Acronis with a declaration explaining why he poses no risk of harm to Acronis's Highly Confidential information. Cassidy Decl. Ex. 12. Symantec explained to Acronis during a meet and confer that Mr. Haletky's professional experience evidences his ability to comply with the Protective Order and reassures Acronis that there is no risk in disclosure. Specifically, Symantec explained that Mr. Haletky complies with non-disclosure agreements and strict confidentiality requirements in all of his consulting services, has a government issued security clearance, and has been designated a VMware vExpert since 2009 through which engagements are governed by strict non-disclosure access to confidential information. Yet, Acronis rejected this explanation and Mr. Haletky's declaration stating that Mr. Haletky's prior experience with confidential and government secret information is irrelevant to its assessment of Mr. Haletky. Cassidy Decl. ¶¶ 19-21.

Dr. Kaliski also provided a declaration to Acronis explaining why he poses no risk of harm to Acronis's Highly Confidential information. Cassidy Decl. Ex. 7. Dr. Kaliski has served as a technical expert in many cases and is accustomed to safeguarding the confidential information he receives in the context of litigation.

### IV.  SYMANTEC REMAINS WILLING TO WORK WITH ACRONIS TO DETERMINE ADDITIONAL MEANS THAT COULD REDUCE THE RISK OF HARM TO ACRONIS

During the parties' meet and confer, in addition to inquiring about the bases for Acronis's objection to Mr. Haletky, Symantec also asked Acronis what safeguards it should consider to reduce any alleged hypothetical risk of harm to Acronis. However, instead of offering practicable safeguards, Acronis responded that Mr. Haleky can forego this engagement and Symantec can find another expert or Mr. Haleky can accept this engagement and agree not to professionally consult or publish in this field in the future. Cassidy Decl. ¶ 20. After hearing Acronis's explanation that every publication by Mr. Haletky would potentially be infected with Acronis's source code and confidential information, Symantec proposed that Mr. Haleky could send Acronis's counsel drafts of any forthcoming publications that might relate to Acronis or any Acronis product. *Id.* But Acronis said that this additional safeguard was also insufficient.

With respect to Dr. Kaliski, Acronis stated that it is impossible for it to assess the risk of harm Dr. Kaliski poses to Acronis's highly confidential information without knowing all the beneficiaries of Dr. Kaliski's services. Acronis refused to identify what additional safeguards Dr. Kaliski could use to safeguard Acronis's information.

### V.  ACRONIS CANNOT PROVE THAT THE RISK OF HARM OF DISCLOSING ACRONIS'S HIGHLY CONFIDENTIAL INFORMATION OUTWEIGHS SYMANTEC'S NEED TO DISCLOSE THIS INFORMATION TO ITS EXPERT AND CONSULTANT

Both Mr. Haletky and Dr. Kaliski have signed an agreement to be bound by the protective order. Yet, Acronis responded that this did not quell the risk of disclosure of Acronis's confidential information. However, Acronis's position, in addition to being unreasonable, is undermined by the great weight of authority in this district. Courts recognize that an experts' signed agreement to be bound by the Protective Order is wholly adequate in protecting against unauthorized disclosure of a party's confidential information.[2]

---

[2] *See Verigy US, Inc. v. Mayder*, No. 07-4330 RMW, 2008 U.S. Dist. LEXIS 111116 at *3-4 (N.D. Cal. Sept. 8, 2008) (noting that both experts signed the Acknowledgement and Agreement to be Bound by the Stipulated
(footnote continued)

Furthermore, Acronis offered no evidence that disclosure of Acronis's highly confidential technical information to Mr. Haletky or Dr. Kaliski presents an ***actual*** risk to Acronis.  When Symantec asked for the proof that justifies Acronis's objection with respect to Mr. Haletky, Acronis just repeated its empty objection in replying that there was a "real" risk that Mr. Haletky would disclose Acronis's confidential information in his professional consulting and/or publications.  Acronis has not explained what risk Dr. Kaliski poses to Acronis's information because according to Acronis, it does not need to identify any risks until Dr. Kaliski identifies all the beneficiaries of his services.

As explained in *Verigy US, Inc. v. Mayder*, the Northern District of California requires ***actual proof*** that an expert is likely to disclose confidential information in contravention of the Protective Order.  *See Verigy US, Inc. v. Mayder*, No. 07-4330 RMW, 2008 U.S. Dist. LEXIS 111116 at *3-4 (N.D. Cal. Sept. 8, 2008) (noting that "[d]efendants have not argued, much less shown, that either [expert] are likely to make unauthorized disclosure of defendants' claimed propriety information").  Accordingly, Acronis's objection to Mr. Haletky without any proof that there is a risk he will make unauthorized use of Acronis's confidential information is not justified.  Acronis cannot object to Mr. Haletky solely because he possesses the necessary technical expertise to make him a qualified witness.

### ACRONIS'S POSITION
### I.   RISK OF HARM TO ACRONIS FROM DISCLOSURE OF ITS CODE TO MR. HALETKY OUTWEIGHS UNSUPPORTED PREJUDICE TO SYMANTEC FROM FINDING ANOTHER CONSULTANT

Acronis respectfully seeks to protect its most valuable, highly confidential asset—source code—and related information concerning the inner workings and interoperation of its accused products from disclosure to Mr. Haletky, who currently and actively consults in product development, and actively publishes on product comparison, in the very area of the subject matter of the code—virtualization.  There is a significant risk to Acronis that its highly confidential code and related information will become intertwined with, and inseparable from, Mr. Haletky's other knowledge, and will be disclosed—even if inadvertently—to third parties in his consulting or publications.  In contrast, there exists no significant prejudice to Symantec from finding another consultant, because there is no evidence that Mr. Haletky's knowledge is unique or that no other expert exists in this area.  Thus, because the risk of real harm to Acronis outweighs the inconvenience to Symantec, Symantec's motion should be denied.

### A.   Factual Background

Symantec disclosed Mr. Haletky as a consultant and requested, under the protective order, that Acronis allow him to review the source code for the Acronis products.  The Acronis accused products are backup and recovery software whose key features include support of virtualized environments. [Gentilhomme Decl. ¶ 6.]  Based on Mr. Haletky's resume, web site, publications and activities, Mr. Haletky currently provides private consulting services in the very area where Acronis develops its products—virtualization infrastructure, architecture, and design. [Gentilhomme Decl. ¶ 5, Ex. A.]:

- Mr. Haletky consults specifically on the development of new products and features in this area.  [*Id*.]  Mr. Haletky's declaration states that he has been "designated a VMware vExpert since 2009. In this capacity, I am granted early access to confidential product development, including access to betas, disclosures, and software prior to release." [Haletky Decl. ¶ 11.]  VMware is a maker of virtualization products, some of which are supported by the Acronis software, including by the Acronis products Symantec accused in this case. [Gentilhomme Decl. ¶ 7.]

- Mr. Haletky also actively and currently publishes in the virtualization field, including making public product comparisons and disclosures on the specific operation and functionality of those products. [Gentilhomme

---

Protective Order in the case in granting plaintiff's motion for leave to disclose defendant's confidential information over defendants' objections); *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-cv-335 IEG, 2008 U.S. Dist. LEXIS 93873, at *7, 10 (S.D. Cal. Nov. 18, 2008) ("[a party's] need to reasonably protect its confidential information is . . . addressed by . . . experts executing agreements to be bound by the Protective Order", and if "[an expert] did disclose confidential information to a prohibited person or entity under the protective order, [a party] has a remedy to address that disclosure because [the expert] executed an agreement to be bound by the Protective Order and is thus bound by its terms").

Decl. ¶ 7, Ex. B.] He has published several books on VMWare products, including at least two on VMware ESX and ESXi, products supported by Acronis's software. [*Id.*]

- Mr. Haletky appears to be working with Acronis's direct competitors, such as Veeam, and recently participated in a Veeam-sponsored podcast on "Penetration Testing with Virtual Backups." [*Id.* ¶ 9, Ex. C.]

Acronis's code and product infrastructure, which Symantec wants him to inspect, reveals specially-developed techniques, algorithms, and features concerning virtualization and the environment in which they operate that are Acronis's trade secrets. [Gentilhomme Decl. ¶ 10.] Acronis's code and product architecture are some of its most valuable assets. [*Id.*] To preserve their value, Acronis must take great care to protect their secrecy against intentional or inadvertent disclosure. [*Id.*] Acronis objected to Mr. Haletky's access to this information because his current consulting and publications in product development and product comparison create a present risk that Acronis's trade secrets will become intertwined with and inseparable from his knowledge and may easily be disclosed during his consulting or publications. [May Decl. ¶¶ 14-15, Ex. D at 1.] Moreover, Acronis would have no way of discovering or tracking such disclosure, which may be public or private. [Gentilhomme Decl. ¶ 10.]

Acronis met and conferred with Symantec on this issue. Symantec gave no reason why Mr. Haletky is the only consultant to review the code or why Symantec cannot find another. [May Decl. ¶ 15.]

### B. Mr. Haletky's Access to Acronis's Code Creates a Tangible Risk of Harm

Courts have repeatedly recognized the danger of inadvertent use or disclosure of confidential information learned by an expert. "The human brain does not compartmentalize information in that manner." *Alien Technology Corp. v. Intermec, Inc.*, 2007 WL 4261972, at *2 (D. N.D. 2007) ("while Stewart may not think at this time any knowledge he gained at Alien will be relevant, the danger is that no one may know how the information he learned from Alien may affect his opinion and Stewart may inadvertently use confidential information."). "This Court concurs with Judge Webb's comment that the human brain does not compartmentalize information in that manner." *Pellerin v. Honeywell Intern. Inc.*, 2012 WL 112539, at *3 (S.D. Cal. Jan. 12, 2012) (sustaining objection to disclosure of confidential information to an expert because "[t]here is a substantial risk he may inadvertently use confidential information he is contractually barred from disclosing to Pellerin in his role as expert."). Therefore courts have precluded experts from accessing confidential information where the party seeking access could not establish prejudice from having to use another expert. *See Alien Technology*, 2007 WL 4261972, at *2("Intermec has not shown how it would be prejudiced by losing Stewart as an expert. … Stewart is certainly well qualified as an expert in RFID technology, but so are many others. This is not the case where there are few experts on the topic. Therefore, fairness of the case requires Stewart be disqualified."); *see also Pellerin*, 2012 WL 112539, at *3.

As stated above, Acronis's code and other protected product information are its most valuable assets. They consist of Acronis's trade secrets, including techniques, algorithms, and key features concerning virtualization, the environment in which the products operate. Their value can be preserved only by careful protection from unauthorized disclosure, intentional or inadvertent. Mr. Haletky's access to this protected information creates a substantial risk of such disclosure. He currently consults in the development of new products and features in the very area of Acronis's code—virtualization. [Gentilhomme Decl. ¶¶ 5-8, Exs. A, C.] For example, Acronis's software supports VMware products. Mr. Haletky has been a VMware vExpert since 2009 and has access to the development of VMware products. [Haletky Decl. ¶ 11.] He also currently and actively publishes on virtualization products, including comparing their features and functionality. [Gentilhomme Decl., Ex. B.] For example, he has published at least two books on the VMware ESX and ESXi products, supported by Acronis's software. Importantly, he has worked with at least one of Acronis's direct competitors—Veeam—on a podcast on virtualization. [*Id.,* Ex. C.]

Because Mr. Haletky's consulting and publications in virtualization product development and comparison are active, ongoing, and concern specific features and functionality of the products, they will make it exceedingly difficult, if not impossible, for him to compartmentalize and separate the information that would be learned from Acronis's protected information, including its source code, from the information he necessarily has to disclose in his other work. Because the "human brain does not compartmentalize information in that manner," there is a very real risk that at least portions of Acronis's trade secrets will find their way into Mr. Haletky's ongoing consulting and publications. Worse, if any such disclosure occurs, Acronis would have no way of tracing or even discovering it, and will have no remedy against it after the fact. Thus Acronis's only remedy is to prevent such disclosure by not allowing access to individuals such as Mr. Haletky.

Mr. Haletky's declaration offers his opinion on the ultimate conclusion re whether he is a risk—a conclusion for the Court, not a witness—but lacks any support for it. [Haletky Decl. ¶¶ 8-12.] Mr. Haletky's signature on the agreement to be bound by the protective order will not protect against inadvertent disclosure in the course of his work. If the signature were sufficient, there would be no need for the objection procedure in the

protective order.  Nor will his promise to keep the information in a locked drawer help him compartmentalize this information in his mind.  Mr. Haletky's other engagements under non-disclosure agreements, including with the government, are irrelevant.  Symantec has not provided any evidence regarding what information was disclosed in those engagements, how valuable it was, what was the need for disclosure, what the terms of the agreements were and why, and how his compliance was confirmed.  Moreover, Acronis must take its own measures tailored to protect its own most valuable asset.  If anything, these prior agreements only increase the risk to Acronis because if inadvertent disclosure occurs, these agreements would apparently prevent Acronis from discovering it.

Finally, Mr. Haletky's contention that he is not involved in research and development of any patents or products that may relate to or compete with Acronis's product line lacks merit.  First, as shown above, he is involved in product development of and publishes about VMware products which are part of the environment in which the accused products operate and which appears to be one of the key features that was relied on to get the Symantec patents issued (*e.g.* how the patented technique interfaces with operations in the virtualization environment).  Second, undisputedly, he has worked with at least one direct Acronis competitor, Veeam, on a recent podcast about virtualization—a key aspect of Acronis's protected information.  Third, without reviewing the code and other protected information for Acronis's products, he simply has no basis to assess what functionality is included in the products and what other products may compete with them.  Therefore his declaration cannot meaningfully establish the lack risk to Acronis.

The cases Symantec cites compel no different conclusion and are factually distinguishable.  First, *Advanced Semiconductor Materials Am. v. Applied Materials*, 1996 U.S. Dist. LEXIS 21459 (N.D. Cal. Oct. 28, 1996) was subsequently expressly distinguished by another court, because in *Advanced Semiconductor* the court allowed access to the expert "on the ground that the expert possessed knowledge unique from other experts."  *Rice v. United States*, 39 Fed. Cl. 747, 752 (Fed. Cl. 1997) (denying access).  Symantec failed to show that Mr. Haletky has unique knowledge—much less that no other expert exists in this area.  Second, neither case concerned an expert with an ongoing relationship with a competitor or an ongoing consulting practice or publications in product development or product comparison.  The expert in *Advanced Semiconductor* had last consulted for the competitor regarding the technology at issue 4 years prior.  But even then, the court in *Advanced Semiconductor* still precluded the expert's access to information regarding wafer handling, the technology that was the subject of the expert's most recent involvement with the competitor.  *Id*., 1996 U.S. Dist. LEXIS 21459.  Similarly, in *Verigy US, Inc. v. Mayder*, 2008 U.S. Dist. LEXIS 111116 (N.D. Cal. Sept. 8, 2008), the experts last worked with the competitor 2 years ago and had no ongoing relationship with that company.

Unlike the experts in the cases cited by Symantec, Mr. Haletky is currently and actively consulting in product development and publishing product comparisons.  These ongoing activities establish a real and immediate risk to Acronis that its information may be disclosed at any time, and untraceably.

**C.      Symantec Has Failed to Show Prejudice from Having to Find Another Consultant**

Symantec has established no prejudice from being unable to use Mr. Haletky for source code review.  Symantec is required to show that Mr. Haletky's knowledge is unique and Symantec cannot find a comparable consultant.  *Rice*, 39 Fed. Cl. at 752; *Advanced Semiconductor,* 1996 U.S. Dist. LEXIS 21459.  Instead, Symantec simply stated that "Symantec has decided [that Mr. Haletky] would be most beneficial for its case."  Symantec does not argue that this is an area "where there are few experts on the topic" or that Mr. Haletky is uniquely qualified.  *Alien Technology*, 2007 WL 4261972, at *2. Therefore Symantec's case is far from "crippled"—nothing stops Symantec from finding another consultant.

Acronis in no way has suggested, as Symantec claims, that the same objection would apply to any expert in backup and recovery.  Acronis has not objected to any other Symantec's expert on these grounds.  Mr. Haletky's situation is of particular and heightened concern because he currently and actively consults in product development and publishes product comparisons in the exact area where he would have access to Acronis's protected information.

Accordingly, because Mr. Haletky poses a substantial risk and nothing stops Symantec from finding another consultant, the risk of severe harm to Acronis outweighs the inconvenience to Symantec from having to look for another consultant.  Therefore the "fairness of the case requires" that Mr. Haletky be precluded from reviewing Acronis's code.[3]  *Alien Technology*, 2007 WL 4261972, at *2.

---

[3] Acronis has readily made its source code available, including on the dates requested by Symantec—July 13 and then July 16-17. [May Decl., Ex. A at 4, 2.] Symantec chose not to consider any reviewers other than Mr. Haletky. As part of its ongoing document production, Acronis is producing documents related to operation of the products. [May Decl. ¶ 20.]

### D. Symantec Failed to Propose Any Effective Safeguards

Under the protective order, Symantec bears the burden of proposing safeguards. [Dkt. No. 89 at 12:19-21.] Symantec proposed only that Mr. Haletky would sign the agreement to be bound by the protective order and will send Acronis articles about Acronis's products before publication. Neither safeguard improves the protection of Acronis's code. The agreement to be bound merely acknowledges the obligation to be bound but can do nothing to separate the information in Mr. Haletky's own mind or prevent inadvertent disclosure. Similarly, a preview of the articles on the Acronis products will do nothing to prevent disclosure of Acronis's trade secrets in the publications on other products in the same area or in Mr. Haletky's private consulting relating to commercial product development that would compete with Acronis's products. Accordingly, Symantec's motion should be denied.

## II. SYMANTEC SHOULD BE REQUIRED TO DISCLOSE DR. KALISKI'S CLIENTS SO THAT ACRONIS CAN ASSESS THE RISK FROM DISCLOSURE

Symantec wants Acronis to allow Dr. Kaliski access to Acronis's most valuable highly confidential information, including source code, but refuses to give Acronis the opportunity—due under the stipulated protective order—to first review a list of his other clients and assess any risk from such access, e.g., because these clients may be Acronis's competitors. Symantec has produced only a list of the law firms that retained Dr. Kaliski but not the clients on whose behalf these firms retained him. Symantec fails to show any prejudice from the required disclosure—Symantec's only excuse is the purported inconvenience to Dr. Kaliski from preparing a list of the firms' actual clients (commonly tracked by experts such as Dr. Kaliski to determine conflicts). Symantec has not even established—because apparently Dr. Kaliski himself does not know—whether any of these engagements were confidential. But even if any were, Acronis's proposed modification to the protective order will protect that confidentiality. [May Decl. ¶ 9, Ex. B, 11:24-26, 12:1-6; 12:23-28.).] The harm to Acronis of being unable to review the entities' names and assess the risk before disclosing its most valuable information far outweighs any inconvenience to Dr. Kaliski.

The protective order requires the expert seeking access to the opposing party's highly confidential information to identify "*each person or entity*" for the past 5 years for whom the Expert has provided professional services or from whom the Expert received compensation or funding." [Dkt. No. 89 at 11:24-27.] It is plain that the order (in a standard provision from the model Northern District order) requires the disclosure of the *client*, because it is the client and its activities, and not a law firm, that define the substance of Dr. Kaliski's services and the risk to Acronis. For example, it is the client, and not the law firm, that may be a competitor of Acronis. Without such identification of the clients the protective order is stripped of its intended effect as it is impossible to assess the risk.

The meaning of this provision is also obvious from the case Symantec cites and from Dr. Kaliski's own declaration. *See Presidio v. Am. Tech. Ceramics*, 2008 U.S. Dist. LEXIS 93873 (S.D. Cal. Nov. 18, 2008) ("The CV discloses *the identities of companies for which he performed research contracts and consultations*."). Dr. Kaliski's declaration states in the first paragraph "I have been engaged by Quinn Emanuel Urquhart & Sullivan to serve as an expert *on behalf of Symantec Corporation ("Symantec")*" in this case. [Sym's Ex. 7, Kaliski Decl. ¶ 1.]

Symantec failed to show any prejudice from the disclosure of Dr. Kaliski's clients, commonly made by experts based on their records. Symantec does not argue that this information is unavailable. Any effort Dr. Kaliski may need to make in checking his records or collecting this information is far outweighed by the risk to Acronis from disclosing its highly confidential information to an expert who worked or may be working for Acronis's competitors, which may be currently unknown to Acronis.

Symantec's argument that Dr. Kaliski's name may be work product of the other firms is misdirected. First, his mere name, while it may or may not be confidential, is not itself work product. Second, neither Symantec nor Dr. Kaliski has identified any engagements that were in fact confidential but only hypothesized that some may be. [May Decl. ¶ 12.] Third, Acronis agrees to keep Dr. Kaliski's disclosure of this information confidential. To the extent Dr. Kaliski's other engagements were in fact confidential or did not result in litigation, Acronis proposed a narrowing modification to the order. [May Decl. ¶ 9, Ex. A at 3, 1; Ex. B at 12:23-28).] Symantec refused to accept it.

Symantec failed to propose any safeguards that would address the risk to Acronis from blindly disclosing its confidential information without knowing the actual companies for whom Dr. Kaliski has and may continue to work. Dr. Kaliski's description of his work in Addendum C falls short of the information needed, because any of the described software areas may be relevant to Acronis's source code. [Gentilhomme Decl. ¶ 12.] Similarly, execution of the agreement to be bound without disclosing the identities of the actual clients prevents Acronis from being able to determine whether Dr. Kaliski's work for the other clients presents a risk. Dr. Kaliski's declaration presents the bare ultimate legal conclusion that he poses no risk, but lacks relevant factual support. For example, his statement that he has been previously retained by other firms, including Fish & Richardson, is irrelevant. Again, Acronis's information at issue is source code and other protected product information—among the most valuable

assets of the entire company. Accordingly, Acronis respectfully requests that Symantec's motion be denied. Acronis remains willing, however, to work with Symantec on modifying the protective order—as it has previously proposed.

| QUINN EMANUEL URQUHART & SULLIVAN | FISH & RICHARDSON P.C. |
|---|---|
| By: */s/ Jennifer A. Kash* | By: */s/ Olga I. May* |
| Jennifer A. Kash (Bar No. 203679)<br>jenniferkash@quinnemanuel.com<br>Eric E. Wall (Bar No. 248692)<br>ericwall@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, California 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700<br>*Attorneys for Plaintiff-Counterclaim Defendant Symantec Corporation* | Thomas L. Halkowski<br>FISH AND RICHARDSON P.C.<br>222 Delaware Avenue<br>17th floor<br>P.O. Box 1114<br>Wilmington, DE 19899-1114<br>302-778-8407<br>Fax: (302) 652-0607<br>*Attorneys for Defendants and Counterclaimants Acronis, Inc. and Acronis International GmbH* |

SIGNATURE ATTESTATION

Pursuant to General Order No. 45(X)(B), I hereby certify that concurrence in the filing of this document has been obtained from each of the other signatories shown above.

                                                                      _/s/ Kate E. Cassidy_