IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>ACRONIS CORPORATION,<br><br>        Defendant. | Case No.: 11-5310 EMC (JSC)<br><br>**ORDER RE: JOINT DISCOVERY LETTER BRIEF (Dkt. No. 96)** |

Pending before the Court is the parties' Joint Discovery Letter Brief concerning Plaintiff Symantec's proposed expert witness and consultant. (Dkt. No. 96). Defendant Acronis objects to Plaintiff disclosing its highly confidential technical information (source code) to Plaintiff's technical expert Dr. Martin Kaliski and consultant Edward Haletky. Having considered the parties' filing and having had the benefit of oral argument on August 9, 2012, as stated on the record the Court DENIES Plaintiff's request to quash Defendant's objections.

## BACKGROUND

In this patent infringement action, Symantec alleges that Acronis' Backup and Recovery and True Image products infringe on five of Symantec's patents. The parties are competitors in the back-up and recovery market.

The underlying dispute concerns two individuals whom Plaintiff has indicated it intends to use as a testifying expert and consultant, respectively, to help it prepare for and present its case at trial. Pursuant to the Stipulated Protective Order ("Protective Order"), which District Judge Chen granted on July 2, 2012, Plaintiff notified Defendant that it intended to disclose information that had been designated as "Highly Confidential" to Dr. Kaliski and Mr. Haletky. The Protective Order requires the party seeking to disclose highly confidential information to serve written notice on the other party which:

> (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity for the past 5 years for whom the Expert has provided professional services or from whom the Expert received compensation or funding, including in connection with litigation, (6) identifies all of the Expert's patents and pending patent applications in which the Expert is an inventor, assignee, or holds a financial interest; (7) identifies all source code relevant to this litigation in which the Expert holds a financial interest, and (8) identifies any professional services provided by the expert or any of his staff to Symantec, Acronis, Inc., or Acronis International GmbH or any predecessors or successors (merged, acquired or otherwise), parents, divisions, subsidiaries, associated organizations, joint ventures, and affiliates thereof.

(Dkt. No. 89, 11:20-12:6). Under the Protective Order, if a party opposes disclosure of highly confidential information, the party may file a timely written objection. If the parties are unable to resolve the issue through meet and confer, the party seeking to disclose the highly confidential information shall file a motion which "must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional

2

means that could be used to reduce that risk." (Dkt. No. 89, 12:11-21). If a motion is filed, "the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert." (Id. at 12:25-28).

Plaintiff provided written notice of its intent to disclose highly confidential information to Dr. Kaliski and Mr. Haletky. Defendant responded with written objections which objected to disclosure to Dr. Kaliski because Plaintiff had failed to provide sufficient information regarding his clients for the past five years. Defendant objected to disclosure to Mr. Haletky because it contended that there was a significant risk of harm associated with the disclosure given that Mr. Haletky currently provides private consulting services in the very area in which Acronis develops its products and he also publishes in this same field. The underlying motion to quash these objections followed. (Dkt. No. 96). At oral argument the parties advised the Court that they had resolved the motion with respect to Dr. Kaliski; accordingly, this Order only addresses Defendant's objections to Mr. Haletky.

## DISCUSSION

Defendant objects to disclosure of its confidential information to consultant Edward Haletky because he actively consults on product development and publishes on product comparison in the field of virtualization. Defendant contends that there is a significant risk that given his involvement in this field, his knowledge of its highly confidential source code will become intertwined with his other knowledge such that it will be disclosed, inadvertently or otherwise, in the course of his future work. Defendant contends that it would be impossible to compartmentalize Mr. Haletky's knowledge of the source code from the rest of his work, and thus, absent a showing that Mr. Haletky possesses unique knowledge within this field – a showing it alleges Plaintiff has not made – Defendant should not have to share its highly confidential information with Mr. Haletky.

Mr. Haletky's resume indicates that he actively consults in the area of virtualization. He is the President of a company called The Virtualization Practice, which performs virtualization security and other virtualization product testing and analysis including product

reviews requiring detailed knowledge of the virtual environment and the product being reviewed. (Dkt. No. 96-23, p. 8). He has been designated as a VMware vExpert since 2009 and VMware is a maker of virtualization products some of which are supported by the Acronis software, including some of the products at issue in this case. (Dkt. Nos. 96-23 ¶ 11, 96-31 ¶ 7). He has also published several books on VMware products, including two that are supported by Acronis's software. (Dkt. No. 96-33). Further, Mr. Haletky has worked with one of Defendant's competitors on a podcast about virtualization. (Dkt. Nos. 96-31 ¶ 9, 96-34).

      At the hearing, Plaintiff attempted to distinguish Mr. Haletky's consulting work in this field by suggesting that he consults on a macro level, rather than what the Court will term the micro-source code level. The argument being that any source code Mr. Haletky was exposed to as a consultant in this case would never come up in his more macro level consulting in the field of virtualization. The Court is not persuaded by this argument. Mr. Haletky's resume indicates that he consults and develops training for "advanced VMware ESX Server issues and assists customers" with "solving VMware . . . operating system, clustering, compiler, shell, and other software development and programming issues" – this sounds like consulting on both a macro and micro level. (Dkt. No. 96-23, p. 8). Moreover, Plaintiff was unable to satisfactorily respond to the Court's inquiry as to why if Mr. Haletky's expertise and consulting in the field of virtualization does not involve work with source code, it is necessary for him to review Acronis's highly confidential source code in this action.

      A review of the relevant case law supports a finding that Mr. Haletky's ongoing work in the field of virtualization creates a substantial risk and that absent a showing that Mr. Haletky possesses unique expertise he should not be allowed access to Defendant's highly confidential information.[1] In <u>Advance SemiConductor Materials America v. Applied Materials</u>, No. 95-20169, 1996 U.S. Dist. LEXIS 21459 (N.D. Cal. Oct. 28, 1996), the court considered a similar situation and found that it had "to balance [plaintiff's] interest in

---

[1] Neither the parties nor the Court on its own have been able to identify a case within the Ninth Circuit where a party's objections to an expert were overruled where that expert actively consulted in the very field at issue.

4

selecting the experts most beneficial to its case with [defendant's] interest in protecting its trade secrets from disclosure to its competitors." Id. at *8. Two facts weighed heavily in the plaintiff's favor in Advanced Semiconductor. First, the expert in that case had not consulted for a competitor on the subject matter of the litigation for four years and had no future plans to do so. Id. at *10. Second, the expert possessed qualifications that other designated experts could not. Id. at *9. The Advance Semiconductor court concluded that in light of these two facts, the plaintiff "must be permitted to present the experts who it believes possess the ability to convey highly technical information to lay persons, and those experts must be permitted access to [defendant's] confidential information." Id. at *9. The court in Verigy v. Mayder, No. 07-04330, 2008 WL 4183493 (N.D. Cal. Sept. 8, 2008), similarly found the question of whether the experts at issue had consulted for a competitor within the last few years dispositive. Id. at *1 (finding no risk of harm where the challenged experts had retired from the key competitor two years ago and did not have an ongoing relationship with the competitor).

Here, Plaintiff has not shown that Mr. Haletky has unique knowledge that could not be found in another expert. Further, Mr. Haletky does have ongoing relationships with competitors in the field of virtualization. Thus, there is a tangible risk that Mr. Haletky will not be able to separate the highly confidential information he gleans from reviewing Defendant's source code with his consulting and publication work in that same technical field and this finding is not outweighed by a showing that he has expertise that other experts do not. The Court also notes that his status as a consultant, rather than a testifying expert, further undercuts a claim that he is essential to Plaintiff's case.

Finally, the Court is not persuaded by Plaintiff's argument that sustaining Defendant's objections in this case effectively allows Acronis a veto power with respect to Symantec's experts. The Court's ruling is limited to Mr. Haletky and the very specific situation presented by Mr. Haletky, a non-testifying consultant who actively consults with Defendant's competitors – absent a showing that he possesses unique knowledge which no other experts possess, Defendant should not have to provide him access to its highly confidential

5

information.[2] Plaintiff shall select a consultant who does not currently consult with competitors in the field of virtualization.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Quash Defendant's Objections to consultant Edward Haletky is DENIED; the motion is DENIED AS MOOT with respect to Dr. Martin Kaliski.

This Order disposes of Docket No. 96.

**IT IS SO ORDERED.**

Dated: August 20, 2012

                                             _____
                                             JACQUELINE SCOTT CORLEY
                                             UNITED STATES MAGISTRATE JUDGE

---

[2] Under the Protective Order Plaintiff bears the burden of proposing safeguards to guard against the risk possessed by disclosure of highly confidential information. (Dkt. No. 89 12:19-21). Plaintiff's proposed safeguards include having Mr. Haletky sign the Protective Order and an agreement that Mr. Haletky will send drafts of proposed articles relating to virtualization to Defendant prior to publication. These safeguards do not meaningfully address the risk in light of the above findings.