Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE

SYMANTEC CORPORATION,            )
                                 )
           Plaintiff,            )
                                 )
  VS.                            )  No. C 11-5310 EMC (JSC)
                                 )
ACRONIS CORPORATION,             )
                                 )  San Francisco, California
           Defendant.            )  Thursday
_____)  August 9, 2012

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          Quinn, Emanuel, Urquhart & Oliver
                            51 Madison Ave, 22nd Floor
                            New York, New York  10128
                        **By: Kate Elizabeth Cassidy, Esquire**
                            (Appearing by telephone)

                            Quinn, Emanuel, Urquhart & Oliver
                            50 California Street, 22nd Floor
                            San Francisco, California 94111
                        **By: Jennifer A. Kash, Esquire**
                            (Appearing by telephone)

**For Defendant:**          Fish & Richardson P.C.
                            222 Delaware Avenue, 17th floor
                            P.O. Box 1114
                            Wilmington, Delaware 19899-1114
                        **By: Thomas L. Halkowski, Esquire**
                            (Appearing by telephone)

(Appearances continued on next page)

**Reported By:**    *Katherine Powell Sullivan, CSR #5812, RPR, CRR*
                    *Official Reporter - U.S. District Court*

*Katherine Powell Sullivan, CSR, RPR, CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*

APPEARANCES (CONTINUED):

For Defendant:          Fish & Richardson P.C.
                        12390 El Camino Real
                        San Diego, California 92130
                   By:  **Olga Ivanovna May, Esquire, Esquire**
                        (Appearing by telephone)

**P R O C E E D I N G S**

**AUGUST 9, 2012**                                    **9:03 A.M.**

**THE CLERK:**  Calling civil action C 11-5310, Symantec Corporation versus Acronis, Inc.

Counsel, starting with plaintiffs, please state your appearance for the record.

**MS. CASSIDY:**  Yes, good morning.  My name is Kate Cassidy.  I'm from the law firm of Quinn Emanuel Urquhart & Sullivan.  With me this morning is Jennifer Kash.  And we are here on behalf of Symantec Corporation.

**THE COURT:**  Good morning.

**MS. CASSIDY:**  Good morning.

**MR. HALKOWSKI:**  Good morning, Judge.  This is Tom Halkowski with Fish & Richardson.  And with me on the phone is Olga May, representing Acronis.

**THE COURT:**  Good morning.  Good morning.  Thank you very much.  This is on for a hearing on plaintiff's motion to overrule defendant's objections to two of the expert witness disclosures.

I guess, let's start with Dr. Kaliski, who the plaintiff has identified as a testifying expert.  And you want him to be able to review defendant's source code.

As I read the stipulated protective order that governs this case, each expert is supposed to identify each person or entity for the past five years to whom the expert has provided

professional services or received compensation or funding, and that Dr. Kaliski has identified the law firms but not the parties, which is obviously what the protective order is designed to do.

So I don't quite understand why he shouldn't be required to do so. I know he doesn't want to do so because it says it would be burdensome, but that's sort of the protective order that governs this case.

**MS. CASSIDY:** I understand, Your Honor. And I have some good news, at least with respect to Dr. Kaliski.

The parties were able to meet and confer in advance of the hearing this morning, and we were able to reach a resolution as it relates to Dr. Kaliski, with the understanding of the limitation that he's expressed in his declaration that he has submitted to the Court and to the other side.

The parties have reached an agreement as to how to modify the protective order to address concerns in terms of identifying sufficient information such that they can assess Dr. Kaliski's role in this case. And that will also address Dr. Kaliski's concern about obtaining the necessary information that the plaintiff wanted to disclose.

I'll let Acronis's counsel speak for himself, but my understanding is we have reached a resolution sufficient that the Court does not have to hear argument on Dr. Kaliski.

**THE COURT:** Okay.

**MR. HALKOWSKI:**  That's correct, Your Honor, with regard to Dr. Kaliski.

Basically, just a quick summary, the issue had to do with to the extent that he's obligated under a NDA or some other confidentiality obligation that he believes he can't reveal the identity of the client, we proposed a compromise on that.  And the folks at Symantec, apparently, have now agreed to that.  We've got actual language that we've exchanged so I think we are on the same page there.

**THE COURT:**  Okay.  You can just submit the modification of the protective order to me instead of Judge Chen.

**MR. HALKOWSKI:**  All right.  Thank you, Judge.

**THE COURT:**  So I guess I should ask you Mr. -- how do you pronounce it, Haletky?

**MS. CASSIDY:**  Haletky.

**THE COURT:**  Haletky.  Is there any agreement on him before I ask you questions?  No.

**MS. CASSIDY:**  Unfortunately not, Your Honor.  We are not able to reach agreement on Mr. Haletky.

**THE COURT:**  Okay.

**MS. CASSIDY:**  And -- sorry.

**THE COURT:**  Well, so, I'll tell you, my tentative view based on reading is, what I think distinguishes Mr. Haletky from the cases is that he's actually continuing to consult in

this very field privately.  And so there's nothing to prevent him from consulting in the future with a competitor.

And I do think -- I know that this protective order was very carefully and hotly negotiated, that in all these cases and particularly when you have competitors and sharing of source codes, the Court needs to be careful to ensure that just because someone is sued -- and I do think it's significant that it's the plaintiff's expert who sued the defendant -- that we protect that source code.

And what I don't see in the record is anything that says -- and, also, he's not a testifying expert; he's just a consulting expert -- why he's the only consulting expert that you could retain, and that there's no one else available to consult with.  So I guess that would be you, Ms. Cassidy.

**MS. CASSIDY:**  I understand, Your Honor.

Mr. Haletky's consulting agreement, I think there has been a misunderstanding of the technical detail he can go through with his consulting.  He does not consult at the level of source code development or writing source code.

What he does is, companies will come in and say, this is what I need to implement in my company.  And he will tell them what is -- based on publicly-available knowledge, what is available in the industry, what features and functionalities, publicly-available knowledge that exists from various products offerings available in the industry, and tell them -- you know,

advise them what features will meet the needs that they have expressed.

He also writes -- keeps up-to-date with customer demands on various features and functionalities on the part of products in the industry.

And the fact that he has developed quite the reputation of keeping up-to-date with what's going on in the virtualization space in particular, and not so much -- he has not consulted in backup and recovery space, which is what the patents in this case are about.  And it's that level of expertise that he has developed along the way that Symantec has -- believes will be helpful in particular for this case.

THE COURT:  If he doesn't consult on source codes and things then why does he need to review their source code to assist you, if that's not his expertise?

MS. CASSIDY:  Well, because he is familiar -- he knows how to read source code, and he's familiar with the products and the functionality of the various products that he is able -- he is the most efficient and effective person that we have been able to identify to date who can go in and read source code.

THE COURT:  But then it does sound like they are related, that they are not two totally separate things.

MS. CASSIDY:  He's consulting --

THE COURT:  He does consulting.  What he does and the

way you've identified him is because of his private consulting work.  But what you're saying is his he private consulting work has nothing to do with source code.  So then I want to know, why does he need to review Acronis's source code?  And you say, well ...

So it seems to me that they are related.  That to say they are totally separate that just -- I mean, I don't see -- if you want him to review the source code, it's because he has expertise and this is what he does.

What he does is, he consults.  And maybe he doesn't tell people how to write source code, but he's going to have that information, that non-publicly available information in his head, that may, in fact, apply to how -- or inform how he does his consulting, whether he -- I'm not saying he would do it intentionally, but it's information that he would have.

**MS. KASH:**  Your Honor, this is Ms. Kash for Symantec, as well.

I think the issue, the confusion here is that we are not using him in our capacity as an expert in this case, as a consulting expert in this case, as the consultant that he does his ordinary course of business.

For example, it would be just the same thing as oftentimes you hire a professor who would be in the case as an expert, and that professor would have a job that he has where he instructs students on different issues and publicly-available

information, or whatever.  Then, separately that professor might, as the role of expert in the case, use and look at source code, and because of other experience and information he has that's relevant to the case.

So it's the combination of his knowledge of the public space as well as his ability to assist as a technical expert that Symantec wants to hire him.  That's completely and totally separate from his job and other jobs, which is at times to provide this consultancy on publicly-available information. And those things are separate.

And I think the case law supports the idea that when you're looking at experts, that their job -- otherwise relevant jobs in the field can be separable from what you're using them for as an expert in the case.

**THE COURT:**  But what the cases also say is that then the party wanting to use this expert should make some showing that there's no one else that they could use.

And there's no showing in the record of that at all, and in particular because it's a consulting not a testifying expert.  Okay.

**MS. KASH:**  I think -- I mean -- Kate, go ahead.

**MS. CASSIDY:**  Your Honor, I was just going to ask Your Honor, the case that is most on point as it relates to the showing of like the fact the expert has unique information in the field, I believe, is the *Rice* decision.

In that case, it was a slightly different situation than here.  There, the plaintiff wants to disclose himself as the expert.  And in that situation the Court said that he needed to make a showing that he had unique knowledge in the field, and that he had to go back and see if he could find an expert.  And that if he could not find an expert that had unique knowledge in the field, then he could come back and maybe resubmit his motion to be designated as an expert.

But that's not the situation here.  Mr. Haletky is not affiliated with the plaintiff in way, not affiliated with the defendant in any way, and he's never been an employee of either party.

**THE COURT:**  Okay.  Ms. May or Mr. --

**MR. HALKOWSKI:**  Judge, this is Tom Halkowski.

So, a couple of things.  One is, we had looked in the record and, actually, we met and conferred with counsel for Symantec on that very point that Your Honor raised in terms of is this person unique, or, you know, why that they couldn't find someone else, and received no satisfactory response.

And, in fact, obviously, they have now identified or are close to having approved this Mr. Kaliski.

They've also identified to us recently, last week, three other -- three other experts to review the source code.  And we're in the process of having those folks approved.  So that's four, at least by my count so far, that are going to be looking

at the source code.

And Mr. -- unlike them, Mr. Haletky raises a number of different issues. And one of the key things, just in terms of the field, we focused on this virtualization because that is a key technology in the area of Acronis's products.

And that's addressed in Mr. Gentilhomme's declaration. Paragraph 6, 7 he talks about the virtualization and how that's key to the Acronis products. And that's exactly the area that Mr. Haletky consults as a private consultant.

And, yes, certainly, they can argue that he's doing it based on public information, and that I'm sure he will have the best of intentions in terms of how he does his consulting work. But the fact of the matter is, once he becomes aware of some of the, you know, interesting and truly novel approaches that Acronis has developed as a part of its source code in its work in this key area of virtualization, it's, as a practicality, impossible to kind of keep those kind of ideas separate as he consults with other folks.

And, frankly, since he's doing private consulting, there is really no way that we could possibly police that in any significant manner.

Anyhow, we've got, obviously, as you hopefully can tell from my discussion here, we've got some very serious concerns. Our client, more importantly, has some very serious concerns. And that's why we've gone to the effort of continuing to object

here.

Obviously, we prefer to work things out amicably as we have with regard to these other four experts.  But with this one we just simply need to continue to press our objection.

THE COURT:  Ms. Cassidy, anything further?

MS. CASSIDY:  Briefly.

THE COURT:  Yes.

MS. CASSIDY:  Yes, Your Honor, if I may respond very briefly.

THE COURT:  Yes, yes.

MS. CASSIDY:  Uhm, I think the issue here, the case *Verigy US vs. Mayder*, the citation is 2008 U.S. Dist. LEXIS --

THE COURT:  Yes, the Judge Lloyd case.

MS. CASSIDY:  -- 111116.  Yeah.  That case, there the Court highlighted what the important distinction is to make when considering an issue such as this, which is to see whether there is a showing that the expert will make an unauthorized disclosure.

Mr. Haletky's long experience as being a consultant, working under NDAs, having a security clearance, without any instance where he has been accused of violating any of these confidentiality obligations, demonstrate that he is able to do precisely what Acronis is concerned that he cannot do, and that is keep the information that he learned as part of his consulting separate for each entity and for each matter that he

works on.

And, quite frankly, his reputation is based upon the fact that he can be discreet in this way; consult with clients without revealing the confidential information that Acronis is talking about.

Furthermore, there are so many safeguards that we can put in place here that would guard against the risk that Acronis is concerned about.

If they're concerned specifically that he will take information about the source code -- I mean, there's just no way that Mr. Haletky can memorize all aspects of Acronis's source code.

What he can do review is that when he takes his notes during source code reviews, he can make his own file names and line numbers, and that's it.  And then he will just -- we'll provide that to Acronis and have them print it out pursuant to the tender the protective order.

And in that way all the source code that he would have access to would be produced in the context of the litigation and would be no more than what would potentially be disclosed to the jury in this case as later on we put on our proof at trial.

So to the extent that there's a way we can work a way around, if it's the source code that they are concerned about, I don't think that it is possible that he could remember all

aspects of Acronis's source code.  So we're willing to consider that additional safeguard.

With respect to the additional source code review expert, the reason that we had to go out and find these additional source code reviewers at the last minute, these are not our first choices.

These are people who are able to read source code who do not have the requisite experience in the industry so that they can go in with laser-like focus and know without a lot of work, which is what Haletky can do, to identify the relevant pieces of source code.

It's going to be much more expensive for Symantec to try and get these new people up to speed, tell them what it is we are looking for, and to have them probably spend several more days than what Mr. Haletky would spend, based on the fact that we have worked with him for so many months, at this point, in order to tell him what it is that we would need to -- what we're looking for in the source code.

So, yeah, we could find someone else that can read C++ or C Sharp programming languages, and we can try and instruct them as best we can.

The reason that we picked Mr. Haletky, and the reason he is so important for our case is that we spent months researching for experts.  We focused on him because he has the relevant industry experience about the various products and the

features these products have in the industry.  And we have worked with him in developing our proof for this case, and that we believe that he would be able to continue to help us as we put together our case and present it at trial.

If he's not able to review Acronis's highly-confidential information, starting with the source code but including all of the other confidential information that Acronis has produced in this case, Symantec will be hindered in its trial preparation because we will not be able to use the expert we have spent many weeks, if not months, looking for and working with to develop its theories for trial.

**THE COURT:**  Well, I don't know that I should consider that because you could have disclosed him earlier in case there was going to be a problem.

They objected, I believe, even on an expedited basis once you disclosed him.

So I don't think I can -- that that would be fair to consider that, the fact that the plaintiff didn't disclose the witness until months after they began working with him and, therefore, there will be some cost to it.  I don't think that's a proper consideration.

**MS. CASSIDY:**  Your Honor, what I meant to say is, we had spent a considerable amount of time looking for him.

We spent an amount of time for him to gather the information that he was required to disclose under the

protective order, and then we disclosed him as soon as we could.

There was no delay.  We did not sit on him for a period of time before we disclosed him.  As soon as we were able to, we found the expert.  We negotiated the agreement with him.  We gathered all the information we needed to.  We disclosed him right away.

**MR. HALKOWSKI:**  Judge, if you need to hear anything further, I do have two responsive points.

**THE COURT:**  Sure.  Go ahead.

**MR. HALKOWSKI:**  On the -- with regard to the safeguards, in terms of the source code, obviously and the concern is not that he's going to memorize source code line by line and then kind of regurgitate it somewhere.

Source code is -- writing source code is part art, part science in terms of fashioning it in a way that you accomplish different objectives.  And it's those kind of ideas that, obviously, are going to stick in his mind, he's -- you know, he's going to be exposed to.  And that's going to be very hard for him to compartmentalize that as he goes on and continues to consult.

In terms of the case that was mentioned, my understanding is that that actually is distinguished because (inaudible) the other cases that Your Honor had mentioned early on, and that those were not ongoing activities that were at issue there for

that expert.

So, again, we just -- on this particular expert, there is plenty of fish in the sea, so to speak, and they have managed to find some other ones.

On this particular expert, we have a very strong objection, and our client is very concerned.

THE COURT: Well, in *Verigy*, as well, Judge Lloyd did limit them to disclosing the source code to only one expert. There were two. And he said, well, you can pick one in that case.

I guess, Ms. Cassidy, what I'm wondering is, where is there a case in which the expert is continuing to actively consult in the very area at issue, where that expert was then allowed, over the other party's objection, to review the confidential information including the source code?

I mean, they are not objecting based on his past. They say, if he'll agree in the future that he's not going to consult in that area anymore then fine.

MS. CASSIDY: Right. I understand that, Your Honor.

I mean, Acronis also has not imposed prospective limitation on any of the experts, that they can't consult in this field either.

To just extend what -- Acronis's objection to the next step is that none of the source code, the people who are going to go on and review the source code, they will never --

according to Acronis's objections and concerns, they would also not be able to consult in this area of backup and recovery and virtualization technology either.

THE COURT:  Well, Ms. Cassidy, there is a difference between people who have done that in the past and that's part of their livelihood, and they have an intent to continue it, with someone who doesn't.  You know, for example, me.

You can say, well --

MS. CASSIDY:  Right.

THE COURT:  You don't need to prevent me from doing that because there isn't really any chance I'm going to do that, or somebody else.

So, obviously, lines have to be drawn.  And I agree that you could take that argument too far, to the extent that a party would be able to object to anyone.  And that would be unreasonable.

And perhaps that's why they're not objecting to those other experts on that ground.  That would be unreasonable.

What I'm looking for -- and maybe there isn't a case. These often aren't written on --

MS. CASSIDY:  I think the closest one you find, Your Honor, that we've been able to find, is the *Advanced Semiconductor* case.

THE COURT:  Okay.

MS. CASSIDY:  There was language in that case where

there was a concern that Dr. Sherman would inevitably use the information, that -- if he consults for the defendant's competitors in the future, just because the information would be in his head.

And this is exactly the idea that Acronis's counsel has advanced.

But in that case, in the Northern District of California, Judge Infante said that that cannot be the standard that was applied. If it was, then a litigant could successfully object to any active industry consultant in high-technology litigation, thereby giving the power of veto over the choice of experts.

So I think his opinion right here, where he actually addresses whether there is active industry consultation --

THE COURT: All right. All right. Well, I understand. I read that case --

(Phone interference.)

MS. CASSIDY: -- rejected the motion.

THE COURT: I read that case. And that was a testifying expert. And so that was part of it. But you have a different testifying expert. So he's not even the expert who is going to be testifying. And they also agreed not to show the expert information and documents related to that consulting with Novelis in that case. And here you're not agreeing not to show him the source code or those kinds of things.

Well, I appreciate the arguments, but I think I'm going to deny the plaintiff's motion.  I appreciate there is some burden here, but I do think these facts are pretty unique, that in some circumstances, not many but in some, the reason we have these disclosure requirements is because there are cases where it is appropriate for the party to find a different expert.  And I believe in this case, on the record before the Court, that this is one of those situations.

So I will write something, but I wanted to let you know because I do realize it's a burden in that Symantec now needs to find somebody else to consult with.  All right.

**MR. HALKOWSKI:**  Thank you, Judge.

**THE COURT:**  Thank you very much.

**MS. CASSIDY:**  Thank you, Your Honor.

(At 9:27 a.m. the proceedings were adjourned.)

- - - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Friday, September 7, 2012

_Katherine Sullivan_
_____

Katherine Powell Sullivan, CSR #5812, RPR, CRR
U.S. Court Reporter