PAGES 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY

| | |
|---|---|
| SYMANTEC, CORPORATION,   ) | |
| PLAINTIFF,   ) | |
| VS.   ) | NO. C 11-5310 EMC (JSC) |
| ACRONIS CORPORATION,   ) | |
| DEFENDANT.   ) | SAN FRANCISCO, CALIFORNIA<br>THURSDAY<br>OCTOBER 4, 2012 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF          QUINN, EMANUEL, URQUHART & OLIVER
                       51 MADISON AVE, 22ND FLOOR
                       NEW YORK, NEW YORK 10128
                  BY:  **KATE ELIZABETH CASSIDY, ESQUIRE**
                       (APPEARING BY TELEPHONE)

                       QUINN, EMANUEL, URQUHART & OLIVER
                       50 CALIFORNIA STREET
                       SAN FRANCISCO, CALIFORNIA  94111
                  BY:  **ERIC WALL, ESQUIRE**


FOR DEFENDANT          FISH & RICHARDSON P.C.
                       222 DELAWARE AVENUE, 17TH FLOOR
                       WILMINGTON, DELAWARE 19899-1114
                  BY:  **THOMAS L. HALKOWSKI, ESQUIRE**

                       FISH & RICHARDSON
                       12390 EL CAMINO REAL
                       SAN DIEGO, CALIFORNIA  92130
                  BY:  **OLGA I. MAY, ESQUIRE**


*REPORTED BY:  JOAN MARIE COLUMBINI, CSR 5435, RPR*
             *OFFICIAL COURT REPORTER, U.S. DISTRICT COURT*

**PROCEEDINGS; THURSDAY, OCTOBER 4, 2012**

**THE CLERK:** CALLING CIVIL ACTION, C-11-5310, SYMANTEC CORPORATION VERSUS ACRONIS.

COUNSEL, STARTING WITH PLAINTIFF ON THE PHONE, CAN YOU PLEASE STATE YOUR APPEARANCE -- MS. CASSIDY?

**MS. CASSIDY:** YES, I'M HERE.

**THE CLERK:** CAN YOU STATE YOUR APPEARANCE FOR THE RECORD.

**MS. CASSIDY:** MY NAME IS KATE CASSIDY. I'M HERE ON BEHALF OF SYMANTEC CORPORATION. I'M WITH THE LAW FIRM OF QUINN, EMANUEL, URQUHART & SULLIVAN.

**THE COURT:** GOOD MORNING, MS. CASSIDY.

**MS. CASSIDY:** GOOD MORNING.

**MR. WALL:** ERIC WALL, ALSO QUINN EMANUEL, FOR SYMANTEC.

**THE COURT:** ERIC WALL.

**MR. WALL:** YES.

**THE COURT:** GOOD MORNING, MR. WALL.

**MR. WALL:** GOOD MORNING.

**MR. HALKOWSKI:** GOOD MORNING, YOUR HONOR. TOM HALKOWSKI WITH FISH & RICHARDSON ON BEHALF OF ACRONIS.

**MS. MAY:** AND OLGA MAY, FISH & RICHARDSON, ON BEHALF OF ACRONIS.

**THE COURT:** GOOD MORNING.

THANK YOU, EVERYONE, FOR BEING HERE.  SO FIRST I WANT TO START WITH THIS, AND I WANT TO KNOW WHAT YOU RESOLVED OR WHAT'S LEFT, IF ANYTHING.

**MR. WALL:**  THANK YOU, YOUR HONOR.  WE HAVE RESOLVED SOME THINGS IN MEETING AND CONFERRING.  I'LL TRY TO STATE THOSE AGREEMENTS FOR THE RECORD.

**THE COURT:**  THAT WAS MEETING AND CONFERRING IN PERSON?

**MR. WALL:**  IN PERSON IN OUR SAN FRANCISCO OFFICES, THAT'S CORRECT.  I'LL TRY TO STATE THOSE AGREEMENTS, AND I'M SURE COUNSEL CAN CORRECT ME IF I MISSTATE ANY OF OUR AGREEMENTS.

WITH RESPECT TO THE INTERROGATORIES ISSUE --

**THE COURT:**  WHAT NUMBER IS THAT?

**MR. WALL:**  THAT IS NUMBER FOUR.  ACRONIS HAS COMMITTED TO AMENDING ITS RESPONSES BY OCTOBER 12TH.  THESE RESPONSES WILL SET FORTH THE INFORMATION REQUESTED AS OPPOSED TO CITING DOCUMENTS PURSUANT TO RULE 33(D).

THE SECOND ISSUE --

**MR. HALKOWSKI:**  IF I MAY?  WE WILL BE USING RULE 33(D).  I BELIEVE THE AGREEMENT WAS THAT -- SYMANTEC SERVED -- RECENTLY SERVED, ACTUALLY YESTERDAY, HANDED US SUPPLEMENTS TO THEIR INTERROGATORIES, AND OUR RESPONSE WAS THAT WE HAVE NO PROBLEM WITH SUPPLEMENTING OUR INTERROGATORIES TO THE SAME SUBSTANTIVE EXTENT AS THE INFORMATION WE RECEIVED FROM

SYMANTEC, WHICH, YOU KNOW, THEY OBVIOUSLY USED 33(D) AND REFERENCED A BUNCH OF DOCUMENTS THAT WERE PRODUCED AS A PART OF THAT, AND WE WOULD BE DOING LIKEWISE, BUT, OBVIOUSLY, IN ADDITION, PROVIDING SOME SUBSTANTIVE INFORMATION, AGAIN ON THE ORDER OF WHAT WE RECEIVED FROM SYMANTEC.

SO IT WILL BE KIND OF AN IN-KIND LEVEL OF INFORMATION.  I BELIEVE THAT'S WHERE WE WERE ON THE SAME PAGE.

MR. WALL:  YEAH, YOUR HONOR.  BASICALLY TO MAKE SURE WE ARE PRECISE HERE, WE ASKED FOR CERTAIN DATES.  WE WOULD LIKE THOSE DATES SET FORTH IN THE INTERROGATORIES.  WE ASKED FOR THE NAMES OF PEOPLE KNOWLEDGEABLE REGARDING CERTAIN INFORMATION. WE EXPECT THAT ACRONIS WILL BE PROVIDING THOSE NAMES, AS OPPOSED TO MERELY REFERRING TO DOCUMENTS.

IS THAT CONSISTENT WITH OUR AGREEMENT?

MR. HALKOWSKI:  THAT'S CONSISTENT.

THE COURT:  IN ADDITION, YOU MAY REFER TO DOCUMENTS, BUT YOU ARE NOT GOING TO REFER TO ALL 40,000 DOCUMENTS?

MR. HALKOWSKI:  EXACTLY.

THE COURT:  OKAY.  GREAT.

MR. WALL:  I'LL MOVE ON, THEN, TO ISSUE ONE, AND I THINK MANY OF THESE -- I THINK A LOT OF THE DISPUTE HERE HAS BEEN RESOLVED.

SO, FIRST, ACRONIS AGREED THAT, SUBJECT TO ITS OBJECTIONS TO OUR 30(B)(6) TOPICS, IT WOULD DESIGNATE A REPRESENTATIVE TO TESTIFY REGARDING THE LOCATION OF ACRONIS'S

DOCUMENTS ACROSS THE DIFFERENT ACRONIS ENTITIES ON NOVEMBER 2ND.

ACRONIS ALSO REPRESENTED IT WAS CONDUCTING A REASONABLE SEARCH FOR DOCUMENTS RESPONSIVE TO SYMANTEC'S REQUEST FOR PRODUCTION AT ALL ACRONIS ENTITIES.

SO THAT, WE FEEL, RESOLVED A LOT OF OUR CONCERNS FOR NUMBER ONE, IF I'M UNDERSTANDING THE AGREEMENT CORRECTLY.

**MR. HALKOWSKI:**  YEAH.  AND IF I MAY, JUST TO BE CLEAR?

WHAT WE HAD SAID IS THAT THERE ARE NUMEROUS ACRONIS ENTITIES, REALLY, ACROSS THE GLOBE.  AND WHAT WE HAD SAID IS THAT ACRONIS, INC., THE U.S. ENTITY BY VIRTUE OF COMPUTERS AND THEIR NORMAL DAY-TO-DAY WORK, HAS ACCESS TO ANY CONCEIVABLY -- WHAT WE WOULD BELIEVE TO BE CONCEIVABLY RELEVANT MATERIAL AND THAT WE CONDUCTED A REASONABLE SEARCH AND THAT WE CONTINUE TO COMPLETE THAT AND ROLL OUT THAT PRODUCTION.

IN OTHER WORDS, WE ARE NOT AWARE OF SOME, YOU KNOW, CACHET OF MATERIALS IN FRANCE THAT'S SITTING OFF TO THE SIDE TRYING TO BE HID.  ON THE OTHER HAND, WE ARE NOT GOING INTO EVERY SINGLE OFFICE THROUGHOUT THE GLOBE AND TURNING IT UPSIDE DOWN TO TRY TO IDENTIFY DOCUMENTS.

WE BELIEVE BY WORKING WITH THE INDIVIDUALS AT ACRONIS, INC., THEY HAVE ACCESS TO WHATEVER MATERIALS COULD BE RELEVANT, AND WE'RE PRODUCING THOSE ON A ROLLING BASIS.  SOME OF THOSE, INDEED, ARE MATERIALS THAT CAN BE FOUND ON COMPUTER

SYSTEMS IN RUSSIA, OR WHEREVER.

BUT THE POINT IS, IS THAT THERE IS NO THERE THERE. IT SEEMS LIKE THEY'RE CONCERNED ABOUT CHASING SOMETHING, THAT THERE'S SOME SORT OF HIDDEN CACHET OF MATERIALS.  WE ARE NOT AWARE OF ANY.  WE BELIEVE WE HAVE CONDUCTED A REASONABLE SEARCH.  THE SEARCH INCLUDES MATERIALS FROM OTHER ENTITIES, BUT, AGAIN, WE ARE NOT TAKING ON THE BURDEN, I GUESS, OF TREATING THOSE OTHER ENTITIES AS IF THEY'RE PARTIES IN THE SUIT AND TURNING THEM UPSIDE DOWN.

**MR. WALL:**  YOUR HONOR, THE POINT I WOULD LIKE TO RAISE, I THINK THE DEPOSITION ON NOVEMBER 2ND WILL GO A LONG WAY TO DETERMINING THE REASONABLENESS OF THE SEARCH, BUT OUR CONCERN HAS BEEN ALWAYS WHAT ACRONIS SHOULDN'T BE ABLE TO DO IS GO TO ITS RUSSIAN ENTITY AND SELECT OUT SOME PORTION OF DOCUMENTS AND SAY, WELL, WE HAVE CONTROL OVER THAT, BUT THEN NOT LOOK AT OTHER DOCUMENTS THEY ARE IN POSSESSION OF IN ACRONIS RUSSIA.

IN OTHER WORDS, IF THEY ARE GOING TO PRODUCE SOME DOCUMENTS FROM ACRONIS RUSSIA, THEY NEED TO GIVE US ALL RELEVANT, NON-PRIVILEGED, RESPONSIVE DOCUMENTS FROM ACRONIS RUSSIA.

**THE COURT:**  THAT'S WHAT I HEAR THEM SAYING.

**MR. WALL:**  SO IF WE ARE ALL ON THE SAME PAGE REGARDING THAT, THEN WE HAVE AN AGREEMENT.

**THE COURT:**  OKAY.

**MR. WALL:** THEN LET'S TURN TO THE ESI ISSUE, WHICH IS ISSUE NUMBER FIVE.

I THINK WE MADE SOME GOOD HEADWAY YESTERDAY. THE PARTIES AGREED THAT THEY WOULD REVIEW INVENTORS' E-MAIL BOTH IN THE POSSESSION OF THE PARTY AND E-MAIL IN THE INVENTOR'S PERSONAL POSSESSION AND PRODUCE RESPONSIVE, NON-PRIVILEGED DOCUMENTS.

THROUGH THE NIGHT AND THIS MORNING WE HAVE BEEN EXCHANGING ADDITIONAL DRAFTS. MY HOPE IS THAT WE WILL BE ABLE TO AGREE ON THAT LANGUAGE, BUT THERE ARE STILL SOME ISSUES OUTSTANDING WITH RESPECT TO THAT.

**THE COURT:** BUT NOT TO BE -- IN OTHER WORDS, YOU NEED TO FINISH THAT UP, AND IF YOU CAN'T RESOLVE IT, PRESENT IT TO THE COURT.

**MR. WALL:** I THINK IT WOULD BE PREMATURE AT THIS POINT. MY HOPE WOULD BE WE WOULD RESOLVE IT AMONGST OURSELVES.

**MR. HALKOWSKI:** RIGHT. WE SENT THEM A RED LINE, I BELIEVE, PROBABLY EARLY THIS MORNING, AND SO I THINK THEY ARE STILL DIGESTING THAT.

**THE COURT:** SEE HOW MUCH YOU CAN GET DONE WHEN YOU ACTUALLY MEET FACE TO FACE? I'M SORRY I MAKE YOU COME TO SAN FRANCISCO, BUT THE CASE IS HERE.

**MR. HALKOWSKI:** I'M EVEN MORE SORRY THAT I MISSED THE WARM WEATHER, APPARENTLY.

**THE COURT:** IT'S GOING TO BE A BEAUTIFUL DAY. YOU

CAN STAY THROUGH THE WEEKEND.  WATCH THE AMERICA'S CUP.  WATCH THE GIANTS.  I DON'T MEAN TO RUB IT IN.  YOU CAN WATCH THE GIANTS.  YOU CAN WATCH THE A'S ON TV.  YOU CAN WATCH THE 49ERS.  YOU CAN GO TO STRICTLY BLUEGRASS.  I KNOW YOU THINK YOU HAVE A LOT GOING DOWN IN SAN DIEGO -- ANYWAY...

**MR. WALL:**  WITH THAT FRIENDLY INTRODUCTION, UNFORTUNATELY, THERE'S STILL SOME ISSUES THAT THE PARTIES ARE DISPUTING.

**THE COURT:**  ALL RIGHT.

**MR. WALL:**  AND THE PRIMARY ISSUE IS THE DEPOSITIONS.  I'D LIKE TO BREAK THAT INTO TWO TOPICS FOR YOUR HONOR.

ONE ARE DEPOSITIONS REGARDING THE INVENTORS.  THE OTHER HAVE TO DO WITH EMPLOYEES OF ACRONIS RUSSIA THAT HAVE BEEN INVOLVED IN THE DEVELOPMENT OF THE ACCUSED PRODUCTS.

SO TO START WITH THE INVENTORS, ACRONIS IS NOT WILLING TO ACCEPT SERVICE OF THE INVENTORS UNLESS SYMANTEC AGREES TO CERTAIN PRECONDITIONS, AND THOSE PRECONDITIONS INCLUDE LIMITING THE DEPOSITION TO SEVEN HOURS, EVEN THOUGH A TRANSLATOR IS GOING TO BE NEEDED, HOLDING THE DEPOSITIONS IN VARIOUS LOCATIONS IN EUROPE, AND THE FACT -- AND THAT SYMANTEC FOR AT LEAST ONE DEPOSITION IS GOING TO HAVE -- IS REQUESTED TO PAY FOR A BUSINESS CLASS TICKET FOR ONE OF THE INVENTORS.

WE FEEL THAT ACRONIS DOESN'T REALLY HAVE THE AUTHORITY TO REFUSE SERVICE.  THE INVENTORS HAVE ALL SIGNED ASSIGNMENTS WHICH OBLIGATE THEM TO TESTIFY IN CASES INVOLVING

THEIR PATENTS, SO THAT'S ONE ELEMENT OF CONTROL.

ONE OF THE INVENTORS, SERGUEI BELOSSOV, IS ON THE BOARD OF DIRECTORS OF ONE THE DEFENDANTS, AND IN -- THERE'S A CONCURRENT LITIGATION BETWEEN THE PARTIES IN DELAWARE.  THEY HAD NO ISSUES SECURING THEIR ATTENDANCE AT TRIAL.  AND, FINALLY, FISH & RICHARDSON IS GOING TO REPRESENT THESE INVENTORS.

SO WE THINK THERE IS CONTROL AND THAT, YOU KNOW, THEY NEED TO ACCEPT SERVICE, AND THEY NEED TO ACCEPT SERVICE OF THESE INVENTORS.  THEY CAN'T REQUIRE US, FOR EXAMPLE, TO SHORTEN OUR DEPOSITIONS --

**THE COURT:**  THE INVENTORS, ARE THEY ALL -- WHERE ARE THEY?

**MR. WALL:**  WELL, THAT'S --

**THE COURT:**  YOU DON'T KNOW?

**MR. WALL:**  THEY HAVE PROVIDED SOME CONTACT INFORMATION OF THE COMPANIES THEY WORK FOR IN RUSSIA.  BUT WITH RESPECT TO AT LEAST ONE INVENTOR, SERGUEI BELOSSOV, WE'VE MANAGED TO DO SOME INTERNET SEARCHING TO FIND A LINKED-IN SITE. IT APPEARS HE WORKS IN THE SEATTLE AREA, OR AT LEAST IS PRESENT IN THE SEATTLE AREA SOME OF THE TIME.

**MR. HALKOWSKI:**  YEAH.  SO, I'M NOT AWARE OF THE ASSIGNMENTS.  THEY CERTAINLY WEREN'T CITED IN THE MATERIALS. OBVIOUSLY, IF THEY EXIST, THERE'S STATEMENTS IN THERE ABOUT THEM AGREEING TO TESTIFY, OBVIOUSLY, THAT RAISES A DIFFERENT

ISSUE UNDER THE CASE LAW.  BUT I'M CERTAINLY SITTING HERE NOT AWARE OF THAT.

THE COURT:  DO YOU HAVE THOSE WITH YOU?

MR. WALL:  I DO, IF YOU'LL HOLD ON A MINUTE?

THE COURT:  WHY DON'T WE JUST HOLD ON?  TRUNCATE THE WHOLE THING.

MR. WALL:  YOUR HONOR, IT MAY HELP FOR ME TO DIRECT EVERYBODY TO THE LANGUAGE.

WITH RESPECT TO THE FIRST ASSIGNMENT I PROVIDED, WHICH HAS BATES NUMBERS ENDING IN 5406 TO 5410, IF YOU LOOK AT PAGE 5407, THE VERY LAST PARAGRAPH ON THE PAGE STATES:

"AND FOR THE CONSIDERATION AFORESAID, WE DO HEREBY FOR US AND FOR OUR LEGAL REPRESENTATIVES FURTHER COVENANT AND AGREE WITH SAID ASSIGNEE, ITS SUCCESSORS AND ASSIGNS, THAT UPON REQUEST, WE WILL -- "

AND THEN THERE'S SOME TEXT.

" -- TESTIFY IN ANY INTERFERENCE OR OTHER LEGAL PROCEEDINGS INVOLVING SAID INVENTION."

THE SECOND ASSIGNMENT IS -- THAT ENDS IN THE BATES NUMBER 5411 AND 5412, IF YOU GO TO THE FOURTH PARAGRAPH STATES:

"THE UNDERSIGNED INVENTORS AGREE TO EXECUTE ALL PAPERS NECESSARY IN CONNECTION WITH ANY INTERFERENCE OR PATENT ENFORCEMENT

ACTION, JUDICIAL OR OTHERWISE, RELATED TO THE

APPLICATIONS OR ANY NONPROVISIONAL -- "

ET CETERA, ET CETERA.

" -- THEREOF, AND TO COOPERATE WITH

ASSIGNEE IN EVERY WAY POSSIBLE IN OBTAINING

EVIDENCE AND GOING FORWARD WITH SUCH

INTERFERENCE OR PATENT ENFORCEMENT ACTION."

SO THOSE ARE THE ASSIGNMENTS WE BELIEVE OBLIGATE THE INVENTORS TO GIVE TESTIMONY.

**MR. HALKOWSKI:**  NOT HAVING REALLY FOCUSED ON THESE BEFORE, I CERTAINLY WOULD APPRECIATE AN OPPORTUNITY TO STUDY THEM.  I DO NOTICE UP FRONT THAT THEY APPEAR TO BE AGREEMENTS BETWEEN DIFFERENT ENTITIES, A DIFFERENT ACRONIS ENTITY, AN ACRONIS, INC. BERMUDA ENTITY.

AGAIN, STANDING HERE WITHOUT HAVING STUDIED THESE, I'M NOT SURE WHERE THAT ALL LEADS IN TERMS OF, YOU KNOW, THOSE CORPORATE ENTITIES VERSUS THE CORPORATE ENTITIES INVOLVED HERE.

TO KIND OF CUT THROUGH ALL THIS, MY UNDERSTANDING IS THAT OF THE ITEMS THAT WE LAID OUT IN TERMS OF THE LOCATIONS OF THESE DEPOSITIONS BECAUSE --

**THE CLERK:**  SOMEONE'S PHONE IS ON.

**MR. HALKOWSKI:**  -- THESE INVENTORS ARE ALL OVERSEAS.

THE ONE THAT MR. WALL MENTIONED, SERGUEI BELOSSOV, IS PARTICULARLY, YOU KNOW, KIND OF CRAZILY OVERSEAS.  NOT TO SAY THAT THEY DON'T OCCASIONALLY, MAY -- LIKE PARTICULARLY WITH

SERGUEI, MAY COME TO THE U.S. FOR BUSINESS.  I THINK HE'S ONE, ACTUALLY, WE OFFERED TO BRING TO BOSTON FOR A DEPOSITION.

BUT AGAIN TO CUT THROUGH THIS, MY UNDERSTANDING WAS WE HAD ARRANGED, SINCE MOST ARE IN RUSSIA AND THEY CAN'T TESTIFY IN RUSSIA -- THERE'S LAWS AGAINST THAT -- THAT WE ARRANGE THAT IT BE REASONABLY -- OR MINIMIZE THE INCONVENIENCE TO HAVE THEM GO TO VIENNA, AUSTRIA.  SO WE HAD TWO THAT COULD GO THERE.  TWO DON'T HAVE THE RIGHTS OR WHATEVER TO EVEN GO TO AUSTRIA, BUT THEY DO HAVE THE RIGHTS TO GO TO LONDON, SO WE HAVE TWO THAT WERE SET FOR LONDON.

WE HAD DATES ACTUALLY SET UP IN SEPTEMBER FOR THIS THAT ULTIMATELY WERE DECLINED.  WE NOW HAVE A NEW ROUND OF DATES THAT ARE ALL SET UP FOR EACH OF THESE WITNESSES.

THE ONLY ISSUE THAT I'M AWARE OF THAT THERE'S ACTUAL DISPUTE -- AGAIN, CUTTING TO THE CHASE -- IS THAT WE FELT THAT SINCE THIS -- THIS DISPUTE IS FAIRLY FOCUSED, THERE'S ONLY -- THERE'S TWO PATENTS, BUT THEY ARE RELATED PATENTS.  IF YOU ACTUALLY LOOK AT THE -- I DON'T KNOW HOW FAMILIAR YOU ARE WITH PATENTS.  IF YOU ACTUALLY LOOK AT THE SPECIFICATION THAT DESCRIBES EVERYTHING, IT'S BASICALLY THE SAME.  THERE'S ONE THAT HAS A FEW EXTRA COLUMNS ON IT BECAUSE IT'S A CONTINUATION OF PARTS, SO THEY ADDED A FEW COLUMNS.

WHEN YOU ACTUALLY DRILL DOWN -- AND, AGAIN, I DON'T WANT TO BORE YOU WITH A TECHNICAL TUTORIAL -- BUT ACTUALLY DRILL DOWN ON THESE THE ISSUES THAT ARE RELATIVELY

STRAIGHTFORWARD, WE DIDN'T FEEL AS IF THESE WERE DEPOSITIONS THAT REQUIRED, YOU KNOW, TO BE EXTENDED OVER TWO DAYS, WHICH TEN HOURS WOULD EFFECTIVELY REQUIRE.  THAT'S WHY WE PROPOSED THE SEVEN HOURS.

THIS MORNING, IN AN EFFORT TO KIND OF JUST AGREE UPON THIS, I SAID WE WOULD BE WILLING TO GO AHEAD AND HAVE THESE FOLKS AVAILABLE FOR DEPOSITION IF WE JUST SPLIT THE DIFFERENCE AND GAVE THEM EIGHT AND A HALF HOURS, WHICH WOULD BE A LONG DAY, BUT IT WOULD AT LEAST BE ONE DAY.

AGAIN, ONE OF THEM, I THINK IT'S SERGUEI SINCE HE DOES TRAVEL A FAIR BIT, WE CAN BRING TO BOSTON.  I ALSO SAID WE WEREN'T PARTICULARLY, YOU KNOW, STANDING FAST ON THE REQUEST THAT THEY REIMBURSE THE TRAVEL EXPENSES, SO THAT'S NOT AN ISSUE.

**THE COURT:**  SO IT'S JUST THE LENGTH?

**MR. HALKOWSKI:**  I THINK IT'S JUST TEN VERSUS SEVEN.

**THE COURT:**  TEN HOURS VERSUS EIGHT AND A HALF?

**MR. HALKOWSKI:**  TEN VERSUS SEVEN, AND I THOUGHT EIGHT AND A HALF WOULD BE REASONABLE.

**THE COURT:**  IF EIGHT AND A HALF IS REASONABLE, WHY ISN'T TEN REASONABLE?  I MEAN, THE PROBLEM IS WHEN YOU HAVE AN INTERPRETER --

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  -- IT'S TWICE AS LONG.

**MR. HALKOWSKI:**  WELL --

**THE COURT:** YOU GET -- YOU'RE ENTITLED TO SEVEN HOURS, RIGHT?

THEY ARE GOING TO BE TIRED, TOO.  THEY DON'T PARTICULARLY WANT TO STAY AND GO MORE, AND THEY DON'T WANT TO WASTE THEIR TIME, ESPECIALLY WHEN YOU ARE DEALING WITH RUSSIAN LANGUAGE, I THINK.  I MEAN, THAT'S JUST NOT AN UNREASONABLE REQUEST TO HAVE TEN.  YOU CAN DO IT IN ONE DAY IF THAT'S YOUR CONCERN.

**MR. HALKOWSKI:** THAT IS OUR CONCERN, ACTUALLY.  WE WANT TO KEEP IT TO ONE DAY.  OBVIOUSLY, WE WANT TO KEEP THESE GUYS FROM FALLING OVER ON THEIR FEET, TOO.

**THE COURT:** WELL, THAT'S UP TO YOU.  IF THEY'RE WILLING TO SPLIT IT INTO TWO DAYS, BUT IF YOU'D RATHER DO IT IN ONE LONG DAY, THAT'S UP TO YOU WITH THE WITNESSES, IF YOU THINK THEY'LL BY HOUR EIGHT STILL BE ANSWERING INTELLIGIBLY.

**MR. HALKOWSKI:** RIGHT, RIGHT.  SO THAT WAS THE MAIN ISSUE.  LIKE I SAID, AS A FORMAL MATTER, THEY ARE NOT EMPLOYED BY US.

**THE COURT:** I KNOW, BUT THAT'S NOT THE WAY YOU WANT TO CONDUCT THIS LITIGATION.

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** THAT WILL MAKE IT SO MUCH MORE EXPENSIVE --

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** -- AND ACRIMONIOUS.  LET'S JUST GET TO

THE MERITS.

MR. HALKOWSKI:  RIGHT.

THE COURT:  YOU BELIEVE YOU HAVE A GREAT CASE ON THE MERITS --

MR. HALKOWSKI:  RIGHT.

THE COURT:  -- SO LET'S JUST LET THEM BE DEPOSED AND GET THERE.

MR. HALKOWSKI:  LIKE I SAID, THAT WAS NOT OUR PROBLEM.  OUR BIGGEST ISSUE WAS MAKING IT A REASONABLE DAY.

THE COURT:  IT SOUNDS LIKE YOU HAVE A DAY.

CAN YOU DO THAT?  YOU GET YOUR TEN HOURS, BUT ONE DAY.

MR. WALL:  YES, YOUR HONOR.  WE JUST WANT TO GET THE TIME IN.

THE COURT:  ALL RIGHT.  I WOULD BET YOU IT PROBABLY WON'T END UP BEING TEN HOURS.  MAYBE IT WILL BE DIFFERENT FOR EACH PERSON.  BY THE TIME -- BY THE END MAYBE YOU WON'T NEED IT ANY MORE FOR THE REASONS THAT YOU SAID, THAT IT'S ALL RATHER SIMILAR, AND THEY START TO SAY THE SAME THING, AND BY THE TIME THEY'VE HAD ONE, THEY'LL KNOW WHAT THE OTHER IS GOING TO SAY.

MR. WALL:  ALL RIGHT.

THE COURT:  ALL RIGHT.  SO THAT'S -- YOU GET YOUR DEPOSITIONS ON YOUR DATES.  WHO GETS TO GO TO VIENNA AND LONDON?

MR. WALL:  WE'LL SEE.  SOME LUCKY PERSON.

THEN THERE'S A SECOND DEPOSITION ISSUE. THIS HAS TO DO WITH THE FACT WITNESSES KNOWLEDGEABLE ABOUT ACRONIS'S PRODUCTS. INITIALLY, FROM READING THE CORRESPONDENCE AND READING THE BRIEF, WE THOUGHT THE MAIN ISSUE HERE WAS ONE OF DUPLICATION, THAT ACRONIS WAS CONCERNED THEY WERE GIVING US A 30(B)(6) AND, THEREFORE, ACTUALLY, DEPOSING FACT WITNESSES REGARDING THE PRODUCTS WOULD BE A WASTE OF TIME AND DUPLICATIVE.

WE DISAGREED THERE, BUT WHAT BECAME EVIDENT YESTERDAY IS THAT ACRONIS ISN'T EVEN GOING TO ACCEPT SERVICE ON THESE PEOPLE, AND THAT'S A REAL ISSUE FOR US BECAUSE THEY APPEAR TO HAVE CONTROL OVER THESE PEOPLE. THEY'VE TALKED TO THEM ENOUGH TO MAKE REPRESENTATIONS THAT THEIR KNOWLEDGE IS, IN THEIR OPINION, DUPLICATIVE.

THERE ARE STATEMENTS SAYING THAT, YOU KNOW, IF THEY'RE DEPOSED, THEN FISH & RICHARDSON WILL REPRESENT THEM. THERE ARE ALSO STATEMENTS THAT, YOU KNOW, THEY NEED TO BE FLOWN, OUT ALL OF WHICH SUGGESTED TO US THERE WAS A LEVEL OF CONTROL.

FURTHERMORE, ACRONIS RUSSIA DOES ALL OF THE PRODUCT DEVELOPMENT WORK FOR THESE ENTITIES. THERE'S NO PRODUCT DEVELOPMENT WORK, AS FAR AS WE KNOW, DONE BY ACRONIS GMBH AND ACRONIS, INC.

IF WE DON'T DEPOSE THESE ENTITIES, ESSENTIALLY, AS FAR AS I KNOW, WE ARE NOT GOING TO GET ANY FACT WITNESSES WHO

ARE KNOWLEDGEABLE ABOUT THESE PRODUCTS, AND THAT'S, OBVIOUSLY, A REAL CONCERN FOR US.

MR. HALKOWSKI:  ALL RIGHT.  SO A COUPLE OF THINGS.

ON THE CORPORATION ISSUE, THERE'S -- AND THEN SYMANTEC HAS THIS.  THEY HAVEN'T SUBMITTED IT TO YOUR HONOR, BUT THERE'S A CORPORATE TREE, SO TO SPEAK.  THE ACRONIS RUSSIA ENTITY THAT THEY SPEAK OF IS LIKE A SISTER COMPANY.  IT IS NOT UNDER THE CONTROL OF INC.  IT IS NOT UNDER THE CONTROL OF GMBH. THERE IS SOME OTHER PARENT COMPANY THAT, OBVIOUSLY, ULTIMATELY HAS CONTROL, BUT THAT'S NOT INVOLVED IN THIS SUIT.  SO NEITHER THE CORPORATE ENTITIES HERE HAS, YOU KNOW, CORPORATE CONTROL OVER THESE FOLKS.

THE COURT:  BUT THEY DO HAVE ACCESS TO THEIR DOCUMENTS.

MR. HALKOWSKI:  THEY DO.

THE COURT:  SO THERE IS SOME INTERRELATIONSHIP THERE?

MR. HALKOWSKI:  THERE IS CLEARLY -- I WOULDN'T BOTHER TO REPRESENT THE OTHER.  YOU KNOW, THERE'S RULE 34 AND RULE 30 ARE DIFFERENT.  RULE 34 WITH REGARD TO PRODUCTION OF DOCUMENTS AND MATERIALS IS DIFFERENT THAN WHETHER OR NOT YOU ACTUALLY HAVE CONTROL OVER A WITNESS.

NOW, IN TERMS OF THE WITNESSES, WHAT WE HAVE SAID IS THAT -- AND JUST, AGAIN, CUTTING TO THE CHASE ON THE SUBSTANCE OF IT, ON THE FIRST POINT WE DON'T HAVE CONTROL.  SO, LEGALLY, AS A MATTER, THEY CAN'T LIKE, SAY, FORCE US TO NECESSARILY

PRESENT THESE PEOPLE BECAUSE LEGALLY, YOU KNOW, THESE CORPORATIONS DON'T HAVE CONTROL.

THAT'S -- BUT, AGAIN, CUTTING TO THE CHASE ON THE MERITS OF IT, WE'RE PROVIDING THEM A 30(B)(6) WITNESS WHO'S THE CHIEF TECHNICAL OFFICER FOR THE COMPANY, FOR INC.  HE'S LIKE -- PEOPLE DON'T KNOW THE TECHNICAL INFORMATION -- IF ANYONE KNOWS THE TECHNICAL INFORMATION, IT'S HIM.  THEY'RE GOING TO DEPOSE HIM.  AND, OBVIOUSLY, IF THEY'VE GOT, YOU KNOW, QUESTIONS THAT HE CAN'T ANSWER, YOU KNOW, WE CAN DEAL WITH THAT.  THAT'S PART ONE.

PART TWO, THIS INTERROGATORY, WE'RE SUPPOSED TO NAME PEOPLE.  OBVIOUSLY, THE PEOPLE WE NAME, THEY COULD FOLLOW UP WITH REGARD TO THOSE FOLKS.  BUT TO LAUNCH INTO DEPOSITIONS, OR ATTEMPT TO, WHAT I REFER TO AS THESE RANK AND FILE ENGINEERS IN RUSSIA THAT -- YOU KNOW, AGAIN, I DON'T KNOW ALL THE DETAILS, BUT MY UNDERSTANDING IS THAT THEY MAY HAVE SOME KIND OF, YOU KNOW, LIMITED KNOWLEDGE OF THE DIFFERENT PIECES OF DIFFERENT THINGS -- STRIKES ME AS NOT BEING PARTICULARLY EFFICIENT.

**THE COURT:**  IS THAT 30(B)(6) SCHEDULED?

**MR. HALKOWSKI:**  YES.

**THE COURT:**  WHEN'S THAT?

**MR. HALKOWSKI:**  NOVEMBER.  I BELIEVE WE GAVE A DATE YESTERDAY ON THAT.

**THE COURT:**  SO, WHAT I HEAR YOUR OBJECTION TO BE IS MOSTLY CHRONOLOGICAL, IS THAT YOU THINK THEY SHOULD TAKE THE

30(B)(6) BECAUSE YOU BELIEVE AFTER THAT 30(B)(6) AND SOME OTHER INFORMATION THEY ACTUALLY FIND THEY DON'T NEED THOSE FACT WITNESSES?

MR. HALKOWSKI:  YEAH, IT'S CHRONOLOGICAL, BUT THESE ARE DIFFERENT CORPORATE ENTITIES, SO I'M NOT IN A POSITION TO JUST KIND OF WAIVE THOSE AWAY.

MR. WALL:  YOUR HONOR, THAT'S OUR CONCERN.  I MEAN, DISCOVERY HAS BEEN GOING SINCE JANUARY NOW, AND WHAT WE WOULD LIKE TO DO IS KNOW WHETHER WE HAVE A DISPUTE OVER THAT, BECAUSE THE WAY ACRONIS IS PROPOSING THIS PROCEED IS THAT WE GO, WE TAKE THE 30(B)(6), THEN WE DISAGREE MAYBE OVER WHETHER THAT WAS SUFFICIENT OR NOT.  THEN WE RAISE THIS ISSUE AGAIN.  THEN WE HAVE TO DEAL WITH, OKAY, ARE THEY GOING TO PROVIDE THESE PEOPLE OR ARE THEY NOT.  SO, OUR HOPE WE GET THESE IS DEPOSITIONS SCHEDULED, AT LEAST JUST CLEAR TIME ON THE CALENDAR, AND THEN TRY TO PROCEED.

THE OTHER POINT I'D MENTION IS, YOU KNOW, THIS IS CRITICAL INFORMATION, AND IT'S REALLY NOT UP TO ACRONIS TO SAY THE WAY YOU ARE GOING TO GET THIS DISCOVERY IS BY A 30(B)(6), YOU ARE NOT GOING TO GET FACT WITNESSES.

MR. HALKOWSKI:  AGAIN, WE ARE GOING TO PROVIDE NAMES OF FACT WITNESSES.  ACTUALLY, ELAN (PHONETIC), THE 30(B)(6) WITNESS, IS GOING TO BE PROBABLY THE MOST IMPORTANT OF THE FACT WITNESSES IN TERMS OF THE TECHNOLOGY.

SO, AGAIN, CUTTING TO THE SUBSTANCE, THEY ARE GOING

TO GET THE INFORMATION.  THERE'S NOT A LOT OF, YOU KNOW, THERE THERE.  I MEAN --

**THE COURT:**  I GUESS WHAT --

**MR. HALKOWSKI:**  IT IS WHAT IT IS, AND, YOU KNOW, I STILL HAVE NOT SEEN AND I AM NOT AWARE OF, CERTAINLY, ANY ARGUMENT UNDER THE LAW IN TERMS OF US, INC. AND GMBH, HAVING CONTROL OVER THESE FOLKS.

**THE COURT:**  SO, I GUESS THAT'S THE QUESTION.  IT SOUNDS LIKE YOU ARE GOING TO STAND ON THAT ARGUMENT.

**MR. HALKOWSKI:**  WE'LL STAND ON IT IF NECESSARY, BUT I DON'T THINK IT'S GOING TO BE NECESSARY.

**THE COURT:**  WELL, YOU'LL STAND ON IT IF NECESSARY. THAT MEANS IT'S SORT OF -- I GUESS THESE WITNESSES ARE IN -- WOULD HAVE TO BE DEPOSED IN EUROPE AS WELL.

**MR. HALKOWSKI:**  THEY'RE ALL ENGINEERS IN RUSSIA.

**THE COURT:**  SO THEY WOULD HAVE TO COME -- THEY CAN'T BE DEPOSED IN RUSSIA, RIGHT?

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  SO THEY WOULD HAVE TO COME TO EUROPE AS WELL.  SO IT'S A MATTER OF WANTING THOSE DEPOSITIONS TO BE THE SAME TIME AS THE OTHERS IN EUROPE?

**MR. WALL:**  HONESTLY, YOUR HONOR, WE HADN'T EVEN GOTTEN TO THAT POINT, BECAUSE RIGHT NOW THEY ARE TELLING US WE DON'T GET TO TAKE THEM, SO WE HAVEN'T EVEN CROSSED THAT BRIDGE.

**MR. HALKOWSKI:**  IT'S PROBABLY NOT FEASIBLE JUST IN

TERMS OF THE SCHEDULING.

**THE COURT:**  I THINK THEN I HAVE TO ANSWER THE QUESTION.  IT SOUNDS LIKE -- I MEAN --

**MR. HALKOWSKI:**  IT MAY BE --

**THE COURT:**  YEAH.

**MR. HALKOWSKI:**  BUT WHAT I'M SAYING IS, BASED ON AT LEAST THE BRIEFING THAT I'VE SEEN AND THE ARGUMENTS AND THE CASE LAW THAT I'M AWARE OF, I JUST -- AGAIN, OUR POSITION IS THERE IS NO CONTROL.

**THE COURT:**  OKAY.  THEN I THINK WHAT YOU'LL NEED TO DO -- BECAUSE I DON'T HAVE VERY MUCH HERE, OBVIOUSLY.

**MR. HALKOWSKI:**  YEAH.

**THE COURT:**  -- IS YOU'RE GOING TO HAVE TO BRIEF IT SOMEHOW.  YOU CAN DO IT IN A SINGLE -- I WAS JUST GOING TO SAY TO YOU MY EIGHT-PAGE -- YOU DON'T HAVE TO STICK ALL YOUR DIFFERENT ISSUES IN ONE EIGHT-PAGE AND USE SMALL TYPE.  YOU CAN DO SEPARATE LETTERS.  THE IDEA IS COMPRESS THE TIME PERIOD BUT STILL GIVE THE COURT ALL THE INFORMATION --

**MR. HALKOWSKI:**  OKAY.

**THE COURT:**  -- THAT I NEED.  SO YOU CAN DO THEM IN SEPARATE LETTERS SO YOU ARE ABLE TO SAY WHATEVER YOU NEED SAY. YOU DON'T HAVE TO GIVE ME SMALL FONT.

DO IT AS A JOINT DISCOVERY LETTER.  THE IDEA IS REALLY THAT THE MOVING PARTY -- I GUESS THAT WOULD BE YOU, YOU KNOW -- PROVIDES YOUR INITIAL FOUR PAGES TO THE OTHER SIDE; YOU

READ IT; YOU PROVIDE YOUR RESPONSE.  THEN YOU TAKE THEIR RESPONSE AND INCORPORATE IT.  SO WE HAVE THE MOTION, THE OPPOSITION AND REPLY IN ONE LETTER, AND THEN IT'S ALL THERE.

**MR. HALKOWSKI:**  UNDERSTOOD.

**THE COURT:**  HERE WHAT I SAW WAS IT DIDN'T SEEM LIKE THE PARTIES -- IT DIDN'T MEET, WHICH IS WHY I WANTED YOU TO MEET AND CONFER IN PERSON.  I JUST FELT LIKE THEY JUST DIDN'T MEET.  YOU CAN DO THAT.  THEN IT WILL JUST BE THE ISSUE OF WHETHER AS A MATTER OF LAW THEY CAN -- YOU HAVE TO SORT OF ACCEPT SERVICE FOR THESE WITNESSES.

**MR. HALKOWSKI:**  FAIR ENOUGH.

**THE COURT:**  BECAUSE THEN IT WOULD BE UP TO THEM. THEY HAVE THEIR NUMBER OF DEPOSITIONS THAT THEY CAN TAKE.  IF THEY WANT TO TAKE IT, THEY CAN.

**MR. HALKOWSKI:**  EXACTLY.

**MR. WALL:**  THANK YOU, YOUR HONOR.

AND THEN THE NEXT ISSUE, AND I THINK THIS WAS THE FINAL ISSUE THAT WE HAD, AND IT IS NUMBER SIX IN THE BRIEF, WHICH IS THE TRANSCRIBING TESTIMONY.  WE REALLY THINK THIS IS A BETTER WAY TO GO FORWARD.  AS YOU CAN TELL FROM THE BINDER ON YOUR DESK, THERE'S BEEN A LOT OF POSITION LETTERS GOING BACK AND FORTH.  THERE'S BEEN A LOT OF INSTANCES -- THERE ARE AT LEAST TEN INSTANCES WITHIN THOSE EXHIBITS WHERE ACRONIS SAYS TO SYMANTEC, YOU'RE MISREPRESENTING WHAT OCCURRED AND WHAT HAPPENED.

WITH RESPECT TO -- AND, YOU KNOW, AS YOU'RE GOING TO HEAR, FOR EXAMPLE, THERE'S JUST BEEN A LOT OF MISCOMMUNICATION. WE THOUGHT, FOR EXAMPLE, YESTERDAY WE HAD AN ARRANGEMENT WITH RESPECT TO THESE ELYSIUM EXPERTS.  WE HEARD LAST NIGHT THAT WE DIDN'T IN THE END.

THERE'S BEEN A LOT OF THIS -- THERE'S BEEN A LOT OF -- THERE'S BEEN A LACK OF CLARITY AS TO WHAT THE PARTIES' AGREEMENTS ARE.  THESE POSITION LETTERS DON'T SEEM TO SOLVE IT. WE THINK IT WOULD BE MORE EFFICIENT IF WE JUST TRANSCRIBE THE MEET AND CONFERS.  THAT WAY WE SPEAK FACE-TO-FACE AS HAS HAPPENED -- OR AT LEAST ON THE TELEPHONE, POSSIBLY FACE-TO-FACE, AS HAPPENED THIS TIME, AND THEN YOU CAN READ THE TRANSCRIPT, AND THERE'S -- YOU ARE NOT GOING TO HAVE TO GO THROUGH PAGES AND PAGES OF POSITIONING LETTERS.  FRANKLY, I THINK IT WILL SAVE THE COURT TIME.  I THINK IT WILL SAVE THE PARTIES TIME.

**THE COURT:**  LET ME TELL YOU WHAT MY CONCERN WITH THAT IS, IS I DEEM A MEET AND CONFER ALMOST LIKE A SETTLEMENT CONFERENCE, RIGHT?  I MEAN, YOU'RE EACH MAKING COMPROMISES, AND YOU ARE SORT OF TALKING IT THROUGH.  IF THE ENTIRE THING IS TRANSCRIBED AND COULD BE PROVIDED TO THE COURT, THEN I THINK YOU ARE ACTUALLY LESS WILLING TO SORT OF MAKE THOSE COMPROMISES.

BUT IT IS IMPORTANT, I AGREE, TO GET THINGS WRITTEN DOWN.  AND WHAT I THINK I SAID IN MY LAST ORDER IS I'M NOT

GOING TO SEE YOU AGAIN ON DISPUTES UNTIL YOU'VE MET AND CONFERRED IN PERSON.  SO THEN, WHEN YOU GET TO THAT POINT, TYPE IT UP AND SIGN IT SO YOU HAVE YOUR RECORD OF WHAT YOU AGREED BEFORE THAT PERSON LEAVES YOUR OFFICE, BECAUSE -- AND, NOW, MAYBE YOU'LL GET SOME THINGS RESOLVED OVER THE PHONE OR NOT.

LOOK, THEY KNOW IF YOU CAN'T RESOLVE IT, THEY HAVE TO FLY UP HERE.  NOT SUCH A BAD THING.  YOU HAVE TO MEET IN PERSON, SIT DOWN, GET AN AGREEMENT, AND WRITE IT DOWN AND HAVE EVERYONE SIGN IT, AND THERE, THAT'S IT.

I JUST THINK IF YOU KNOW THE ENTIRE THING IS BEING TRANSCRIBED, YOU ARE NOT GOING TO BE AS WILLING TO COMPROMISE OR THROW IDEAS OUT THERE AND THAT TYPE OF THING.

**MR. WALL:**  OKAY, YOUR HONOR.

**MR. HALKOWSKI:**  I FOUND THAT KIND OF OUT OF LEFT FIELD MYSELF, THE SUGGESTION.

**THE COURT:**  JUDGE ZIMMERMAN DOES THAT.  IT WASN'T COMPLETELY OUT OF LEFT FIELD.

**MR. HALKOWSKI:**  NO OFFENSE TO JUDGE ZIMMERMAN.

ONE THING ON THE MEET AND CONFER, ACTUALLY, IT DID RAISE A QUESTION IN MY MIND.  I AM ACTUALLY FROM OUR DELAWARE OFFICE.  I HAD, YOU KNOW, SOME ISSUES I WAS ABLE TO WRAP UP, ACTUALLY, YOU KNOW, DEAL WITH WHILE I'M OUT HERE.

BUT, GOING FORWARD, IT SEEMS LIKE IT PUTS A KIND OF A FAIR AMOUNT MORE LEVERAGE ON THEIR SIDE, SINCE THEY WERE THE PLAINTIFF, THEY BROUGHT THE SUIT HERE, AND THEY HAVE THEIR MAIN

OFFICES HERE, TO REQUIRE ANY KIND OF MEET AND CONFERS TO OCCUR HERE.  YOU KNOW, OBVIOUSLY, THAT'S MY BIGGEST CONCERN ABOUT THAT, IS THAT GOING FORWARD IN TERMS OF OTHER DISPUTES, IT'S LIKE, IF YOU HAVE A DISPUTE, YOU ARE GOING TO HAVE TO COME OUT HERE.  IT'S LIKE, WELL -- IT'S JUST BY VIRTUE OF THE FACT THAT THEY LAUNCHED A SUIT AGAINST US FIRST.

**THE COURT:**  THEN ACRONIS CHOSE THE COUNSEL --

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  -- THEY CHOSE --

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  -- KNOWING THE CASE WAS HERE.

**MR. HALKOWSKI:**  FAIR ENOUGH.

**THE COURT:**  I'M SURE THAT WAS A WISE DECISION TO CHOOSE YOU.

**MR. HALKOWSKI:**  YEAH, YEAH.  WELL, WE HAVE AN OFFICE HERE.  THERE COULD BE SOMEONE TO ATTEND IN PERSON.  SO I GUESS WE COULD DO IT THAT WAY, SO THAT WE WOULD HAVE SOMEONE THERE IN PERSON, AND MAYBE I WOULD BE ON THE PHONE.  BUT THAT'S JUST A LOGISTICAL THING THAT OCCURRED TO ME.

**THE COURT:**  I APPRECIATE THAT, AND I THOUGHT ABOUT THAT.  I THOUGHT ABOUT GOING BACK AND FORTH.  BUT IT JUST SEEMS TO ME A LITTLE BIT, SINCE THE CASE WAS HERE AND ACRONIS THEN HAD THE CHOICE, AND IN CHOOSING COUNSEL, THEY THOUGHT WHO COULD BEST REPRESENT US, BUT THEY THOUGHT ABOUT THE LOCATION, TOO.

NOW, IF IT TURNS OUT THAT IT'S BEING USED UNFAIRLY AS

LEVERAGE, I CAN CERTAINLY REVISIT THAT.  I DON'T THINK THAT'S GOING TO BE THE CASE.  YOU GUYS MADE A LOT OF PROGRESS.

MR. HALKOWSKI:  AND LIKE I SAID, THERE IS SOMEONE FROM OUR SAN FRANCISCO -- OUR SILICON VALLEY OFFICE WHO IS INVOLVED IN THE CASE.  HE JUST WASN'T AVAILABLE FOR THIS SO HE COULD COME UP.

THE COURT:  OR THEY COULD COME DOWN -- I SHOULD SAY BAY AREA THEN, ONE OF YOUR OFFICES.  IF YOU WANT TO TRADE OFF YOUR OFFICES UP HERE, THAT'S FINE.  HOPEFULLY, YOU WON'T NEED TO DO IT TOO MUCH.

MR. WALL:  THE ONE THING I WOULD SAY, YOUR HONOR, IS JUST WHOEVER MEETS IN PERSON, OUR MAIN CONCERN WOULD BE THAT THEY HAVE THE AUTHORITY TO ACTUALLY RESOLVE THE ISSUES, BECAUSE THAT'S SOMETIMES BEEN A CONCERN.

THE COURT:  RIGHT.  OF COURSE.  THAT'S THE PRIMARY CONCERN.  AND I APPRECIATE BOTH OF YOU BEING HERE TODAY.

ALL RIGHT.  SO THAT TAKES CARE OF THAT.  IT SOUNDS LIKE WHAT I HAVE LEFT IS THERE WILL BE A JOINT DISCOVERY LETTER ON THE ISSUE OF ACRONIS'S CONTROL OF THE FACT WITNESSES IN RUSSIA.  OKAY.

NOW, THE LAST ISSUE WE HAVE IS ELYSIUM, AND --

MR. HALKOWSKI:  YES.

THE COURT:  DID YOU HAVE SOMETHING TO SAY?

MR. HALKOWSKI:  WELL, YEAH.  WE MET AND CONFERRED ON THAT AS WELL.  YOU KNOW, THIS, I GOT TO ADMIT, IS JUST VERY

PUZZLING TO ME BECAUSE WE HAVE BEEN THROUGH MANY DIFFERENT ITERATIONS OF RESPONSES IN TRYING TO GET THESE EXPERTS APPROVED.  ONE OF THE FIRST ONES, WAS YOU HAD, ATTORNEYS LOOK AT THIS, SO YOUR ATTORNEYS OBVIOUSLY KNOW SOURCE CODE.

**THE COURT:**  I READ THE LETTER.  IT WAS AT THE VERY END.

**MR. HALKOWSKI:**  THAT WAS HOW IT KIND OF STARTED OUT. BUT IT JUST -- THE ONLY REASON I POINTED IT OUT IS I DON'T BELIEVE THERE'S ANY -- AGAIN, I SAID -- I USED THIS PHRASE BEFORE, BUT I DON'T BELIEVE THERE'S ANY THERE THERE IN TERMS OF ANY LEGITIMATE CONCERN ABOUT THESE EXPERTS.

THE ONLY -- THE ISSUE THAT IT BOILED DOWN TO YESTERDAY WAS THIS DESIGN-AROUND ISSUE, WHICH IS, YOU KNOW, COMMON; IN ALMOST EVERY SINGLE CASE THERE'S SOME DISCUSSION ABOUT DESIGN-AROUND.

AND SO THEY RAISED IT.  MY FIRST REACTION WAS, WELL, YOU KNOW, IF WE'RE GOING TO DO A DESIGN-AROUND, PROBABLY OUR OWN ENGINEERS ARE GOING TO DO THAT; THEY ARE NOT GOING TO HIRE AN EXPERT AND HELP THEM DO A DESIGN-AROUND; THESE GUYS AREN'T -- THAT'S NOT THEIR THING, THAT'S NOT A BIG DEAL.  THEY SAID, OKAY, LET'S AGREE TO THAT.  I SAID, OKAY, IT GOES BOTH WAYS, OKAY, AND I'LL TRY TO COME UP WITH SOMETHING, AND LAST NIGHT THAT'S WHAT I TRIED TO DO.

THAT'S WHEN I REALLY STARTED TO THINK ABOUT THIS REALLY HARD, ABOUT THEIR POSITION ABOUT THE DESIGN-AROUND, AND

THAT'S WHEN IT TRULY OCCURRED TO ME HOW TRULY LUDICROUS IT IS, BECAUSE, AT A MINIMUM, IN TERMS OF LIABILITY ISSUES OFTENTIMES -- SAY OUR ENGINEERS, THEY COME UP WITH A DESIGN-AROUND, AND THEN THEY IMPLEMENT THAT, AND THEN IT GOES TO TRIAL.  OF COURSE, OUR EXPERTS ARE GOING TO HAVE TO DISCUSS THIS WITH OUR ENGINEERS ABOUT THE DESIGN-AROUND AND TRY TO UNDERSTAND IT.

YOU KNOW, WHO KNOWS?  MAYBE THEY THROW OUT A SUGGESTION BECAUSE THEY'RE SOFT CODE PEOPLE.  YOU COULD DO IT THAT WAY, BUT YOU COULD ALSO DO IT THIS WAY.  AND THE FACT THAT THEY HAVE SEEN NOW SYMANTEC SOFTWARE ALL OF A SUDDEN THEN RAISES THIS FLAG THERE'S AN AGREEMENT THEY ARE NOT SUPPOSED TO BE INVOLVED IN ANY DESIGN-AROUND AND THERE'S BEEN SOME SORT OF VIOLATION OF THAT.

SO IT OCCURRED TO ME THERE'S NO REAL WAY TO KIND OF DRAW ANY KIND OF CAREFUL LINES IN TERMS OF SAYING EXPERTS CANNOT AT ALL BE INVOLVED IN ANY DISCUSSIONS ABOUT DESIGN-AROUNDS AND YET STILL ALLOW THEM TO FUNCTION AS THEY NORMALLY DO IN EVERY CASE.  SO THAT IS A PRACTICAL MATTER.

THEN REALLY, JUST THE LUDICROUS THING WAS -- SO THEIR EXPERTS ARE LOOKING AT OUR SOURCE CODE.  OUR SOURCE CODE, YOU KNOW, PRESUMABLY USES OUR PATENTS.  SO HOW IS IT WITH -- THAT LOOKING AT OUR SOURCE CODE, WHICH USES OUR PATENTS, GIVES THEM GREAT INSIGHT AS TO HOW TO AVOID THOSE PATENTS, BECAUSE THEY ARE GOING TO BE LOOKING AT SOURCE CODE AND ACTUALLY USING THE

PATENTS.

AND VICE VERSA.  OUR EXPERTS, WHENEVER, HOPEFULLY, THEY GET APPROVED, ARE GOING TO BE LOOKING AT SYMANTEC'S CODE WHICH USES THEIR PATENTS.  HOW IS IT LOOKING AT THAT CODE -- OH, BOY, I SEE HOW THEY'RE DOING IT -- YOU KNOW, IT'S NOT -- THEY'RE NOT LOOKING AT SOURCE CODE THAT'S AVOIDING THE PATENTS; THEY'RE LOOKING AT THE SOURCE CODE THAT'S USING THE PATENTS.

SO THAT'S ONE, TWO, AND THEN THE THIRD JUST BASIC THING IS THAT DESIGN-AROUNDS, IT'S NOT PRODUCT DEVELOPMENT. IT'S IN LITIGATION.  IT HAPPENS EVERY TIME.  AND SO IF YOU SAY AN EXPERT CAN'T BE INVOLVED IN ANY DISCUSSION ABOUT DESIGN-AROUND, IT REALLY MAKES THAT EXPERT -- YOU KNOW, PUTS THEM IN A TOUGH SPOT.

AS I SAY, THERE'S LIKELY GOING TO BE SOME DESIGN-AROUND ON BOTH SIDES, AND BOTH SIDES' EXPERTS ARE AT SOME POINT GOING TO HAVE TO TESTIFY ABOUT WHETHER THE DESIGN-AROUND IS NOT INFRINGING OR INFRINGING.

SO THE -- LIKE I SAID, THIS ALL KIND OF GOES BACK TO OUR OBJECTIONS TO THEIR EXPERT, MR. -- I THINK IT IS HALETKY. IT'S ALMOST LIKE A TIT FOR TAT, BECAUSE -- BUT MR. HALETKY WAS ACTIVELY CONSULTING WITH COMPETITORS.  THESE TWO GUYS ARE NOT. IT'S ALMOST CIRCULAR REASON TO SAY THAT, WELL, BECAUSE THEY'RE CONSULTING WITH US, AND THEY MIGHT GET INVOLVED IN DESIGN-AROUNDS, THEN THEREFORE THEY CAN'T SAY NO EXPERT COULD EVER APPROVE IT.

**THE COURT:** WHAT IS THE CASE THAT THIS IS MOST LIKE? BECAUSE IT'S NOT LIKE MR. HALETKY?

**MR. WALL:** IF YOU WOULDN'T MIND, I'D LIKE TO START WITH JUST 7.1, THE PROTECTIVE ORDER, WHICH IS -- SAYS THAT YOU CAN'T USE INFORMATION IN THIS CASE TO -- BASICALLY, OUTSIDE OF THE PURPOSES OF THIS LITIGATION.

IF I UNDERSTAND COUNSEL, WHAT HE'S SAYING IS THAT THEIR CONSULTANTS WHO LOOK AT OUR SOURCE CODE SHOULD BE ALLOWED TO SPEAK WITH ACRONIS ENGINEERS AND TELL THEM HOW TO DESIGN AROUND OUR PATENTS.

**MR. HALKOWSKI:** NO.

**MR. WALL:** MY UNDERSTANDING WAS THAT AT LEAST YOU'RE SAYING THESE CONSULTANTS SHOULD BE PERMITTED TO DISCUSS WITH ACRONIS ENGINEERS -- PROVIDE ADVICE TO ACRONIS ENGINEERS REGARDING THOSE.

**MR. HALKOWSKI:** THERE HAS TO -- IN ANY CASE, THERE HAS TO BE DISCUSSION WITHIN THE -- IF THERE IS A DESIGN-AROUND AND IT IS -- PARTICULARLY IF IT'S IMPLEMENTED, EVEN IF IT'S NOT BECAUSE THEN IT'S RELATIVE TO DAMAGES, HOW QUICK IS IT TO DO A QUICK DESIGN-AROUND, THERE'S GOT TO BE A DISCUSSION WITH EXPERTS WHO ARE GOING TO HAVE TO TESTIFY ABOUT IT.

**THE COURT:** HE'S SAYING DURING LITIGATION ACRONIS COMES OUT WITH A DESIGN-AROUND, WHETHER THAT IS -- THEN, PRESUMABLY, YOU WOULD ADD THAT TO YOUR COMPLAINT, THAT THAT WHATEVER -- I DON'T KNOW.  YOU SAY IT'S NOT PRODUCT

DEVELOPMENT, BUT I GUESS IN A WAY IT'S A NEW PRODUCT, STILL INFRINGES.  WELL, THEN THEY HAVE THEIR EXPERT WHO'S GOING TO HAVE TO GIVE OPINION AS TO WHETHER IT STILL INFRINGES OR NOT.  BUT THAT SEEMS TO ME THAT'S JUST A DIFFERENT ISSUE THAN THE ISSUE THAT'S IN FRONT OF ME, WHICH IS WHETHER THESE EXPERTS -- WHETHER YOU HAVE THE RIGHT TO OBJECT TO THEM.

**MR. WALL:**  SO THIS IS MY CERTAIN:  THE COMPROMISE WE TRIED TO MAKE YESTERDAY WAS, LOOK, YOU CAN USE THESE EXPERTS.  WHAT WE WANT IS A COMMITMENT FROM YOU THEY ARE NOT GOING TO PROVIDE ADVICE ON HOW TO DESIGN AROUND OUR PATENTS.

THE CONCERN WAS THIS:  IF THEY ARE LOOKING AT OUR SOURCE CODE, THEN THEY CAN SEE HOW PRODUCTS THAT IMPLEMENT THE PATENTS WORK.  THAT'S GOING TO AID THEM IN DEVISING WAYS TO DESIGN NEW SOURCE CODE AND TO MODIFY EXISTING PRODUCTS.

SO THAT DOESN'T WORK -- IT DOESN'T WORK IN THAT WAY.  AND IT'S OUR CONCERN THAT, JUST AS COUNSEL SAID WITH RESPECT TO MR. HALETKY, THEY'RE NOT GOING TO BE ABLE -- EVEN IF THEY DON'T HAVE THE SOURCE CODE LITERALLY IN FRONT OF THEM, THAT THEIR KNOWLEDGE, GENERALLY, OF THE SOURCE CODE IS GOING TO INFORM THEIR ADVICE TO ACRONIS AS TO HOW -- OR TO OTHER PARTIES AS TO HOW TO DESIGN AROUND OUR PATENTS.

**THE COURT:**  I GUESS -- I HEAR WHAT YOU'RE SAYING, BUT WOULDN'T IT BE A VIOLATION -- IT WOULD BE A VIOLATION OF THE PROTECTIVE ORDER FOR THEM TO USE IT THAT WAY.

**MR. WALL:**  YES.

**THE COURT:** YES. RIGHT.

THE PROBLEM WITH MR. HALETKY WAS NOT WHAT HE WOULD BE DOING IN THIS LITIGATION. THE PROBLEM WAS THAT HE -- THIS WAS WITH WHAT HE DOES. HE WORKED IN VIRT- -- YOU KNOW WHAT I'M SAYING -- AND BACKUP AND RECOVERY IN THE PAST. HE WAS PLANNING ON CONTINUING TO DO IT. AND HE DID PRODUCT REVIEWS AND ALL THAT KIND OF STUFF, SO IT WAS A VERY DIFFERENT SITUATION.

WHAT ABOUT YOUR EXPERTS WHO ARE LITIGATION SUPPORT EXPERTS; HAVE YOU MADE THAT SAME REPRESENTATION AS TO THEM?

**MR. WALL:** WE ARE WILLING TO MAKE THAT SAME REPRESENTATION. AND I THINK I'M BEGINNING TO SEE THE DISTINCTION. I'M SORRY IF I HAVE BEEN A LITTLE BIT SLOW ON THIS.

IT'S ONE THING WITHIN THE CONTEXT OF THE LITIGATION FOR THESE EXPERTS TO THROW OUT ADVICE TO FISH & RICHARDSON REGARDING THIS IS A NON-INFRINGEMENT POSITION OR SOMETHING LIKE THAT.

IT'S QUITE A DIFFERENT THING FOR THESE EXPERTS TO GO EITHER TO ACRONIS OR SOME THIRD-PARTY COMPETITOR LIKE IBM AND SAY, WELL, THIS IS HOW YOU CAN MODIFY YOUR PRODUCT IN ORDER NOT TO INFRINGE.

ONE IS JUST ADVICE ABOUT AN EXISTING PRODUCT AND SAYING THIS IS WHY WE DON'T THINK YOUR PRODUCT INFRINGES. THE OTHER IS HOW CAN YOU MODIFY YOUR PRODUCT SUCH THAT IT DOESN'T INFRINGE. BECAUSE THEN YOU ARE USING YOUR KNOWLEDGE, WHICH --

PART OF WHICH HAS BEEN GAINED THROUGH THE REVIEW OF OUR SOURCE CODE TO EXPLAIN HOW TO MODIFY THE PRODUCT.  THAT, IN OUR MINDS, IS PRODUCT DEVELOPMENT, AND THAT'S WHAT WE'RE WORRIED ABOUT.

MR. HALKOWSKI:  IN OUR VIEW, THERE'S A LOT OF HAND WAVING AND A LOT OF MAYBES.

I MEAN, IF YOU ARE GOING TO ABUSE THE PROTECTIVE ORDER AND USE INFORMATION FOR PURPOSES IT'S NOT ALLOWED TO BE USED FOR, THEN YOU ARE VIOLATING THE PROTECTIVE ORDER.  THAT'S A NO-BRAINER.  OBVIOUSLY PEOPLE ARE NOT GOING TO DO THAT, AND THEY'RE NOT SUPPOSED TO DO THAT.  THAT'S WHY I'M JUST -- I'M MISSING THE ISSUE HERE BECAUSE -- I MEAN, OUR FOLKS ARE -- YOU KNOW, THAT'S NOT -- THEY COMMITTED TO FOLLOW THE PROTECTIVE ORDER.  THE PROTECTIVE ORDER SAYS YOU CAN'T USE THE INFORMATION OTHER THAN FOR WITH REGARD TO THIS LITIGATION.  END OF STORY.

THE COURT:  IT MAY VERY WELL BE THAT THESE EXPERTS WILL NOT IN THE NEXT CASE THAT YOU BRING -- RIGHT?  -- WILL NOT BE ABLE TO BE HIRED -- NOT THE NEXT CASE -- BUT BE HIRED BY A COMPETITOR TO ADVISE THEM ON A DESIGN-AROUND IN THIS FIELD OR WITH RESPECT TO THIS PATENT BECAUSE THEY'VE OBTAINED THIS CONFIDENTIAL INFORMATION THAT MAY BE -- BUT WHAT'S DIFFERENT HERE IS THEY HAVEN'T DONE IT IN THIS FIELD BEFORE.  THAT'S WHAT THEIR DECLARATIONS SAY, RIGHT?

MR. WALL:  WELL, LET'S TURN TO THEIR DECLARATIONS, BECAUSE I THINK WHAT THEIR DECLARATIONS ARE LIMITED TO IS PRODUCT DEVELOPMENT, WHAT THEY TERM PRODUCT DEVELOPMENT, AND I

THINK THAT'S THE REAL AMBIGUITY AS TO WHETHER ADVICE REGARDING DESIGN-AROUNDS --

THE COURT:  NO.  THEY GIVE ADVICE AROUND DESIGN-AROUNDS, BUT THEY HAVEN'T DONE ANYTHING IN BACKUP AND RECOVERY OR VIRTUALIZATION.

MR. WALL:  WHAT THEY SAY IS, IN PARTICULAR, ELYSIUM HAS NOT DEVELOPED AND HAS NO PLANS TO DEVELOP PRODUCTS IN BACKUP AND RECOVERY OR VIRTUALIZATION.

THE COURT:  RIGHT.  I THINK THEY ARE MAKING A BROADER REPRESENTATION THAN THEY HAVE TO.

MR. WALL:  UNFORTUNATELY, YOUR HONOR, I DON'T THINK THAT'S THE CASE.  I THINK THEIR ONLY POINT IS -- ELYSIUM IS A CONSULTING COMPANY.  THEY PERSONALLY DON'T DO THIS.  WHAT THEY DO PROVIDE IS THEY PROVIDE CONSULTING SERVICES TO COMPANIES THAT DO DEVELOP THESE PRODUCTS, AND THEY TELL THEM HOW TO DESIGN AROUND PRODUCTS.

SO MY CONCERN ISN'T ELYSIUM, YOU KNOW, REVISING ITS OWN PRODUCTS SO THAT THEY DON'T INFRINGE.  MY CONCERN IS THEM GOING TO -- FOR EXAMPLE, GOING TO IBM AND CONSULTING IBM AND SAYING, THIS IS HOW YOU CAN MAKE YOUR PRODUCTS NOT INFRINGE THE PATENTS, OR GOING TO ACRONIS AND DOING THAT.  I DON'T SEE ANYTHING IN THIS DECLARATION THAT PREVENTS THEM IN THEIR ROLE OF CONSULTANTS FROM PROVIDING EXACTLY THAT CONSULTING ADVICE TO A THIRD PARTY WHO DOES HAVE A COMPETITIVE PRODUCT.

MR. HALKOWSKI:  I WOULD JUST NOTE, YOUR HONOR, I

MEAN, AGAIN, THERE IS NO THERE THERE WITH THIS ISSUE.

IN EACH OF THE AGREEMENTS TO BE BOUND BY THE PROTECTIVE ORDER, SIGNED BY EACH OF THESE FOLKS AND ALL THE PEOPLE -- ALL THE SIX EXPERTS THAT WE'VE ALREADY APPROVED FOR SYMANTEC:

"I SOLEMNLY PROMISE THAT I WILL NOT DISCLOSE IN ANY MANNER ANY INFORMATION OR ITEM THAT IS SUBJECT TO THIS PROTECTIVE ORDER TO ANY PERSON OR ENTITY EXCEPT IN STRICT COMPLIANCE WITH THE PROVISIONS OF THIS ORDER."

AGAIN, THEY ARE NOT -- THEY'VE COMMITTED TO NOT MISUSING THIS INFORMATION.  I DON'T KNOW WHAT MORE THEY CAN POSSIBLY DO.  AND IF YOU TRY TO GET INTO TRYING TO DRAW SOME LINES, I THINK YOU ARE GOING TO GET INTO POSSIBLY SOME UNINTENDED CONSEQUENCES.

**THE COURT:**  I MEAN, CLEARLY, IF THEY WERE TO BE HIRED BY A COMPETITOR TO DO A DESIGN-AROUND TO GET AROUND YOUR PATENT, THAT WOULD RAISE HUGE RED FLAGS.  SO, PROBABLY THEY'RE NOT GOING TO BE ABLE TO DO THAT.  BUT THERE'S NO INDICATION HERE THAT THEY INTEND TO DO THAT, THEY'VE DONE IT IN THE PAST, OR THEY ARE GOING TO BE DOING IT.

I MEAN, BASICALLY, THE WAY THE PROTECTIVE ORDER IS WORKED OUT IS YOU HAVE TO FIND AN EXPERT WHO HASN'T DONE IT IN THAT AREA, RIGHT?

NOW WE SAY, HERE, YOU CAN'T -- I MEAN, THERE'S THE PROTECTIVE ORDER.  AT SOME POINT -- THAT'S WHAT THE PROTECTIVE ORDER IS.

MR. WALL:  WELL, I GUESS WHAT TROUBLED ME WAS WE OFFERED WHAT WE THOUGHT WAS A VERY NARROW STIPULATION, WHICH I THINK I'M HEARING COUNSEL SAY IS WELL WITHIN THE SCOPE OF THE PROTECTIVE ORDER, WHICH IS THEY SHOULDN'T ADVISE ACRONIS AS HOW TO DESIGN AROUND NEW PRODUCTS TO AVOID OUR PATENTS.  THAT'S THE ONLY COMMITMENT WE WANTED.  WE WERE WILLING TO COMMIT TO THE SAME TYPE OF ORDER.

IF THEY FEEL THAT'S ALREADY IN THE PROTECTIVE ORDER, I DON'T UNDERSTAND WHY THEY'RE JUST NOT AGREEING THAT'S GOING TO BE THE CASE.

THE COURT:  WELL, THEY'RE NOT AGREEING BECAUSE YOU GUYS ARE ALL GOOD LAWYERS, AND EVERYONE KNOWS GOOD LAWYERS, WHEN YOU TAKE SOME ADDITIONAL LANGUAGE, YOU TAKE IT AND IT SPINS AND IT MEANS SOMETHING ELSE, AND IT JUST CREATES MORE DISPUTES.

I THINK WE ARE ALL ON THE SAME PAGE.  THEY CANNOT TAKE -- HAVING SEEN THE SOURCE CODE, YOU ARE RIGHT, IT WOULD BE EASIER FOR THEM TO DESIGN AROUND, AND IT WOULD CERTAINLY RAISE HUGE FLAGS IF THEN THEY WERE TO ADVISE SOMEONE, ANYONE, INCLUDING ACRONIS, HOW TO DESIGN AROUND IT, RIGHT?

MR. WALL:  OKAY.

THE COURT:  HOW COULD THEY TAKE THAT OUT, RIGHT?

IT'S THE CODE.  THAT'S WHAT YOU ARE DESIGNING AROUND, IF I'M RIGHT.  I'M NOT A COMPUTER SCIENCE MAJOR, BUT I THINK THAT'S RIGHT.  SO WE ARE ON THE SAME PAGE, RIGHT?

          **MR. WALL:**  WITH THAT UNDERSTANDING, YES, YOUR HONOR.

          **THE COURT:**  I'M GOING TO DENY THE MOTION --

          **MR. HALKOWSKI:**  YOU MEAN GRANT THE MOTION?

          **THE COURT:**  GRANT THE MOTION.

          **MR. HALKOWSKI:**  THANK YOU.  A LITTLE DETAIL.

          **THE COURT:**  SO YOU SHOULD THEN, WHILE YOU ARE TOGETHER AND HE'S HERE FROM DELAWARE, PICK OUT THE DATES FOR YOUR EXPERTS TO COME REVIEW THE CODE.

          **MR. HALKOWSKI:**  WE'LL CERTAINLY FOLLOW UP.

          **MR. WALL:**  I DON'T THINK THAT SHOULD BE A PROBLEM. I'M HAPPY TO CONFER WHEREVER.

          **THE COURT:**  GREAT.  ALL RIGHT.  IS THERE ANYTHING ELSE I CAN HELP YOU WITH TODAY?

          **MR. HALKOWSKI:**  I GUESS THE ONLY ISSUE THAT WE HAD A LITTLE BIT OF A CHALLENGE WITH -- AND MAYBE WE'LL WORK THIS OUT, SO MAYBE THIS IS JUST A PREVIEW OF SOMETHING THAT WON'T MATTER -- BUT WE HAVE BEEN CONCERNED ABOUT OUR 30(B)(6) WITNESSES, MAKING SURE THAT THEY -- THEIR DEPOSITIONS ALSO INCLUDE THEM AS BEING AN INDIVIDUAL, AND, AGAIN, DO THAT IN A WAY SO THEY CAN GET THAT DONE WITHIN ONE REASONABLE DAY, PRESUMING THAT, WHICH IS THE CASE THAT EACH OF OUR 30(B)(6) WITNESSES, THEIR OWN PERSONAL KNOWLEDGE OVERLAPS WITH THE

TOPICS THAT WE ARE ASSIGNING THEM TO COVER.

I DON'T KNOW WHETHER YOU'VE HAD ANY EXPERIENCE IN THAT TO PROVIDE ANY GUIDANCE.  I THINK WE ARE ON THE SAME PAGE, BUT I AM CONCERNED THAT -- AGAIN, THAT WE TRY TO KEEP THAT TO A REASONABLE APPROACH SO WE CAN GET IT DONE IN A DAY.

**THE COURT:**  YOU HAVE A LIMITATION ON THE NUMBER OF DEPOSITIONS IN THIS CASE?

**MR. WALL:**  NO.  WE HAVE AN HOUR LIMITATION, YOUR HONOR.

TO BE SPECIFIC, AN OVERALL HOUR LIMITATION FOR THE AMOUNT OF DEPOSITION TIME.

**THE COURT:**  SO YOU KNOW WHETHER IT'S -- THEY HAVE THEIR HOURS.  EITHER THEY USE IT WITH THIS ONE PERSON AS A FACT WITNESS AND A 30(B)(6), THEN THAT MEANS THEY DON'T HAVE THE HOURS FOR SOMEBODY ELSE.

SO, I MEAN, YOU HAVE THAT LIMITATION.  IT'S NOT LIKE THEY GET UNLIMITED.  THEY ARE GOING TO MAKE THEIR JUDGMENT BASED ON WHAT THEY THINK THEIR NEEDS ARE.  YOU MAY DISAGREE WITH THAT.

**MR. HALKOWSKI:**  RIGHT.  I GUESS OUR CONCERN, JUST SO I CAN FLAG IT, IS WE ARE A SMALL COMPANY.  THEY'RE A HUGE COMPANY.  SO WE HAVE VERY, VERY, VERY, VERY, VERY FEW PEOPLE WHO HAVE RELEVANT KNOWLEDGE, AND SO IT COULD EASILY BE ABUSED, EVEN THOUGH WE HAVE EQUAL NUMBER OF HOURS, THAT THEY TAKE EACH ONE OF OUR HANDFUL OF TWO, THREE, FOUR, FIVE PEOPLE THAT

ACTUALLY KNOW SOMETHING AND SAY, WE HAVE A HUNDRED HOURS, SO WE'RE GOING TO BE HERE FOR A WHILE.

**THE COURT:**  THERE ARE ALSO LIMITS ON EACH PARTICULAR DEPOSITION, RIGHT?

**MR. WALL:**  YOUR HONOR, I THINK THAT -- I UNDERSTAND. SYMANTEC DOESN'T HAVE AN INTEREST IN DEPOSING THE SAME PERSON FOR FOUR DAYS UNNECESSARILY.  THERE ARE -- AND I THINK THAT IN MANY CASES IN WHICH, FOR EXAMPLE, THERE'S A TECHNICAL EXPERT DESIGNATED ON 30(B)(6) TOPICS THAT ARE WELL WITHIN HIS PERSONAL KNOWLEDGE, IT MAKES A LOT OF SENSE TO HAVE A SINGLE-DAY DEPOSITION THAT'S -- A PERSONAL DEPOSITION AND A 30(B)(6) DEPOSITION.

HOWEVER, FOR EXAMPLE, THE NOVEMBER 2ND DEPOSITION WHERE WE MAY HAVE A MARKETING WITNESS WHO IS GOING TO TESTIFY ON HIS PERSONAL KNOWLEDGE ON MARKETING 30(B)(6) TOPICS AND THEN ALSO, FOR EXAMPLE, ON LOCATION OF DOCUMENTS, THAT MIGHT NEED TO TAKE MORE THAN A DAY, BECAUSE IT'S A WHOLE SET OF DISPARATE TOPICS.

SO I DON'T THINK WE HAVE -- AS YOU SAID, I DON'T THINK WE HAVE ANY INTEREST IN ABUSING THIS, BUT I DO THINK THERE MAY VERY WELL BE CASES IN WHICH MORE THAN ONE DAY IS APPROPRIATE OR MORE THAN SEVEN HOURS IS APPROPRIATE.

**MR. HALKOWSKI:**  AGAIN, WE ARE WILLING TO BE REASONABLE AS WELL.  I WANTED TO FLAG IT BECAUSE I DIDN'T WANT IT TO SPIN OUT OF CONTROL.

**THE COURT:** HAVE YOU STARTED ANY DEPOSITIONS YET?

**MR. HALKOWSKI:** YES, THEY'VE TAKEN ONE 30(B)(6) DEPOSITION.

**THE COURT:** AND IT WENT ALL RIGHT?

**MR. HALKOWSKI:** IT WENT ALL RIGHT.

**THE COURT:** THERE YOU ARE. YOU HAVE YOUR PAST HISTORY, AND ASSUME IT WILL GO FORWARD. OBVIOUSLY, IF ABUSES COME UP, YOU CAN BRING THEM TO THE COURT. I DON'T THINK THERE WILL BE, NOT FROM WHAT I'VE SEEN TODAY. I DON'T THINK THERE WILL BE. IT'S IN EVERYONE'S INTEREST -- AND THERE'S ALWAYS A CONCERN THAT PATENT LITIGATION BETWEEN COMPETITORS, THERE'S AN EXTRA SENSITIVITY THAT HAS TO BE THERE THAT IT'S NOT BEING USED TO GET A COMPETITIVE ADVANTAGE. SO, I'M AWARE OF THAT. THUS FAR I HAVEN'T SEEN IT.

**MR. HALKOWSKI:** THANK YOU, JUDGE.

**MR. WALL:** THANK YOU, YOUR HONOR.

**THE COURT:** THANK YOU VERY MUCH.

(PROCEEDINGS ADJOURNED.)

## CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 11-5310 EMC (JSC), SYMANTEC V. ACRONIS, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

_____

JOAN MARIE COLUMBINI, CSR 5435, RPR

THURSDAY, OCTOBER 25, 2012