PAGES 1 – 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

SYMANTEC CORP.,                              )
                                             )
              PLAINTIFF,                      )
                                             )
  VS.                                        ) NO. C 11–5310 EMC (JSC)
                                             )
ACRONIS, INC.,                               )
                                             )  SAN FRANCISCO, CALIFORNIA
              DEFENDANT.                      )  MONDAY
                                             )  DECEMBER 10, 2012
_____) 10:00 O'CLOCK A.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          **QUINN, EMANUEL, URQUHART & OLIVER**
                            50 CALIFORNIA STREET, 22ND FLOOR
                            SAN FRANCISCO, CALIFORNIA 94111
                        BY:  **ERIC E. WALL, ESQUIRE**
                             **MICHAEL P. HORAN, ESQUIRE**


**FOR DEFENDANT:**          **FISH & RICHARDSON P.C.**
                            222 DELAWARE AVENUE, 17TH FLOOR
                            P.O. BOX 1114
                            WILMINGTON, DELAWARE 19899–1114
                        BY:  **THOMAS L. HALKOWSKI, ESQUIRE**

*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
                *OFFICIAL REPORTER - US DISTRICT COURT*
                *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925–212–5224

**DECEMBER 10, 2012**                    **10:00 O'CLOCK  A.M.**

**P R O C E E D I N G S**

**THE CLERK:**  CALLING CASE 11-5310, SYMANTEC CORPORATION VERSUS ACRONIS, INCORPORATED.

COUNSEL, PLEASE STEP FORWARD AND MAKE YOUR APPEARANCES FOR THE RECORD.

**MR. WALL:**  ERIC WALL FOR PLAINTIFF SYMANTEC.

**THE COURT:**  GOOD MORNING, MR. WALL.

**MR. HALKOWSKI:**  TOM HALKOWSKI WITH FISH & RICHARDSON ON BEHALF OF ACRONIS.

**THE COURT:**  GOOD MORNING.

SO WE'RE HERE THIS MORNING ON PLAINTIFF'S MOTION TO COMPEL CERTAIN DEPOSITIONS OF SOME DEPONENTS WHO ARE LOCATED IN MOSCOW, RUSSIA.

AND I GUESS MY FIRST QUESTION, MR. HALKOWSKI, IS: ACRONIS, INC. IS A UNITED STATES CORPORATION; IS THAT RIGHT?

**MR. HALKOWSKI:**  THAT'S MY UNDERSTANDING.

**THE COURT:**  AND DOES IT HAVE EMPLOYEES IN RUSSIA.

**MR. HALKOWSKI:**  DOES IT HAVE EMPLOYEES?

**THE COURT:**  ON ITS PAYROLL.

**MR. HALKOWSKI:**  I THINK THE BULK OF THE EMPLOYEES CERTAINLY ARE IN THE U.S.  THERE'S ONE EMPLOYEE -- AT LEAST ONE I KNOW OF THAT SPENDS A LOT OF TIME IN RUSSIA WE'VE IDENTIFIED HIM BEFORE.  HIS NAME IS ALAIN GENTILHOMME.

I KNOW HE SPENT, LIKE I SAID, ALMOST THREE WEEKS OUT OF EVERY MONTH, AT LEAST CERTAINLY RECENTLY.  I KIND OF THINK OF HIM BEING IN RUSSIA, BUT HE IS EMPLOYED, I BELIEVE, BY INC.

THE COURT:  BY INC. SO WHEN IN THE PB&J MATTER ACRONIS REPRESENTED IN COURT:

"EMPLOYEES WITH KNOWLEDGE OF TECHNICAL MATTERS ARE LOCATED IN WOBURN, MASSACHUSETTS AND MOSCOW, RUSSIA," BY "EMPLOYEE" THEY WERE REFERRING NOT JUST EMPLOYEES OF ACRONIS, INC., BUT TO EMPLOYEES OF ACRONIS RUSSIA. ACRONIS MORE BROADLY THAN JUST ACRONIS, INC.?

MR. HALKOWSKI:  I THINK IT IS KIND OF LOOSE LANGUAGE THERE, FRANKLY. I THINK THERE'S THE -- ALAIN WOULD CERTAINLY BE ONE PERSON WHO WOULD FALL INTO THAT CATEGORY AS SOMEONE WHO SPENDS A SIGNIFICANT AMOUNT OF TIME IN RUSSIA.

THE COURT:  WHERE'S HIS HOME?  WHERE DOES HE LIVE? WHERE DOES HE PAY TAXES?

MR. HALKOWSKI:  I DON'T KNOW WHERE HE PAYS TAXES.

THE COURT:  PROBABLY THE UNITED STATES.

MR. HALKOWSKI:  I KNOW THAT HE HAS A HOME IN SEATTLE, AND I DON'T BELIEVE THAT HE -- LIKE I SAID, I DON'T BELIEVE THAT HE SPENDS MUCH TIME CERTAINLY IN BOSTON. I BELIEVE MOST OF HIS TIME IS OVERSEAS.  AND I BELIEVE OF THAT TIME THE MAJORITY IS IN RUSSIA. CERTAINLY RECENTLY.

AND THERE'S ALSO AN INVENTOR --

THE COURT:  CAN I STOP YOU FOR A SECOND?  YOU

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

WOULDN'T ARGUE TO THE COURT THAT THE CASE SHOULD BE TRANSFERRED TO DELAWARE BECAUSE HE SPENDS HIS TIME IN RUSSIA WHEN HE HAS A HOME IN SEATTLE.  SO THAT MOTION WASN'T REFERRING TO HIM.

MR. HALKOWSKI:  WELL, I CERTAINLY THINK THAT, YOU KNOW, THAT MOTION, AT LEAST I CERTAINLY HAD HIM IN MIND AS BEING ONE OF THE PEOPLE THAT WAS NOT ASSOCIATED WITH CALIFORNIA.

THE COURT:  BUT IF HE HAS A HOME IN SEATTLE THAT WOULD CERTAINLY MAKE IT -- AND HE SPENDS MOST TIME IN RUSSIA OR SEATTLE THAT WOULD MAKE CALIFORNIA ACTUALLY MORE -- WELL, OKAY. LET'S STOP THERE.

MR. HALKOWSKI:  YES.

THE COURT:  SO HOW ABOUT IN THE OTHER CASE THEY IDENTIFIED AS A 30 (B) WITNESS FOR ACRONIS INC. A 30 (B) (6) AS SOMEONE IN ACRONIS RUSSIA, CORRECT?

MR. HALKOWSKI:  ARE YOU REFERRING TO A CASE IN MASSACHUSETTS?

THE COURT:  YES, THE LUCID8 CASE.

MR. HALKOWSKI:  YES. I'M NOT REAL FAMILIAR WITH THE DETAILS ON THAT OTHER THAN WHAT IS IN THE RECORD BEFORE YOU.

THE COURT:  OKAY. SO, I MEAN, THE BOTTOM LINE IS ACRONIS, WHEN IT'S IN FEDERAL COURT IN THE UNITED STATES, HAS REFERRED TO ACRONIS RUSSIA EMPLOYEES AS "ACRONIS EMPLOYEES."

SO IT SEEMS TO ME A LITTLE BIT PLAYING FAST AND LOOSE WITH THE COURTS TO THEN COME HERE BECAUSE YOU DON'T WANT THEM

DEPOSED TO SAY:

"NO.  NO.  THEY ARE SEPARATE.  YOU HAVE TO SUBPOENA THEM."

I MEAN, HOW CAN THAT BE IF YOU'VE ACTUALLY LISTED SOMEONE AS A 30 (B) WITNESS FOR ACRONIS, INC.?  THEY ARE TREATED ESSENTIALLY AS ACRONIS, GENERALLY.

**MR. HALKOWSKI:**  WELL, THE 30 (B) (6) WITNESS, AS YOUR HONOR PROBABLY KNOWS, YOU CAN IDENTIFY ANYONE. DOESN'T HAVE TO BE SOMEONE WHO WORKS FOR THE COMPANY. SO THAT DOES NOT REALLY ADDRESS THE QUESTION IN TERMS OF WHETHER OR NOT THE PERSON IS AN EMPLOYEE OF GMBH OR INC.

I THINK THE KEY TO THE ISSUES HERE ARE THAT WE'VE GOT A DIFFERENCE. WELL, NUMBER ONE, IS:  WHAT IS IT THAT THEY ARE AFTER?

**THE COURT:**  THAT'S A DIFFERENT QUESTION.

**MR. HALKOWSKI:**  OKAY.

**THE COURT:**  I JUST WANTED TO FIRST GET PAST THE FIRST HURDLE, WHICH IS WHAT I UNDERSTOOD ACRONIS' ARGUMENT TO BE:

"THEY ARE NOT AN EMPLOYEE, SO YOU HAVE TO SUBPOENA THEM."

**MR. HALKOWSKI:**  THEY ARE NOT. RIGHT.

**THE COURT:**  BUT I THINK CERTAINLY THERE ARE CASES -- THERE'S -- I DON'T KNOW IF YOU GUYS SAW IT.  I DON'T THINK YOU CITED THE DISTRICT JUDGE IN IDAHO ON OCTOBER 31ST, HAD A REALLY COMPREHENSIVE OPINION ON THIS ISSUE. NOT ON THE MANAGING AGENT

ISSUE WITH REGARD TO EXPERIAN.  AND I'LL GIVE YOU THAT CITE, ACTUALLY.

IT'S CALDERON VERSUS EXPERIAN INFORMATION SOLUTIONS, 2012 WEST LAW 5377799. IT'S NOT -- OBVIOUSLY, IT'S A DISTRICT COURT. NONE OF IT IS BINDING. BUT THE JUDGE WENT THROUGH REALLY COMPREHENSIVE -- OF ALL THE CASES SORT OF PUTTING THEM TOGETHER.

IN THAT CASE THE QUESTION WAS THE DEFENDANT WAS EXPERIAN SOLUTIONS, AND THEY WANTED TO DEPOSE EXPERIAN CHILE EMPLOYEES.

AND HE SAID:

"WELL, I'VE ALREADY DETERMINED IN A PREVIOUS ORDER THAT ESSENTIALLY IT'S ONE AND THE SAME EMPLOYEE."

SO I THINK -- AND I UNDERSTAND BASED ON THE REPRESENTATIONS THAT ACRONIS, INC., HAS MADE IN PLEADINGS IN OTHER CASES, I THINK I WOULD FIND THAT ESSENTIALLY THEY TREAT -- AND LET ME ASK YOU SOMETHING ELSE.

I THOUGHT I READ IN A TRANSCRIPT THAT ACRONIS, INC. DOESN'T HAVE A SEPARATE BOARD OF DIRECTORS.

DID I MISREAD THAT?

**MR. HALKOWSKI:**  I BELIEVE --

**THE COURT:**  MAYBE I SHOULD ASK MR. WALL.

**MR. WALL:**  I BELIEVE THAT ACRONIS RUSSIA, I DON'T THINK, HAS A SEPARATE BOARD OF DIRECTORS. I THINK THAT'S RIGHT. ACRONIS, INC. MAY NOT, AS WELL.

**MR. HALKOWSKI:**  I THINK THAT'S MISTAKEN.  I THINK

THAT THEY DO HAVE -- THEY HAVE BEEN VERY CLEAR ABOUT HAVING SEPARATE CORPORATE ENTITIES, SEPARATE OFFICERS, AND I BELIEVE SEPARATE BOARD OF DIRECTORS.  BUT, AGAIN, I'D HAVE TO LOOK THAT UP TO BE SURE.

**THE COURT:**  WELL, OKAY.  ALL RIGHT.  I DON'T KNOW.  I THINK --

**MR. HALKOWSKI:**  AND I THINK THEY DO FOR TAX REASONS, AMONG OTHERS.  THEY GO THROUGH A VERY RIGOROUS PROCESS OF ENSURING THAT THESE CORPORATE ENTITIES MAINTAIN THEIR SEPARATE RELATIONSHIPS EVEN TO THE POINT OF HAVING TO CONDUCT MEETINGS IN EUROPE WITH OFFICERS BECAUSE OF SOME RULES I DON'T EVEN UNDERSTAND. BUT, ANYHOW, THEY ARE VERY CAREFUL ABOUT THE MAINTAINING THE SEPARATE CORPORATE IDENTITIES OF THE DIFFERENT COMPANIES.

**THE COURT:**  WELL, THAT MAY BE TRUE FOR THOSE REASONS. THAT'S DIFFERENT FROM WHETHER THEY TREAT, YOU KNOW, EMPLOYEES' PAYSTUB COMES FROM EMPLOYEE RUSSIA AS OPPOSED TO ACRONIS, INC., THAT THEY CAN'T REALLY BE CONSIDERED AN EMPLOYEE OF ACRONIS FOR PURPOSES OF DISCOVERY.

SO I REALLY THINK GIVEN -- AND I APPRECIATE YOUR CANDOR WITH RESPECT TO THE EARLIER CASES, AND THE PLEADINGS SPEAK FOR THEMSELVES. I THINK THE REAL QUESTION IS THE MANAGING AGENT QUESTION AND THE INFORMATION THAT THEY ARE SEEKING.

NOW, WHAT SYMANTEC BRINGS UP IS THAT THESE -- ACCORDING TO THE DOCUMENTS YOU'VE PRODUCED, THE TECHNICAL DOCUMENTS, THAT

THESE WITNESSES, THEY BELIEVE -- WELL, LET ME STOP ONE SECOND. IS THERE A LIMIT ON THE NUMBER OF DEPOSITIONS THAT YOU HAVE IN THIS CASE?

MR. WALL:  NO, YOUR HONOR. WE HAVE AN HOURLY LIMIT, I BELIEVE.

THE COURT:  OH, HOURLY LIMIT.  THAT'S RIGHT.  I REMEMBER YOU HAD SAID THAT BEFORE. SO JUST SORT OF GETTING TO IT:  WHY DO YOU CARE SO MUCH?  I MEAN, IF THEY WANT TO WASTE THEIR HOURS --

MR. HALKOWSKI:  RIGHT.

THE COURT:  -- ON DEPONENTS WHO YOU SAY DON'T HAVE ANYTHING TO ADD, ISN'T THAT BETTER FOR YOU?

MR. HALKOWSKI:  NO, BECAUSE OUR VIEW OF THIS CASE, IN GENERAL, ACTUALLY HAS BEEN THAT SYMANTEC IS HUGE, MANY, MANY, MANY TIMES THE SIZE OF US.

THEY HAVE, YOU KNOW, SUED ACRONIS, AND THAT'S FINE.  THEY HAVE THE RIGHT TO DO THAT. BUT KIND OF A PATTERN AND PRACTICE THROUGHOUT THIS CASE HAS BEEN -- MAYBE "HARASSMENT" IS TOO STRONG OF A WORD.  BUT THEY HAVE BEEN VERY RIGOROUS ABOUT PURSUING DISCOVERY. AND THIS IS ANOTHER EXAMPLE OF THAT.

THAT'S WHY I WAS GETTING TO THE OTHER POINT ABOUT THE PRACTICAL POINT. WHAT IS IT THAT THEY NEED?  WHAT IS IT THAT THEY WANT?

THIS IS A PATENT CASE. THEY NEED TO UNDERSTAND HOW OUR PRODUCT WORKS. BEST WAY TO UNDERSTAND THAT IS THE SOURCE CODE.

THAT'S GOING TO BE AVAILABLE. THEY WILL KNOW EXACTLY HOW IT WORKS.

SECOND BEST WAY IS TO ASK ENGINEERS ABOUT IT. WE'VE IDENTIFIED THREE PERSONS MOST KNOWLEDGEABLE. THEY HAVE YET TO TAKE THEIR DEPOSITIONS. THOSE PEOPLE WILL KNOW THIS STUFF INSIDE AND OUT.

AND, OBVIOUSLY, IF THERE'S AN ISSUE WITH A GAP IN KNOWLEDGE WE'LL DEAL WITH THAT, AS WE ARE OBLIGATED TO DO UNDER 30 (B) (6) PROCESS.

**THE COURT:** SO LET ME STOP YOU THERE, BECAUSE THAT'S WHAT I WAS THINKING WAS THAT WHILE THESE THINGS MIGHT -- WELL, FOR ONE THING, I WAS THINKING I WOULDN'T MAKE THEM COME TO THE UNITED STATES BECAUSE THERE'S NO SHOWING THAT THEY REGULARLY COME TO THE UNITED STATES.  I THINK IF YOU NEED TO GO -- I DON'T KNOW WHERE THEY GO, CROATIA OR WHEREVER THEY ARE, LONDON, OR WHEREVER THEY GO, THEY SHOULD GO THERE UNLESS YOU AGREE OTHERWISE.

MAYBE THEY WOULD AGREE OTHERWISE.  IF SYMANTEC SAYS:

"WE'LL PAY FOR THEM TO COME TO THE UNITED STATES AT OUR EXPENSE," THAT WOULD SAVE, CERTAINLY, YOUR CLIENT'S MONEY IN ATTORNEY'S FEES, AND MAYBE THEY WOULD BE HAPPY. MAYBE THEY COULD GO MEET THE PEOPLE IN ACRONIS, INC., ANYWAY, AND YOU COULD TURN IT INTO SOMETHING BENEFICIAL FOR EVERYBODY, CERTAINLY.

BUT I WOULDN'T ORDER THEM TO COME TO THE UNITED STATES.

AND THE OTHER THING I THOUGHT IS THAT THOSE SHOULD GO FORWARD FIRST, THE 30 (B) (6) YOU HAVE SCHEDULED AND THE OTHER TWO.  AND THEN, MAYBE THE BURDEN WOULD BE ON YOU, THOUGH, THEN, IF YOU SAY:

"THEY GOT EVERYTHING THEY NEED.  THIS IS JUST UNDULY BURDENSOME AND UNNECESSARY," THEN YOU COULD COME FORWARD AND EXPLAIN WHY.  BECAUSE THEY SAY WITHOUT HAVING THAT THAT THOSE PEOPLE DON'T HAVE FIRSTHAND KNOWLEDGE, AND THEY ARE NOT -- I DON'T KNOW, RIGHT? THERE'S NOT ENOUGH CONTEXT.

SO I THOUGHT AT LEAST -- AND I GUESS IT WAS SCHEDULED, THE 30 (B) (6), FOR THE END OF NOVEMBER.

**MR. HALKOWSKI:**  CORRECT.

**MR. WALL:**  WELL, BUT I DON'T -- AM I CORRECT THAT THAT DEPOSITION HAS BEEN MOVED?  I THINK IT HAS.

**MR. HALKOWSKI:**  AT SYMANTEC'S REQUEST THEY WANTED TO MOVE THAT DEPOSITION.  SO WE'VE IDENTIFIED -- I BELIEVE WE'VE IDENTIFIED ANOTHER DAY.  IF NOT, WE WILL SHORTLY, AND THAT DEPOSITION WILL BE SCHEDULED.

**MR. WALL:**  WELL --

**THE COURT:**  IN OTHER WORDS, WHAT I WAS THINKING IS YOU GO AHEAD, BECAUSE IT TAKES EXPLAINING TO DO THESE INTERNATIONALLY. YOU TRY TO COME UP WITH DATES AND LOCATION AND ALL THAT. BUT YOU GO FORWARD WITH THOSE OTHER ONES. I MEAN, YOU DID A 30 (B) (6), AND THEY IDENTIFIED A PERSON WHO HAS IT. YOU GO FORWARD WITH IT.  THAT PERSON SAYS WHAT THEY SAY.  AND THEN,

IF YOU BELIEVE AFTER HAVING THAT THAT THERE'S NO REASON FOR THIS DEPOSITION, NOTWITHSTANDING THE MEET AND CONFER, YOU EXPLAIN WHY YOU STILL WANT THE ACTUAL PEOPLE WHO WROTE THESE TECHNICAL DOCUMENTS AND WHY IT'S RELEVANT TO -- I GUESS IT WOULD BE HOW THE PRODUCT WORKS -- THE CLAIM OF INFRINGEMENT, RIGHT?  THAT'S THE ONLY THING IT COULD BE RELEVANT TO.

AND THEN, IF YOU STILL BELIEVE IT'S JUST HARASSMENT OR COST OR WHATEVER, UNLESS -- I MEAN, IF THEY OFFER TO PAY FOR THE WITNESSES TO COME HERE, THEN THAT'S -- YOU KNOW, WORK IT OUT.

BUT I THINK IN TERMS OF TIMING I SEE NO REASON WHY IT SHOULDN'T GO THAT WAY.

**MR. WALL:**  WELL, YOUR HONOR, I THINK THERE ARE A COUPLE OF ISSUES.  AND LET ME EXPLAIN WHY WE WENT ABOUT IT THIS WAY RATHER THAN DEPOSING MR. GENTILHOMME FIRST.

FIRST OF ALL, I'M SURE IT'S NOT GOING TO SURPRISE YOU THAT WE HAVE A DIFFERENT VIEW OF WHAT WE VIEW AS OUR RIGOROUS ATTEMPT TO GET DISCOVERY.  WE'VE MOVED MR. GENTILHOMME'S DEPOSITION BECAUSE WE HAD A WHOLE BUNCH OF DOCUMENTS SERVED ON US ABOUT TWO WEEKS BEFORE THAT DEPOSITION,  MUCH OF IT IN RUSSIAN.  AND WE SIMPLY COULD NOT PROCESS THOSE DOCUMENTS IN TIME TO TAKE A DEPOSITION ON MULTIPLE 30 (B) (6) TOPICS.

AND A CONCERN FOR US IS:  SO NOW WE'VE MOVED THIS DEPOSITION.  AND THAT'S THE REASON WE MOVED THE DEPOSITION. THIS WASN'T SIMPLY A CONVENIENCE ISSUE OR SOMETHING LIKE THAT.

AND NOW WHAT WE'RE LOOKING AT, WHAT ACRONIS HAS TOLD US IS WE'RE LOOKING AT A DEPOSITION OF HIM IN FEBRUARY OR MARCH OF NEXT YEAR. AND SO WE'RE VERY -- WE'RE GETTING VERY CONCERNED ABOUT DELAY.  AND ONE OF THE PROBLEMS IS -- AND THIS SORT OF LEADS INTO THE SECOND POINT -- IS THAT BASED UPON THEIR PRODUCTION SO FAR WE'RE NOT SEEING ANY DOCUMENTS WHERE MR. GENTILHOMME SEEMS TO HAVE BEEN INVOLVED IN THE DEVELOPMENT OF THE ACCUSED PRODUCTS AT ALL.

AND WE'RE CONCERNED ABOUT WAITING UNTIL FEBRUARY OR MARCH TO TAKE A DEPOSITION THAT ENDS UP NOT BEING VERY FRUITFUL.  AND THEN, HAVING TO REQUEST THE DEPOSITIONS OF THESE INDIVIDUALS, AND THEN THAT TAKING ADDITIONAL TIME. AND IN THE MEANTIME, YOU KNOW, WE'RE GOING TO HAVE TO GET DOCUMENTS PRODUCED, WHICH HAS BEEN A PROBLEM WITH THE OTHER SIDE.

SO, TO US, THE PROBLEM IS DELAY.  AND WE WANTED TO BRING THAT ISSUE TO YOU FIRST. AND I GUESS I'M CONCERNED THAT IF WE'RE TAKING MR. GENTILHOMME IN MARCH, THEN, YOU KNOW, IN TERMS OF ORGANIZING DEPOSITIONS OF INTERNATIONAL WITNESSES THAT'S GOING TO BE A VERY LONG DELAY.

**THE COURT:**  WELL, THAT'S WHAT I SAID. YOU PLAN IT NOW. YOU HAVE IT ALL PLANNED AND SCHEDULED. BUT THERE BE A DELAY SO THAT SHOULD THEY BELIEVE THAT IT'S UNNECESSARY, WHATEVER, THERE'S TIME FOR THEM TO COME IN-BETWEEN. BUT WE DON'T WAIT AND PLAN IT. I'M SAYING I'M ORDERING IT, BUT I'M GOING -- BUT YOU SHOULD GO FORWARD WITH MR. -- HOW DO YOU

PRONOUNCE HIS NAME?

**MR. WALL:**  AM I GETTING IT RIGHT, GENTILHOMME?

**MR. HALKOWSKI:**  YES.

**THE COURT:**  GENTILHOMME FIRST. MAYBE YOU'LL BE SURPRISED, BECAUSE THAT'S WHAT A 30 (B) (6) WITNESS DOES IS MAKE THEMSELVES FAMILIAR WITH EVERYTHING.  AND MAYBE HE WILL BE ABLE TO, YOU KNOW.  AND IF SO, GREAT. IF NOT, YOU HAVE THOSE DEPOSITIONS ALREADY SCHEDULED WHEREVER THEY ARE GOING TO BE. BUT THERE'S AN OPPORTUNITY FOR ACRONIS TO COME IN.  IT WILL BE THEIR BURDEN FOR A PROTECTIVE ORDER, I GUESS, TO SAY:

"NO, THIS IS UNDULY BURDENSOME.   THIS IS HARASSMENT," WHATEVER.  AND YOU RESPOND.

BUT IT'S SCHEDULED, SO THERE'S NO -- THERE'S NO DELAY.

**MR. WALL:**  WELL, I GUESS WHAT I'M SAYING IS RIGHT NOW THERE IS NO FIRM DATE FOR THAT DEPOSITION, SO I'M CONCERNED BECAUSE WE DON'T HAVE A CONFIRMED DEPOSITION DATE.  AND ACRONIS IS SUGGESTING DEPOSITION IN FEBRUARY OR MARCH. SO I WAS HOPING IF YOUR HONOR THINKS THAT'S THE RIGHT PROCESS, YOU KNOW, I WOULD -- THEN, I'D LIKE TO -- WE'D LIKE TO DO THAT DEPOSITION EARLIER.

AND WE'D LIKE TO MAKE SURE ALL THE DOCUMENTS THAT WE NEED HAVE BEEN PRODUCED BY THIS POINT. I MEAN, I GUESS WHAT I'M WORRIED ABOUT IS JUST US HAVING TO DEPOSE THESE RUSSIAN WITNESSES IN MAY OR JUNE.  AND, I MEAN, THAT'S GOING TO BE A VERY LONG TIME.  WE'VE HAD OUR MARKMAN HEARING.  AND WE'RE

GOING DO HAVE THIS CASE MANAGEMENT CONFERENCE, AND WE'RE GOING TO SET DEADLINES FOR THE REST OF THE CASE. I'M JUST WORRIED ABOUT TIMING.

**THE COURT:** YOU DON'T HAVE A DISCOVERY DEADLINE YET?

**MR. WALL:** WE DON'T HAVE A CLOSE OF DISCOVERY DEADLINE YET BECAUSE IT'S -- A LOT OF THAT, AS IS NOT ATYPICAL IN PATENT CASES, IS BASED UPON WHEN THE COURT ISSUES ITS MARKMAN DECISION.

**THE COURT:** RIGHT, BECAUSE THAT MAY CHANGE THINGS, AS WELL. I THINK MAYBE YOU GENTLEMEN WILL SIT DOWN AND DECIDE WE DON'T NEED TO DO ANY MORE DISCOVERY AFTER THE MARKMAN COMES OUT.

**MR. HALKOWSKI:** SO WHEN THEY ASK TO MOVE THE DEPOSITION WE WENT TO MR. GENTILHOMME. I THINK WE'RE ABOUT TO GET CONFIRMATION ON A DATE.

THERE'S ALSO TWO OTHER WITNESSES WHO THEY HAVE NOT FOLLOWED UP ON THAT WE IDENTIFIED A PERSON MOST KNOWLEDGEABLE.

SO I PRESUME THOSE PEOPLE SHOULD BE DEPOSED BEFORE WE GO TO THESE RANK AND FILE PEOPLE.

THAT'S ONE POINT.

SECOND POINT: IN TERMS OF DISCOVERY, THERE'S BEEN NO DOCUMENTS. WE DON'T HAVE A TRIAL SCHEDULE. WE DON'T EVEN HAVE A DISCOVERY DEADLINE YET. THAT'S ALL YET TO BE DETERMINED. WE WILL HAVE A SCHEDULING CONFERENCE IN FEBRUARY.

SO, YOU KNOW, ALL THESE THINGS CAN BE WORKED OUT

TIMING-WISE, IF THAT'S THE WAY THIS ALL GOES.

MY LAST POINT, THOUGH, IS JUST UNDER THE LAW I DON'T KNOW IF YOU'VE ALREADY DECIDED, BUT IF YOU DECIDED THEN MAYBE I'M ASKING TO YOU RECONSIDER.  IF YOU HAVEN'T, THEN I WOULD LIKE YOU TO AT LEAST SERIOUSLY THINK ABOUT THAT IN TERMS OF ALL THE CASES, THAT I'M AWARE OF AT LEAST, I'M NOT AWARE OF ANY WHERE AN EMPLOYEE -- IN THIS KIND OF A SITUATION, AT LEAST -- FOR A NON-PARTY WAS ORDERED TO APPEAR FOR A DEPOSITION.

THERE'S A DISTINCT DIFFERENCE BETWEEN HOW RULE 30 OPERATES AND RULE 34 IN TERMS OF PEOPLE BEING -- YOU KNOW, NORMALLY UNDER PRACTICAL KIND OF CONTROL. IN TERMS OF DOCUMENTS, IF THEY ARE PRACTICALLY UNDER CONTROL, THEN THAT'S FINE.  RULE 34 SAYS DOESN'T MATTER.  YOU CAN DO IT.  BUT RULE 30 DOESN'T WORK THAT WAY.  AND THE CASE LAW IS VERY CLEAR ON THAT.

THERE'S THE HONDA LEASE CASE --

**THE COURT:**  YOU SAID ONE LINE.  I MEAN, THERE WASN'T ANY DISCUSSION.  BUT THAT CALDERON CASE I GAVE YOU AT THE BEGINNING WAS EXACTLY THAT.  IT WAS EXPERIAN CHILE.

**MR. HALKOWSKI:**  OKAY.

**THE COURT:**  AND BASICALLY WHAT IT WAS WAS THE COURT LOOKED AT IT FROM A PRACTICAL MATTER.  ARE THEY REALLY A NON-PARTY?  ARE THEY REALLY A PARTY?   DOES ACRONIS REALLY FOR TAX PURPOSES, NOT FOR PIERCING THE VEIL OR ANY OF THOSE THINGS. BUT IN TERMS OF -- I MEAN, AS I UNDERSTAND IT, YOU SAY ACRONIS RUSSIA DOES ALL THE DEVELOPMENT AND ACRONIS USA DOES THE SALES

AND MARKETING; THAT THEY SORT OF SEPARATE THEM OUT.

DOES ACRONIS RUSSIA DEVELOP FOR ANYONE OTHER THAN AN ACRONIS ENTITY?

MR. HALKOWSKI:  NO.  WHAT I'M SAYING, THOUGH, IS THAT UNDER THE LAW, AT LEAST, IT'S NOT THE QUESTION. THERE'S NOT A QUESTION OF WHETHER OR NOT SOMEHOW THERE'S SOME OVERALL CORPORATE STRUCTURE.  THERE'S NOT A QUESTION OF HOW THESE THINGS WORK TOGETHER.  THERE'S NOT A QUESTION EVEN OF CONTROL.

IT'S JUST A QUESTION OF WHETHER OR NOT THEY ARE A PARTY. AND IF THEY ARE NOT A PARTY, THEN YOU HAVE THE SUBPOENA ROUTE.

THAT DOESN'T MEAN THAT THE PERSON SEEKING THE INFORMATION HAS NO OPTIONS. THEY HAVE PLENTY OF OPTIONS. THEY HAVE THE OPTION TO GET ALL THE DOCUMENTS.  THAT'S UNDER RULE 34.

AND RULE 30 (B) (6) PROVIDES THEM WITH AN OPPORTUNITY TO GET INFORMATION THAT ARE IN SUBSIDIARIES' HANDS THAT ARE NONETHELESS, BECAUSE WE WOULD BE EXPECTED TO BE WITHIN THE CONTROL OF THE COMPANY, THAT IS A PARTY TO THE COURT.

THE COURT:  WELL, THE QUESTION IS WHETHER AN EMPLOYEE OF A PARTY. THAT'S THE QUESTION, RIGHT?

MR. HALKOWSKI:  RIGHT.

THE COURT:  AND I GUESS WHAT I'M SAYING IS IN PLEADINGS IN FEDERAL COURT IN OTHER CASES ACRONIS, INC. HAS REPRESENTED THAT ACRONIS RUSSIA EMPLOYEES ARE EMPLOYEES OF ACRONIS, INC.

MR. HALKOWSKI:  YES.  AND I THINK THAT'S -- THAT'S

NOT CORRECT. THAT'S CERTAINLY NOT WHAT WE INTENDED TO REPRESENT.

THE COURT: THAT'S WHAT THE PLEADINGS SAY. I MEAN, WHEN YOU WERE TRYING TO GET IT TRANSFERRED TO SOMEWHERE, AND, YOU KNOW, YOU'D SAY "ACRONIS INC.'S EMPLOYEES."

AND I THOUGHT THERE WAS -- MR. WALL CAN PROBABLY TELL ME -- THERE WAS AN INITIAL DISCLOSURE THAT IDENTIFIED AS ACRONIS, INC. EMPLOYEES, EMPLOYEES IN RUSSIA. THERE WERE LIKE SEVEN OF THEM.

MR. WALL: THAT'S RIGHT, YOUR HONOR. JUST -- I HAVE THAT IN MY NOTES, AS WELL. HOLD ON A MINUTE. I HAVE IT HERE.

IT'S EXHIBIT FIVE TO THE JOINT PLEADINGS. AND THAT'S FROM THE ACRONIS V. LUCID8 CASE IN THE DISTRICT OF MASSACHUSETTS.

THE COURT: RIGHT. SO THERE WAS MAX LADOVINSKY (PHONETIC), THE VP OF ENGINEERING, NATALIE SOCOLOKIA (PHONETIC) THE QA ENGINEER.

MR. HALKOWSKI: RIGHT. AND, ACTUALLY, TO BE HONEST, I HAVE NOT CHECKED WHETHER OR NOT THIS IS ACCURATE IN TERMS OF WHETHER OR NOT MAX LADOVINSKY ACTUALLY FORMALLY IS EMPLOYED BY ACRONIS, INC. WHETHER --

THE COURT: THAT'S THE REPRESENTATION THAT WAS MADE TO THE COURT.

MR. HALKOWSKI: YES. AND LIKE I SAID, IT'S ANOTHER CASE. IT'S OTHER ATTORNEYS. I DON'T KNOW WHETHER IT'S ACCURATE OR NOT.

**THE COURT:** I UNDERSTAND. BUT WE'RE HERE TODAY.

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** THEY FILED THIS. THIS IS THE REPRESENTATION WITH THE COURT, REGARDLESS OF WHETHER IT'S YOU REPRESENTING OR SOME OTHER ATTORNEY.

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** I ASSUME THAT'S A REPRESENTATION ACRONIS, REGARDLESS OF WHO WAS REPRESENTING THEM, MADE TO --

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** -- THE COURT IN A CASE THAT ACRONIS INITIATED IN FEDERAL COURT TAKING ADVANTAGE OF THE UNITED STATES --

**MR. HALKOWSKI:** AND EVEN IF THAT REPRESENTATION -- YOU KNOW, WHETHER IT WAS MISTAKEN OR WHETHER IT WAS TRUE, THAT MAY BE RELEVANT AS TO WHETHER OR NOT WE'RE TALKING ABOUT WHETHER MAX LADOVINSKY SHOULD BE ORDERED TO APPEAR FOR A DEPOSITION, BECAUSE THERE'S BEEN A REPRESENTATION MADE THAT HE IS EMPLOYED BY ACRONIS, INC.

THERE'S BEEN NO REPRESENTATION THAT THESE FIVE RUSSIAN ENGINEERS ARE EMPLOYED BY ACRONIS, INC.

**THE COURT:** BUT THERE'S NO EVIDENCE IN THE RECORD THAT THESE PEOPLE ARE EMPLOYED BY ACRONIS, INC. AND NOT THE OTHER PEOPLE THERE. THE INFERENCE I DRAW FROM THIS IS THAT ACRONIS TREATS -- FOR PURPOSES OF EMPLOYMENT AND LITIGATION AND DISCOVERY TREATS, AT LEAST WITH ACRONIS RUSSIA -- I'M NOT

TALKING ABOUT ANY OF THE OTHER ACRONIS ENTITIES -- TREATS THOSE EMPLOYEES AS ESSENTIALLY EMPLOYEES OF ACRONIS, INC. WHEN IT COMES TO DISCOVERY, BECAUSE IN THEIR INITIAL DISCLOSURE IDENTIFIED THESE EMPLOYEES LOCATED IN MOSCOW AS ACRONIS, INC. EMPLOYEES.

IF I WAS THE LAWYER ON THE OTHER SIDE WOULD I THINK I HAD TO SUBPOENA THIS PERSON?

**MR. HALKOWSKI:** RIGHT.  AND THAT'S EXACTLY MY POINT, THOUGH, IS THAT THESE PARTICULAR INDIVIDUALS, FOR WHATEVER REASON, WERE IDENTIFIED AS PEOPLE HAVING INFORMATION THAT WAS CRITICAL FOR THIS PARTICULAR CASE.  AND THAT THEY WOULD BE MADE AVAILABLE. YOU KNOW, THESE OTHER FIVE I KEEP REFERRING TO KIND OF THE RANK AND FILE RUSSIAN --

**THE COURT:** ONE OF THEM NO LONGER WORKS FOR ACRONIS.

**MR. HALKOWSKI:** SO THERE'S FOUR.

**THE COURT:** SO THERE'S FOUR.

**MR. HALKOWSKI:** SO THEY HAVE NOT BEEN IDENTIFIED ANYWHERE AS PEOPLE WITH KEY INFORMATION OR PEOPLE THAT WE -- YOU KNOW, WE'LL TREAT AS EMPLOYEES AND THAT WE'RE GOING TO MAKE AVAILABLE.

AND SO THAT'S WHY I -- ALL THIS INFORMATION THAT THEY CITE IS INTERESTING, BUT IT'S ONLY INTERESTING, I THINK, WITH RESPECT TO THE PEOPLE THEY HAVE ACTUALLY CITED IT FOR.

**THE COURT:** WELL, I DON'T THINK YOU GET TO CHOOSE.  I DON'T THINK WHEN YOU'RE THE PLAINTIFF IN A PATENT CASE YOU GET

TO DECIDE:

"I'M GOING TO IDENTIFY THESE PEOPLE AS ACRONIS EMPLOYEES BECAUSE THEY ARE HELPFUL TO ME.  AND THE OTHER ONES THAT THE OTHER SIDE WANTS, I'M NOT GOING TO DO THAT."

I JUST DON'T THINK YOU GET TO DO THAT.  I THINK THAT'S SORT OF -- THAT'S JUST THE PRACTICAL MATTER.

NOW, WHETHER THEY ARE MANAGING AGENTS, WHETHER THEY HAVE INFORMATION, THAT'S A DIFFERENT MATTER.  AND, YOU KNOW, THE CHIEF ARCHITECT SOUNDS LIKE SOMEONE WHO WOULD BE A MANAGING AGENT. I DON'T HAVE TO DECIDE WHETHER THEY COULD SPEAK ON BEHALF OF THE CORPORATION.  WE'RE JUST TALKING DISCOVERY.

**MR. HALKOWSKI:**  AND I THINK WHAT'S IMPORTANT ON THAT POINT IS THAT YOU'RE LOOKING AT THE MANAGING AGENT FOR GMBH, THE MANAGING AGENT FOR INC. THERE'S ABSOLUTELY NO INFORMATION WHATSOEVER THAT WOULD ALLOW ONE TO DRAW A CONCLUSION THAT EVEN THIS CHIEF ARCHITECT IS A MANAGING AGENT FOR GMBH, A MANAGING AGENT FOR INC.

AT MOST YOU COULD SAY HE WOULD HAVE SOME RESPONSIBILITY ON A TECHNICAL SIDE WITH REGARD TO THE THINGS THAT ACRONIS RUSSIA ARE WORKING ON. THE KEY QUESTION IS WHETHER OR NOT THEY ARE ACTUALLY A MANAGING AGENT FOR THE PARTIES IN THE CASE.

**THE COURT:**  WITH RESPECT TO THE SUBJECT MATTER ON WHICH THEY ARE BEING DEPOSED.

**MR. HALKOWSKI:**  YES, BUT FOR THE PARTIES IN THIS CASE. AND THEY AREN'T.  I MEAN, THEY ARE NOT EVEN CLOSE TO IT.

THE COURT:  WELL, DOES ACRONIS, INC. HAVE ITS OWN CHIEF ARCHITECT THAT DOES WHAT THIS CHIEF ARCHITECT DOES?

MR. HALKOWSKI:  THE CHIEF TECHNICAL OFFICER ALAIN GENTILHOMME.  AND THEN, THERE ARE PEOPLE WHO ARE SUPERVISORY TO THIS PERSON, EVEN THE CHIEF ARCHITECT, THAT I BELIEVE THOSE ARE TWO OF THE PEOPLE THAT WE'VE IDENTIFIED AS PERSONS MOST KNOWLEDGEABLE.

SO, AGAIN, I THINK IF WE GET TO THAT QUESTION THEY CLEARLY ARE NOT ANYWHERE CLOSE TO BEING MANAGING AGENTS OF GMBH OR INC. EVEN WITH REGARD TO THE ISSUES THAT ARE IN THIS CASE.

MR. WALL:  YOUR HONOR?

THE COURT:  YES.  GO AHEAD.

MR. WALL:  I'M SORRY.  I DON'T MEAN TO INTERRUPT, BUT THIS IS EXACTLY WHAT WE'RE CONCERNED ABOUT IS THAT OUR FEELING IS THAT THESE FOLKS IN RUSSIA WERE THE ONES WHO ACTUALLY DESIGNED THE ACCUSED PRODUCT.  SO IF YOU ARE GOING TO ASK QUESTIONS ABOUT SOURCE CODE AND WHATNOT, THEY ARE THE PEOPLE WHO ACTUALLY DID THIS.

FROM THE DOCUMENTS WE HAVE AS FAR AS WE KNOW ALAIN GENTILHOMME HAD NO -- WE DON'T KNOW OF ANY ROLE HE HAD WITH THE ACCUSED PRODUCT, NOR HAVE WE SEEN ANY DOCUMENTS FROM THE OTHER TWO PEOPLE THEY IDENTIFIED IN THEIR INTERROGATORIES ON ANY OF THEIR DOCUMENTS.

SO WHAT WE'RE REALLY CONCERNED ABOUT IS THAT THEY ARE DRAWING VERY TIGHT LINES ABOUT WHAT ACRONIS, INC. KNOWS AND

WHAT ACRONIS GHBH KNOWS.

THEY ARE SAYING:

"WELL, LOOK.  THIS ALL THESE PARTIES KNOW."

AND THAT WHEN WE GET TO THE DEPOSITION, THAT THEY ARE GOING TO SAY:

"WELL, LOOK.  THIS IS THE BEST I UNDERSTAND, BUT I'M NOT THE ONE WHO DESIGNED THIS."

AND --

**MR. HALKOWSKI:**  THAT'S TOTALLY WRONG.

**MR. WALL:**  HOLD ON.

**MR. HALKOWSKI:**  THAT'S TOTALLY WRONG.

**MR. WALL:**  IF I COULD FINISH, PLEASE.

**THE COURT:**  BUT WE'RE NOT THERE.  I'M NOT GOING TO SPECULATE.  THAT'S WHY I SAID WE HAVE TO GO IN ORDER.

**MR. WALL:**  AND I'M NOT DISPUTING THAT, YOUR HONOR, IF THAT'S THE WAY -- I JUST WANTED TO EXPRESS MY CONCERN.  IF YOUR RESOLUTION IS TO SAY:

"WELL, LET'S GO DO THE 30 (B) (6) FIRST.  MAYBE WE WILL BE PLEASANTLY SURPRISED," AND I'M SURE MR. HALKOWSKI IS GOING TO TELL US I'M GOING TO BE PLEASANTLY SURPRISED.  FINE.  LET'S DO THAT.

THE POINT I WOULD LIKE TO MAKE IS SIMPLY THAT:  THEN, LET'S GET THIS DONE NOW. I'M NOT OF MR. HALKOWSKI'S VIEW THAT WE CAN JUST, YOU KNOW, HAVE THIS DRAG OUT FOR MONTHS.  AND WHAT I WOULD ASK, THEN, IS THAT WE GET MR. GENTILHOMME'S DEPOSITION

DONE IN JANUARY.  THAT THEY PRODUCE DOCUMENTS TWO OR THREE WEEKS IN ADVANCE OF THAT.  AND THEN, IF WE NEED TO COME BACK HERE, WE WILL.

THE COURT:  WELL, I'M NOT GOING TO ORDER ANY OF THAT BECAUSE NONE OF THAT IS IN FRONT OF ME --

MR. HALKOWSKI:  THAT'S NOT POSSIBLE.

THE COURT:  -- TO MEET AND CONFER AND FIGURE OUT WHY HE'S NOT AVAILABLE EARLY. AND, YOU KNOW, YOU CAN -- I'LL DO A WRITTEN ORDER BASED ON THE RECORD AND WHAT I HAVE IN FRONT OF ME. BUT I AM GOING TO REQUIRE THAT AT LEAST THE 30 (B) (6) GO FORWARD.

AND IF YOU ARE PLANNING ON TAKING THOSE OTHER TWO PEOPLE THEN THEY SHOULD GO FORWARD FIRST.  IF YOU ARE GOING TO MAKE A REPRESENTATION THAT YOU'RE NOT GOING TO USE ANY OF YOUR DEPOSITION HOURS ON THEM -- I MEAN, MAYBE YOU WOULD WANT TO DO THE 30 (B) (6), BECAUSE THAT WITNESS CAN TELL YOU MORE ABOUT THESE -- HE'S THE CHIEF TECHNICAL OFFICER, THEN HE MUST KNOW WHAT THE PEOPLE IN RUSSIA ARE DOING, SO THAT THEY ARE DESIGNING ANYTHING.

SO YOU CAN FIND OUT, RIGHT?  AND THEN, YOU CAN USE THAT TO BE ABLE TO SHOW HE IS THE MANAGING AGENT OR NOT.

BUT AT LEAST THAT FIRST HURDLE AS TO WHETHER, YOU KNOW, IT'S TREATED AS AN ACRONIS, INC. EMPLOYEE.  I THINK THE REPRESENTATIONS THEY HAVE MADE IN THE OTHER CASES, AT LEAST FOR PURPOSES OF DISCOVERY, IS ALL ONE AND THE SAME.  SO WE'RE OVER

THAT HURDLE.

MR. HALKOWSKI:  YOUR HONOR IS OVER THAT HURDLE.

THE COURT:  WELL, WE ARE, AT LEAST FOR NOW.  I GUESS YOU COULD ASK JUDGE CHEN.

MR. HALKOWSKI:  YES.

THE COURT:  YOU GENERALLY HAVE THAT RIGHT TO DO THAT. AND SO THEN IN THE MEANTIME, GO AHEAD AND MEET AND CONFER ABOUT HOW, IF THEY WERE TO GO FORWARD, OR PLAN ON THEIR GOING FORWARD, TIMING.  YOU ARE GOING TO FIGURE OUT THE 30 (B) (6)'S DATE.  WHEN YOU ARE GOING TO GO. WHERE YOU ARE GOING TO GO.

MAYBE YOU ARE GOING TO OFFER TO BRING THEM TO THE UNITED STATES, AND MAYBE THAT WILL ALLEVIATE A LOT OF THEIR CONCERNS. RIGHT?

MR. HALKOWSKI:  THAT'S ONE OF THE ISSUES.  I GUESS MR. GENTILHOMME, OBVIOUSLY HE DOES A LOT OF TRAVELING, AND THAT'S WHY WE WERE LOOKING AT INITIALLY THE FIRST WEEK IN MARCH, FIRST OR SECOND WEEK IN MARCH.  BUT WE'LL CONFIRM THAT SHORTLY.

MR. WALL:  AND, YOUR HONOR, I MEAN, I HAD INTENDED TO BRING THAT UP, BECAUSE WE HAVE MET AND CONFERRED ABOUT THAT. AND WE'VE -- IF YOU WANT US TO BRIEF IT OR SOMETHING LIKE THAT, PLEASE LET US KNOW.

THE COURT:  WHAT DO YOU WANT ME -- IF HE'S NOT AVAILABLE, WHAT CAN I DO?  IF YOU HAD LIKE A DEADLINE COMING UP, I COULD SAY:

"WELL, YOU HAVE TO MAKE HIM AVAILABLE."

BUT SINCE YOU DON'T, WHAT WOULD BE MY BASIS FOR ORDERING HIM TO CANCEL WHATEVER ELSE HE HAS SCHEDULED TO MAKE HIMSELF AVAILABLE?

**MR. WALL:**  WELL, ALL I WOULD SAY IS THIS:  FROM SYMANTEC'S PERSPECTIVE WE'VE BEEN ASKING FOR THIS DEPOSITION SINCE AUGUST. WE HAD TO MOVE THE DEPOSITION BECAUSE OF LATE PRODUCTION FROM ACRONIS.  AND NOW A DEPOSITION THAT WAS ORIGINALLY SCHEDULED IN NOVEMBER IS GOING TO BE MOVED TO MARCH.

SO IN OUR MINDS, REGARDLESS OF THE FACT THAT THERE IS NOT YET A FIRM DEADLINE, WE EXPECT THE MARKMAN DECISION -- THE MARKMAN HEARING HAS BEEN HAD. WE EXPECT THE DECISION TO ISSUE. AND OUR FEAR, ESPECIALLY IN VIEW OF THE FACT THAT, YOU KNOW, THERE MAY BE ADDITIONAL DEPOSITIONS AFTER THOSE, THAT THIS IS GOING TO LEAD TO DELAY.  AND IT SHOULDN'T TAKE OVER HALF A YEAR TO GET A DEPOSITION OF THIS GUY DONE.

**MR. HALKOWSKI:**  TYPICAL SCHEDULING CASE. WE HAVE OUR TRIAL SOMETIME IN 2014. SO THERE'S NO FIRE BURNING HERE.

**THE COURT:**  I DON'T KNOW.  YOU ARE GOING TO SEE JUDGE CHEN IN FEBRUARY.  HE'S GOING TO SET THE SCHEDULE. I MEAN, HE'S ACTUALLY ONE OF THE MORE REASONABLE DISTRICT COURT JUDGES, RIGHT, WITH RESPECT TO SCHEDULING?  AND YOU'RE HAPPY TO BE IN FRONT OF HIM.  I WON'T MENTION ANYBODY ELSE.

BUT SHOULD HE SURPRISE US ALL AND SAY:

"DISCOVERY CUTOFF THE END OF APRIL," THEN BY ALL

MEANS COME BACK.

MR. WALL:  OKAY.

THE COURT:  AND I THINK MR. HALKOWSKI WOULD WORK WITH YOU BECAUSE HE KNOWS YOU NEED TO TAKE THIS 30 (B) (6) DEPOSITION. BUT I DON'T SEE ANY BASIS FOR ME ORDERING HIM TO CANCEL HIS, YOU KNOW, OTHER THINGS IF THERE ISN'T ANY DEADLINE.

MR. HALKOWSKI:  I'LL ALSO NOTE, I MEAN, WE DO HAVE MULTIPLE DEPOSITIONS SCHEDULED FOR JANUARY AND FEBRUARY FOR THESE OVERSEAS PEOPLE, THE INVENTORS. PEOPLE THAT WE HAD ACTUALLY ORIGINALLY SCHEDULED FOR DEPOSITION, I BELIEVE, IN LIKE AUGUST OR SEPTEMBER.  BUT, AGAIN, AT SYMANTEC'S REQUEST WE PUSHED THOSE BACK.

WE GAVE THEM DATES IN OCTOBER. WE PUSHED THOSE BACK AGAIN AT THEIR REQUEST.  SO THOSE DEPOSITIONS, THOUGH, I GUESS ARE FINALLY GOING TO GO FORWARD IN JANUARY AND FEBRUARY.  SO THERE ARE OTHER THINGS GOING ON ON THE CALENDAR.  IT'S NOT SOMETHING THAT WE CAN JUST THROW MR. GENTILHOMME INTO THE MIDDLE OF.

THE COURT:  WHERE ARE THOSE DEPOSITIONS TAKING PLACE?

MR. HALKOWSKI:  THERE'S ONE THAT IS GOING FORWARD IN BOSTON, ACTUALLY, NEXT WEEK, FOR ONE OF THE INVENTORS. THERE IS -- I THINK THE OTHER THREE -- THERE ARE THREE OF THEM IN LONDON AND ONE IN -- I WANT TO SAY BELGIUM.

SO, ANYHOW, THESE THINGS ARE ON THE SCHEDULE.

THE COURT:  I WILL WRITE SOMETHING.  BUT IN THE

MEANTIME I THINK WHAT YOU SHOULD DO IS FIGURE OUT YOUR DATE FOR THE 30 (B) (6).  FIGURE OUT IF YOU ARE GOING TO TAKE THE OTHER TWO PERSONS' DEPOSITIONS OR NOT.  IF YOU ARE, YOU SHOULD DO THOSE BEFORE WE GO OVERSEAS AGAIN.

BUT ALSO THEN FIGURE OUT WHERE, ASSUMING THEY WERE GOING FORWARD, WHERE THEY WOULD GO FORWARD.  MAKE YOUR OFFER IF YOU WANT TO BRING THEM HERE AND WHEN.

SO THEY ARE SCHEDULED AND PLANNED.  BUT THEN, SHOULD AFTER YOU TAKE -- THEY TAKE THESE OTHER DEPOSITIONS YOU BELIEVE THEY HAVE NO NEED FOR THESE OTHER PEOPLE, THEN YOU'D MOVE FOR A PROTECTIVE ORDER. OR MAKE YOUR ARGUMENT THAT THE DISCOVERY HAS SHOWN THEY ARE NOT MANAGING AGENTS OR WHATEVER.

BUT I THINK ON WHAT HAS BEEN SHOWN THUS FAR, GIVEN THEIR TITLE AND THE VERY LITTLE INFORMATION THAT I HAVE, AND THE LAW THAT SAYS IF IT'S A CLOSE QUESTION, AT LEAST LET THE DEPOSITION GO FORWARD WITHOUT MAKING THE DETERMINATION OF WHETHER THE CORPORATION WILL BE BOUND BY THEIR TESTIMONY.  I WOULD SAY OKAY. BUT IT'S ALL SUBJECT TO WHAT HAPPENS, WHAT THEY SAY. MAYBE THEY DON'T NEED IT.

THEY HAVE THOSE PRECIOUS DEPOSITION HOURS THAT THEY DON'T WANT TO WASTE IF IT'S UNNECESARY.

**MR. HALKOWSKI:**  WELL, AND I'LL NOTE, I GUESS, IT IS TRUE THAT ONE PERSON HAS, I GUESS, THAT ARCHITECT TITLE.  BUT, AGAIN, THE OTHER THREE, I THINK, ARE EVEN FARTHER AFIELD FROM BEING ANYWHERE CLOSE TO BEING A MANAGING AGENT.

**THE COURT:** WELL, AND THE GUY THAT HAS ONLY WORKED THERE FOR A YEAR, I DON'T KNOW HOW HE WOULD BE USEFUL.  OR HE MIGHT BE CUMULATIVE OR DUPLICATIVE.  AND IT IS -- I THINK THEY -- SINCE THEY CAN'T BE DONE IN MOSCOW AND HAVE TO GO SOMEWHERE ELSE, THAT IS, YOU KNOW, MORE BURDENSOME.

SO I THINK YOU SHOULD THINK ABOUT THAT. BUT SORT OF THEY NEEDED TO GET PAST THIS INITIAL HURDLE.  AND SO NOW WE'RE GOING IN STEPS.  AND IT MAY BE THAT'S ALL YOU NEED.

I THINK THE OTHER THREE WERE SENIOR MANAGING ENGINEERS.

**MR. WALL:**  SENIOR PROGRAM MANAGERS, YES.

**THE COURT:**  BUT THE FACT THAT SOMEBODY RESPONDED TO A CUSTOMER ON AN E-MAIL I DID NOT FIND VERY COMPELLING.

**MR. HALKOWSKI:**  I THINK THAT COUNTS THE OTHER WAY.

**THE COURT:**  PERHAPS. PERHAPS. SO YOU MAY NOT NEED THEM ALL, AND SO YOU SHOULD BE -- BUT, AGAIN, AT LEAST WHAT WE KNOW IS THAT THEY DO HAVE A LIMITATION ON THEIR DEPOSITION HOURS.  AND, YOU KNOW, THEY DON'T WANT TO WASTE THEM.

AND I DON'T KNOW.  IF IT'S A TRANSLATED DEPOSITION, HOW ARE THE HOURS COUNTED?   DOES IT MATTER?

**MR. WALL:**  YOU KNOW, YOUR HONOR, I'M NOT SURE I RECALL WHAT WE AGREED TO IN THE JOINT CASE MANAGEMENT STATEMENT. BUT I THINK IT'S LAID OUT, AND WE CAN SAVE THAT. HOPEFULLY WE DON'T START ARGUING ABOUT THAT, TOO.

**THE COURT:**  I WAS GOING TO SAY MAYBE EVEN IF THEY ARE COUNTED THE SAME, NO MATTER HOW LONG IT TAKES, THAT'S EVEN A

GREATER INCENTIVE FOR THEM TO ACTUALLY REALLY FEEL LIKE THEY NEED THAT DEPOSITION.

**MR. HALKOWSKI:** YES. YES. ALL RIGHT.

**THE COURT:** OKAY. ALL RIGHT. SO DO WE HAVE A PLAN OF SORTS?

**MR. WALL:** YES, YOUR HONOR.

**MR. HALKOWSKI:** YES.

**THE COURT:** ALL RIGHT. THANK YOU.

**MR. WALL:** THANK YOU.

**MR. HALKOWSKI:** THANK YOU, JUDGE.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

STENOGRAPHY CERTIFICATION

"I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
/S/ KATHERINE WYATT
DECEMBER  11, 2012
KATHERINE WYATT

*KATHERINE WYATT*

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224