UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SYMANTEC CORPORATION,

        Plaintiff,

    v.

ACRONIS, INC., *et al.*,

        Defendants.

_____/

No. C-11-5310 EMC

**CLAIM CONSTRUCTION ORDER –
SYMANTEC'S PATENTS**

Plaintiff Symantec Corporation initiated this action against Defendants Acronis, Inc. and Acronis International GmbH (collectively, "Acronis").  Under the current operative complaint, Symantec charges Acronis with infringement of five patents – *i.e.*, the '010 patent, the '365 patent, the '086 patent, the '517 patent, and the '655 patent.  In response, Acronis has filed counterclaims, seeking a declaratory judgment that Symantec's patents at issue are not infringed and further are invalid.  In addition, Acronis has asserted counterclaims for infringement of its own patents.  This order construes terms as used in the claims of Symantec's patents only.  A separate order shall provide claim construction on Acronis's patents.

## I.  DISCUSSION

A.   Legal Standard

Claim construction is a question of law to be determined by the Court.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) ("hold[ing] that in a case tried to a jury, the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim").  "The purpose of claim construction is to 'determin[e] the meaning and

scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

> Words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention. "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent.

*Id.*

> Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). As a general matter, extrinsic evidence such as dictionaries and expert testimony is considered less reliable than intrinsic evidence (*i.e.*, the patent and its prosecution history). *See id.* at 1317-19 (noting that "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence").

B.    '010 Patent

    1.    Claims

        The parties seem to be in general agreement that "[t]he '010 patent discloses methods and systems for providing a user interface that facilitates computer restoration operations and the automatic resource mapping between differing computer configurations of the computer that was backed up and that to which the data is being restored." Docket No. 110 (Symantec's Op. Br. at 2). "Prior to this invention, it was 'difficult for the user to envision the effect of the changes on the configuration prior to actually making the changes on the computer system.'" Docket No. 110 (Symantec's Op. Br. at 2).

**United States District Court**
For the Northern District of California

The claims in the '010 patent that are at issue in this litigation are as follows: 1 and 4-10. The only independent claim is claim 1. Claim 1 provides as follows (with terms to be construed in bold):

> 1.      A computer accessible storage medium comprising a plurality of instructions which, when executed:
>
> present a **graphical view of a first computer system configuration** comprising a first plurality of computer system resources;
>
> concurrent with presenting the graphical view of the first computer system configuration, present a **graphical view of a second computer system configuration** comprising a second plurality of computer system resources;
>
> provide a mechanism to capture data representing at least a first resource of the first plurality of computer system resources from the first computer system configuration and insert the data in the second computer system configuration; and
>
> provide an automatic mapping of resources from the first computer system configuration to the second computer system configuration, wherein the first computer system configuration corresponds to a backed-up computer system and the second computer system configuration corresponds to a computer system that the backup is being restored to.

2.      Terms

a.      graphical view of a first/second computer system configuration ('010 patent, claim)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| a pictorial or text representation of a first/second computer system configuration | a picture of a first/second computer system configuration | a pictorial representation of a first/second computer system configuration which can include text |

Here, the parties' dispute centers on what is meant by the term "graphical." Symantec argues that its construction is appropriate because, as stated in the specification,

> a graphical view of a configuration may refer to a representation of the configuration, where at least a portion of the representation is provided pictorially on a display device using one or more graphical elements.

3

**United States District Court**
For the Northern District of California

> Each graphical element may be a pictorial representation (that is, at least a portion of its meaning is derived from its appearance on the screen). Graphical views and graphical elements may contain text as well.

'010 patent, col. 6:38-45. In response, Acronis does not dispute that a graphical view can include text but contends that text alone cannot constitute a graphical view. *See* Docket No. 121 (Acronis's Resp. Br. at 2) (arguing that "[a] picture is . . . – by definition – more than text"). Symantec takes issue with Acronis's position to the extent that text can be used to represent something – for example, an "X" may be used not as text per se but as a representative of something. *See* Docket No. 127 (Symantec's Reply at 1-2).

The Court finds problems with each party's construction. Acronis's construction, for example, fails to acknowledge that text can be a part of the picture. Symantec's construction, on the other hand, causes some confusion to the extent it incorporates "text representation." The Court adopts the following construction, which effectively accommodates both party's concerns and is consistent with the specification of the '010 patent: "a pictorial representation of a first/second computer system configuration which can include text."

C.   '365 Patent

   1.   Claims

The parties are in general agreement that the invention in the '365 patent provides systems and methods for

> backing up data on a partition of a computer by storing an image of the data in the partition where the data is located. In other words, rather than taking an image of data on partition A and storing it in partition B, the '365 patent teaches that the image of partition A can be stored on partition A.

Docket No. 121 (Acronis's Resp. Br. at 4); *see also* '365 patent, Abstract (describing "systems and methods for storing and recovering images in a computer partition, and more particularly to tools and techniques for placing and extracting images to and from the same partition that is imaged").

The claims in the '365 patent that are at issue in this litigation are as follows: 34, 50, and 52. Each of these claims is an independent claim, except claim 52. The text of the claims is provided below, with terms to be construed in bold.

4

United States District Court

For the Northern District of California

a.    Claim 34

34.    A method of utilizing a partition within a computer system, the method comprising the computer-aided steps of:

    **obtaining a copy of user data** which is stored in the partition; and

    creating an **in-partition image** by at least storing a copy of at least a portion of the user data in at least one image in the same partition.

b.    Claim 50

50.    A computer program storage medium having a configuration that represents data and instructions which will cause at least a portion of the computer system to perform method steps for utilizing a partition within a computer system, the method steps comprising the steps of **locating an image of the partition which is stored in the partition**, and restoring selected user data from the image to the partition.

c.    Claim 52

52.    The configured program storage medium of claim **50**, wherein the method further comprises the step of **verifying the consistency and integrity of the image** before the restoring step.

2.    Terms

a.    "obtaining a copy of user data" ('365 patent, claim 34)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| plain and ordinary meaning | reading data from a previously created image of the partition | reading user data directly from the partition or from a previously created image of the partition |

The parties disagree about what "a copy of user data" means. Acronis contends that there is a difference between "user data" and "copy of user data" – *i.e.*, "[w]hen referring to the original data in the partition that is directly read, the term 'user data' is used, but when referring to the data in a previously created image of the partition, the term 'copy of user data' is used." Docket No. 121 (Acronis's Resp. Br. at 5). In support of this position, Acronis cites to the specification which states that "[t]he obtaining step **702** may read *user data* directly from the partition **300**" and that, "[i]nstead

5

1  of reading user data from locations organized by the file system, the obtaining step **702** may read a

2  *copy of user data* from a previously created image **420** of the partition **300**." '365 patent, col. 1:19-

3  20, 24-27 (emphasis added).

4          The problem with Acronis's position is that it takes the above statements from the

5  specification out of context.  The above statements come from the following paragraph in the

6  specification:

7                During an obtaining step **702**, an implementing program
         obtains *a copy of user data* which is stored in the partition **300**.  This
8        may include all of the user data **614** or it may include selected user
         data, such as selected files and/or subdirectories. . . . The obtaining
9        step **702** may read *user data* directly from the partition **300** . . . .
         Instead of reading user data from locations organized by the file
10       system, the obtaining step **702** may read *a copy of user data* from a
         previously created image **420** of the partition **300**.

11

12  '365 patent, col. 17:13-27 (emphasis added).  The first sentence of the paragraph uses the term

13  "copy of user data."  This shows that "copy of user data" is a term that is loosely used – covering

14  both data read directly from the partition and data read from a previously created image of the

15  partition.

16          On the other hand, the Court also declines to adopt Symantec's approach – *i.e.*, that the Court

17  not provide any construction for the term at all.  As Judge Seeborg has noted, where "it is not at all

18  self-evident from a lay perspective what the meaning of [a term] is, and furthermore, [where] there is

19  some disagreement between the parties as to [the] precise meaning [of a term]," it "cannot simply be

20  left for the jury" but rather "must be construed."  *Rambus, Inc. v. LSI Corp.*, Nos. C 10-05446 RS, C

21  10-05449 RS, 2012 U.S. Dist. LEXIS 138632, at *26-27 (N.D. Cal. Sept. 26, 2012).  The Court

22  adopts the following construction based on the above language from the specification: "reading user

23  data directly from the partition or from a previously created image of the partition."

24  ///

25  ///

26  ///

27  ///

28  ///

6

b. <u>"in-partition image/image of the partition which is stored in the partition"</u>

<u>('365 patent, claims 34, 50)</u>

| Symantec | Acronis | Court's Construction |
|---|---|---|
| a sector-by-sector or cluster-by-cluster copy of data from the partition, excluding the image itself, stored within the partition | a copy of data from the partition, excluding the image itself, stored within the partition; the copy is not limited to a sector-by-sector or cluster-by-cluster copy | a copy of data from the partition, excluding the image itself, created using sector-by-sector or cluster-by-cluster imaging tools and techniques and stored within the partition |

The parties agree that an in-partition image is a copy of data from the partition, excluding the image itself, stored within the partition. *See, e.g.*, '365 patent, col. 5:8-9 (noting that "'in-partition images' are images of a partition stored within the imaged partition"). Their disagreement is whether the copy is limited to a sector-by-sector or cluster-by-cluster copy or can include, *e.g.*, a file-by-file copy. Sectors and clusters are units smaller than files. *See* '365 patent, col. 3:14-20 (stating that "[t]wo basic approaches are used in conventional systems and methods to backup computer data[;] one approach is generally file-oriented, while the other approach deals with files but operates primarily on cluster, sectors, runs, or similar local allocation units which are smaller than files").

Acronis argues that the image may be file-by-file copy, and not just a sector-by-sector or cluster-by-cluster copy, because the word "image" has a broad meaning – *i.e.*, copy or backup – and the '365 patent did not otherwise redefine the term. Acronis asserts that, in fact, the patent equates "image" with "backup" as demonstrated by the following statement found in the specification: "Manufacturers and vendors of computers would often like to provide users with a backup or image of the information they originally loaded on a hard drive." '365 patent, col 3:12-14.

The above statement does indicate that an image may be considered a backup. However, the '365 patent also suggests that "image" and "backup," and their related terms, are not always proxies for one another. For example, the '365 patent makes clear that not all "backups" are done by

**United States District Court**
For the Northern District of California

"imaging." The patent notes that there are two ways to backup computer data: (1) a "file-oriented backup approach," in which "each file is backed up separately," '365 patent, col. 3:20, 35, and (2) an "imaging backup approach," which "restores files but deals primarily in cluster or another file allocation unit which is typically smaller than a file." '365 patent, col. 3:51-55. Although Acronis acknowledges these two means for backup, it conveniently leaves out the fact that the latter approach is deemed an *imaging* backup approach. The question is whether an "image" – as used in the '365 patent – is created through the imaging backup approach only or may be created through the file-oriented backup approach as well.

Symantec argues the former because the specification expressly states that "[t]he images **302** are created using sector-by-sector or cluster-by-cluster imaging tools and techniques, which may be those already known or those hereafter developed." '365 patent, col. 6:51-53. Acronis, however, notes that, the specification states, in the sentence that immediately follows: "However, some embodiments allow users to select specific subdirectories and/or specific files when creating or restoring an image."[1] '365 patent, col. 6:54-46. According to Acronis, this establishes that an image may be created through a file-oriented approach as well.

While Acronis's argument is not unfounded, the Court is not persuaded. The sentence on which Acronis relies simply reflects that a user is able to select, *e.g.*, a file to be copied for backup, but that does not necessarily mean that the copy is created through a file-by-file backup. As Symantec notes, "while a user may interact with the imaging program and images at the level of

---

[1] The full text for the relevant section is as follows:

The present invention relates to computer systems, methods, and configured storage media for storing images onto an imaged partition and for later recovering the images, that is, using them to restore imaged data. The invention is illustrated generally in FIG. **3**. Unlike the conventional imaged partition **100** of FIG. **2**, the novel imaged partition **300** includes one or more images **302** of data **102, 104** from the imaged partition **300**. The images **302** are created using sector-by-sector or cluster-by-cluster imaging tools and techniques, which may be those already known or hereafter developed. However, some embodiments allow users to select specific subdirectories and/or specific files when creating or restoring an image **302**.

'365 patent, col. 6:44-56.

United States District Court
For the Northern District of California

1  files, this has not bearing whatsoever on how those images are *created or managed*, i.e.[,] at the

2  level of sectors and clusters."[2]  Docket No. 166 (Symantec's Supp. Br. at 2) (emphasis added).

3         To the extent that there is some ambiguity in the sentence pinpointed by Acronis, the

4  extrinsic evidence weighs in favor of Symantec.[3]  The specification for the '517 patent (*see infra*)

5  states that "[a]n 'image' is a blockwise image of computer storage, not a file-by-file backup of

6  computer storage.  Sector-by-sector images and cluster-by-cluster images are examples of blockwise

7  images; they are not file-by-file backups."  '517 patent, col. 4:55-58.  Notably, the application for

8  the '517 patent was filed in September 2004, *i.e.*, only a year after the '365 patent was issued;

9  furthermore, the inventor for the '517 patent is also one of the inventors for the '365 patent.[4]  *See*

10  *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 816 (Fed. Cir. 2007) (Moore, J., dissenting)

11  (considering as extrinsic evidence of how those skilled in the art would understand a particular term

12  "another patent application filed within a year of the date of issue of the '441 patent," with the

13  inventor being the same as the inventor in the '441 patent); *see also IMRA Am., Inc. v. IPG*

14  *Photonics Corp.*, No. 06-15139, 2010 U.S. Dist. LEXIS 136394, at *34-35 (E.D. Mich. Dec. 27,

15  2010) (noting that "a patent from a different patent family cannot be considered 'intrinsic evidence'

16  for purposes of claim construction" but considering the patent – which had the same inventors – as

17  potential extrinsic evidence).

18

---

19  [2] In its supplemental brief, Acronis points out that there are references in the specification as
20  to how an image may be *stored* (*e.g.*, contiguously or noncontiguously, as a system file or as an
    image container) but that does not necessarily speak to how the image was *created*.  *See, e.g.*,
21  Docket No. 164 (Acronis's Supp. Br. at 2-3).

22  [3] The Court notes that, as extrinsic evidence, Symantec also offered – as a part of its
    supplemental brief – a declaration from an expert.  Subsequently, Acronis moved to strike the expert
23  declaration as well as "additional evidence" attached to a declaration from Symantec's counsel.
    Docket No. 169 (Acronis's Mot. at 1).  Because the Court does not entertain any of this extrinsic
24  evidence in its order, the motion to strike is denied as moot.

25  [4] In its post-hearing motion to strike, Acronis points out that another of Symantec's patents
    ('the 664 patent) provides, in its specification, that a "'backup image may be created using various
26  types of backup techniques, such as block-level backups or file-by-file backups.'"  Docket No. 169
    (Acronis's Mot. at 7).  However, the application for that patent appears to have been filed in 2008
27  (and ultimately issued in 2012).  Here, the Court is considering what one skilled in the art would
    understand "image" to mean several years earlier.  In this regard, the '517 patent is informative
28  because its temporal proximity to the '365 patent and identity of inventor; the '664 patent is not
    informative.

United States District Court
For the Northern District of California

The Court therefore rejects Acronis's construction and, for the most part, adopts Symantec's construction, although it modifies Symantec's construction slightly to make clear that the *creation* of the image is done on an imaging backup approach: "a copy of data from the partition, excluding the image itself, created using sector-by-sector or cluster-by-cluster imaging tools and techniques and stored within the partition."

       c.     <u>"locating an image of the partition which is stored in the partition" ('365 patent, claim 50)</u>

| Symantec | Acronis | Court's Construction |
|---|---|---|
| plain and ordinary meaning; or<br><br>finding the image of the partition which is stored in the partition | the implementing program finds the image in the partition;<br><br>or<br><br>the implementing program finds the image of the partition which is stored in the partition; a user may select an image so long as the implementing program automatically finds it | finding the image of the partition which is stored in the partition; a user may select an image but the computer system otherwise does the finding |

As indicated above "image of the partition which is stored in the partition" is an in-partition image. Thus, the only question here is what is meant by the term "locating." The parties' main dispute is "whether 'locating' the image requires the use of an 'implementing program.'" Docket No. 110 (Symantec's Op. Br. at 8).

In its brief, Acronis argues that the locating step must be done by an implementing program as opposed to a user, as evidenced by the language of the claim:

> A computer program storage medium having a configuration that represents data and instructions which will cause at least a portion of the computer system to perform method steps for utilizing a partition

United States District Court
For the Northern District of California

1    within a computer system, the method steps comprising the steps of
2    **locating an image of the partition which is stored in the partition**,
     and restoring selected user data from the image to the partition.

3    '365 patent, claim 50.  Acronis also points to the specification, which states in relevant part as

4    follows:

5                To begin restoration, one implementing program checks to see
             if the system **600** is bootable . . . . If it is, the implementing program
6            tries to locate (image locator **620**) at least one image **420**.  If no image
             **420** is found, the program returns an error.  If more than one image
7            **420** is found, the program returns the names of all images.

8    '365 patent, col. 21:20-27.

9            In response, Symantec does not dispute that, as a general matter, the locating step is not

10   performed by a user.  *See* Docket No. 166 (Symantec's Supp. Br. at 6) (indicating that a user may

11   *initiate* the finding step but that the computer system ultimately carries it out).  However, it argues

12   that

13               [t]he addition of a reference to the implementing program" where none
             previously exists creates numerous ambiguities.  It is not clear whether
14           the implementing program must perform just the "locating" step or
             whether it must perform the "restoring" step as well.  Further, the
15           bounds of the implementing program are unclear.  The jury will not
             know whether the implementing program is limited to a particular
16           subroutine or encompasses the entirety of the code that makes up a
             backup and recovery product.  As Acronis'[s] construction does
17           nothing to help clarify the term, it should be rejected.

18   Docket No. 127 (Symantec's Reply at 4).  In supplemental briefing, Symantec provides additional

19   arguments against inclusion of the term "implementing program" – *e.g.*, at various points in the

20   specification, references are made to implementing programs that have functions unrelated to the

21   "locating" step.  Docket No. 166 (Symantec's Supp. Br. at 6).

22           The Court agrees with Symantec that inclusion of the term "implementing program" would

23   not be helpful to the jury and in fact might lead to confusion.  However, a construction should be

24   given to make clear that the locating step, while it may be initiated by a user, is ultimately performed

25   by the computer system.  The Court therefore adopts the following construction: "finding the image

26   of the partition which is stored in the partition; a user may select an image but the computer system

27   otherwise does the finding."  This is consistent with the overall language of the claim and

28   specification.  The Court notes that reference to the "computer system" will not cause the same

\**United States District Court**
For the Northern District of California

confusion as "implementing program" since claim 50 already refers to a computer system.  *See* '365 patent, claim 50 (providing for "[a] computer program storage medium having a configuration that represents data and instructions which will cause at least a portion of the computer system to perform method steps [including the step of locating]").

        d.     <u>"verifying the consistency and integrity of the image" ('365 patent, claim 52)</u>

| Symantec | Acronis | Court's Construction |
|---|---|---|
| plain and ordinary meaning; or checking for errors in the image, for example, by using error checking techniques such as checksums, cyclic redundancy checks or other means known in the art | verifying the consistency . . . of the image: verifying that the data in the image was not modified during the imaging process; *and* verifying the . . . integrity of the image: verifying the contents of the image by utilizing error checking techniques such as checksums, cyclic redundancy checks, or other means known to the art; or verifying the consistency . . . of the image: verifying that the data has not been modified; *and* verifying the . . . integrity of the image: verifying that the data has not been corrupted | checking for errors in the image, for example, by using error checking techniques such as checksums, cyclic redundancy checks, or other means known in the art |

      As a preliminary matter, the parties have a dispute about whether "verifying the consistency" of the image and "verifying the integrity" of the image should be separately construed – *i.e.*, whether

12

United States District Court

For the Northern District of California

1   "there are two distinct verifications."  Docket No. 164 (Acronis's Supp. Br. at 6).  Symantec argues

2   that they should not be; Acronis argues to the contrary.  Symantec's position is more persuasive.

3   First, other than the use of the two terms in the conjunctive, nothing about the claim language itself

4   suggests that the verification process must be broken into two separate steps.  Second, the

5   specification indicates that the verification process is not broken into two separate steps.

> In one embodiment, the file system data is verified when it is
> used, such as before an image is created or updated, after an image is
> created or updated, and when system data is stored in a separate
> location such as in a recovery disk or in a diagnostic and recovery
> partition.  *The consistency and integrity of the image itself is also
> verified when used, such as after it is created or updated, and before
> and after it has been used to restore user data.  This can be performed
> by way of check codes such as checksums or CRC codes embedded in
> the image files and/or the image container.*

11  '365 patent, col. 5:58-67 (emphasis added).[5]

12  Moreover, other parts of the specification do not clearly separate out consistency and

13  integrity.  For example:

> The verifying step **706** verifies the *integrity* of the file system
> data which organizes the user data being placed in the image **420**.
> Note that FIG. **7** shows two additional verifying steps, identified as
> **722** and **732**.  *The three verifying steps perform the same general task,*
> which is to detect *inconsistencies* in the data on which the system **600**
> relies and correct them or otherwise prevent image utilization based on
> the inconsistencies.

18  '365 patent, col. 17:48-55 (emphasis added).

19  The parts of the specification on which Acronis relies do not much to advance its position.

20  For example, Acronis has construed "verifying the consistency" of the image as "verifying that the

21  data in the image was not *modified* during the imaging process" (emphasis added) based on a part of

22  the specification that discusses image *creation* as opposed to image *verification*.  *See* '365 patent,

23  col. 18:43-50 (stating that "[t]he image **420** must be created when the computer has been put into a

24  state that allows exclusive disk **606** access[;] [t]his prevents inconsistencies in the data (modification

---

[5] Notably, the language italicized above also indicates that Acronis's original construction of "verifying the consistency" and "verifying the integrity" is problematic.  In its original construction, Acronis defined only "verifying the integrity" to include check codes such as checksums and so forth.  But clearly, based on the above language, verification of both consistency and integrity can be performed by way of check codes.

1   during the imaging process) and helps ensure that system information such as the Microsoft

2   Windows registry are closed . . . and so can be imaged").  Acronis's constructions are not

3   persuasive.

4           Instead, the Court adopts the alternative construction proposed by Symantec.  The alternative

5   construction is consistent with the language of the specification.  *See* '365 patent, col. 5:62-67

6   (noting that "[t]he consistency and integrity of the image itself is also verified when used" and that

7   "[t]his can be performed by way of check codes such as checksums or CRC does embedded in the

8   image files and/or the image container"); '365 patent, col. 16:6-9 (stating that "[t]he image verifier

9   **622** may also check the integrity of the contents of an image file by utilizing error checking

10  techniques such as check sums, cyclic redundancy checks or other means known to the art").

11  D.      '086 Patent

12          1.      Claims

13          The parties are in general agreement that the invention in the '086 patent is directed to

14  "backup and disaster recovery mechanisms in computer systems," particularly those involving

15  virtual machines.  '086 patent, col. 1:9-10.

16          The claims in the '086 patent that are at issue in this litigation are as follows: 11 and 22.

17  Claim 11 is representative of both claims.

18          Claim 11 is dependent on claim 1.  Claim 1 provides as follows (with terms to be construed

19  in bold):

20                  1.      A computer readable medium storing a plurality of instructions
                    comprising instructions which, when executed:

21
                            (i)     capture **a state of a first virtual machine** executing on
22                  a first computer system, the state of the first virtual machine
                    corresponding to a point in time in the execution of the first virtual
23                  machine, wherein the first virtual machine comprises at least one
                    virtual disk storing at least one file used by at least one application
24                  executing in the first virtual machine, and wherein the state of the first
                    virtual machine comprises the at least one file; and
25
                            (ii)    copy at least a portion of the state to **a destination**
26                  **separate from a storage device to which the first virtual machine is**
                    **suspendable**, wherein **suspending** the first virtual machine is
27                  performed responsive to a suspend command.

28          Claim 11 in turn provides as follows:

14

United States District Court

For the Northern District of California

11.     The computer readable medium as recited in claim **1** wherein (i) comprises creating a new log of uncommitted updates for each virtual disk in the first virtual machine and creating a memory area to capture writes to a memory of the first virtual machine, such that the first virtual machine can continue executing during (ii).

2.     Terms

a.     "a state of a first virtual machine" ('086 patent, claims 11, 22)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| plain and ordinary meaning | a snapshot, at a specific point of time, of all of the information required to recreate a first virtual machine and restore the programs and data running within the first virtual machine at that specific point of time | plain meaning |

As Symantec argues, Acronis's proposed construction is problematic because it contains language contrary to or at least in tension with the language of the claims.  For example, claim 1 states in relevant part as follows:

> capture a state of a first virtual machine executing on a first computer system, the state of the first virtual machine corresponding to a point in time in the execution of the first virtual machine, wherein the *first virtual machine* comprises at least one virtual disk storing at least one file used by at least one application executing in the first virtual machine, and wherein the *state of the first virtual machine* comprises the at least one file . . . .

'086 patent, claim 1 (emphasis added).  As indicated by the language italicized above, the first virtual machine comprises at least one virtual disk storing at least one file used by at least one application, and the state of the first virtual machine comprises the at least one file.  Acronis's use of the word "all" (and the words that follow in its proposed construction) is therefore problematic.

15

Moreover, because the claim on its face already identifies what comprises the "state of the first virtual machine," the Court declines to adopt any additional construction for the term.

      b.    <u>"suspending" (including the related term suspendable) ('086 patent, claims 11, 22)</u>

| Symantec | Acronis | Court's Construction |
|---|---|---|
| temporarily preventing from executing | to pause the execution of a system and capture its state so that execution can be resumed later | temporarily preventing from executing, until execution is resumed |

Symantec has two points of contention with Acronis's construction: (1) that it requires a pausing in the execution of the system (as opposed to the first virtual machine) and (2) that is requires "capturing" (which is covered in step (i), not in step (ii)).  Both of these criticisms have merit.

First, the claims refer to a *first virtual machine* being suspended, not a computer system. *See, e.g.*, '086 patent, claim 1 (providing for "copy[ing] [of] at least a portion of the state to a destination separate from a storage device to which the first virtual machine is suspendable, wherein suspending the first virtual machine is performed responsive to a suspend command").  Notably, in its responsive brief, Acronis concedes that it is the virtual machine that is being suspended.  *See* Docket No. 121 (Acronis's Resp. Br. at 13) (stating that "[t]he term means to pause and also to capture the *state of the machine* so that the *machine* may be resumed after the pause"; also stating that "Symantec distinguished prior art that stored periodic 'checkpoints' to restore after a failure from the claimed 'suspending' in which the patent system pauses the system (i.e., *virtual machine*) and saves the state so it can resume again") (emphasis added).

Second, suspension of the first virtual machine is discussed in the "copying" step and not the "capturing" step:

      1.    A computer readable medium storing a plurality of instructions comprising instructions which, when executed:

United States District Court
For the Northern District of California

          (i)     *capture* a state of a first virtual machine executing on a first computer system, the state of the first virtual machine corresponding to a point in time in the execution of the first virtual machine, wherein the first virtual machine comprises at least one virtual disk storing at least one file used by at least one application executing in the first virtual machine, and wherein the state of the first virtual machine comprises the at least one file; and

          (ii)    *copy* at least a portion of the state to a destination separate from a storage device to which the first virtual machine is suspendable, wherein suspending the first virtual machine is performed responsive to a suspend command.

'086 patent, claim 1 (emphasis added).  Acronis contends that suspending requires capturing, citing in particular that part of the specification which provides as follows: "In another embodiment, the computer system may *capture* by the state *by suspending* each virtual machine to an image and backing up the image of the virtual machine."  '086 patent, col. 2:62-65 (emphasis added).  But the very use of the word "may" indicates that suspension is not required.

          While the Court rejects the above limitations proposed by Acronis, it does incorporate some of the language suggested – *i.e.*, the language related to resuming.  Notably, Symantec's opening brief conceded that there is a "resume" component.  *See* Docket No. 110 (Symantec's Op. Br. at 14) (stating that "the specification describes that suspending a virtual machine temporarily prevents it from executing until it is resumed").  The Court therefore adopts the following construction: "temporarily preventing from executing, until execution is resumed."

///
///
///
///
///
///
///
///
///
///

c.   "a destination separate from the storage device to which the first virtual machine is suspendable" ('086 patent, claims 11, 22)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| a destination separate from a storage device on which the state of the first virtual machine is stopped when the first virtual machine is temporarily prevented from executing; or a destination separate from the storage device that is configured or would be configured to be the target of the suspension at the time a state of the first virtual machine is captured | a location that is not on any storage device to which the virtual machine is suspendable; or a location that is not on any storage device to which the virtual machine is capable of being suspended; or a location that is not on any storage device where the computer is able to save the state of a virtual machine in response to a suspend command | a destination separate from the storage device that is configured or would be configured to be the target of the suspension at the time a state of the first virtual machine is captured |

Acronis argues that its construction is more appropriate because it gives weight to the claim's use of the word "suspendable," which means capable of being suspended. According to Acronis, because "suspendable" is used in the claim, any place where the state of the first virtual machine *may* be saved is "off limits" for the backup copy. *See* Docket No. 164 (Acronis's Supp. Br. at 7); *see also* http://www.oed.com/view/Entry/195154?redirectedFrom=suspendible#eid (last visited January 7, 2013) (defining "suspendible" as "[c]apable of being, or liable to be, suspended"). In response, Symantec agrees that, in principle, the copy must be on a device different from that where the state of the first virtual machine is stored. Symantec's concern, however – as articulated

United States District Court
For the Northern District of California

1   at the hearing and in its supplemental brief – is that, under Acronis's construction, "*any* device could

2   *theoretically* be a device the computer system is 'able to' suspend the state of the virtual machine

3   to."  Docket No. 166 (Symantec's Supp. Br. at 5-6) (emphasis in original).

4        The Court agrees with Symantec's criticism.  Although "suspendable" means capable of

5   being suspended, the term still needs to be taken in context.  Claim 1 covers both a situation where

6   there is suspending *and* a situation where there is not suspending, and thus the patentee used the

7   term "suspendable."  *Compare* '086 patent, claim 11 (covering the situation where there is not

8   suspending only; providing that "the first virtual machine can continue executing during (ii)").

9   Symantec's alternative construction is more consistent with this concept of "suspendable" when

10  viewed in context.

11  E.     '517 Patent

12         1.     Claims

13        The '517 patent provides for "[m]ethods . . . for retargeting captured images to new

14  hardware.  An image taken from a computer having hardware drivers and other system operation in

15  one hardware configuration can be modified to adapt it for use on a computer having different

16  hardware requiring different drivers."  '517 patent, abstract.

17        The claims in the '517 patent that are at issue in this litigation are as follows: 1, 7, 39, and

18  41.  Claims 1 and 39 (both independent) are exemplary of the claims asserted by Symantec.  The text

19  of these claims is provided below, with terms to be construed in bold.

20              a.     Claim 1

21              1.     A computer-implemented method for retargeting a captured
                       image for new hardware, comprising:

22

23                    identifying an image captured from a source computer;

                      obtaining target computer information, the target computer
24              information identifying new hardware for a target computer that is not
                presently installed on the source computer; and

25
                       **while in a pre-boot environment**, modifying the image to
26              match the new hardware identified in the target computer information.

27              b.     Claim 39

28              39.    A system comprising:

United States District Court
For the Northern District of California

a new hardware computer;

a computerized source of hardware information about the new hardware computer;

a local storage device of the new hardware computer which contains an image captured from an old hardware computer, **the image not presently deployed on the new hardware computer**;

system support information for new hardware of the new hardware computer, the system support information corresponding to at least a portion of the hardware information about the new hardware; and

a retargeting program which is capable of retargeting the image **in a pre-boot environment** to make the image include at least a portion of the system support information.

2.    Terms

a.    "[while] in a pre-boot environment" ('517 patent, claims 1, 7, 39)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| while a pre-boot program is running that permits only limited operation of the computer and limited device support | a computer, before it has booted, running a program that permits only limited operation of the computer | while in an environment on a computer during execution of a pre-boot program, a pre-boot program being one that permits only limited operation of the computer and limited device support |

The specification expressly defines what a "pre-boot environment" means – *i.e.*, "an environment on a computer during execution of a pre-boot program."  '517 patent, col. 5:7-8.  What a pre-boot program is is also explained by the specification:

> "Pre-boot programs" permit only limited operation of the computer, and are used to perform operations such as diagnostics or boot image downloads.  Pre-boot programs provide only limited device support, e.g., by providing device drivers only for the display, network, and local storage devices.  Full operation of the computer requires more functionality than the pre-boot program supplies; the increased functionality can be provided by fully booting an image of a complete operating system, for instance.

20

United States District Court

For the Northern District of California

'516 patent, col. 5:8-17.  Given the specification excerpts above, a construction more along the lines of Symantec's is warranted.

In its brief, Acronis points out that the specification states as follows with respect to booting:

> "Booting" a computer means causing the computer to at least begin running low-level software, such as a system diagnostic, a pre-boot program, or an operating system.  A booted environment is one in which booting ends by passing control to users through a command interface, or to application programs through a script or the like.

'516 patent, col. 4:26-31.  But nothing in the above makes Symantec's construction, as a general matter, erroneous or problematic.  Moreover, Acronis's construction does not make clear that the booting process *has started* but simply has not yet been completed yet.

The Court adopts the following construction which is similar to Symantec's but which more closely adheres to the language used in the specification: "while in an environment on a computer during execution of a pre-boot program, a pre-boot program being one that permits only limited operation of the computer and limited device support."

      b.    <u>"the image not presently deployed on the new hardware computer" ('517 patent, claim 39)</u>

| Symantec | Acronis | SBW Proposed Construction |
|---|---|---|
| not presently running an operating system obtained from inside the image of the old hardware computer on the new hardware computer; or<br><br>not presently running an operating system obtained from inside the image on the new hardware computer | plain meaning | not presently running an operating system from inside the image on the new hardware computer |

The specification states as follows regarding the term "deploying":

United States District Court

For the Northern District of California

> "[D]eploying" an image on a given computer means running an operating system obtained from inside the image.  Merely copying an image into a computer's local storage does not deploy the image, although the image must be on the computer before it can be deployed. . . . One way to deploy an image onto a computer is to copy the image onto the computer and to then boot into the image, which passes control of the computer to the image's operating system.

'517 patent, col. 4:32-43.

Based on its brief, Acronis seems to have objected to Symantec's construction because it uses "extraneous language" and "unnecessary . . . verbiage."  Docket No. 121 (Acronis's Resp. Br. at 17).  Acronis asserts: "Were Symantec genuinely interested in preserving the integrity of its definition, it would have simply defined the phrase as 'the image not presently *running an operating system from inside the image* on the new hardware computer.'"  Docket No. 121 (Acronis's Resp. Br. at 17) (emphasis in original).  It appears that, thereafter, Symantec tried to see if the parties could compromise by proffering the following construction: "'not presently running an operating system obtained from inside the image on the new hardware computer.'"  Horan Reply Decl., Ex. A (e-mail).  Symantec explained that "[w]e deleted 'the image' from Acronis'[s] proposed construction because, after reflection, we do not believe that it is accurate to state that the image runs an operating system."  Horan Reply Decl., Ex. A (e-mail).  Acronis rejected the compromise, however, simply sticking to its position that the plain meaning should be adopted.  But where "it is not at all self-evident from a lay perspective what the meaning of [a term] is, and furthermore, [where] there is some disagreement between the parties as to [the] precise meaning [of a term]," it "cannot simply be left for the jury" but rather "must be construed."  *Rambus*, 2012 U.S. Dist. LEXIS 138632, at *26-27.

Because Symantec's compromise construction is reasonable and entirely consistent with the specification, the Court hereby adopts it.

F.    '655 Patent

    1.    Claims

The parties are in general agreement that "[t]he '655 patent is directed to a backup system that utilizes a 'catalog' containing information as to where the backed-up data objects are located."  Docket No. 121 (Acronis's Resp. Br. at 17); *see also* '655 patent, Abstract (describing

22

1    "[s]ynthesized backup set catalogs," which are "created to more efficiently create synthetic full

2    backups of a data volume or to more efficiently restore a data object of the data volume").

3          The only claim in the '655 patent that is at issue in this litigation is claim 7.  Claim 7

4    provides as follows (with terms to be construed in bold):

>    7.    A **computer readable medium storing instructions**
>    **executable by a computer system**, wherein the computer system
>    implements a method in response to executing the instructions, the
>    method comprising:
>
>          creating a first **backup of a data volume**, wherein the data
>    volume comprises first and second data objects;
>
>          creating a second backup of the data volume after modification
>    of the second data object but before modification of the first data
>    object;
>
>          **creating a catalog** after modification of the second data object
>    but before modification of the first data object, wherein the catalog
>    contains **information indicating that backup copies of the first and**
>    **second data objects are contained in the first and second backups,**
>    **respectively**.

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

2.      Terms

     a.      "catalog" ('655 patent, claim 7)

| Symantec | Acronis | SBW Proposed Construction |
|---|---|---|
| data structure identifying the locations of backed-up data objects enabling synthesis of a full backup; <br> or <br> data structure identifying the locations of backed-up data objects used to synthesize a full backup | a list containing a separate entry for each file in the data volume; <br> or <br> a list containing a separate entry for each data object in the data volume; <br> or <br> a list containing a separate entry for each file in the data volume and identifying the location of each file in the data volume[6] | plain meaning |

There are various disputes between the parties over the construction of the term "catalog." The critical ones boil down to (1) whether a catalog must be a list and (2) whether a catalog must have a separate entry for each data object.

The Court agrees with Symantec that there is nothing about the invention that suggests that a catalog must be in the form of a list – *i.e.*, being a list is not an essential feature.  *See* Docket No. 127 (Symantec's Reply at 11-12).  Notably, Acronis has pointed to only one part of the specification that is suggestive of the word "list": "When the backup server **18** creates the full backup set **1**, backup server **18** also creates catalog **36(1)** listing the files copied to tape **32(1)**."  '655 patent, col.

---

    [6] Symantec has objected to the second alternative construction offered by Acronis as part of its supplemental brief.  *See* Docket No. 166 (Symantec's Supp. Br. at 7-8).

1  3:21-23.  Even if this statement were enough to equate the term "catalog" with "list," "list" in and of

2  itself is hardly more illuminating than the word "catalog."

3          The slightly harder question is whether a catalog must have a separate entry for each data

4  object.  Acronis contends that there must be separate entries in order for the invention claimed to be

5  practiced: "[H]aving a list containing a separate entry for each file permits the system to avoid using

6  multiple catalogs (the goal of the patent) and access 'only *one* synthesized catalog to learn the

7  location within the backup sets of all files needed to create the synthetic full backup."  Docket No.

8  121 (Acronis's Resp. Br. at 19) (emphasis added).  Acronis also points to places in the specification

9  where a catalog is composed of "n entries corresponding to the n files [or data objects]."  '655

10 patent, col. 7:18-19; *see also* '655 patent, col. 3:23-24 (stating that, "[a]s shown in FIG. **3**, catalog

11 **36(1)** includes n entries corresponding to the n files [or data objects]").  But nowhere does Symantec

12 point to anywhere in the specification which states that *the* invention or the *present* invention

13 consists of a catalog composed of n entries corresponding to the n files.  *See American Med. Sys.,*

14 *Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1366 (Fed. Cir. 2010) (noting that "we have repeatedly held that

15 'the use of the words "the present invention" can be read to limit the invention to what is described

16 as such'"); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (noting

17 that "a fuel filter was not merely discussed as a preferred embodiment"; rather, "[o]n at least four

18 occasions, the written description refers to the fuel filter as 'this invention' or 'the present

19 invention'").  In fact, as Symantec points out, the specification actually states in the "Summary of

20 the Invention" section, that, "[i]n *one* embodiment, the synthesized backup set catalog comprises n

21 entries corresponding to n data objects."  '655 patent, col. 5:16-17 (emphasis added).  To the extent

22 Acronis argues that the fact of only one embodiment suggests that limitations in that embodiment

23 are inherent in the invention, that argument is without merit.  The Federal Circuit has expressly

24 rejected the assertion that, "where only one embodiment is disclosed in the specification, claim

25 terms are [necessarily] limited to the embodiment disclosed."  *Teleflex, Inc. v. Ficosa N. Am. Corp.*,

26 299 F.3d 1313, 1326 (Fed. Cir. 2002).  Indeed, the Federal Circuit has stated that, "even where a

27 patent describes only a single embodiment, claims will not be read restrictively unless the patentee

28 has demonstrated a clear intention to limit the claim scope using words or expressions of manifest

United States District Court

For the Northern District of California

25

United States District Court

For the Northern District of California

1    exclusion or restriction." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111,

2    1117 (Fed. Cir. 2004) (internal quotation marks omitted); *see also Teleflex*, 299 F.3d at 1328 (Fed.

3    Cir. 2002) (noting that "[t]he record is devoid of 'clear statements of scope' limiting the term

4    appearing in claim 1 to having 'a single pair of legs'"). No such intention is established here.

5    Finally, it is worth noting that Acronis could have, but did not, offer any expert evidence to support

6    its contention that a catalog must have n entries corresponding to n file in order for the invention to

7    work.

8          Accordingly, the Court declines to adopt any of the constructions offered by Acronis. The

9    Court, however, also declines to adopt either of Symantec's constructions. The term "data structure"

10   as used by Symantec is not a helpful definition; as for Symantec's description of what the catalog

11   does, that is essentially covered in the language of the claim. *See Atser Research Techs., Inc. v.*

12   *Raba-Kistner Consultants, Inc.*, No. SA-07-CA-93-H, 2009 U.S. Dist. LEXIS 25294, at *31-32

13   (W.D. Tex. Mar. 2, 2009) (rejecting defendant's construction of the term "client computer" because

14   it "includ[ed] the surrounding words of the claim" which was "redundant and unnecessary").

15         Accordingly, the Court declines to provide a construction for the term "catalog" other than to

16   reject the limitations proposed by Acronis.

17               b.    "creating a catalog" ('655 patent, claim 7)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| plain and ordinary meaning | generating a new catalog | plain meaning |

21         Here, the parties' dispute is whether Acronis's inclusion of the word "new" is appropriate.

22   Symantec argues that it is not. According to Symantec, it is "contrary to the teachings of the

23   specification, which explicitly contemplates creating a catalog by modifying a previously existing

24   catalog." Docket No. 110 (Symantec's Op. Br. at 21). In support, Symantec cites the following part

25   of the specification:

26               Information from a previously created synthesized catalog is
             carried forward or copied to create the newest synthesized catalog.
27           For example, synthetic catalog **116(2)** may be created by copying the
             contents of synthetic catalog **116(1)** and then overwriting entry **2** with
28           the new entry **2** shown in catalog **116(2)**.

'655 patent, col. 7:61-66.

In response, Acronis does not dispute that generation of a catalog can be related to a previously existing catalog.  "The term 'new' simply means that the catalog did not exist previously."  Docket No. 121 (Acronis's Resp. Br. at 20).  Acronis also points out that the specification above also uses "new" language – *i.e.*, "carried forward or copied to create the *newest* synthesized catalog."  '655 patent, col. 7:62-63 (emphasis added).

At the end, the issue is really whether the term "new" can be misleading.  The Court agrees with Symantec that it could be.  Indeed, Symantec has pointed out that at least one dictionary definition for "new" (admittedly, the fifth definition) is "different from one of the same category that has existed previously."  Horan Decl., Ex. B (definition from Merriam-Webster's Collegiate Dictionary).

Accordingly, the Court declines to construe the term "creating a catalog," other than to indicate that Acronis's construction is not proper.  The Court need not define "creating" as the parties do not appear to have a dispute as to what that term means.

c.  "information indicating that backup copies of the first and second data objects are contained in the first and second backups, respectively" ('655 patent, claim 7)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| plain and ordinary meaning | information specifying the location of the backup copy of the first data object within the first backup and specifying the location of the backup copy of the second data object within the second backup | plain meaning |

Claim 7 provides that the catalog contains "the information indicating that backup copies of the first and second data objects are contained in the first and second backups, respectively."  '655

United States District Court

For the Northern District of California

1   patent, claim 7.  As Symantec argues, it appears that "[t]he only change that Acronis'[s] construction

2   provides is to add the requirement that the information must 'specify the location' *within the*

3   *respective backups* where the information is located.  But the plain language only requires that the

4   information identifies that the first backup contains the first data object and the second backup

5   contains the second data object."  Docket No. 127 (Symantec's Reply at 13) (emphasis in original).

6   "[T]here is no reason why the location information could not be included in another location, such as

7   within the backup itself."  Docket No. 127 (Symantec's Reply at 14).

8        The cites that Acronis provides to the specification do not establish otherwise.  While a

9   catalog may contain information providing "the location *within the backup sets* of all files needed to

10  create the synthetic full backup," '655 patent, cols. 8:67-9:1 (emphasis added), as Symantec argues,

11  it need not.

12       Accordingly, the Court does not construe the term, other than to indicate that Acronis's

13  construction is not proper.

14            d.     "backup of [a/the] data volume" ('655 patent, claim 7)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| collection of data from a data volume for purposes of recovery | a copy of all the files in the data volume; <br> or <br> a copy of all the data objects in the data volume | collection of data from a data volume for purposes of recovery |

22       Acronis takes the position that a backup must include *all* the files or data objects in the data

23  volume.  In contrast, Symantec takes the position that a backup can include all the files or data

24  objects or it can include *less* than all the files or data objects.  In other words, Symantec's contention

25  is that the generic term "backup" broadly includes all backups – full backups as well as partial or

26  incremental backups.

27       Symantec's argument is more persuasive.  Its assertion that backups includes all backups,

28  whether full or partial/incremental, is supported by the specification:

United States District Court

For the Northern District of California

> Backup operations create backup sets (i.e., copies of one or more files of the data volume) that may be either full or incremental.  A full backup set means that all of the files in the data volume are copied, regardless of how recently they have been modified or whether a previous backup set exists.  An incremental backup means that only files of the data volume that have been changed since some previous event (e.g., a prior full backup or incremental backup) are copied.

'655 patent, col. 1:57-64.  Given that "full backup" is specifically defined as a copy of *all* files (or data objects), the generic term "backup" means something different.  *Cf. Phillips*, 415 F.3d at 1314 (noting that "the context in which a term is used in the asserted claim can be highly instructive – *e.g.*, the use of the term "steel baffles" "strongly implies that the term 'baffles' does not inherently mean objects made of steel").

Accordingly, the Court rejects Acronis's construction and adopts Symantec's instead.

> e.    "computer readable medium storing instructions executable by a computer system" ('655 patent, claim 7)

| Symantec | Acronis | Court's Construction |
|---|---|---|
| plain and ordinary meaning | hardware storage elements, such as RAM and disk memory, containing the instructions that are executed by a computer system, but does not include transmission medium, carrier waves or the like | [construing only the term "computer readable medium"] hardware storage elements, such as (but not limited to) RAM and disk memory |

Here, the parties' basic dispute is over what "computer readable medium" means.  Acronis takes its construction from a statement that the patent examiner made during prosecution – *i.e.*, that "'computer readable medium' is taken to mean hardware storage elements such as RAM, Disk memory, etc.  The 'computer readable medium' would not include 'transmission medium,' 'carrier waves,' or the like."  Docket No. 121 (Acronis's Resp. Br., Ex. A at 5)).  Acronis emphasizes that the patent applicant was silent in response to the examiner's statement which leads to a presumption

United States District Court

For the Northern District of California

1  that it agreed with the examiner's understanding of the term.  *See* Docket No. 121 (Acronis's Resp.

2  Br. at 23 & nn.17-18).

3          In response, Symantec does not dispute that Acronis's definition is technically correct, *see,*

4  *e.g.*, Docket No. 127 (Symantec's Reply at 15) (agreeing that "'computer readable medium' does not

5  include transmission media such as carrier waves"), but argues that it will only end up confusing the

6  jury, in particular, by providing new terms such as "transmission medium" and "carrier waves."

7  Symantec also argues that the Acronis has provided a "non-exclusive list of computer-readable

8  media that could be used" which could further be confusing.  *See Cisco Sys. v. Teleconference Sys.,*

9  *LLC*, No. C 09-01550 JSW, 2011 U.S. Dist. LEXIS 136328, at *26-27 (N.D. Cal. Nov. 23, 2011)

10  (agreeing with Defendants that "Plaintiffs' construction to the extent it includes an unexhausted list

11  of examples of . . . subscriber-specific settings [is] unnecessary and confusing to the jury";

12  "therefore reject[ing] Plaintiffs' proposed construction to the extent they include examples of such

13  settings").

14          The Court is sympathetic to Symantec's first argument.  "Transmission medium" and

15  "carrier waves" are undefined terms, and they do not appear to be anywhere in the patents.

16  However, the Court does not see a jury being confused if some examples of computer storage media

17  are provided, especially if it is made clear that these are nonexhaustive examples.  At the very least,

18  a jury might find it helpful to know that a "computer readable medium" is a hardware storage

19  element.  The Court therefore adopts the following construction for the term "computer readable

20  medium" only (which is the only portion of the above that is in dispute): "hardware storage

21  elements, such as (but not limited to) RAM and disk memory."

22                              **II.   CONCLUSION**

23          The disputed claim terms of the patents-in-suit are hereby construed as set forth above.

24          IT IS SO ORDERED.

25

26  Dated:  February 27, 2013

27                                    _____
                                      EDWARD M. CHEN
                                      United States District Judge
28

30