UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION, | No. C-11-5310 EMC |
| Plaintiff, | |
| v. | **CLAIM CONSTRUCTION ORDER – ACRONIS'S PATENTS** |
| ACRONIS, INC., *et al.*, | |
| Defendants. | |

Plaintiff Symantec Corporation initiated this action against Defendants Acronis, Inc. and Acronis International GmbH (collectively, "Acronis"). Under the current operative complaint, Symantec charges Acronis with infringement of five patents. In response, Acronis has filed counterclaims, seeking a declaratory judgment that Symantec's patents at issue are not infringed and further are invalid. In addition, Acronis has asserted counterclaims, maintaining that Symantec infringes two of Acronis's patents, namely, the '211 patent and the '380 patent. *See* Docket No. 93 (counterclaims); Docket No. 701 (joint claim construction statement). This order construes terms as used in the claims of Acronis's patents only. A separate order shall provide claim construction on Symantec's patents.

## I. FACTUAL & PROCEDURAL BACKGROUND

A claim construction hearing was held on November 20, 2012. Approximately two months later, Acronis moved to amend its counterclaims. One of the amendments sought was a dismissal of the '211 patent infringement claim. Symantec does not oppose dismissal of the '211 claim in principle; the only dispute between the parties is whether the dismissal should be with or without

prejudice. Accordingly, the Court shall construe only the terms identified by the parties with respect to the '380 patent.

The '380 patent describes "[a] system for data backup [which] includes a storage device, a backup storage device, and an intermediate storage device." '380 patent, Abstract. Although there are multiple claims at issue for the '380 patent, the main claims that contain the terms to be construed are as follows. Terms to be construed have been bolded.

A.   Claim 30

> 30.   A system for data backup, comprising:
>
> a storage device;
>
> a **backup storage device**; and
>
> an **intermediate storage device**,
>
> wherein, a backup procedure is performed on-line and copies **data blocks** from the storage device into the backup storage device,
>
> wherein, when a write command is directed to a **data storage block** identified for backup that **has not yet been backed up**, the identified data storage block is copied from the storage device to the intermediate storage device, the write command is executed on the identified data storage block from the storage device, and the data storage block is copied from the intermediate storage device to the backup storage device, and
>
> wherein, in case of an error accessing a block on the storage device, the block is marked as invalid.

B.   Claim 36

> 36.   The system of claim 31,[1] wherein the system:
>
> **suspends a write command** to the storage device during the data backup process if the intermediate storage device has reached a selected data capacity; and
>
> copies a selected amount of data from the intermediate storage device to the backup storage device.

///

///

///

---

[1] Claim 31 provides: "The system of claim 30, wherein the intermediate storage device is external to a file system of a computer that includes the storage device."

## II. DISCUSSION

### A. Legal Standard

Claim construction is a question of law to be determined by the Court. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) ("hold[ing] that in a case tried to a jury, the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim"). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

> Words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention. "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent.

*Id.*

> Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

### B. "intermediate storage device" (claims 30, 31-32, 34, 36)

| Acronis | Symantec | Court's Construction |
|---|---|---|
| plain meaning | storage device that stores data storage blocks prior to storage on the backup storage device | plain meaning |

As a preliminary matter, the Court notes that Symantec's construction is not unreasonable to the extent it is based on the language of the claims. *See Brookhill-Wilk 1, LLC v. Intuitive Surgical,*

3

*Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003) (noting that "the context of the surrounding words of the claim . . . must be considered in determining the ordinary and customary meaning of those terms"); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (noting that "the context in which a term is used in the asserted claim can be highly instructive – *e.g.*, the use of the term "steel baffles" "strongly implies that the term 'baffles' does not inherently mean objects made of steel"). For example, claim 30 of the '380 patent provides for a system for data backup, comprising a storage device, a backup storage device, and an intermediate storage device

> wherein, when a write command is directed to a data storage block identified for backup that has not yet been backed up, the identified data storage block is copied from the storage device to the *intermediate storage device*, the write command is executed on the identified data storage block from the storage device, and the data storage block is copied from the *intermediate storage device* to the backup storage device . . . .

'380 patent, claim 30 (emphasis added).

Nevertheless, the Court declines to adopt Symantec's construction because it is redundant given the surrounding words of the claim – that is, the surrounding claim language already specifies that the intermediate storage device stores data storage blocks prior to storage on the backup storage device. *See Atser Research Techs., Inc. v. Raba-Kistner Consultants, Inc.*, No. SA-07-CA-93-H, 2009 U.S. Dist. LEXIS 25294, at *31-32 (W.D. Tex. Mar. 2, 2009) (rejecting defendant's construction of the term "client computer" because it "includ[ed] the surrounding words of the claim" which was "redundant and unnecessary"). *Compare Fastek, LLC v. Steco*, No. 10 CV 0972 MMA (CAB), 2011 U.S. Dist. LEXIS 37922, at *21 (S.D. Cal. Apr. 6, 2011) (stating that "the Court's inclusion of the word 'temporarily' [in the construction of a term] makes clear what is otherwise impliedly present in the surrounding claim language"). For the same reason, the Court declines to adopt any other specific construction for the term "intermediate storage device."

///
///
///
///
///

4

C.    "data blocks" (claims 30, 42)

| Acronis | Symantec | Court's Construction |
|---|---|---|
| plain meaning; or blocks for data storage[2] | numbered units of data for reading and writing to the storage device at the block-level | blocks containing data |

Acronis takes issue with three limitations in Symantec's construction: (1) that the data blocks must be "numbered" (rather than typically associated with a number or label); (2) that the data blocks must be for "reading and writing" (*i.e.*, writing alone is sufficient); and (3) that the data blocks must be associated with the "storage device" (as opposed to *any* storage device, including the intermediate storage device or backup storage device).

1.    Numbered Limitation

Acronis's first objection has merit. The specification expressly states: "Typically, each data block is associated with a number or label corresponding to the type of operation to be performed." '380 patent, col. 9:55-57. That means a data block can be labeled, not just numbered. Moreover, a data block is simply associated with a number or label; there is no requirement that the data block actually be numbered or labeled. Finally, the word "typically" indicates that a data block may not even be numbered or labeled or associated with a number or label.

Admittedly, at another point in the specification, reference is made to numbering. *See* '380 patent, col. 9:14-16 (stating that "[t]he sequence of the blocks in the storage is ordered and each block has its own number"). However, that reference does not detract from the above statement in the specification that refers to numbering *or* labeling.

2.    Reading and Writing Limitation

Acronis objects to the "reading and writing" limitation proposed by Symantec because it suggests that both reading and writing are required when in fact "data may be written and never

---

[2] Acronis presented the alternative construction at the hearing.

5

read." Docket No. 109 (Acronis's Op. Br. at 10). Acronis emphasizes: "[T]he claim language requires only writing – and for good reason. If the backup copy is never used, the data will never be read." Docket No. 128 (Acronis's Reply at 11).

In response, Symantec does not dispute that, for purposes of the invention, data may be written and never read. Symantec's only argument is that its "construction that the data is 'for reading and writing' simply describes the purpose of the blocks." Docket No. 122 (Symantec's Resp. Br. at 7). According to Symantec,

> Acronis'[s] contention that the inclusion of the words 'reading *and* writing' in the definition requires that both 'reading and writing' occur together or not at all is unfounded. Acronis ignores that the construction states that the data is '*for* reading and writing.' Thus the data's *purpose* is 'for' both reading and writing, but reading and writing need not necessarily occur together.

Docket No. 122 (Symantec's Resp. Br. at 7) (emphasis in original). The difficulty with Symantec's position is that the mere use of the word "for" does not clearly indicate that that is with respect to the data's *purpose* only. Symantec's proposed construction is confusing and invites an excessively narrow interpretation of the term.

### 3. Storage Device Limitation

Finally, Acronis objects to Symantec's construction because it limits the data blocks to a specific location – *i.e.*, the storage device only, as opposed to *any* storage device, including the intermediate storage device or the backup storage device. *See* Docket No. 109 (Acronis's Op. Br. at 10). Acronis takes the position that data blocks can be stored in any location. *See* Docket No. 128 (Acronis's Reply at 10).

The Court finds Acronis's position persuasive. Nothing in the language of the claim suggests that a data block is limited to the storage device only. Indeed, claim 30 notes that data blocks are copied "from the storage device into the backup storage device." '380 patent, claim 30. To the extent Symantec argues that claim 1 of the '380 patent supports its position, *see* Docket No. 122 (Symantec's Resp. Br. at 6), it is incorrect. In claim 1 of the '380 patent, there is a reference to "a storage device operable to store block data" and then a reference to "a backup storage device operable to store block data."

#### 4. Summary

The Court rejects Symantec's construction for the reasons stated above. However, the Court also rejects Acronis's suggestion that the Court rest on plain meaning as a construction for "data blocks." The term "data blocks" is not readily apparent to a layperson. The Court construes "data blocks" to mean "blocks containing data." Acronis's alternative construction – *i.e.*, blocks for data storage – is not unreasonable to the extent the parties seem to agree that data blocks and data storage blocks are the same thing. However, Acronis's alternative construction is problematic because it elevates the storage component of a block over its data content. *See* Docket No. 128 (Acronis's Reply at 13) (admitting that "data blocks" (as well as "data storage blocks," discussed below) "may refer to either content or, additionally, containers for the data (blocks)").

D.   "data storage block(s)" (claim 30)

| Acronis | Symantec | Court's Construction |
| --- | --- | --- |
| plain meaning | data blocks (construed above) | blocks containing data |

The parties agree that there is no difference between "data blocks" and "data storage blocks." *See* Docket No. 128 (Acronis's Reply at 13 n.2) (stating that "[t]he parties agree that 'data storage block(s)' and 'data blocks' (but not 'block data') may be used interchangeably"). Accordingly, the Court construes "data storage block(s)" in the same way that it construed "data blocks."

E.   "suspending/suspends a write command" (claim 36)

| Acronis | Symantec | Court's Construction |
| --- | --- | --- |
| plain meaning; or temporarily halting/halts execution of a write command before it resumes | temporarily preventing/prevents a write command from executing | temporarily halting/halts execution of a write command before it resumes |

Initially, the parties' dispute seemed to center on "whether 'suspending' means that the write command is only temporarily prevented from executing or whether it also encompasses the situation

7

1 where a write command is completely aborted, as in the case of a system crash." Docket No. 122
2 (Symantec's Resp. Br. at 3-4). Symantec advocated in favor of the former.

3       In its reply brief, Acronis seems to have conceded that a complete abortion is not covered by
4 the term "suspend." Acronis, however, asks the Court (to the extent it is inclined to construe the
5 term instead of resting on plain meaning) to use the word "halt" rather than "prevent" because the
6 latter term is "unduly limiting" in that "'preventing,' even if temporarily, excludes commands that
7 may have started executing and then were suspended mid-way. It includes only commands that
8 never started executing. Contrary to Symantec's argument, suspending mid-way is not necessarily
9 related to system crashes and simply depends on when the suspend command was issued." Docket
10 No. 128 (Acronis's Reply at 14).

11       The Court agrees with Acronis that the use of the term "preventing" is problematic.
12 However, the Court does not agree with Acronis that the term "suspending" is not in need of
13 construction, not only because "it is not at all self-evident from a lay perspective what the meaning
14 of [the term] is" but also because "there is some disagreement between the parties as to [the] precise
15 meaning [of the term]." *Rambus, Inc. v. LSI Corp.*, Nos. C 10-05446 RS, C 10-05449 RS, 2012 U.S.
16 Dist. LEXIS 138632, at *26-27 (N.D. Cal. Sept. 26, 2012). The Court adopts Acronis's alternative
17 construction, particularly given that that construction is consistent with Symantec's position in its
18 papers that "[t]he specification makes clear that 'suspending/suspends' involves a write command
19 being prevented from executing *and then being allowed to continue*." Docket No. 122 (Symantec's
20 Resp. Br. at 4) (emphasis added).

21 F.    "not yet been backed up" (claim 30)

| Acronis | Symantec | Court's Construction |
|---|---|---|
| plain meaning | not yet copied to the backup storage device | not yet been put into the backup process |

26       In support of its construction, Symantec relies on the specification. Most notably, the
27 specification states:

8

> During this [backup] process, . . . the file system data subject to backup may be in the two different states: (1) data that is already backed up **340** to the storage; and (2) data that is not yet backed up, but only scheduled for backup **350**. When backup is completed, . . . all of the data is now located in the backup storage **370** . . . .

'380 patent, col. 10:33-37.

Acronis takes issue with Symantec's construction because it does not take into account that "the backup process starts with the data copied to the intermediate storage device," Docket No. 128 (Acronis's Reply at 15), as reflected by the claim language:

> wherein, when a write command is directed to a data storage block identified for backup that has not yet been backed up, the identified data storage block is copied from the storage device to the intermediate storage device, the write command is executed on the identified data storage block from the storage device, and the data storage block is copied from the intermediate storage device to the backup storage device . . . .

'380 patent, claim 30. Symantec does not really dispute that the backup process begins with data being copied to the intermediate storage device; Symantec argues, however, is that "[t]he intermediate storage device is not intended for backup; it is merely a temporary storage location before the device is copied to the backup storage device." Docket No. 122 (Symantec's Resp. Br. at 3).

The Court finds Acronis's position more persuasive. There is no real dispute that backup is completed when the data is located in the backup storage device, but the phrase "not yet been backed up" does not necessarily require that the backup has been finished. Nothing in the claim language or specification requires such. The Court thus construes the term "not yet been backed up" as follows: "not yet been put into the backup process."

### III. CONCLUSION

The disputed claim terms of the patents-in-suit are hereby construed as set forth above.

IT IS SO ORDERED.

Dated: February 27, 2013

_____
EDWARD M. CHEN
United States District Judge