Pages 1 - 37

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

| | | |
|---|---|---|
| SYMANTEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. C 11-5310 EMC |
| | ) | |
| ACRONIS, INC. and ACRONIS INTERNATIONAL GMBH, | ) | |
| | ) | |
| | ) | San Francisco, California |
| Defendants. | ) | Thursday |
| | ) | February 28, 2013 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**      Quinn Emanuel Urquhart & Sullivan, LLP
                    50 California Street, 22nd Floor
                    San Francisco, California 94111
              **By:  Eric E. Wall, Esquire, Esquire**

**For Defendants:**     Fish & Richardson P.C.
                    12390 El Camino Real
                    San Diego, California 92130
              **By:  Thomas L. Halkowski, Esquire**

**Reported By:**    *Katherine Powell Sullivan, CSR #5812*
                *Official Reporter - U.S. District Court*

P R O C E E D I N G S

**FEBRUARY 28, 2013**                                    **3:36 P.M.**

**THE CLERK:**  Calling case C 11-5310, Symantec versus Acronis.

Counsel, please come to the podium and state your name for the record.

**MR. WALL:**  Eric Wall of Quinn Emanuel for plaintiff Symantec.

**THE COURT:**  All right.  Thank you, Mr. Wall.

**MR.  HALKOWSKI:**  Good afternoon, Judge.

Tom Halkowski with Fish & Richardson on behalf of the Acronis parties.

**THE COURT:**  Thank you, Mr. Halkowski.

Hopefully, this argument won't be quite as exciting as the last one.

**MR. HALKOWSKI:**  Well, actually, I don't know how you want to proceed, but I did have a few thoughts that might help proceed more efficiently.

**THE COURT:**  Good.  All right.

**MR. HALKOWSKI:**  Trying to think a little bit outside the box on some of these things.

So the first thing, there's a number of things that we've got.  We've got the motion to amend.  We've got the motion with regard to Magistrate Judge Corley's decision and, of course, the CMC.

On the motion to amend, from our perspective it seemed the simplest approach would be simply to, obviously, just grant both motions.

They've got a motion to amend, that's just about now completely briefed as well.  We didn't really have any real objection to that.  In fact, we had proposed a stipulation. And so that was our proposal on that.

And to the extent that there's an issue on dropping of the '211, we think without prejudice is the appropriate thing, since they don't have a counterclaim.  And, frankly, there's no additional -- was no additional expense to them on the '211 because it so completely overlaps with the '380.

But if that -- if that's the hangup again, just simply, you know, do it with prejudice with regard to the claims asserted and the products accused.  Each party bears their own expenses.  Again, just trying to cut to the chase on that.

And then on the Acronis, the engineers, Magistrate Judge Corley's decision, our thought after really, you know, kind of thinking this over is that it does seem to make sense to compromise, since Mr. Emil Manukyan -- that's M-A-N-U-K-Y-A-N -- is at least nominally listed in some documents as a, quote-unquote, chief architect.

That is a compromise to perhaps have his deposition proceed.  We think we could do that in a much more timely fashion.  We wouldn't have to wait for the additional briefing

to have to go in front of Judge Corley because she had allowed for an additional round of briefing --

**THE COURT:**  Right.

**MR. HALKOWSKI:**  -- after Alan Gentilhomme's deposition.  I believe that's G-E-N-T-I-L-H-O-M-M-E.

And so, as a compromise, again, we would be willing to forego having to go through that, and just have him take Alan's deposition and take Mr. Manukyan's deposition.

The other three engineers are really truly rank and file folks.  And we think, you know, a definite argument, a clear argument that they're not the type that had kind of independent discretion in corporate matters.

Certainly, they don't have independent discretion with regard to corporate matters concerning Inc. or GmbH, since they work for Acronis.  So we think those -- and it just would be very burdensome.  So that would be kind of our proposal.

As one other thing, just to throw it in, because we saw it coming from plaintiff, and that is that they now want to move to bring in the Russian entity, OOO Acronis, into this case.

And as a part of this proposal, if we could reach an agreement, again, as much fun as it is to brief things and come here and argue them with you, before the Court, we'd be willing to just go ahead and accept service on behalf of them without, you know, prejudice to our arguments that we've made before.

We really don't think there's jurisdiction over them, et

cetera.  But, anyhow, we think that's a simple way to just cut through all this and kind of move forward.

THE COURT:  All right.  What's your thoughts?

MR. WALL:  Well, there's a lot to cover there, Your Honor.  Why don't I start with the motion for leave to amend.

THE COURT:  Uh-huh.

MR. WALL:  So while Counsel sort of paints this as, well, can't we just all agree to grant each other's motion for leave to amend, I'd like to point out that Symantec has done this at least in part.

We agreed to allow them leave to amend to have another version of the product they originally accused; and they've allowed us leave to amend the products we've originally accused.

The real issue is, is there going to be this new product NetBackup, in the case?  And the -- the standard for that is diligence.  They have to show diligence.

So if you look at their briefs, I think what their diligence argument boils down to was we needed to look at your source code; you guys didn't let us see your source code and, therefore, we could only amend once we saw the source code, and that's why we were diligent.

And I don't think, if you look at their infringement contentions that they propose, that that really holds up.  What you'll see in their infringement -- and I think this is really

the -- you know, it comes down to a very specific question, which is:  How necessary was the source code, or was the source code necessary for leave to amend their infringement contentions?

When you look at their infringement contentions, there are only two citations, with respect NetBackup, to source code. And that's a correction from a surreply.  I think we said three; there are two.

The first citation -- and bear with me, Your Honor, but I do think it's important to be particular about this.

The first citation to source code is on page 31 of their amended infringement contentions.  That's an exhibit to their response to our surreply.

And that citation is to an element -- there's an element of the claim regarding marking a block that cannot be accessed as invalid.  So the primary support they have for that e-mail element is a screen shot which they took from purchasing our product and determining that -- and that screen shot, according to them, demonstrates that our program marks a block as invalid.

And, in fact, they had very similar -- they proved up that element in a very similar way in their original infringement contentions with respect to Backup Exec.

In other words, they didn't need source code to do that. They took a look at the screen shot.  They said, here's the

pop-up; this demonstrates that there is infringement here.

And the citation for the Backup Exec --

THE COURT:  Well, let me -- before you go down this road so far, we're talking about Rule 15, at least in the first instance --

MR. WALL:  Okay.

THE COURT:  -- with respect to the amendment.  I understand the infringement rule about infringement contentions and supplementing those may be a little different.

But assuming that there is undue delay, lack of diligence, which one could argue, generally, under Rule 15 you have to show prejudice.  Prejudice is deemed the most important factor.  And if you can show prejudice combined with undue delay, then the Court should deny.

Normally, there's liberality afforded under Rule 15.

So I think the critical issue is prejudice, and that's where I questioned what you've demonstrated here, because other than, you know, some additional time and not having to defend another claim, which is inherent in any amendment, what's the sort of legal prejudice or irreparable legal prejudice were the amendment allowed?

I take it the road we're going down is that you're not accepting the stipulation?

MR. WALL:  Well, the road -- to give you the full story behind the stipulation, what we were willing to do was to

stipulate that they would amend with respect to Backup Exec and, in return, they would allow us to amend with respect to products we had previously accused, to add new versions.

They're not opposing our motion on that respect and we don't oppose their motion on that respect.

**THE COURT:** It's the NetBackup.

**MR. WALL:** It's the NetBackup that's the hangup.

**THE COURT:** That, you're not stipulating to.

**MR. WALL:** That's correct.

**THE COURT:** That'll have to be adjudicated.

**MR. WALL:** I'm sorry?

**THE COURT:** That'll have to be adjudicated.

**MR. WALL:** That is correct.

**THE COURT:** All right. So tell me then, if we're going to go down that road, then what's the prejudice? How, for instance, would claim construction be undone or completely revised, or how would something that's transpired be much more difficult to undo at this point, as an example?

**MR. WALL:** Well, I think it's forward-looking.

What a number of cases has said is the purpose of the Patent Local Rules is to crystallize the parties' infringement positions.

This inserts an entirely new product into the case and will require, you know, additional discovery -- additional discovery to take place.

But to get back to the Markman aspect of it, when you craft claim constructions and select which claim elements you're going to present to the Court, you do it with at least knowing what the products are because you need to understand where there might be ambiguities and where the Court or the jury might need direction as to, you know, particular elements.

**THE COURT:**  Right.  And that was why I asked you how -- now that you see -- had you known at the time that you chose your terms and made your arguments on claim construction, what would you have done differently had you known that this new product would be at issue?

**MR. WALL:**  Well, Your Honor, frankly, it's been difficult to analyze that because we only got their amended infringement contentions with their reply, which was, I think, a couple of weeks ago.  And then we got a further amendment to their infringement contentions a week ago with respect to their surreply.  So it's been -- we haven't had a chance to analyze how that would have affected our claim construction positions.

**THE COURT:**  Do you have any initial reaction at all, any examples of how things would be materially or significantly different?

**MR. WALL:**  Frankly, I think that's a pretty complex question to ask, which would probably involve, you know, a much more detailed look at the product.  And so I don't have anything for you right now.  And I think we'd have to do --

yeah.

THE COURT:  So the alternative is that they file a new -- second lawsuit or however many lawsuits there are, a new lawsuit bringing in NetBackup?

MR. WALL:  With respect to that product, yes.

But, Your Honor, I would like to add that while Rule 15 applies to some extent, it has to be harmonized with what the Patent Local Rules require.  And the Patent Local Rules do require good cause for leave to amend.  And --

THE COURT:  Well, interesting question, though.  In the hierarchy of rules, of course, our Local Rules have to comply with the Federal Rules.

And so the Local Rules have -- our Patent Local Rules still have force with respect to amendments that don't have to do with amending claims under Rule 15, but have to do with changing theories of the case or changing your infringement contentions under the same allegations.

That's what I think the Patent Local Rules are designed to crystallize and freeze.  I don't think they can override and rewrite Rule 15 of the Federal Rules, which is in the ascendent position in the hierarchy.  So I do have to look at -- and I thought about that.

But when you're confronted with the situations to which both Rule 15, leave to amend, and Patent Local Rules amending or supplementing infringement contentions apply, I think we

have to defer to the Rule 15 standards.  At least that's my approach.  And prejudice is an important prong.

Now, you've raised an interesting question, now that this has been put upon you so late, in terms of being able to show prejudice, because you just got the infringement contentions and need some time to -- you know, to see how you were prejudiced with respect to what we've done so far in this case.

So I'm not sure what to do, because absent that showing I don't think you've made a specific showing of prejudice under traditional Rule 15 standards.  This case is not like it's on the verge of trial or we've already done summary judgment or something.

We have done claim construction.  That's the one thing significant that we've done.  And if it means undoing that or, you know, again taking a position that now would prejudice you because of the advent of the NetBackup line claims, then that's one thing.  But if not, I don't see the kind of legal prejudice that would preclude the otherwise liberal amendment policies under Rule 15.

**MR. WALL:**  Well, Your Honor, what I would say is I don't think that by promulgating the Patent Local Rules in this District, the -- the District was trying to overrule Rule 15.

And there's -- I think it supplements additional -- it doesn't strictly deal with what is in the pleadings, but it does create, set forth a hurdle, just as you might a discovery

hurdle, to say, look, we expect you to provide certain disclosures in order to shape the face of this case.

And, you know, for example, there might be an interface where a court sets a certain discovery deadline and precludes a claim from going forward, even though there -- the deadline might be -- you know, the relevant scheduling deadline might not have passed.

THE COURT:  Well, that's traditional prejudice, just like if you set a trial date and somebody comes up with a new theory three days before the pretrial conference or after the close of discovery.

There are a lot of cases that have to, you know, reopen discovery as kind of legal prejudice.  But here we're fairly early on, other than having accomplished claim construction. So --

MR. WALL:  Well, I guess the point I was just trying to make, Your Honor, is that it's -- that the Patent Local Rules standard of good cause should still apply even in this case.  And I think what Your Honor is saying, that you'd have a hard time denying this motion under just a prejudice standard.

What I'm putting forth is that it's consistent and -- to apply the good cause standard of the Patent Local Rules, despite the fact that there hasn't been a deadline set for amending pleadings.

And if that rule does apply, then they do have to show

good cause.  And it's -- the case law is very clear as to what -- that they have to show diligence in order to make that showing.

THE COURT:  All right.  Well, I'll give you a brief chance to respond on the diligence question then.

MR. HALKOWSKI:  Sure.  On the diligence, you know, we had set out the timeline, I think, pretty well in our briefing about the product being released in March.  And we sought discovery in April.  It was denied.

We bought the product that we sought to get access to the code because it was identified as an embodying product, or at least one version of it.  That was delayed.  And, in fact, they refused to let our experts see it for a number of months.  And then, finally, our experts were able to see it.

He points out there's only a couple of citations with the code.  The key thing with the code, of course, is you can kind of see what a product is doing, but until you actually look at the code and really understand for sure exactly how that's being accomplished, it's not the wisest thing to do to just start accusing things left and right until you have a full understanding.  And that's what we tried to do.

THE COURT:  Well, let me ask you, what's your perspective on claim construction if we were to allow NetBackup line to be added to this case?

MR. HALKOWSKI:  Yeah, I don't see any big issues

there.

THE COURT:  Any additional claim construction that's required as a result?

MR. HALKOWSKI:  I don't see anything.  I think as -- you know, obviously, it's a different product, but, on the other hand, it's another flavor of the backup and -- Backup Exec-type product that's already accused.

It's not like it's, you know, literally kind of apples and oranges.  They're both backup products.  So, obviously, they share a lot in terms of functionality, to no surprise.

And so, you know, the software may be slightly different, but I don't -- frankly, I'd be shocked if there's any significant different claim construction issues there.

THE COURT:  Okay.

MR. WALL:  Your Honor, the only thing I would like to add is just, I think that in a case this Court decided, which was *TransVideo Electronics vs. Sony*, that's 278 F.R.D. 505, the Court did conduct a blended analysis in which it did consider diligence.

And I would suggest that if the Court conducts that -- that analysis, the same analysis you did in *TransVideo*, I don't think they can show diligence.

And, Your Honor, if it wouldn't be helpful for you, I won't go through the particular source code citations, but what I will say is that, with respect to the first one that I

pointed out, is they have additional evidence of the screen shot, which was sufficient enough evidence to bring claims with respect to Backup Exec.

And with the second element and -- which is on page 366 of their infringement contentions, they have a manual citation which supports -- which goes to the heart of the allegation that they're making.

And the point I would simply like to make is that if you are looking at diligence, then the question has to become how do -- how do the source code citations demonstrate -- or what do the source code citations add?

And what I would submit is that neither in the briefing or right now at oral argument there's never been an explanation by Acronis what additional material those source code citations add.

**THE COURT:**  Let me ask you on a more global basis.  I mean, there's a reason for Rule 15.  There's a reason for the Local Rules.

But what do we gain more globally by saying, okay, don't add it to this case; if you want to bring it, bring a separate case against NetBackup?  They bring the case; it gets related back to me.  And maybe we're on different trial tracks, you know, whatever.  But what do we accomplish?

The purpose of Rule 15 is, basically, don't screw up the case that you're already on.  So if you're already there, on

the verge of trial, don't add more stuff to take it off the rail; go ahead and file a different case.  You know.

But here, where we've gone through step one, we've got several more steps to go to get this case to trial, we haven't done a summary judgment yet, et cetera, et cetera, I'm not sure why it makes sense to say, okay, don't -- no, no amendment here.  Bring a separate case and we're -- you, know what the chances are they would file, but I would imagine not bad, come back and here we are again.

**MR. WALL:**  Well, the only point I would make is that scheduling makes a very big difference in this case.  I think we'll get to that when we get to the case management conference part.

**THE COURT:**  It does make some difference.  I mean, I don't know if you want to blend in the CMC, but if we were to allow this, then we have to have some time.

I mean, the cutoff discovery and everything else -- discovery cutoff is going to have to be towards the latter end of the proposal, not the earlier end.  So, you know, there is some -- some cost to that.

**MR. WALL:**  Well, and --

**MR. HALKOWSKI:**  And our view on that, certainly, is, Judge, that, you know, it really -- as we said, it's just a matter of a few months either way.

And, certainly, there's a lot more efficiency to be gained

by allowing those few additional months, both in this case by having the products that are at issue all addressed at once, as well as, you know, the fact that there was an agreement between the parties that the deponents would be only -- party deponents would only be deposed once, since there's such a close overlap between this case and the other case that's now before Judge Tigar?

THE COURT:  Tigar.

MR. HALKOWSKI:  So, again, for the matter of just a few months' difference, certainly, the efficiencies make that again, respectfully, from our perspective, a much more reasonable approach.

MR. WALL:  Two points with regard to that, Your Honor. One, we are seeking a permanent injunction in this case, and we are claiming in the complaint that we are being harmed irreparably by their activity.

The second point is this is precisely our concern, that Acronis is seeking to now hitch this -- the progress of this case onto a second case, leading to a slowdown of the proceedings.

And so I would suggest that, you know, the -- actually, the gap is, you know, four to five months.  And that's -- that is a significant gap to us.

MR. HALKOWSKI:  Again, it's really four months.  And, you know, they may -- it's interesting, on one hand they -- I

suppose they're -- might be disappointed if Your Honor were to side more towards our schedule and have some additional time.

But on the flip side, it's going to also create some efficiencies for that second case, which actually are going to enure to Symantec's benefit.

But, you know, obviously, that's fine with us because really, being the much smaller company here, we're all about efficiency and we're trying to do this as efficiently as possible.

THE COURT:  Mr. Wall, do you have any other arguments that just adding -- allowing this amendment is going to substantially expand the scope of this case and the complexity of this case?  Or do you agree that there's a fair amount of overlap here?

MR. WALL:  That there's a fair amount of overlap between this case and the next case?

THE COURT:  No, between the claim vis-a-vis NetBackup and the claims vis-a-vis --

MR. HALKOWSKI:  Backup Exec.

THE COURT:  -- Backup Exec.

MR. WALL:  Well, I would say, with respect to -- it's a completely different product, so I don't see -- there's a disconnect on the infringement side.  They're going to be -- for them.  They're going to be deposing entirely different folks.  They're going to be seeking entirely different damages

numbers.

And we are seeking -- going to seek to amend our invalidity contentions with respect to -- with NetBackup to allege that previous versions of NetBackup anticipated.  So, yes, I foresee if but for their amendment, none of that would have occurred.

And now we also, I think, have two products.  Remember, this is going to be in addition to Backup Exec being in this case.  And that's going to mean more people they are going to depose, and that's going to extend the length of the case.

**MR. HALKOWSKI:**  Again, obviously, we had that all contemplated in the schedule we came up with, which is only a matter of four months' difference.  That's point one.

Secondly, with regard to the -- I just lost my second point, so I guess I'll stop with one.

**THE COURT:**  All right.  It seems to me that this is -- to the extent there is a significant expansion here, it is a -- it is a completely different product.  And although neither party knows for sure, at this point, what impact that might have with respect to claim construction, it is evident that it is likely to have some significant impact on scheduling and the progress of this case.

And I find that is sufficient prejudice.  And although there is some reason -- some reason explained for the delay in bringing in the proposed new claim, I think significant

questions have been raised about whether this was -- could have been done in a more diligent way and more quickly.

And the fact that we've already now gone through claim construction and proceeding along and under one proposal are only several months away -- in fact, two months away from Symantec's proposed close of fact discovery, that means lengthening that time by three times as long, for six months instead of by two months --

MR. HALKOWSKI:  Your Honor, if I may address at least the time aspect of that, because I think the time aspect is not really related to these additional products.

The time aspect that -- for the time that we're requesting has, really, nothing to do with the fact that Backup -- that NetBackup -- whether or not it's added to the case or not.

We -- that time, that additional time that we've requested in our schedule is necessary, in our view, very much necessary to address the issues that are presently in the case.

THE COURT:  Well, all right.

It seems inevitable, since it is a completely different line, that there was going to be substantially more discovery and it's going to take whatever the time that would be necessary without this claim is going to be extended with this claim.

MR. HALKOWSKI:  Again, from our perspective there is -- again, we're the ones who accused it, so we're the ones

who cited it and we're the ones who are going to have to take the discovery.

And we believe that it's going to, you know, sufficiently overlap that we can get the discovery done in the same time that we could get done with regard to the Backup Exec.

In other words, our schedule is the time that we thought would be necessary with regard to the Backup Exec 2012 product. And we can get the discovery that we need for the NetBackup in that same amount of time.

THE COURT:  Do you think that that's feasible?

MR. WALL:  No, I don't, Your Honor.  And I would say -- if I may?

MR. HALKOWSKI:  Go ahead.

MR. WALL:  I just -- I don't see what the details are of that discovery plan.  I mean, why do they think they're going to be overlapping witnesses?

Why -- I don't understand how -- I just don't understand the basis for that statement unless -- I don't hear any particularity with which he's saying, well, we can -- these witnesses are going to overlap or the discovery is going to overlap in some way.

MR. HALKOWSKI:  Again, obviously, that's our problem. We're the ones who are going to have to get the discovery done. And we are prepared to do it in the amount of time that we have set forth.

So that's -- the only reason I raise it is if that's a factor in Your Honor's discussion or assessment, it really should be a nonfactor because we can get the discovery done in the same time that we've proposed for the Backup Exec.

THE COURT: Explain to me, just briefly, what this technology is, how it relates, what's -- what's the overlap between Backup Exec and NetBackup?

MR. HALKOWSKI: They're both backup products that serve to allow you to recover files if something should go wrong.

So, as I said, in terms of functionality, that's why they very much overlap in terms of the functionality that's accused. And that's why the same patent and the exact same claims are asserted against both products.

THE COURT: Why don't you explain your perspective on that.

MR. WALL: Sure, Your Honor.

I think Acronis has spent a lot of briefing already telling us how important the source code is. These products have different source codes. I believe that, from a historical perspective, they were developed by different companies, one of which Symantec later acquired.

And if you think about it from a witness perspective, you've going different project managers that were in it, different people who designed the source code; there'll be

different -- and there may -- I don't know about this, there may be different people responsible for various aspects.  For example, related to marketing and whatnot.

So the point is that, you know, it's not enough to just say, well, you know, they're both backup and recovery programs. When you get into the specifics of discovery, we're talking about what witnesses do we need?  What discovery do we need? And we're talking about different products that were, at least at some point in time, originated from different places.

**MR. HALKOWSKI:**  Well, and, again, I mean, that's our -- our -- should be our concern, right?  I mean, we believe that we're going to be able to get that discovery done. Obviously, they want to talk about specifics.

We don't know specifically who's in charge, what they do. But we certainly are prepared to conduct a discovery, and see no reason why we cannot in the time that we've set forth, which, again, is only a matter of four months' different from what their optimum schedule is.

**MR. WALL:**  Your Honor, we've been -- this case has been pending for well over a year.  We've provided initial disclosures.  We've disclosed -- we produced a number of documents, a lot of documents at this point.

This case is not new.  This should not be the case that Acronis doesn't know who they need to depose and what their discovery plan ought to be.

Katherine Powell Sullivan, CSR, RPR, CRR
Official Reporter - U.S. District Court
(415) 794-6659

**THE COURT:**  All right.  I --

**MR. HALKOWSKI:**  I'm sorry, we do have a good idea.

**THE COURT:**  I've considered everything that you have said, and I'm going to deny the motion to amend to add in this new Symantec product line, i.e. NetBackup.  I think it is enough of an expansion of the scope of this case.  And although the representation is made that Acronis doesn't think this will affect the timeline, in my experience it is highly unlikely that things go exactly according to plan.  And when you multiply the number of claims and products, the case expands accordingly.

And we have already gone through claim construction.  And there's -- we don't know at this point, neither side can tell me that that won't be affected.

And so -- and I think this case can be brought separately and will be brought separately.

With respect to -- there's no dispute about the Backup Executive 2012.  That will be allowed.

What about your stipulation with respect -- is there a stipulation on the dismissal?

**MR. WALL:**  There -- the only dispute, as I think Your Honor recognized, is whether it's going to be dismissed with or without prejudice.

**THE COURT:**  Right.  I thought I heard an offer -- maybe I misheard you -- that you would dismiss with prejudice,

each side to bear their own fees and costs.  Is that what I heard you say?  I thought I heard you --

MR. HALKOWSKI:  That's true, Judge.

THE COURT:  He's offering to give up the -- without prejudice in terms of your giving up any claims for -- claim for fees incurred in conjunction with the '211.

MR. WALL:  Yes, Your Honor.  If they're going to dismiss with prejudice, we'll agree to that.

THE COURT:  All right.  Then we'll just note that as a stipulation.  And the case -- the '211 claims will be dismissed with prejudice, each side to bear their own fees and costs.

And he also made an offer to Judge Corley's -- the appeal. Does that have any appeal to you?

MR. WALL:  I'm afraid not, Your Honor.  And I think the issue is this:  First of all, as an initial matter, we're, as counsel said, intending to amend our pleadings to bring in OOO Acronis in the case.

Now, while Acronis made an agreement to consent to service and personal jurisdiction -- we just had this fight in another case.  Acronis moved to dismiss the second action we filed based on lack of service and lack of personal jurisdiction in that motion.

Well, we asked for an order finding that we did serve them and that there was personal jurisdiction.  That motion was granted.  So we believe that, similarly, we're going to be able

to serve them and that there will be personal jurisdiction in this case.

But, furthermore, I think the offer, frankly, gets to the heart of what the problem is, which is that it's Acronis who wants to determine who it is we depose and who it is we do not. That's the issue we brought to Judge Corley's attention.

And what Judge Corley had said was, in many cases -- in other cases before other District Courts Acronis had represented these Russian employees as their own, and had raised them in the context of transfers.

And they can't both rely on them in some cases and then in this case say, well, no, we're not going to give you these guys for deposition, and then when, you know, there's an order that is sort of part of the way there to giving us these depositions, say, well, this is what we're going to do, this is who you're going to depose, but we're not going to give you these other folks.

You know, we think -- and let me highlight that this is particularly important to Symantec because these products were completely designed in Russia.  So there is no alternative way we can go.  And we cannot, by the way, go through the Hague to get these -- to subpoena these people, because Russia does not -- is not accepting service pursuant to the Hague Convention.

THE COURT:  All right.  Let me hear your comments on

this.

**MR. HALKOWSKI:**  Sure.  First of all, there may be some loose language in there.

We certainly never relied upon or made any representations that these three engineers -- and I'll put their names out for the record; Makhov, M-A-K-H-O-V; Miroshkin, M-I-R-O-S-H-K-I-N; and use Yusupov, Y-U-S-U-P-O-V.

May be some loose language thrown out there by Counsel, but we certainly never relied upon these folks in any other case; never represented that they worked for Inc., et cetera, et cetera.

They -- and as the case stands now -- again, I hate to stand on technicalities, but as the case stands now, OOO Acronis is not a party.  There's just no way that these three individuals, rank and file engineers, can somehow be determined to be a managing agent of Inc. or GmbH.

Again, I don't want to even get into all this.  It's not even worth the time and the effort, except for the fact that it's not us that are deciding, you know, who they can depose and who they can't depose.  It's the rules of procedure.

And rules of procedure do require that even if OOO Acronis was a party -- and we're willing, again, to just kind of cut through all that -- these individuals are not even close to being managing agents of OOO Acronis.  They're rank and file engineers.  The showing is just not there.

And so, again -- but, obviously, we fight all this out and we could, you know, again continue to kind of debate all this. But the bottom line is, no one knows the entire source code. And that's apparently what they want to get, is answers about source code.

Number one, they've got the source code so they can inspect it.  They've gone through it.  And they've done that multiple times.

Number two, they've got a 30(b)(6) coming up where they can address questions of the source code.

THE COURT:  Well, and Judge Corley reserved exactly what she's going to do.  Other than having laid out certain preliminary findings in this regard, there's still a burden benefit analysis that she has reserved.  And she hasn't made a conclusion.  She wants you to do that 30(b)(6) first, and go back to her.

MR. HALKOWSKI:  Right.  And, again, what we're proposing is to try to, you know, again, try to be efficient.

THE COURT:  Right.  I understand your proposal.  I've tried to convey it.  And it appears not to have been accepted.

MR. HALKOWSKI:  Right.

THE COURT:  Is that right?

MR. WALL:  The only point I would make, Your Honor, is just the bit about rank and file members, which was the bulk of it, is really not up for dispute here.  Not under the standard

that we have for reconsidering Judge Corley's order.

She made those findings.  They can say that her decision was legally erroneous, but they don't have a basis of -- under the standard for picking apart her determination that they are managing agents.

**MR. HALKOWSKI:**  Well, and, actually, that's our point, though, is that the appropriate standard was not applied in terms of managing agent.  It just simply wasn't.  If it was, it would be clear that these people don't qualify.

**THE COURT:**  All right.  I'm going to affirm Magistrate Judge Corley's decision with respect to her application of the legal standards.  I think she cited the appropriate authorities.

And she did not hold that mere information or possession of information alone is enough to establish managing agent status.  She does say that one would have to consider the amount of judgment and discretion exercised with respect to the products.  And I don't find -- I find that -- I don't find that her legal standard that she set forward is wrong.

And then with respect to the application with respect to these four people, that is subject -- that's a factual determination, whether they meet that standard.  And I don't find that she was clearly erroneous, so I'm not going to disturb her finding.

She has left room for further argument once a 30(b)(6)

deposition is taken.  I think that's a very sound approach. She may or may not give you all those depositions.  At that point, you know, you might want to present to her exactly who these people are and what they have and why their information is not worthy of the burden of going over there.  That's something she has left open.

So that takes care of the motions before me right now.

I want to talk about the scheduling under our CMC.

I am concerned now that this case has been pending for some time.  I appreciate that I've contributed to the delay by taking some time in getting the claim construction out.  But now that that is out, I don't see why we can't -- and now that I have disallowed the amendment with respect to the latest product line, I don't see why we can't move forward, if not exactly as Symantec proposed, certainly more quickly than Acronis proposes.

**MR. HALKOWSKI:**  If I may address that just briefly.

**THE COURT:**  Yeah.

**MR. HALKOWSKI:**  Your Honor, I have to emphasize there are five patents being asserted against us.

**THE COURT:**  I'm aware of those.

**MR. HALKOWSKI:**  Right.  And each one of those involves, obviously, a whole range of prior art; typically, prior art from third parties.  There can be a significant amount of third-party discovery.

Obviously, you know, we've continued to kind of work along on this case, but until we get the claim construction ruling and are able to bear down on what elements really matter, what prior art then, therefore, really matters, what we can really focus on, you know, it just, again, is not efficient to kind of go running around trying to try to cover every single possible scenario.

So that's one -- a big part of the reason why we are seeking the additional four months --

THE COURT:  Why four months?  Where are we at with respect to the invalidity contentions?

MR. WALL:  Invalidity contentions have been served some time ago.  Obviously, there's a lot of room for debate and then kind of refinement and discussion on those because until the terms get construed, again, you really don't know which piece of prior art is going to be particularly key, which ones are going to warrant you going, for example, to track down authors of prior art or to get further documentation to get source code and analyze source code from third parties, et cetera.

So that's why we're requesting those additional months. It's not -- again, in the grand scheme of things, it's not a huge amount of delay when you look at the entire case from beginning to end, whether it's three or four additional months or not in whatever this is going to end up being, a

two-and-a-half-year case or whatever.

So -- and yet it will allow us to fairly try to defend ourselves against these five patents that are being asserted by Symantec as well as -- and, again, I'll mention this and maybe it doesn't have any factor in the Court's analysis, but I'll throw it out there.

There was an agreement by the parties that each party would only be deposed once for this case and the other case. And to really make that work, we do need some additional time. Again, even without that, though, setting aside that other case, we do need the additional time in order to adequately defend ourselves.

**THE COURT:** Your response.

**MR. WALL:** First of all, Your Honor, I think your response explaining the difference between the dates is a fair and sound one.

What I would mention is that discovery has been pending quite a while. We did take depositions, for example, of their inventors, despite the fact that we didn't have a claim construction order. We've taken other depositions of their witnesses despite the fact we didn't have a claim construction order.

Right now Acronis has taken, as far as I know, no depositions, has issued no subpoenas. I think that's correct in this case anyway.

So I think that the fair thing to do is to split the difference.  But I don't think it's the case, and I don't think it's the case that they were completely unable to take discovery while waiting for that Markman hearing -- or Markman ruling, excuse me.

THE COURT:  Well, right, because the briefs pretty much framed what the positions were.  And although there were -- I mean, it wasn't unpredictable in terms of the range of options here.  And there's a reason why we -- we require invalidity contentions to be made early on.

And so I would be surprised if your team sort of did nothing over the last two months.

MR. HALKOWSKI:  That's true, Your Honor.

Again, I want to emphasize we're trying to be as efficient as we can with limited resources.  So it's a difference between doing analysis between that and the additional expense of trying to -- of actually tracking down people and subpoenaing people, particularly third parties.

And so that's why, again, we request that additional time -- while we're mentioning the claim construction ruling, I did not want to leave here today without thanking Your Honor for, certainly, the effort I know that must have gone into that.  It is appreciated.

We're obviously closely looking at it and trying to make the best assessment as we can as to how the case will go

forward.  But, anyhow, setting that aside, I just really very strongly urge that -- that you provide us the additional time so that we can try to efficiently litigate, bring this thing to a close, as well as work the additional discovery from that second case.

THE COURT:  All right.  Well, I'll issue a scheduling order.  I'm going to try to find something -- I won't do exactly a midpoint.  It may be that, you know, we have to jiggle some things here.

I do notice that at the end of the process, in terms of summary judgment processes, you're four months apart at the beginning.  You're almost five months apart.  So there's some deconvergence there at some point.  I'll work with that.

I don't want to choose an unrealistic date.  I don't want to shoot something and then come back, complete these depositions, et cetera, et cetera.

On the other hand, this case has been pending.  And by the time we get around to close of fact discovery and start briefing summary judgment, we would have been well over two years, I think, into this case, or pretty close to two years.  And so I will get out a scheduling order that is somewhere within the range of these two.

MR. HALKOWSKI:  Thank you.

THE COURT:  And, hopefully, we can keep on track.

Let me just ask you, finally, I understand that you had

this mediation with the magistrate judge, kind of a global mediation.  I infer from this that it did not resolve.

**MR. HALKOWSKI:**  No, Your Honor.

**THE COURT:**  Is there any other prospect or is that sort of -- is there any other juncture now?  You have a claim construction ruling.  You're going to be approaching discovery and completing that pretty soon.

Is there another juncture where this or the entire, you know, global situation is worthy of another ADR process?

**MR. HALKOWSKI:**  We've certainly been very much open and fully have approached them repeatedly to see if there's really a, for lack of a better term, a business resolution that can actually make sense; but, unfortunately, have not made progress.

**MR. WALL:**  Your Honor, what I would recommend, we obviously just got the Markman ruling yesterday.  And I don't know that we've really had a chance to digest --

**THE COURT:**  Sure.

**MR. WALL:**  -- how much it changes anything.  Perhaps at the next CMC it would be a good idea to see whether that's made a difference or moved the needle.

**THE COURT:**  Then why don't you be prepared to talk about that next.

And, obviously, we're always willing to facilitate, you know, if you're interested in any of our processes here,

whether it's a magistrate judge or through our court-sponsored ADR process or private mediation.  We're happy to accommodate you if you're at all interested.

MR. HALKOWSKI:  Right.

MR. WALL:  Your Honor --

THE COURT:  Yes.

MR. WALL:  I do have one additional minor issue.  I just want to see whether you want to handle this or you'd rather this be referred to Judge Corley.  The parties have been talking for a while about there's a particular chart in their invalidity contentions that we've contended does not comply with the Patent Local Rules.

They -- I'm not saying they've conceded that or anything, but they have agreed to amend it.  But we've now been speaking that -- they agreed to do that in September.  We haven't gotten a commitment to do that yet.

Would you like to address that or should we take that up with Judge Corley?

MR. HALKOWSKI:  I'm not even aware of the details on this, so I guess I would have to talk to Counsel about it.

THE COURT:  All right.  Well, all I can say is if you're expecting a response and haven't gotten it, I would hope there would be a meet-and-confer and see if you can resolve that.  If you can't, that does fall into what I consider the discovery bucket and should go to Judge Corley.

**MR. WALL:**  Okay.  Thank you, Your Honor.

**THE COURT:**  All right.  Let's set a further status conference, Betty.  Maybe sometime in -- it is now -- let's see, three months from now, and see how we're doing on discovery as we're approaching the end of the discovery period.

**THE CLERK:**  June 6, at 10:30, for further CMC.

**THE COURT:**  All right.  And then we can visit -- that would be a good time to visit any potential interest in ADR as well.  Okay.

**MR. HALKOWSKI:**  Thank you, Your Honor.

**MR. WALL:**  Thank you, Your Honor.

**THE COURT:**  All right.  Thank you.

(At 4:27 p.m. the proceedings were adjourned.)

- - - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Thursday, March 7, 2013

_____

Katherine Powell Sullivan, CSR #5812, RPR, CRR
U.S. Court Reporter