PAGES 1 – 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

SYMANTEC CORP.,              )
                            )
            PLAINTIFF,      )
                            )
 VS.                        )NO.C 11–5310 EMC (JSC)
                            )
ACRONIS, INC.,              )
                            )SAN FRANCISCO, CALIFORNIA
                            ) SEPTEMBER 19, 2013
_____) 9:16 O'CLOCK A.M.

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:    QUINN, EMANUEL, URQUHART & OLIVER**
                 50 CALIFORNIA STREET, 22ND FLOOR
                 SAN FRANCISCO, CALIFORNIA 94111
            **BY:  KATE CASSIDY, ATTORNEY AT LAW**

**FOR DEFENDANT:    FISH & RICHARDSON P.C.**
                 222 DELAWARE AVENUE, 17TH FLOOR
                 P.O. BOX 1114
                 WILMINGTON, DELAWARE 19899–1114
            **BY:  THOMAS L. HALKOWSKI, ESQUIRE**

FURTHER APPEARANCES ON NEXT PAGE.

TRANSCRIBED BY:  KATHERINE WYATT, OFFICIAL REPORTER USDC

                 WYATTKATHY994@GMAIL.COM

                 925–212–5224

**FURTHER APPEARANCES:**

**ALSO FOR DEFENDANT:**

**FISH & RICHARDSON P.C.**

12390 EL CAMINO REAL

SAN DIEGO, CALIFORNIA 92130

**BY:   JOHN W. THORNBURGH, ESQUIRE**

SEPTEMBER 19, 2013                              9:16 O'CLOCK A.M.


                    P R O C E E D I N G S

          THE CLERK:  CALLING CIVIL ACTION 11-5310, SYMANTEC

CORPORATION VERSUS ACRONIS, INC.

          THE COURT:  GOOD MORNING.

          MR. HALKOWSKI:  GOOD MORNING, YOUR HONOR.  THOMAS

HALKOWSKI ON BEHALF OF ACRONIS.  ALSO WITH ME TODAY IS JOHN

THORNBURGH AND MARK WONG OUR IN-HOUSE COUNSEL.

          THE COURT:  GOOD MORNING, MR. WONG.

          MR. WONG:  GOOD MORNING.

          MS. CASSIDY:  GOOD MORNING.  KATE CASSIDY FROM QUINN

EMANUEL ON BEHALF OF SYMANTEC.  ALSO WITH ME TODAY IS KEN CHEE,

IN-HOUSE COUNSEL AT SYMANTEC.

          THE COURT:  AND YOU'RE WELCOME TO SIT AT THE TABLE,

IF YOU PREFER, BUT IF YOU WANT TO STAY AWAY FROM THEM I

UNDERSTAND.

     ALL RIGHT.  SO WE'RE HERE FOR ACRONIS' MOTION FOR LEAVE TO

FILE AMENDED INVALIDITY CONTENTIONS.

     SO THIS IS A NEW ONE FOR ME.  I HAVEN'T SEEN THIS BEFORE.

AND I GUESS SORT OF -- I MEAN, DOES SOUND LIKE IT FITS SQUARELY

WITHIN THE JUST-A-MISTAKE-WAS-MADE.  AND I DON'T KNOW I CAN SAY

THAT DESPITE DILIGENCE -- NO.  FIRST, I'LL SAY YOU WERE

DILIGENT ONCE THE MISTAKE -- NOT YOU -- WHOEVER, ONCE THE

MISTAKE -- I KNOW YOU DISAGREE WITH THAT.  BUT I'LL SAY I THINK

THEY WERE PRETTY DILIGENT ONCE THE MISTAKE WAS UNCOVERED.

BUT THE QUESTION IS:  WERE YOU DILIGENT BEFORE?  BUT, OF COURSE, A PARTY IS REQUIRED UNDER THE LOCAL RULES TO INVESTIGATE ALL POSSIBLE PRIOR ART TOWARD THE BEGINNING OF THE CASE, NOT ON THE EVE OF THE CLOSE OF DISCOVERY.

AND I DON'T KNOW HOW FROM THIS RECORD I CAN FIND THAT. BECAUSE, FOR EXAMPLE, THIS DATABASE THAT THIS PERSON SOLELY RELIED UPON, WAS IT RELIABLE?  WAS THAT REASONABLE?  WHEN WAS IT CREATED?  WHAT WAS IT BASED UPON?

THERE ARE E-MAILS IN THE RECORD THAT SUGGEST THAT ACRONIS WAS AT SOME POINT ASKING THE OLD TIMERS:

"WHEN WAS THIS STUFF RELEASED" AND THAT KIND OF THING.

SO HOW CAN I FIND DILIGENCE IN THE INITIAL INVESTIGATION OF PRIOR ART?

**MR. HALKOWSKI:**  WELL, I THINK A COUPLE OF ANSWERS TO THAT.  ONE, CERTAINLY WE COULD PROVIDE AN ADDITIONAL DECLARATION TO PROVIDE FURTHER CONTEXT FROM MR.  DMITRI JOUKOVSKY, WHO WAS KIND OF THE KEEPER OF THE FLAME, SO TO SPEAK, IN TERMS OF THAT DATABASE.

I MEAN, I WILL TELL YOU THAT IT WAS SOMETHING THAT WAS PASSED ON TO HIM WHEN HE FIRST JOINED THE COMPANY, AND IT WAS JUST SOMETHING THAT THEY WOULD RELY UPON WHENEVER THEY NEEDED TO LOOK AT WHENEVER SOMETHING WAS PUBLICLY RELEASED.

AND SO, YOU KNOW, IT WAS BELIEVED TO BE ACCURATE.  AND SO

THAT'S WHAT (INAUDIBLE) COMPANY, AND WE WERE ADVISED OF PUBLIC RELEASE DATES.  THAT'S WHAT WE WERE ADVISED.

I KNOW THAT SYMANTEC HAS A LITTLE BIT OF FUN WITH, YOU KNOW, LOOKING AT ALL THE DIFFERENT DOCUMENTS IN THE RECORD AND LOOKING AT THE WEBSITE AND STUFF.  BUT, I MEAN, THE PRACTICALITY OF IT IS THAT THIS IS A HUGE CASE.  IT'S ANOTHER HUGE CASE.  WE'VE GOT E-MAILS GOING BACK AND FORTH.  MARK CAN PROBABLY UNFORTUNATELY CONFIRM WE'VE GOT E-MAILS GOING BACK CONSTANTLY WHERE INFORMATION IS BEING EXCHANGED BETWEEN CLIENT AND ATTORNEYS.  AND, YOU KNOW, IT'S JUST NOT PRACTICAL TO DOUBLE-CHECK EVERY SINGLE DRAFT THAT COMES IN FROM THE CLIENT.

**THE COURT:**  MAYBE I AGREE WITH THAT.

**MR. HALKOWSKI:**  YES.

**THE COURT:**  EXCEPT THAT YOU CONTEND THAT THIS PIECE OF PRIOR ART USED EARLIER VERSIONS IS DISPOSITIVE.

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  IT WILL KNOCK OUT TWO PATENTS.

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  SO ISN'T IT THE CASE THAT WHEN -- NOT WHEN YOU'RE RESPONDING TO INTERROGATORIES, BECAUSE I DON'T THINK YOUR DILIGENCE IS SATISFIED BY RESPONDING TO YOUR INTERROGATORIES.  AS A DEFENDANT YOU HAVE AN INDEPENDENT OBLIGATION TO, NOT WITHSTANDING WHETHER THERE'S INTERROGATORY OR NOT, TO DO YOUR OWN DUE DILIGENCE --

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:** -- WITH RESPECT TO INVALIDITY CONTENTIONS AND PRIOR ART. THE FIRST PLACE YOU WOULD GO IS: OKAY, THEY ACCUSED THESE PRODUCTS. LET'S GO BACK. WHEN DID PRODUCTS WITH THIS FUNCTIONALITY FIRST HIT THE MARKET?

THAT'S WHERE YOU ARE GOING TO START --

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** -- YOUR PRIOR ART --

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** -- RESEARCH. AND IF YOU BELIEVE THAT EARLIER VERSIONS ACTUALLY INVALIDATE THE PATENT, THEN IT'S AN IMPORTANT, REALLY IMPORTANT FACT. AND YOU ARE GOING TO DO MORE THAN JUST RELY ON SOMETHING IN A DATABASE. YOU SEE THAT AND THINK:

"WELL, MAYBE WE BETA TESTED IT SOMEWHERE IN THE UNITED STATES AND SO THAT WE CAN" -- YOU KNOW WHAT I MEAN?

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** I JUST CAN'T SEE THAT THAT IS ACTUALLY DILIGENT.

**MR. HALKOWSKI:** AS I SAY, AGAIN, YOU NEED TO LOOK AT THE PRACTICALITIES OF THIS SITUATION. SYMANTEC HAS SUED US ON TEN PATENTS. THESE ARE TWO OF THEM.

WE OBVIOUSLY DO THE BEST WE CAN IN TERMS OF PRIORITIZING THE INFORMATION THAT COMES IN. OBVIOUSLY, THIS WAS SOMETHING THAT WAS ADDRESSED. WE RECEIVED AN ANSWER. YOU KNOW, WE'RE CONDUCTING, YOU KNOW, LITERALLY WORLDWIDE SEARCHES FOR PRIOR

ART.

**THE COURT:** AND IT'S RIGHT UNDER YOUR NOSE.

**MR. HALKOWSKI:** EXACTLY. EXACTLY. EXACTLY. I KNOW. I KNOW.

AND SO, YOU KNOW, IN TERMS OF WORKING HARD TO TRY TO FIND THE PRIOR ART, THAT WAS NOT THE ISSUE. IT'S JUST OBVIOUSLY THIS WAS A MISTAKE IN RELIANCE ON SOMETHING.

THE OTHER THING I WILL POINT OUT -- AND SO I THINK THAT THAT'S ONE. THIS ISN'T THE PRACTICALITIES OF THE SITUATION. THERE'S A LOT OF THINGS GOING ON, OBVIOUSLY.

YOU KNOW, WE BELIEVED THE INFORMATION THAT WE WERE TOLD, OTHERWISE, YOU KNOW, WE HAD ALL THE INCENTIVE IN THE WORLD TO DO SOMETHING ELSE. BUT THERE WAS MANY, MANY, MANY, MANY, MANY IRONS IN THE FIRE IN TERMS OF TRYING TO FIND PRIOR ART FOR THESE OTHER TEN DIFFERENT PATENTS, AS WELL.

AND, YOU KNOW, AT SOME POINT OBVIOUSLY DECISIONS HAVE TO BE MADE IN TERMS OF:

"OKAY. HOW MANY RESOURCES ARE WE GOING TO INVEST?"

I MEAN, POTENTIALLY, THERE ARE LITERALLY, I DON'T KNOW, ENUMERABLE NUMBER OF TIMES IN A CASE WHERE YOU THINK:

"IF WE FIND X, IT'S DISPOSITIVE."

SO, YEAH, I MEAN THAT'S TRUE. BUT THAT'S TRUE ALL THE TIME. EVERY DAY SOMETHING COMES UP AND YOU SAY:

"GEE, YOU KNOW, THIS, THIS AND THIS IS DISPOSITIVE."

WELL, YOU COULD GO CRAZY, YOU KNOW, THINKING ABOUT ALL

THAT AND ALL THE DIFFERENT THINGS YOU COULD POSSIBLY DO FOR ALL TEN DIFFERENT PATENTS.

SO, YES, IN ISOLATION, YOU KNOW, IF IT WAS ONE PATENT AND THIS IS THE ONLY THING THAT WE, YOU KNOW, HAD TO WORRY ABOUT FOR THIS CASE, YOU KNOW, MAYBE IT'S A DIFFERENT BALANCE.  SO THAT'S THE ONE THING.

THE OTHER, THOUGH, IS THAT THERE'S A NUMBER OF CASES THAT ACTUALLY TAKE A MORE DISCRETIONARY VIEW OF THIS.  THERE'S PARTICULARLY WITH REGARD TO JUDGE ILLSTON IN POSITIVE TECH AND THE SYMANTEC VERSUS VEEAM CASE.

AND AS I NOTICED LAST NIGHT ACTUALLY BOTH OF THOSE CASES CITE A THIRD CASE, THE YOUD LEE (PHONETIC) CASE, 2007 WEST LAW 1454259.

AND IN THOSE CASES JUDGE ILLSTON KIND OF HIGHLIGHTS THE FACT THAT, YOU KNOW, ONE OF THE KEY THINGS THAT SHE IS GOING TO LOOK AT IS THE RELEVANCE OF THE ART, WHICH IS WHY WE, YOU KNOW, EMPHASIZE THE FACT THAT THIS, INDEED, REALLY IS DISPOSITIVE.

AND YOUR HONOR DOES HAVE DISCRETION IN TERMS OF HOW YOU ARE GOING TO RULE ON THIS.  AND THAT'S REFLECTED IN THESE CASES REPEATEDLY.  THEY EVEN GO SO FAR AS TO SAY, YOU KNOW, DILIGENCE IS SOMETHING TO BE LOOKED AT.

BUT, YOU KNOW, EVEN IF THE -- IF THERE WAS AN HONEST MISTAKE, EVEN IF THERE WAS CARELESSNESS -- SOME OF THE LANGUAGE GOES:

"EVEN IF THERE WAS CARELESSNESS, BUT AS LONG AS THERE

WAS NOT GAMESMANSHIP" --

**THE COURT:**  NO, I DON'T THINK THERE WAS GAMESMANSHIP.

**MR. HALKOWSKI:**  YEAH.

"SO WE'LL OVERLOOK THAT.  AND BECAUSE OF THE HARSHNESS OF THE RESULT."

AND HERE YOU COULD NOT HAVE A HARSHER RESULT.  BECAUSE I THINK IN BOTH THESE CASES LITERALLY THESE PATENTS ARE -- SHOULD, YOU KNOW, JUST GO AWAY.  BECAUSE IT'S NOT A QUESTION OF WE'RE BRINGING IN NEW TECHNOLOGY AND IT'S:

"OH, BOY.  GOING TO BE MORE COMPLICATED."

IT'S NOT A CASE OF THAT.  IT'S A QUESTION OF DATES.  THESE ARE ACTUALLY EARLIER VERSIONS OF PRODUCTS THAT ARE ALREADY IN THE CASE, HAVE BEEN IN THE CASE FOR YEARS.

ON THE ONE HAND, IT'S THE PRODUCTS THAT SYMANTEC ITSELF HAS BEEN OFFERING, AND WE WEREN'T ABLE TO UNCOVER THAT UNTIL WE REALLY LITERALLY STUMBLED ACROSS THAT IN A DEPOSITION.

**THE COURT:**  WELL, BUT I THOUGHT THE MANUALS WERE PUBLICLY AVAILABLE.

**MR. HALKOWSKI:**  THE MANUALS FOR THEIR PRODUCTS ARE, YEAH.  BUT THAT DOES NOT HELP YOU AT ALL, BECAUSE THE KEY ELEMENT WAS THE CATALOGUE ELEMENT.  AND YOU'LL NOTICE IN OUR CONTENTIONS THE ONLY EVIDENCE THAT HAVE FOR THAT CATALOGUE ELEMENT IS FROM THAT DEPOSITION.

AND THE DEPOSITION, AND THAT WAS -- AND I THINK PROBABLY ONE OF THE KEY -- THERE'S A LOT OF LANGUAGE THAT WE CITE, BUT

SOME OF THE KEY LANGUAGE IS AT EXHIBIT B TO THE MAY DECLARATION, AT PAGE 279, WHERE THE WITNESS MADE CLEAR THAT IT'S A SINGLE CATALOGUE FILE WOULD CONTAIN ENTRIES FOR ALL OF THE FILES THAT WERE BACKED UP IN EACH OF THE INCREMENTALS.

**THE COURT:** WHAT DO YOU SAY TO THE ARGUMENT:

"WELL, YOU WAITED UNTIL THE WEEK BEFORE DISCOVERY CLOSED TO TAKE THAT 30 (B) (6) DEPOSITION"? THAT HE WAS MADE AVAILABLE --

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** -- IN MAY.

**MR. HALKOWSKI:** WELL, AGAIN, THAT'S AN INTERESTING POINT. BUT IF THEY HAD BEEN DOING -- "THEY" -- IF SYMANTEC HAD BEEN DOING THEIR HOMEWORK THEY WOULD HAVE SEEN THEMSELVES THAT THIS EARLIER VERSION HAD THE SAME EXACT CATALOGUE FUNCTIONALITY AS THE VERSIONS OF THAT PRODUCT, THAT BACKUP EXEC PRODUCT THAT THEY HELD UP AND SAID:

"HERE'S AN EMBODIMENT OF THE PATENT. THIS DOES EXACTLY WHAT THE PATENT DOES."

AND IF THEY HAD DONE THEIR HOMEWORK THEY WOULD HAVE SEEN THAT THIS EARLIER VERSION WAS ALSO AN EMBODIMENT, AND THEY WERE REQUIRED TO DISCLOSE THAT TO US.

AND, IN FACT, HAD THEY, YOU KNOW, FOLLOWED KIND OF THE PROPER PROCEDURES, THEY SHOULD HAVE ACTUALLY DISCLOSED THAT TO THE PATENT OFFICE AND NEVER GOTTEN THE PATENT IN THE FIRST PLACE.

SO THAT'S ONE POINT.  THE SECOND POINT --

**THE COURT:**  DO YOU HAVE A CLAIM FOR OR DEFENSE OF INEQUITABLE CONDUCT?

**MR. HALKOWSKI:**  YOU KNOW, OBVIOUSLY IT WOULD REQUIRE MORE DISCOVERY.  WE LITERALLY GOT THIS AT THE LAST MINUTE.  AND THE REASON WHY -- WE WEREN'T TAKING THIS GUY'S DEPOSITION TO SEE:

"OH, LET'S SEE IF WE CAN COME UP WITH OR MORE PRIOR ART AT THE LAST MINUTE."

AGAIN, WE'VE GOT TEN PATENTS THAT WE'RE DEALING WITH. WE'VE GOT SOME THAT WE ARE TRYING TO ASSERT IN OUR OWN DEFENSE.

SO THERE'S A LOT OF DIFFERENT PIECES GOING ON, A LOT OF DIFFERENT DISCOVERY.  THIS WAS ONE PIECE OF THAT.

AND, IN FACT, THE FOCUS OF THIS DEPOSITION WAS OUR CASE, OUR OFFENSIVE CASE.  WE WANTED TO TALK TO THIS GUY ABOUT THE ACCUSED BACKUP EXEC PRODUCTS, THE THINGS THAT WE WERE ACCUSING.

IT JUST LITERALLY WAS HAPPENSTANCE THAT GOING THROUGH HIS BACKGROUND, IT'S LIKE:

"OH, WAIT A MINUTE.  YOU WORKED ON THIS WAY BACK WHEN?  WHAT WAS IT DOING WAY BACK WHEN?"

AND SO, LITERALLY, IT JUST SORT OF CAME UP.  SO, YEAH, AGAIN, IF WE KNEW THAT THIS GUY HAD THIS BACKGROUND AND POTENTIALLY THIS WAS PRIOR ART, OBVIOUSLY IT WOULD HAVE GONE MORE TOWARDS THE TOP OF THE LIST IN TERMS OF PRIORITIES FOR PEOPLE TO DEPOSE.

**THE COURT:** ALL RIGHT. SO YOU -- SYMANTEC'S ACTUALLY ACCUSED INFRINGEMENT OF FIVE PATENTS, RIGHT?

**MR. HALKOWSKI:** FIVE IN THIS CASE, FIVE IN ANOTHER CASE, YEAH. SO THEY ARE REALLY OVERLAPPING. WE'RE RIGHT IN THE MIDDLE OF AN INCREDIBLE AMOUNT OF DISCOVERY IN THAT CASE, AS WELL. IT'S IN FRONT OF JUDGE TIGAR.

**THE COURT:** SO, MS. CASSIDY, WHAT ABOUT THAT ARGUMENT THAT:

"WELL, YOU KNOW, YOU DID SUE US ON FIVE PATENTS AND ANOTHER FIVE PATENTS. THAT'S TEN PATENTS OUT THERE. JUST KIND OF SLIP SLIDE"?

**MS. CASSIDY:** YOUR HONOR, BY THE TIME THAT ACRONIS HAD TO FILE THEIR INVALIDITY CONTENTIONS THEY HAD SIX MONTHS TO DO ITS INVESTIGATION. AND WITH ALL DUE RESPECT, THE PATENT LOCAL RULES, WHILE THEY DO ENCOURAGE EARLY DISCLOSURE, THEY DO ENCOURAGE PARTIES TO DO THEIR HOMEWORK EARLY.

AND WHAT WE'VE GOT HERE IS A CASE OF ACRONIS SIMPLY NOT DOING THEIR HOMEWORK ON TIME. THESE ARE THEIR OWN PRODUCTS, AS YOUR HONOR POINTED OUT. AND, IN FACT, WHEN YOU READ THEIR -- ACRONIS' MOTION, THE DATE ISSUE ONLY APPLIES TO ONE PRODUCT THAT THEY CONTEND.

ALL OF THE OTHER PRODUCTS THEY HAVE NOT ASSERTED AN ISSUE ABOUT DATE. BUT WITH RESPECT TO DATE, YOUR HONOR, I DON'T THINK THAT THAT ISSUE HAS BEEN RESOLVED YET.

SO IF THESE CASES, THESE CONTENTIONS WERE TO COME IN

THAT'S WHERE WE'RE STARTING FROM.  WE DON'T HAVE AN IDEA OF WHEN THESE DOCUMENTS OR WHEN THESE PRODUCTS WERE ACTUALLY RELEASED.

THE DATE OF THIS THAT MR. HALKOWSKI SAYS IS THE MOST RELIABLE, EVERY SINGLE DATE IN THERE WITH RESPECT TO THESE NEW PRODUCTS IS INCONSISTENT WITH OTHER DATES IN THE RECORD THAT THEY HAVE PUT IN THEIR CONTENTIONS.

SO WE HAVE TO UNCOVER WHAT IS ACTUALLY THE CORRECT DATE. THE DATABASE THAT THEY HAVE ATTACHED TO THE JOUKOVSKY DECLARATION IS INCONSISTENT WITH THE DATES THEY PUT IN THEIR CLAIM CHARTS.

AND WHEN YOU LOOK AT THEIR CLAIM CHARTS, IT'S APPARENT THAT ACRONIS DOESN'T EVEN REALLY KNOW WHEN ITS DATES WERE ACTUALLY ISSUED, BECAUSE THEY USE LANGUAGE:

"RELEASED AT LEAST AS EARLY AS."  THERE'S NO DEFINITIVE IDEA HERE ABOUT WHEN THESE PRODUCTS WERE, IN FACT, ACTUALLY ISSUED.  AND THERE'S ACTUALLY A NUMBER OF OTHER POINTS THAT MR. HALKOWSKI RAISED.

**THE COURT:**  WELL, ALL THEY NEED TO DO IS SHOW THAT IT WAS ISSUED BEFORE THE PATENT WAS APPLIED FOR, RIGHT?

**MS. CASSIDY:**  PRESUMABLY, YES.  BUT WE DON'T HAVE THAT DISCOVERY, YOUR HONOR.  WE WOULD HAVE TO GO ON AND TAKE A LOOK AT THAT, BECAUSE THE EVIDENCE IN THE RECORD IS NOT RELIABLE.

**THE COURT:**  WELL, EXCEPT THEY DO SAY THAT THEY

ACTUALLY PRODUCED TO YOU DOCUMENTS THAT SHOW THE DATES THAT WERE PRE -- I GUESS IT'S PRE -- ONE, APRIL 2004, AND THE OTHER SEPTEMBER, 2004.

**MS. CASSIDY:** RIGHT.  AND THERE'S ONLY SEVEN PRODUCTS, YOUR HONOR.  BUT THE FACT OF THE MATTER IS THAT THEY HAVE DOCUMENTS POINTING THIS WAY FOR ONE DATE AND THAT WAY FOR ANOTHER DATE.  AND THEY ARE SAYING THAT THIS DATABASE IS RELIABLE WHEN, IN FACT, ALL OF THE DATES IN THERE SEEM TO BE WRONG.

AND WE JUST HAVE TO KIND OF GET TO THE BOTTOM OF THIS AND UNCOVER THIS.  WE DON'T KNOW HOW MANY OTHER DOCUMENTS MAY HAVE DIFFERENT DATES.  BUT THE FACT OF THE MATTER IS THAT IF FOR THE SEVEN PRODUCTS, IF THEY ARE CLAIMING THAT THE RELEASE DATE IS DECEMBER, 2003, THAT INFORMATION HAS BEEN AVAILABLE TO THEM ALL ALONG.

AND AS YOUR HONOR POINTED OUT IN THE ORDINARY COURSE OF BUSINESS THEY DON'T REFER TO THIS DATABASE.  THEY GO AND LOOK AT THEIR PRESS RELEASES.

AND SO IT'S HARD TO SAY THAT THEY WERE DILIGENT WHEN FOR THE LITIGATION THEY DO ONE THING WHICH PULLS OUT LIKE THEIR OWN ERROR.

**THE COURT:** AND YOU'RE REFERRING TO THOSE EMAILS.

**MS. CASSIDY:** CORRECT.

**THE COURT:** WHAT ABOUT THE BACKUP, THE BACKUP EXEC? AND ACRONIS SAYS THAT THE MANUALS THAT WERE AVAILABLE DIDN'T

SHOW THE CATALOGUE ELEMENTS.

**MS. CASSIDY:** OF COURSE THEY DID, YOUR HONOR.  AND THEY HAVE HAD THAT SOURCE CODE AVAILABLE TO THEM SINCE JUNE OF 2012.  WE PRODUCED THAT TO THEM AND MADE IT AVAILABLE TO THEM SINCE THE DATE OF THE FIRST INSPECTION.

**THE COURT:** IS THAT --

**MS. CASSIDY:** I HAVE CORRESPONDENCE ABOUT THAT, YOUR HONOR, IF YOU WANT TO SEE.

**THE COURT:** HE'S CONFERRING.

**MS. CASSIDY:** OKAY.  AND, IF I MAY PICK UP THAT POINT, YOUR HONOR, THEY SAY THAT THEY WERE TALKING TO KIRK SEARLS, BUT THEY HAVE NEVER -- THEY HAVE NOT DEPOSED THE INVENTORS OF THE '655 PATENT.  WE'VE BEEN OFFERING THEM DATES FOR DEPOSITION, I THINK WE'VE OFFERED NO LESS THAN FIVE DIFFERENT DATES, AND THEY STILL HAVEN'T CONFIRMED DATES THAT THEY MAY WANT TO TAKE THEM.

BUT HAD THEY BOTHERED TO TAKE THE INVENTORS' DEPOSITION THEY WOULD HAVE SEEN THAT THESE PEOPLE WERE WORKING ON THE EARLIER VERSIONS OF BACKUP EXEC.  AND WHAT THEY WOULD HAVE UNCOVERED IS THAT, YOU KNOW, THE INVENTORS WERE WORKING ON THE EARLIER VERSIONS OF BACKUP EXEC.  THEY CAME ACROSS A NEW WAY TO DO THE SYNTHETIC CATALOGUE, AND THEN APPLIED FOR THE '655 PATENT.

SO ALL OF THE PRODUCTS GOING FORWARD PAST THE INVENTION DATE INCLUDE WERE COMMERCIAL EMBODIMENTS.  BUT ALTHOUGH THE

BACKUP EXEC PRODUCTS BEFORE THAT DID NOT CONTAIN THE PATENTED INVENTION.  AND SO --

**THE COURT:** YOUR DISPUTE, THOUGH, IS THAT IT'S --

**MS. CASSIDY:** RIGHT.

**THE COURT:** -- INVALID.

**MS. CASSIDY:** ABSOLUTELY.

**THE COURT:** WELL, WHAT ABOUT THE SOURCE CODE?

**MR. HALKOWSKI:** I UNDERSTAND THAT --

**THE COURT:** IT'S OKAY IF YOU -- IS IT MR. THORNBURGH?

**MR. HALKOWSKI:** MR. THORNBURGH, YES.

**THE COURT:** YOU CAN DOUBLE-TEAM, IF YOU WANT.

**MR. HALKOWSKI:** BECAUSE WITH REGARD TO THE SOURCE CODE HE PROBABLY IS THE EXPERT.

**THE COURT:** SURE.  THAT'S ALL RIGHT.

**MR. HALKOWSKI:** I'D LIKE TO DEFER TO HIM.

**MR. THORNBURGH:** YOUR HONOR, I THINK THAT IT'S MORE OF THE THEME THAT MR. HALKOWSKI RAISED, WHICH IS THAT THERE WERE DOZENS AND DOZENS OF PRODUCTS AVAILABLE FOR INSPECTION, AND EACH SOURCE CODE IS THOUSANDS AND THOUSANDS OF PAGES LONG.

AND SO WITHOUT SYMANTEC REVEALING THAT THIS WAS AN EMBODYING PRODUCT WHEN THEY WERE SUPPOSED TO LIST IT, OR EVEN LISTING IT AS POTENTIAL PRIOR ART, GOING AND LOOKING FOR ELEMENTS IN EVERY SINGLE VERSION OF EVERY SINGLE OLD PRODUCT WOULD BE A HERCULEAN TASK.

AND SO, YES, THEY MADE THE SOURCE CODE AVAILABLE FOR

INSPECTION. BUT THAT DOESN'T MEAN, YOU KNOW, IN THE DAYS THAT WE HAD TO LOOK AT IT THAT WE DISCOVERED THIS CATALOGUE ELEMENT.

AND SO I THINK WHAT MR. HALKOWSKI HAS SAID IS THAT THEY HAD THEIR PERSON, MR. SEARLS, WHO ACTUALLY KNEW THIS. AND IF THEY HAD INTERVIEWED HIM AND REVEALED IT TO US, THEN WE COULD HAVE GONE AND DONE THE INSPECTION. AND WE WOULD STILL LIKE TO DO THE INSPECTION OF THE SOURCE CODE NOW. BUT GIVEN THE LATE BREAKING DEVELOPMENT WE HAVEN'T YET SCHEDULED THAT. BUT WE DO HAVE HIS CLEAR TESTIMONY.

**THE COURT:** WELL, YES. I GUESS, MS. CASSIDY, YOU'RE SAYING THAT YOU DISPUTE THAT IT'S EMBODYING. BUT THEY ARE SAYING THAT MR. THEO? THEO?

**MR. HALKOWSKI:** SEARLS.

**THE COURT:** THAT HE ACTUALLY TESTIFIED ESSENTIALLY THAT IT DOES CONTAIN THAT FUNCTIONALITY, THE EARLIER VERSION DOES.

**MR. HALKOWSKI:** RIGHT. AND I THINK WE CITE SOME OF THAT TESTIMONY. AS I SAID, PAGE 279 IT'S PARTICULARLY CLEAR WHERE HE TALKED -- BECAUSE THE "GEE WHIZ" ABOUT THIS -- AGAIN, AT A VERY HIGH LEVEL, YOUR HONOR -- ABOUT THIS '655 PATENT WAS THAT THEY STARTED TO DO AN INCREMENTAL BACKUPS. "INCREMENTAL BACKUP" MEANS, AGAIN, GENERALLY SPEAKING, IS THE WAY IT'S TAUGHT IS THAT IF YOU HAVE SOMETHING YOU TAKE A BACKUP OF WHATEVER, SIX MONTHS AGO, AND THEN YOU TAKE AND YOU HAD ANOTHER BACKUP FROM, LIKE, THREE YEARS AGO, WHATEVER HAS CHANGED IN

THAT -- IN THE INTERVENING TIME, THAT'S WHAT YOU ACTUALLY BACK UP.  YOU DON'T BACK UP EVERYTHING.

AND THAT RAISED THE QUESTION THAT, OKAY, YOU KNOW, KIND OF "WHERE IS WALDO?"

IT'S LIKE IF YOU WANT TO LOOK BACK AND KIND OF SEE, YOU KNOW, SOME OF YOUR OLD FILES, IT KIND OF DEPENDS ON, YOU KNOW, WHEN SOMETHING CHANGED AS TO WHERE THAT OLD BACKUP FILE IS.

IT COULD BE BACKUP NUMBER ONE.  IT COULD BE BACKUP NUMBER TWO, BACKUP NUMBER THREE.  SO YOU WOULD WANT TO HAVE A COLLECTION OF ALL THOSE THINGS TOGETHER.

AND SO -- AND THAT'S THE CATALOGUE ELEMENT.  THAT'S THE LAST ELEMENT IN THE ASSERTED CLAIM.  AND MR. SEARLS COULD NOT HAVE BEEN CLEARER ABOUT THAT, SAYING THAT A SINGLE CATALOGUE FILE WOULD CONTAIN ENTRIES FOR ALL THE FILES THAT WERE BACKUP, AND EACH OF THE INCREMENTALS.

AND HE WENT OVER THIS.  AND THAT'S AT PAGE 279 OF EXHIBIT B.

BUT HE WENT OVER THIS OVER AND OVER AND OVER AGAIN THROUGHOUT THAT DEPOSITION BECAUSE WE, OBVIOUSLY, YOU KNOW, COULD NOT BELIEVE WHAT WE WERE HEARING AT THE TIME.  AND SO WE REALLY TRIED TO NAIL THAT DOWN.

**THE COURT:**  BUT USUALLY WITH INVALIDITY CONTENTIONS, THE ARGUMENT IS:

"WELL, NOTWITHSTANDING DILIGENT SEARCH WE COULDN'T FIND OUT THIS INFORMATION BECAUSE WHAT WAS PUBLICLY

AVAILABLE" --

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  "OR AVAILABLE TO US WASN'T THERE."

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  BUT HERE YOU SEEM TO BE SAYING SOMETHING DIFFERENT, WHICH IS:

"WE DIDN'T REALLY SEARCH."

YOU'RE EVEN SAYING:

"HERE WE SORT OF CAME CROSS IT.  WE WEREN'T EVEN DOING THIS DEPOSITION FOR THAT REASON."

**MR. HALKOWSKI:**  THAT'S RIGHT.

**THE COURT:**  AND I UNDERSTAND WHY, WHICH IS BECAUSE WE HAD TO MAKE CHOICES.

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  AS TO WHERE -- SO --

**MR. HALKOWSKI:**  RIGHT.  WELL --

**THE COURT:**  -- WHY SHOULDN'T -- I MEAN THAT'S ALWAYS THE CASE.  I MEAN, I GUESS YOU COULD SAY:

"WELL, THE PATENT LOCAL RULES AREN'T REASONABLE IN THE SENSE THAT THEY APPLY THE SAME STANDARD WHETHER THERE'S ONE PATENT OR THERE'S TEN."

AND MAYBE MORE TIME NEEDS TO BE PUT IN THERE.  BUT THE PARTIES ARE CERTAINLY ALWAYS -- WELL, DEPENDING ON YOUR JUDGE -- ALMOST ALWAYS STIPULATE TO THAT AND AGREE.

**MR. HALKOWSKI:**  AND, IN FACT, WE DID.  AND AGAIN,

THESE, AGAIN, ARE EARLIER VERSIONS OF PRODUCTS. WHEN WE STIPULATED WITH REGARD WHEN THEY WANTED TO ADD A LATER VERSIONS OF OUR PRODUCTS FOR INFRINGEMENT PURPOSES, BECAUSE IT'S NOT ADDING ANY NEW TECHNOLOGY TO THE CASE.

SAME THING HERE. WE'RE NOT ADDING ANY NEW TECHNOLOGY TO THE CASE, JUST EARLIER VERSION. OBVIOUSLY, THE IMPACT SHOULD BE DISPOSITIVE. I THINK IT WILL VERY MUCH HELP TO SIMPLIFY THE CASE.

THERE'S ONE THING I WANT TO NOTE, THOUGH, ON THEIR POINT ABOUT THE PUBLICLY AVAILABLE SOURCES. THE APPLE CASE THAT WE CITE FROM MAGISTRATE JUDGE GREWAL, HE NOTED THERE THAT THERE APPEARS TO BE, QUOTE:

"NO REASON FOR WHY IT DID NOT DISCOVER THIS PUBLICLY AVAILABLE INFORMATION EARLIER," CLOSE QUOTE.

BUT HE SAID:

"HEY, YOU KNOW, I'M GOING TO AVOID AN UNNECESSARILY HARSH RESULT. I'M GOING TO ALLOW THIS MOTION TO AMEND."

THAT WAS ADDING SOME PRODUCTS. AGAIN --

**THE COURT:** WAS DISCOVERY CLOSED?

**MR. HALKOWSKI:** I DON'T KNOW IF DISCOVERY WAS CLOSED AT THAT POINT. AND, IN FACT, YOU KNOW, IT WASN'T CLOSED HERE, EITHER. IT WAS OBVIOUSLY CLOSE TO BEING CLOSED. BUT THE KEY THERE, AGAIN, WAS THAT HE SAYS IN OTHER LANGUAGES, EVEN THOUGH HE -- THE OMISSION WAS CARELESS, THERE WAS NO GAMESMANSHIP.

AND HE'S GOING TO AVOID AN UNNECESSARILY HARSH RESULT AND

ALLOW THE MOTION TO AMEND.

THERE'S A SIMILAR THEME IN THE LELAND STANFORD CASE AND THE OPEN DNS CASE.

OPEN DNS IS BY MAGISTRATE JUDGE LLOYD.

**THE COURT:**  OH, YEAH.  BUT I READ THAT CASE.  THAT IS WHAT YOU CALL A "SURFACE" --

**MR. HALKOWSKI:**  RIGHT.

(SIMULTANEOUS COLLOQUY).

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  -- IN WHICH THE OTHER SIDE WAS VERY MUCH ON NOTICE OF THE TRUE NATURE OF THE --

**MR. HALKOWSKI:**  RIGHT.

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  THAT'S NOT HERE.

**MR. HALKOWSKI:**  WELL, HERE IT'S SIMILAR IN THE SENSE IF YOU ARE GOING TO TALK ABOUT BEING ON NOTICE, THE TECHNOLOGY HERE HAD BEEN IN THE CASE.  SO THEY ARE FULLY FAMILIAR.  IT'S REALLY JUST A DATES ISSUE.

**THE COURT:**  BUT A DATES ISSUE THAT YOU CLAIM IS DISPOSITIVE.

**MR. HALKOWSKI:**  WELL, EXACTLY.  IT IS.  IT IS.  AND THAT'S WHY, OBVIOUSLY, YOU KNOW, ALL THINGS BEING EQUAL, YOU KNOW, WE WISH WE WOULD HAVE DONE MORE EARLIER.

BUT, AGAIN, WE MADE THE BEST ASSESSMENTS THAT WE COULD IN TERMS OF WHAT THE INFORMATION THAT WE HAD.  AND I THINK HERE

YOU LOOK AT THESE CASES, OPEN DNS, LELAND STANFORD, THE APPLE CASE, POSITIVE TECH, SYMANTEC VERSUS VEEAM, THE YOGI (PHONETIC) CASE, ALL THOSE CASES I THINK WHAT REALLY COMES ACROSS IS:

"HEY, WE'VE GOT DISCRETION HERE.  WE'RE NOT ROBOTS."

AND SO WHAT WE ARE STRONGLY URGING YOUR HONOR TO DO IS IF YOU ARE GOING TO MAKE A MISTAKE, ERR ON THE SIDE OF JUSTICE, BECAUSE -- AND IT'S TRUE.  YOU DON'T GET TO DO THAT EVERY DAY.  BUT --

**THE COURT:**  NOT EVERY DAY.

**MR. HALKOWSKI:**  EXACTLY.  BUT HERE, I MEAN, POTENTIALLY, AGAIN, YOU HAVE TO TAKE OUR WORD FOR IT.  BUT WE'VE LAID THIS OUT IN OUR CONTENTIONS.  WE'VE NOW GIVEN THEM AN EXPERT REPORT THAT LAYS THIS OUT IN EXCRUCIATING DETAIL ON AUGUST 30TH.  THAT'S WHEN THE OPENING EXPERT REPORTS WERE DUE.

WE'VE GOT OVER EIGHT MONTHS TILL TRIAL.  WE'VE GOT PLENTY OF TIME TO DO WHATEVER THEY WANT TO DO IN TERMS OF ADDITIONAL DISCOVERY THAT THEY SAY THAT THEY NEED, ALTHOUGH THEY HAVEN'T ASKED FOR IT.

WE CAN DEAL WITH ALL THIS.  BUT THE POINT BEING THAT WHAT SHOULD NOT HAPPEN IS TWO INVALID PATENTS CONTINUE TO BE ASSERTED.

AND THIS SIMILAR SITUATION HAPPENED IN THE SYMANTEC/VEEAM CASE.  THEY FOUGHT LIKE TOOTH AND NAIL AGAINST VEEAM TO LET THAT IN.  BUT IT ULTIMATELY GOT IN, THANKS TO JUDGE ILLSTON ERRING ON THE SIDE OF JUSTICE.  AND THAT THE PATENT WAS

DISMISSED AS STIPULATION, ULTIMATELY.

**THE COURT:** WELL, WHAT ABOUT THAT ARGUMENT THAT IF IT'S JUST AN EARLIER VERSION OF THE SAME PRODUCTS THAT YOU ACCUSE, WHERE'S -- I MEAN, WHERE'S THE PREJUDICE?

I MEAN, WHY, YOU KNOW -- I MEAN, HOW IS THAT FAIR?

**MS. CASSIDY:** OKAY.  SO THERE WAS A LOT THAT WAS JUST DISCUSSED THERE, YOUR HONOR.

SO I THINK WHAT THIS BOILS DOWN TO, IF I MAY JUST TAKE A STEP BACK AND TAKE EVERYTHING THAT MR. HALKOWSKI SAID.  THEY MADE A CHOICE.  THEY ADMITTED THAT.  THEY MADE A CHOICE EARLY ON.

IN FACT, THEY ADMITTED IN THEIR REPLY THAT THEY LOOKED AT THE EARLIER VERSIONS OF THEIR OWN PRODUCT AND FOUND THEM TO BE IRRELEVANT, AND THEN MOVED ON.

NOW, THEY ARE COMING BACK TO THE COURT ON THE BASIS OF INCORRECT DATES THAT WE STILL DON'T KNOW, REALLY, WHAT IS GOING ON, PLEADING WITH YOUR HONOR TO SAY THAT, YOU KNOW, THESE ARE INVALID PATENTS, WHICH IS A BIG STATEMENT TO MAKE GIVEN THAT THEY HAVEN'T GIVEN CLAIM CHARTS FOR ALL OF THEIR REFERENCES THAT THEY HAVE PUT IN HERE.

SO WE CAN'T EVEN GET TO THE MATTER OF WHETHER THEY ARE DISPUTING WHETHER THERE IS ACTUALLY INVALIDATING ART HERE BECAUSE WE'VE ONLY GOT A LIMITED AMOUNT OF CLAIM CHART.  THEY SHOULD HAVE CHARTED 28 REFERENCES, BUT THEY DIDN'T.

**MR. HALKOWSKI:** AND I WOULD DISPUTE THAT BECAUSE AS I

MENTIONED WE HAVE GIVEN THEM OUR EXPERT REPORT THAT LAYS THIS OUT IN EVEN MORE DETAIL AS OF AUGUST 30TH.

**MS. CASSIDY:** SHIFTING SAND, YOUR HONOR. EVERYTHING KEEPS MOVING. WHEN THEY SUBMITTED THEIR BRIEF -- WHEN THEY SUBMITTED THEIR MOTION AND ASKED YOU TO RULE ON THIS RECORD THEY PROVIDED THESE CLAIM CHARTS. AND THAT'S WHAT THEY WANTED.

SO NOW THEY WANT TO CORRECT THE DEFICIENCY THAT THEY CREATED AND SHOVE THEM INTO THEIR EXPERT REPORTS BECAUSE THEY DON'T HAVE PERMISSION TO PUT WHATEVER THEY PUT IN THEIR EXPERT REPORTS IN THEIR INVALIDITY CONTENTIONS.

THEY NEED TO ASK PERMISSION EVERY TIME THEY WANT TO AMEND THEIR INVALIDITY CONTENTION. AND WHAT HE'S SAYING IS THAT HE HASN'T DONE THAT.

**THE COURT:** OKAY. BUT LET'S NOT TALK ABOUT FORM OVER SUBSTANCE.

**MS. CASSIDY:** RIGHT.

**THE COURT:** LET'S JUST TALK ABOUT SUBSTANCE FOR THE MOMENT. I MEAN, WHAT HIS REAL ARGUMENT IS IS THAT:

"LOOK, IT'S AN EARLIER VERSION OF THE VERY SAME PRODUCTS THAT THEY ACCUSED."

WHY SHOULD THEY -- IN THE END THEY ARE SAYING:

"WHY SHOULD THEY BE ALLOWED TO GET, LET'S SAY, ALTHOUGH THEY DISPUTE IT -- INFRINGEMENT, A JUDGMENT OF INFRINGEMENT IF, ESSENTIALLY, THE SAME FUNCTIONALITY WAS IN AN EARLIER VERSION OF THAT WOULD INVALIDATE THEIR

PATENT?"

HOW IS THAT FAIR?

**MS. CASSIDY:** WELL, I THINK, YOUR HONOR, THAT'S ACTUALLY AN INCORRECT RULE OF LAW, AND THAT WE'RE HAPPY TO SUBMIT ADDITIONAL BRIEFING ON THAT IF THAT IS WHAT YOUR HONOR -- YOU TRY AND ARGUE NONINFRINGEMENT BASED ON PRIOR ART.

**THE COURT:** NO.  NO.  NO.  NO.  IT'S INVALIDITY BASED ON PRIOR ART.

**MS. CASSIDY:** RIGHT.  BUT THEY ARE BASICALLY SAYING IF YOU PRACTICE A PRIOR ART EARLIER, THEN -- THEY ARE CLAIMING THAT THEY DON'T INFRINGE, BUT IF THEY DO INFRINGE THEY REALLY DON'T INFRINGE BECAUSE THEY WERE DOING IT BEFORE --

**THE COURT:** NO, THEY ARE NOT SAYING THEY DON'T INFRINGE.  THEY ARE SAYING THE PATENT IS INVALID.

**MS. CASSIDY:** SO GETTING BACK TO YOUR EARLIER QUESTION, YOUR HONOR, WHEN THEY TALKED TO YOU ABOUT HOW -- FIRST OF ALL, THE TECHNOLOGY WASN'T AT ISSUE IN THE CASE FOR THESE PATENTS.

THE TRUE IMAGE PRODUCTS WERE AT ISSUE FOR THE '365 PATENT.  SO THE TECHNOLOGY, IT'S SLIGHTLY SHIFTED.  SO FOR THE TRUE IMAGE 7 PATENT THEY WERE NEVER AT ISSUE FOR THE '517 OR THE '365.

**THE COURT:** YOU MEAN, THOSE AREN'T ACCUSED PRODUCTS FOR THOSE PATENTS?

**MS. CASSIDY:** THAT'S CORRECT.  AND SO WE HAVEN'T BEEN

LOOKING AT THOSE PRODUCTS FOR THAT FUNCTIONALITY FOR THOSE PATENTS.

AND, IN ADDITION, THE MIGRATEEASY PATENT, THE OSS MIGRATEEASY PRODUCTS, THE OSS PRODUCTS, THE DISK DIRECTOR PRODUCTS, NEVER BEEN AT ISSUE IN THE CASE, YOUR HONOR.

AND THEN, WITH RESPECT TO THE BACKUP EXEC PRODUCT, I THINK WE WERE TALKING ABOUT THAT A BIT EARLIER, THEY ARE NOT PRIOR ART PRODUCTS.  AND HAD ACRONIS BOTHERED TO DO ITS HOMEWORK AND TAKE THE DISCOVERY THAT WAS AVAILABLE TO IT, WHICH INCLUDES DEPOSING THE INVENTORS WHO ACTUALLY CAME UP WITH THE '655 PATENT, THAT WOULD BE CLEAR.  AND THE ANSWER WOULD BE THERE FOR THEM.

BUT WE THINK THIS ARGUMENT ABOUT FAIRNESS, YOUR HONOR, IT'S ALSO FAIR THAT PLAINTIFFS GET AN EARLY AND JUST RESOLUTION OF DISPUTES BEFORE COURTS.  AND THAT'S EXACTLY WHAT THE PATENT LOCAL RULES ARE DESIGNED TO BALANCE.

THAT'S WHY THEY HAVE TO SATISFY GOOD CAUSE.  THEY CAN'T COME IN AND SAY:

"OH, GEE, SHUCKS, YOUR HONOR, WE MADE A MISTAKE WITH RESPECT TO DATES BECAUSE WE MADE A CHOICE TO JUST USE SOME UNDERLYING INVESTIGATION.  AND NOW WE COME IN HERE.  WE THINK THAT WE WANT TO REDO OVER OUR ENTIRE DEFENSES FOR TWO OF THESE PATENTS, AND WE THINK THAT YOU SHOULD GIVE IT TO US."

THAT'S NOT THE STANDARD, YOUR HONOR.  THEY HAVE TO SHOW

DILIGENCE FOR THEIR INVESTIGATION TO FIND NEW PRODUCTS IN THE FIRST PLACE AND HAVE TO SHOW THAT THERE'S NO PREJUDICE TO SYMANTEC IF THOSE CONTENTIONS ARE ALLOWED.  AND THEY HAVEN'T DONE THAT.

MR. HALKOWSKI SAYS -- HE SAID THAT THE MANUALS DON'T HELP WITH RESPECT TO UNDERSTANDING THE UNDERLYING FUNCTIONALITY.

WE HAVE TESTIMONY FROM ACRONIS' WITNESSES SAYING THERE ARE MISTAKES AND ERRORS IN THE MANUALS, AND THAT THEY ARE ALSO DESIGNED TO EXPLAIN THINGS AT A HIGH LEVEL.

THEY ALSO DIDN'T PROVIDE THE SOURCE CODE FOR ALL THESE PRODUCTS EVEN THOUGH THEY REPRESENTED TO THE COURT THAT THEY DID.

SO EVEN THOUGH WE WENT DOWN AND WE INVESTIGATED THESE PRODUCTS, HALF THE SOURCE CODE WAS MISSING.  AND NOW, YOUR HONOR, WHAT WE'RE DOING HERE IS THAT WE'RE AT THE SAME TIME WE'RE SUPPOSED TO BE FINALIZING EXPERT DISCOVERY, WE HAVE TO TAKE DISCOVERY ANEW.  AND AS MR. HALKOWSKI SAYS HE ANTICIPATES THIS GOING ON THROUGH TRIAL.

I MEAN, WHAT HAPPENS --

**MR. HALKOWSKI:**  I DIDN'T.

**THE COURT:**  I DON'T THINK THAT'S WHAT HE SAID.

**MS. CASSIDY:**  HE'S SUGGESTING THAT THERE'S ENOUGH TIME BEFORE TRIAL TO TAKE THIS DISCOVERY, RIGHT?  WE'RE TRYING TO NARROW THE CASE, YOUR HONOR.  WE'RE TRYING TO GET READY FOR SUMMARY JUDGMENT.

WE CAN'T GET READY FOR SUMMARY JUDGMENT ON THESE PATENTS IF WE'RE STILL GETTING THESE DISCOVERY COMING IN.

**MR. HALKOWSKI:**  IF I MAY JUST ADDRESS THAT ONE POINT. WE ACTUALLY, AS I MENTIONED IN OUR PAPERS, WE GOT RID OF, LIKE, WHAT, 14 REFERENCES IN AN EFFORT TO JUST FOCUS THIS.

**MS. CASSIDY:**  AND THEY ARE REDOING IT, AGAIN, YOUR HONOR.

**THE COURT:**  ONE AT A TIME.

**MR. HALKOWSKI:**  IN AN EFFORT FOR THIS VERY REASON TO JUST FOCUS ON REALLY WHAT IS AT ISSUE.  SO WE SAID, YOU KNOW -- AND WE LOOKED AT THAT CAREFULLY, AND WE SAID:  "OKAY."

AND THAT WAS OBVIOUSLY BEFORE ANY RULING BY YOUR HONOR. AND WE SAID:

"OKAY.  WE'RE DROPPING THOSE.  WE WANT TO THE FOCUS THIS."

AND IN TERMS OF DISCOVERY, THERE'S BEEN A LOT OF HAND-WAVING BY SYMANTEC, BECAUSE, OF COURSE, THEY WANT TO CREATE A PARADE OF HORRIBLES IN TERMS OF:

"OH, MY GOSH.  DISCOVERY.  WE DON'T EVEN KNOW WHAT IS GOING ON," AND DA-TA-DA-TA-DA-TA.

BUT BOTTOM LINE IS THEY MENTIONED THREE DEPOSITIONS IN THEIR BRIEFING.  THEY HAVE TAKEN ONE OF THOSE DEPOSITIONS OF PEOPLE, ADDITIONAL PEOPLE THEY WANTED TO TALK TO.  THEY HAVE NOT FOLLOWED UP ON THE OTHER TWO.  WE'RE HAPPY TO TALK WITH THEM ABOUT THOSE TWO.

THEY MENTIONED ABOUT ADDITIONAL DOCUMENTS THAT THEY WANTED.  THEY HAVE NOT ASKED US WHAT ADDITIONAL OR WHAT ADDITIONAL DOCUMENTS THAT THEY WANT US TO PROVIDE.  WE'VE HAPPY TO PROVIDE THEM.

**MS. CASSIDY:**  YOUR HONOR, CAN I JUST --

**THE COURT:**  EVERYBODY WILL GET A CHANCE.

**MR. HALKOWSKI:**  SO -- AND THEN, IN TERMS OF THE PREJUDICE, THERE'S JUST A COUPLE OF THINGS THAT I WANTED TO NOTE.  AND, AGAIN, THE IDEA THAT, WITH ALL DUE RESPECT, IT IS THE SAME TECHNOLOGY.

**THE COURT:**  RIGHT.  BUT THAT'S JUST NOT THE ONLY PREJUDICE.  THE PREJUDICE IS THE TIMING THING, RIGHT?

**MR. HALKOWSKI:**  WELL, EXACTLY.  AND THAT'S WHY I WENT INTO THE ACTUAL NITTY-GRITTY.

"OKAY.  WHAT DO YOU ACTUALLY REALLY NEED?"

BECAUSE WE PROVIDED THEM THE EVIDENCE THAT WE HAVE ON THE DATES THAT THEY -- IF THEY DON'T, YOU KNOW, BELIEVE THE E-MAIL OR THEY DON'T BELIEVE THE --

**THE COURT:**  NO, I MEAN MORE TIMING OF WHERE IT IS IN THE CASE.

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  SO WE WERE -- WHEN YOU'RE DOING -- IN THE MIDDLE OF EXPERT DISCOVERY, WHEN YOU'RE PREPARING FOR SUMMARY JUDGMENT, AND NOW IT TURNS OUT --

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:** -- NOW YOU HAVE TO DECIDE.  I MEAN, YOU HAVE CERTAIN --

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** -- STRATEGIES GOING FORWARD THAT YOU'VE BEEN PROSECUTING THE CASE AND DEFENDING THE CASE BASED ON CERTAIN UNDERSTANDINGS.

**MR. HALKOWSKI:** RIGHT.

**THE COURT:** AND NOW THOSE UNDERSTANDINGS ARE CHANGED. SO THERE IS SOME PREJUDICE.

**MR. HALKOWSKI:** THERE'S CLEARLY SOME.  IT'S A QUESTION OF WHETHER IT'S SUBSTANTIAL OR NOT.  AND, AGAIN, IN THIS SITUATION I CAN'T IMAGINE.  I MEAN, IT WOULD HAVE TO BE LIKE LITERALLY TRIAL THE NEXT DAY.  BECAUSE IN THIS CASE, THE FLIP SIDE OF THAT IS ALLOWING THEM TO PROCEED WITH TWO INVALID PATENTS ON TECHNOLOGY THAT'S BEEN IN THE CASE FROM THE BEGINNING.

MAYBE IT WASN'T NECESSARILY ASSERTED IN THESE PATENTS, BUT ITS TECHNOLOGY, SAME PRODUCTS HAVE BEEN ASSERTED FROM THE BEGINNING.

**MS. CASSIDY:** YOUR HONOR, MAY I JUST TALK TO THAT POINT?

**THE COURT:** I'LL GIVE YOU -- EACH SIDE.

**MR. HALKOWSKI:** RIGHT.  OKAY.

(SIMULTANEOUS COLLOQUY).

**MR. HALKOWSKI:** AND, AGAIN, THE CASES HERE MAKE CLEAR

TO, YOUR HONOR, I THINK, THAT THIS IS NOT SOMETHING WHERE YOU'RE HANDCUFFED, AND YOU HAVE TO SAY:

"OH, SORRY.  YOU KNOW, IT'S KIND OF LATE.  THERE'S A LITTLE BIT OF PREJUDICE.  YOU KNOW, DILIGENCE WAS NOT EXACTING."

THE CASES MAKE CLEAR THAT WHEN YOU'VE GOT A SITUATION WHERE THERE WOULD OTHERWISE BE A HARSH RESULT, THERE'S DISCRETION TO ALLOW THAT NOT TO HAPPEN.  AND AS I SAID, WE'RE WILLING TO DO WHATEVER WE HAVE TO IN ORDER TO PROVIDE THEM WHATEVER THEY NEED AS SOON AS POSSIBLE.  THEY HAVE NOT ASKED FOR IT, THOUGH.

BUT IF THEY WANT IT, WE'RE HAPPY TO PROVIDE IT.

**THE COURT:**  ALL RIGHT.  I'LL LET MS. CASSIDY --

**MS. CASSIDY:**  YOUR HONOR, JUDGE CHEN REJECTED SIMILAR ARGUMENTS LIKE THIS IN FEBRUARY WHEN THEY WANTED TO AMEND THEIR INFRINGEMENT CONTENTIONS TO BRING ONE NEW PRODUCT INTO THE CASE.  WHICH, AGAIN, THEY SAID WAS AT ISSUE IN THE CASE; WOULD NOT RESULT IN SUBSTANTIAL ADDITIONAL DISCOVERY.

"TRUST US, YOUR HONOR.  WE CAN DO WHAT WE NEED TO DO."

AND JUDGE CHEN FOUND THAT ARGUMENT WANTING.  HE SAID --

**THE COURT:**  SO IT WAS JUDGE CHEN.  SO I WAS READING THE PAPERS.

**MS. CASSIDY:**  YES.

**THE COURT:**  THAT THERE WAS A MOTION TO AMEND IN

FEBRUARY, AND I COULDN'T REMEMBER.  AND I SAID:

"REALLY?  I DON'T REMEMBER DOING THAT."

IT WASN'T ME.

**MS. CASSIDY:**  IT WASN'T YOU.  IT WAS JUDGE CHEN.

**THE COURT:**  OKAY.

**MS. CASSIDY:**  AND WHAT HE WAS CONCERNED ABOUT WAS HIS SCHEDULE, DOING THINGS IN PIECEMEAL, HAVING TO REDO CLAIM CONSTRUCTION.  AND ON THE BASIS OF ALL OF THAT HE SAID:

"I'M NOT EXPANDING THE CASE ANYMORE BY ADDING ONE MORE PRODUCT."

HERE THEY WANT TO EXPAND THE CASE BY 28 NEW REFERENCES, YOUR HONOR.  AND THEY HAVEN'T PROVIDED THE DISCOVERY IN WHICH TO DO IT.

AND JUDGE CHEN EXPLAINED THAT THE BEST LAID PLANS VERY RARELY HAPPEN IN DISCOVERY, PARTICULARLY IN A CASE WHERE AS MR. HALKOWSKI SAID, HE SAID THAT THEY HAVE BEEN INVESTIGATING, DOING WORLDWIDE SEARCHES FOR THIS INFORMATION.  AND MONTHS LATER, AFTER APPARENTLY THEY DISCOVERED THIS MISTAKE, THEY STILL HAVEN'T GOT A CLEAR RECORD ON IT.

AND IF I MAY REVISIT THE DILIGENCE ARGUMENT, YOUR HONOR, WE ACTUALLY WENT AND DEPOSED MR. BELOUSSOV, WHO IS APPARENTLY THIS CRITICAL WITNESS IN DECIDING THAT WHAT THE DATE WAS.

REMEMBER THERE'S A FOOTNOTE IN ACRONIS' BRIEFING SAYING THAT THEY HAD A MEETING, EVEN THOUGH THEY DIDN'T EXPLAIN WHAT IT WAS.

WE DEPOSED HIM AND ASKED HIM ABOUT THIS MEETING.  HE COULDN'T REMEMBER.  HE HAD NO IDEA WHAT WE WERE TALKING ABOUT.  HE SAID:

"IT COULD HAVE HAPPENED.  I DON'T REMEMBER IT.  I DON'T EVEN REMEMBER THE PRODUCTS."

SO THERE'S NO EVIDENCE IN THE RECORD, FACTUAL EVIDENCE OF THEIR DILIGENCE.  ALL WE HAVE IS ATTORNEY ARGUMENT, YOUR HONOR.  AND THAT'S -- QUITE FRANKLY, I THINK THAT THE CASES THAT WE'VE CITED DEMONSTRATE THAT THAT'S NOT SUFFICIENT.

THEY CAN'T JUST WAVE THEIR HANDS AROUND AND SAY:

"GEE, WE'RE REALLY TRYING TO WORK REALLY HARD TO DO THIS."

**MR. HALKOWSKI:**  IF I COULD JUST --

**MS. CASSIDY:**  THAT'S WHAT WE'VE BEEN DOING, TOO, YOUR HONOR.

**MR. HALKOWSKI:**  JUST TWO THINGS THAT --

(SIMULTANEOUS COLLOQUY).

**THE COURT:**  LET HER FINISH.

**MS. CASSIDY:**  AND THE OTHER THING THAT I WANTED TO TALK ABOUT -- I THINK THAT WAS MY THINGS.

**MR. HALKOWSKI:**  OKAY.

**THE COURT:**  JUST TWO THINGS.

**MR. HALKOWSKI:**  TWO THINGS WITH REGARD TO JUDGE CHEN'S DECISION.  AN ENTIRELY NEW PRODUCT.  THAT WAS A BIG DEAL.  AGAIN, THESE ARE NOT ENTIRELY NEW PRODUCTS.  THEY ARE

SIMPLY EARLIER VERSIONS.  IT'S JUST A QUESTION OF DATES.  THEY DON'T HAVE TO, YOU KNOW, DO ALL THE HEAVY LIFTING OF ADDITIONAL TECHNOLOGY.  THAT'S ONE THING.

THE OTHER THING WAS:  WHAT WAS THE DOWNSIDE OF THAT?  THE DOWNSIDE WAS, OKAY, YOU DON'T GET A PRODUCT HERE.  MAYBE YOU CAN FILE ANOTHER SUIT, AND THEN YOU CAN.  YOU KNOW.  ADD IT THERE.

BUT AT MOST MAYBE A DAMAGES THING.  HERE THE DOWNSIDE IS EXTREME.  IT'S A VERY, VERY HARSH RESULT.  AND IN TERMS OF MR. BELOUSSOV, HE'S OBVIOUSLY THE CEO.  HE MAY NOT HAVE BEEN OBVIOUSLY RECALLING EVERYTHING IN THE DEPOSITION.  HE'S GOT A GAZILLION AND ONE THINGS GOING ON.

THE PERSON WHO ACTUALLY PROVIDED THE DECLARATION WAS DMITRI JOUKOVSKY.

**MS. CASSIDY:**  HE DID NOT TESTIFY ABOUT THE MEETING, YOUR HONOR.

**MR. HALKOWSKI:**  THEY HAVE ASKED -- NOT ASKED TO TAKE HIS DEPOSITION AGAIN.  WE'RE HAPPY TO PROVIDE PEOPLE FOR A DEPOSITION IF THEY WANT TO TALK WITH THEM.  THEY HAVEN'T ASKED FOR THEM.

WE HAVE ADDITIONAL DOCUMENTS.  THEY HAVEN'T ASKED FOR IT. THEY TALK ABOUT THE CODE THAT WAS MISSING.  THEY HAVEN'T ASKED FOR THAT.  IF THEY WANT THAT, WE CAN PROVIDE IT.  WE DON'T THINK ANY OF THAT IS REALLY NECESSARY.  WE THINK IT'S JUST A QUESTION OF DATES.

BUT WE'RE HAPPY TO PROVIDE DISCOVERY ON AN EXPEDITED BASIS, AND WE'VE GOT TIME.

**THE COURT:** OKAY. ALL RIGHT. THANK YOU. I'LL TAKE THE MATTER UNDER SUBMISSION.

LET'S TALK ABOUT THIS, THE UNDER SEAL STUFF. SO THERE WERE A FEW EXHIBITS THAT THE COURT DENIED WITHOUT PREJUDICE THE REQUEST TO SEAL BECAUSE IT WAS, FOR EXAMPLE, TO SEAL AN ENTIRE DEPOSITION TRANSCRIPT, WHICH I JUST CAN'T DO, BECAUSE IT'S NOT ALL.

BUT SO I ASSUME THE PARTIES STILL WANT SOME OF THAT IN THE RECORD?

**MS. CASSIDY:** YES, YOUR HONOR. THE PARTIES HAVE AN AGREEMENT WHERE IF WE SUBMIT DEPOSITION TRANSCRIPTS THAT WE ONLY DO THE SECTIONS THAT ARE ACTUALLY CITED IN THE MOTION. AND THAT'S WHAT SYMANTEC DID IN ITS OPPOSITION.

AND I THINK ACRONIS HAS REACHED OUT TO YOUR HONOR TO SAY THAT THEY WANT TO WITHDRAW THE ENTIRE SEARLS TRANSCRIPT; REPLACE IT WITH JUST THE PAGES THAT THEY WANT -- THAT THEY CITED IN THE MOTION.

AND YESTERDAY, LAST NIGHT -- I DON'T KNOW IF IT'S COME THROUGH, YET, YOUR HONOR -- WE SUBMITTED AN ADDITIONAL DECLARATION TRYING TO ESTABLISH GOOD CAUSE FOR THE SECTIONS OF THE REDACTED PORTIONS OF THE SEARLS TRANSCRIPT THAT WE BELIEVE TO BE -- SHOULD BE SEALED AND JUSTIFICATION FOR THOSE. SO THAT'S AN ADDITIONAL CONSIDERATION FOR YOUR HONOR.

**MR. HALKOWSKI:** AND WE OBVIOUSLY DIDN'T BELIEVE THAT MUCH OF THAT SEARLS TRANSCRIPT SHOULD BE CONFIDENTIAL, BUT IN KEEPING WITH KIND OF TRYING TO KEEP GOOD RELATIONS THEY BELIEVED IT WAS CONFIDENTIAL.  AND WHAT WE HAVE DONE IN THE PAST IS WE'VE SUBMITTED TRANSCRIPTS KIND OF IN WHOLE TO GIVE YOU THE CONTEXT, WHATEVER YOU WANT TO HAVE.  BUT WE'RE CERTAINLY HAPPY TO WORK WITH THEM.

I UNDERSTAND WE ARE WORKING WITH THEM TO JUST GET YOU THE RELEVANT PORTIONS, AND THEN HAVE YOU TAKE A LOOK AT THOSE AND MAKE A DECISION.

**THE COURT:** I DON'T THINK IT WILL BE A PROBLEM.  AND THEN WHAT YOU NEED TO SUBMIT IS A REDACTED VERSION THAT WILL BE IN THE PUBLIC RECORD.  SOMETHING NEEDS TO BE IN THE PUBLIC RECORD, AS WELL.

**MR. HALKOWSKI:** UNDERSTOOD.  UNDERSTOOD.

**THE COURT:** SO I NEED A REDACTED VERSION.

**MR. HALKOWSKI:** A PROPOSED REDACTED VERSION AND THE ACTUAL CONFIDENTIAL --

**MS. CASSIDY:** THAT'S WHAT WE DID, YES.

**THE COURT:** IF YOU LOOK AT MY STANDING ORDER -- I KNOW OUR LOCAL RULES ARE A MESS -- BUT I'M HAPPY TO SAY THAT IN OCTOBER A NEW LOCAL RULE 79-5 WILL BECOME EFFECTIVE, I THINK, AS OF OCTOBER 1ST --

**MR. HALKOWSKI:** OKAY.

**THE COURT:** -- WHICH LAYS OUT ACTUALLY SORT OF HOW MY

STANDING ORDER SAYS IT, AND ABROGATES THE GENERAL ORDER.  AND IT SHOULD BE, I HOPE --

**MR. HALKOWSKI:**  GOOD.

**THE COURT:**  -- VERY CLEAR.  AND, ACTUALLY, WHAT I WANT TO DO IS ACTUALLY, SO THE PARALEGALS OR WHOEVER, ASSOCIATES, CAN COME LIKE WALK IT THROUGH WHAT YOU DO, BECAUSE I KNOW IT'S A LOT OF WORK FOR THE PARTIES AND ALSO A LOT OF WORK FOR THE COURT IN JUST TRYING TO FIGURE THIS OUT.

BUT IF YOU SAW MY STANDING ORDER IT TELLS YOU EXACTLY WHAT YOU NEED TO DO.  YOU NEED A REDACTED VERSION.

**MS. CASSIDY:**  THAT'S WHAT WE DID.

**THE COURT:**  UNDER SEAL, AND YOUR DECLARATION THAT SAYS WHY, WHAT YOU WANT SEALED, PARTICULARLY.

**MS. CASSIDY:**  THAT'S WHAT WE DID.  WE TRIED TO RECTIFY THAT, AND WE HIGHLIGHTED THE SECTIONS THAT WE WANTED.

**THE COURT:**  I THINK WE NEED AS WELL REDACTED VERSIONS OF YOUR OPPOSITION BRIEF.

**MS. CASSIDY:**  YES, WE CAN DO THAT.  YES.

**THE COURT:**  AND SO --

**MS. CASSIDY:**  SORRY.

**THE COURT:**  WELL, I THINK DON'T THINK THAT'S BEEN FILED YET.

**MS. CASSIDY:**  OKAY.  SORRY.  WE'LL GET HOLD OF THAT TODAY.

**THE COURT:**  SO THAT THAT'S IN THE PUBLIC -- SO THERE

SHOULD BE SOMETHING IN THE PUBLIC RECORD THAT ONLY REDACTS

THAT WHICH IS CONFIDENTIAL.

**MR. HALKOWSKI:**  RIGHT.

**THE COURT:**  AND DO THAT.

**MS. CASSIDY:**  AND WE ALSO SUBMITTED -- THERE WAS AN

ISSUE ABOUT THE TRANSLATION.   YOU HAD A QUESTION ABOUT ONE OF

THE DOCUMENTS WE WANTED TO FILE NEEDED A TRANSLATION.  WE WENT

TO HAVE IT TRANSLATED, BUT OUR VENDOR SAID THAT THE TEXT IS

ACTUALLY GIBBERISH.

AND SO WE HAVE SUBMITTED A DECLARATION FROM OUR CERTIFIED

TRANSLATION MEMBER SAYING THAT HE COULDN'T PROVIDE A

TRANSLATION OF THE DOCUMENT TO YOUR HONOR.

BUT WE DID CHECK WITH ACRONIS ABOUT WHETHER THEY STILL

WANTED THAT DOCUMENT FILED UNDER SEAL, AND THEY SAID THAT THEY

DID.  SO THAT'S WHAT WE DID.

AND I GUESS BECAUSE IT'S THEIR DOCUMENT THEY WILL SUBMIT

IT.

**THE COURT:**  BUT YOU DO HAVE TO SUBMIT A DECLARATION

THAT SAYS WHY THE GIBBERISH IS CONFIDENTIAL.

**MR. HALKOWSKI:**  RIGHT.  AND I THINK -- TO BE FAIR, I

THINK THERE'S PARTS IN THERE -- AND MAYBE I'M NOT UNDERSTANDING

IT -- BUT I THOUGHT THAT THERE WERE PARTS IN THERE THAT WERE

GIBBERISH.

BUT, OBVIOUSLY, SOMEONE WHO KNEW RUSSIAN COULD LOOK AT IT

AND KIND OF FIGURE SOMETHING OUT.

BUT WHATEVER THE CASE IS WE'LL TRACK IT DOWN AND --

**THE COURT:**  WELL, CERTAINLY IF SOMEONE READS RUSSIAN IF IT HAD CONFIDENTIAL INFORMATION, THAT'S EXACTLY A REASON.

**MR. HALKOWSKI:**  EXACTLY.

AND A LOT OF THE ENGINEERS THAT ARE RELEVANT HERE ARE IN RUSSIA, SO -- AND THIS IS ALL ELECTRONICS.

ANYONE CAN TAKE A LOOK AT IT.

**THE COURT:**  I KNOW IT'S ALL COMPLICATED, ANYWAY.

**MS. CASSIDY:**  NOT TO BELABOR THE POINT FROM THE MOTION YOU JUST CLOSED, BUT THE TRANSLATION ISSUE ABOUT HAVING THESE DOCUMENTS TRANSLATION JUST KIND OF GOES TO THE FACT THAT THIS EXTENDS THE WHOLE PROCESS BY ADDING THESE NEW CONTENTIONS.

**THE COURT:**  ALL RIGHT.  YOU BUT SUED A RUSSIAN COMPANY.

**MS. CASSIDY:**  YES.

**THE COURT:**  AND IF I RECALL WORKED VERY HARD --

**MR. HALKOWSKI:**  YES.  YES.  YES.

(SIMULTANEOUS COLLOQUY)

**MS. CASSIDY:**  THANK YOU, YOUR HONOR.

AND WE HAD TEN MONTHS OF DISCOVERY IN WHICH TO TAKE ALL OF THIS STUFF AND GET IT TRANSLATED, BUT --

**MR. HALKOWSKI:**  AND, AGAIN, WE'RE HAPPY TO DO WHATEVER IT TAKES.

**THE COURT:**  OKAY.

**MR. HALKOWSKI:**  SO --

**THE COURT:**  THANK YOU VERY MUCH.

**MS. CASSIDY:**  THANK YOU.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

**CERTIFICATE OF TRANSCRIBER**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTIONS IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

SIGNATURE OF TRANSCRIBER

*Kathy Wyatt*            9-24-13 DATE