United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>ACRONIS CORPORATION, et al.,<br><br>        Defendants. | Case No.: 11-5310 EMC (JSC)<br><br>**ORDER RE: DEFENDANTS' MOTION TO AMEND INVALIDITY CONTENTIONS (Dkt. No. 246)** |

Now pending before the Court is the Motion to Amend Invalidity Contentions of Defendants Acronis, Inc., Acronis International GMBH, and OOO Acronis (collectively "Acronis"). (Dkt. No. 246.) After the close of fact discovery, Acronis seeks to add several prior art references involving their own products and those of their opponent, Symantec Corporation ("Symantec"). Having considered the parties' submissions and having had the benefit of oral argument on September 19, 2013, the Court DENIES Acronis's motion to amend. Acronis has not demonstrated sufficient good cause for its amendments at this late date in the litigation.

## FACTUAL & PROCEDURAL BACKGROUND

Symantec filed a complaint against Acronis on November 1, 2011, asserting infringement of five of its patents: U.S. Patents Nos. 7,093,086 ("the '086 patent"); 6,615,365 ("the '365 patent"); 7,322,010 ("the '010 patent"); 7,266,655 ("the '655 patent"); and 7,565,517 ("the '517 patent"). Symantec accuses Acronis Backup and Recovery 11 and 11.5 products of infringing all five patents and Acronis True Image 2012 and 2013 of infringing the '365 patent.

Acronis now seeks leave to amend their invalidity contentions for the '517 patent and the '655 patent. The '655 patent describes a catalog that can be used to synthesize two different kinds of backup – a full backup and an incremental backup. A full backup includes all files in a data volume, e.g., a partition of a hard disk, such as the "C:drive." (Dkt. No. 255 at 2.) An incremental backup, on the other hand, includes "only files of the data volume that have changed since some previous event (e.g., a prior full backup or incremental backup)." (*Id.*) By synthesizing these two types of backups, a backup is created that contains the latest versions of all of the files. The filing date of the '655 patent is April 29, 2004. The '517 patent is directed to effective methods of modifying and enabling data recovery when restoring backed up data to hardware other than its original source. The filing date of the '517 patent is September 9, 2004.

The proposed amendments seek to add prior art references involving four separate products: (1) Acronis True Image, versions 7 ("TI 7") and 8 ("TI 8"); (2) Acronis MigrateEasy ("ME") 6; (3) Acronis OS Selector ("OSS"), versions 5 and 8 (as well as Acronis Disk Director 9.0 that includes Acronis OSS functionality); and (4) Symantec Backup Exec ("BE"), versions 8.5, 8.6, 9, and 9.1. Acronis contends the proposed amendments are necessitated by new evidence revealing that the '655 and '517 patents are invalid under 35 U.S.C. § 102, subdivisions (a), (b), and/or (g) because the functionality accused by Symantec was present in prior versions of the Acronis accused products and in prior versions of Symantec's BE product which predate the filing dates of the '655 and '517 patents.

//

### 1. Acronis's Discovery of the Prior Art

#### A. True Image 7 and 8

On October 12, 2012, in their supplemental responses to Symantec's Corrected Interrogatories Nos. 1 and 2, Acronis indicated that the release date for TI 7 was October 1, 2004, which post-dates the April 29, 2004 filing date of the '655 patent, as well as the September 9, 2004 filing date of the '517 patent. The October 1, 2004 date was provided by the Acronis Senior Vice-President for Product Management based on an internal list of product release dates and versions as reflected in an internal Acronis database.

Acronis contends that they only discovered that this date was incorrect during a July 8, 2013 meeting between their new Chief Executive Officer, his engineering staff, and counsel. Acronis now asserts that TI 7 was launched no later than November 20, 2003; a TI 7 product was sold in the United States no later than December 9, 2003; and TI 7 was launched in the United States no later than December 10, 2003. The alleged November 20, 2003 release date of TI 7 pre-dates the filing date of both the '655 and '517 patents, and, according to Acronis, therefore renders them invalid under 35 U.S.C. § 102(b).

#### B. Acronis MigrateEasy 6 and Acronis OS Selector, versions 5 and 8

Acronis's initial invalidity contentions did not identify its OSS and ME products. According to Acronis, the discovery of the TI 7 database error led to further investigation which revealed that the '517 patent contains substantially the same features as those found in the earlier-released ME and OSS products; indeed, the OSS and ME products possess the same relevant features that were carried forward into the current Acronis products that Symantec asserts infringe its patents. In addition, recent versions of TI contain the same relevant functionality as OSS and ME. The release dates of both OSS and ME pre-date the filing of the '517 patent.

#### C. Backup Exec 8.5, 8.5, 9, and 9.1

Acronis maintains that they did not discover the BE prior art until the July 17-18, 2013 deposition of Kirk Searls, Symantec's Federal Rules of Civil Procedure 30(b)(6) ("Rule

30(b)(6)") designee on technical topics related to the '655 patent.[1] Mr. Searls has been involved in the development of BE since 1996. According to Acronis, at his deposition Mr. Searls testified that the versions of BE first released circa 2001 contain functionality anticipating the invention claimed in the '655 patent—a catalog file that identifies the location of all files within multiple incremental backups so long as all the backups are stored on the same media; and that the software appends each successive stored incremental backup to the end of the catalog file. Manuals describing the earlier versions (9.0 and 9.1) of BE were publicly available online before the deposition of Mr. Searls. In addition, on June 4, 2012, Symantec produced BE documents, including manuals for BE 8.5 and 9.0, as well as source code for the BE products which would have disclosed the catalog element. On September 28, 2012, Symantec produced additional BE manuals, including "Backup Exec for Windows NT and Windows 2000 (October 2001)" and "VERITAS Backup Exec 9.1 for Windows Servers Admin Guide." (Dkt. No. 255 at 3.)

**2.     Procedural History**

Symantec served its infringement contentions on March 9, 2012. Acronis produced their initial invalidity contentions on all five patents, pursuant to Patent Local Rules 3-3 and 3-4, on May 7, 2012. A claim construction hearing was held on November 20, 2012 and the Court issued claim construction orders on February 27, 2013. (Dkt. Nos. 202 & 203.) In between the hearing and claim construction order, on January 22, 2013, Acronis moved for leave to amend their infringement contentions to accuse an additional Symantec product of infringement. Symantec opposed the motion to the extent it sought to add a new Symantec product to the case, explaining that Acronis had waited nine months after the deadline to seek leave to amend. The district court denied the motion, finding that granting the motion would prejudice Symantec by substantially expanding the scope of the case, resulting in delay. (Dkt. No. 210.)

---

[1] Although Acronis served a Rule 30(b)(6) deposition notice on April 5, 2013 and Symantec made Mr. Searls available for deposition on May 30-31, 2013, Acronis declined to depose Mr. Seals on those dates; instead, Mr. Searls was not deposed until July 17-18, 2013, a week before the close of fact discovery.

4

On July 12, 2013, Acronis supplemented their interrogatory answers to correct the release date for TI 7 and identify TI 7, OSS, and ME as relevant prior art. Acronis produced their formal invalidity charts on the TI, ME, and OSS products on July 19, 2013 and subsequently produced the BE invalidity charts on July 23, 2013. Acronis also informed Symantec that they would be dropping 14 out of the 18 previously identified references for the '655 patent to streamline the case, and requested a stipulation as to such, which was denied.

The parties conducted a pre-motion in-person meet and confer on July 25, 2013. On July 26, the date of the close of fact discovery, Acronis filed the pending Motion. The parties were scheduled to submit opening expert reports on August 30, 2013 and rebuttal expert reports are due on October 4, 2013. Trial is scheduled to commence on May 5, 2014.

## LEGAL STANDARD

The Patent Rules are designed to "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *DCG Sys. v. Checkpoint Technologies, LLC*, No. 11-03792, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (internal citations and quotation omitted). Unlike the liberal policy for amending pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Electronics Inc. v. Q-Lity Computer Inc.,* 211 F.R.D. 360, 367 (N.D. Cal. Dec. 4, 2002). Accordingly, the rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006). Patent Local Rule 3-6 allows a party to amend its invalidity contentions only upon a showing of good cause: Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:

(a) A claim construction by the Court different from that proposed by the party seeking amendment;

5

(b) Recent discovery of material, prior art despite earlier diligent search; and

(c) Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Patent L.R. 3-6.

The good cause inquiry is two-fold: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted. *Barco N.V. v. Tech. Properties Ltd.*, No. 08-CV-05398, 2011 WL 3957390, at *1 (N.D. Cal. Sept. 7, 2011). Other factors relevant to this inquiry include the "relevance of newly-discovered prior art, whether the request to amend is motivated by gamesmanship, and whether the opposing party will be prejudiced by the amendment." *West v. Jewelry Innovations, Inc.*, No. C 07-1812, 2009 WL 152136, at *2 (N.D. Cal. Jan. 22, 2009). The moving party has the burden of demonstrating good cause. *O2 Micro Int'l*, 467 F.3d at 1366. If the court finds that the moving party was not diligent in amending its invalidity contentions, it is not required to consider the question of prejudice to the non-moving party, although the court in its discretion may elect to do so. *See id.* at 1368 (affirming the district court's decision refusing leave to amend upon finding the moving party was not diligent, without considering the question of prejudice to the non-moving party).

## DISCUSSION

**A. Acronis was not Diligent**

**1. True Image 7 and 8**

Acronis seeks to amend their invalidity contentions to add TI 7 and TI 8 as prior art references.[2] As the moving party, Acronis bears the burden of establishing that they were diligent in locating the TI references and seeking to amend their invalidity contentions. *See O2 Micro Int'l*, 467 F.3d at 1366. Acronis has not satisfied this burden.

---

[2] Although Acronis seeks to add both TI 7 and TI 8 as prior art references, their motion and reply only discuss TI 7 in depth. Nonetheless, the Court's findings apply equally to both.

6

Acronis argues that they were diligent in amending their invalidity contentions because they did not discover until July 8, 2013 that their internal database of product release dates contained an incorrect entry for TI 7. The database mistakenly identified the release date of TI 7 as October 1, 2004, after the filing date of the '655 and '517 patents. After discovering the mistake, Acronis identified the prior art in their supplemental interrogatory responses, produced related documentation and software executables, offered relevant source code, and made Mr. Lyadvinsky, a Rule 30(b)(6) technical witness knowledgeable about the TI 7 prior art, available for deposition. Acronis urges that their prompt action, after discovering their good faith mistake, constitutes diligence.

Acronis has failed to demonstrate diligence. First, as a general rule, mistakes or omissions are not by themselves good cause. *See, e.g.*, *Berger v. Rossignol Ski Co., Inc.*, No. 05–02523, 2006 WL 1095914, at *4 (N.D. Cal. Apr. 25, 2006) *aff'd,* 214 F. App'x 981 (Fed. Cir. 2007) (premising its denial of a motion to amend on a three-month delay and plaintiff's failure to provide "any justification for the amendment, other than mere error").

Second, in considering a party's diligence, the critical question is whether the party "could have discovered [the new information] earlier had it acted with the requisite diligence." *Google, Inc. v. Netlist, Inc.,* No. 08–4144, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010). Here, Acronis could have discovered the TI 7 prior art had they engaged in any independent review or investigation for potential prior art; indeed, the purportedly correct date was posted on Acronis's own website and can be found in several documents produced *by Acronis* during discovery. (Dkt. No. 255 at 3; Dkt. No. 255-3); *see also West*, 2008 WL 4532558 at *4 ("Carelessness is not compatible with a finding of diligence and offers no reason for grant of relief.") (internal quotation marks and citation omitted).) It appears, instead, that Acronis did not engage in any investigation of the TI 7 as potential prior art; they merely answered Symantec's interrogatory.

Third, even assuming that Acronis had investigated TI 7 as potential prior art, they have not offered any evidence that suggests that it was reasonable to rely exclusively on the database in determining the United States release date. There is no evidence as to how or

when the database was compiled, or even how Mr. Joukovski became aware of the database. In contrast to the lack of evidence as to reasonable reliance, the record includes evidence suggesting that it was not reasonable for Acronis to rely on their internal database. For example, in Acronis's own 2010 emails, Mr. Joukovski asks an employee "to interview old timers" to reconstruct product launch dates. (*See* Dkt. No. 255-12.) Acronis does not explain the discrepancy between Mr. Joukovski's 2010 request to "interview old timers" to determine product launch dates and his 2012 exclusive reliance on a database to answer Symantec's interrogatory. And, again, it must be emphasized that there is no testimony that Acronis conducted an investigation of TI 7 as prior art but terminated the investigation based on the erroneous database date.

Finally, Acronis's claim that, as soon as they learned of the mistake they promptly sought to amend their invalidity contentions, produce relevant documents, serve supplemental interrogatory responses, produce a Rule 30(b)(6) witness, and offer relevant source code, does not cure their previous lack of diligence. First, Symantec disputes Acronis's claim that they promptly provided complete discovery. Symantec contends that Acronis did not produce all of the relevant source code, failed to produce all of the relevant documents, and that their Rule 30(b)(6) designee, Mr. Lyadvinsky, could not provide complete testimony. Second, even if the provided discovery was adequate, a party's diligence in amending its invalidity contentions upon finding new prior art "is only one factor to consider; the Court also must address whether the party was diligent *in discovering the basis* for the proposed amendment." *West*, 2008 WL 4532558 at *4 (party's inadvertent omission of prior art patent "is hardly the same as diligence") (emphasis added). The critical issue is not what the party did after they discovered the prior art; rather, "the critical issue is whether or not [the party seeking to amend] exercised diligence in discovering the prior art." *Streak Products, Inc. v. Antec, Inc.*, No. C09-04255, 2010 WL 3515752, at *2 (N.D. Cal. Sept. 8, 2010). Even if Acronis was diligent in seeking to amend, they were not diligent in locating the TI prior art in the first place.

8

1 Acronis's insistence that "courts have allowed amendments when the movant made an
2 honest mistake, the request to amend did not appear to be motivated by gamesmanship, or
3 where there was still ample time left in discovery," is not persuasive. (Dkt. No. 258 at 4
4 (citing *OpenDNS, Inc. v. Select Notifications Media, LLC,* No. C11-05101, 2013 WL
5 2422623, at *3 (N.D. Cal. June 3, 2013)).) While courts may grant leave to amend when the
6 movant has made a good faith mistake, this is not always true– especially when, as here, the
7 motion is filed on the day that fact discovery closes. In *OpenDNS*, for example, the moving
8 party realized its infringement contentions contained a typographical error *two months* before
9 claim construction briefing was due and five months before the close of fact discovery.
10 *OpenDNS*, 2013 WL 2422623 at *1. In addition, because the text of the infringement
11 contentions was correct and only one of the screen shots for a limitation was wrong, it was
12 merely a "surface-level" mistake that did not change the infringement theory. *Id.* at *1. Here,
13 claim construction orders were issued six months ago, fact discovery is closed, and the parties
14 are preparing expert reports. Although the amendment does not appear to be motivated by
15 gamesmanship, it does not follow that Acronis was diligent.

16 The other cases cited by Acronis are also unavailing. In *Symantec Corp. v. Veeam
17 Corp.*, No. 12-00700, 2013 WL 3490392, at *1-3 (N.D. Cal. July 11, 2013), the court granted
18 Veeam's motion to amend because the products were not included in the original invalidity
19 contentions due to Symantec's ten-month delay in producing the relevant documents.
20 Moreover, Veeam had put Symantec on notice of the prior art and that it could not in good
21 faith include the art in its contentions until Symantec produced the requested discovery. *Id.* at
22 *1. No such notice was provided here even though Acronis themselves possessed the
23 information they needed to identify the products as prior art.

24 Similarly, in *The Board of Trustees of Leland Stanford Junior University v. Roche
25 Molecular Systems, Inc.*, No. 05-04158, 2008 WL 624771, at *2 (N.D. Cal. March 4, 2008),
26 Roche announced that one of its new products had been approved for sale in the United States
27 after Stanford had already filed its initial infringement contentions. *Id.* at *1. A week after
28 Stanford received notice of the approval, it requested discovery for the new product. *Id.*

Upon the reiteration of its request, Roche agreed to provide the requested discovery. Approximately one month later, and without leave of the court, Stanford served an amended set of contentions upon Roche that included the new product. *Id.* at *1. Roche subsequently took the position that the new product was not in the case and Stanford responded by moving to amend its infringement contentions to include the new product. Although the motion was made five months after it served its amended contentions on Roche, the court granted leave to amend because, given the lack of prejudice to Roche, the fact that Roche had been on notice of the contentions, and because amendment would not deprive Roche of the ability to formulate claim construction arguments, "in this particular case" the motion was granted. *Id.* at *4. Here, in contrast, claim construction has come and gone, fact discovery has closed, and expert reports are being prepared. Moreover, unlike *Stanford,* the lack of discovery did not contribute to the delay in amendment; Acronis themselves were in the best position to know when their own products launched in the United States.

Acronis's reliance on *Positive Technologies, Inc. v. Sony Electronics, Inc.*, No. 11-2226, 2013 WL 322556, at *1 (N.D. Cal. Jan. 28, 2013), is similarly misplaced. In *Positive Technologies*, the court granted Sony's motion to amend because the motion was filed in response to (1) Positive's assertion in its *Markman* brief regarding the claim of Sony's inventor; and (2) the court's claim construction. *Id.* at *3. Sony's motion to amend was filed four months before the fact discovery cutoff, after the court's claim construction order made it reasonable for defendants to "dig even deeper than they had previously with respect to [the prior art]." *Id.* Acronis's addition of the TI prior art, in contrast, is not in response to a case development.

Finally, *Yodlee, Inc. v. CashEdge, Inc.*, No. 05-01550, 2007 WL 1454259, at *3 (N.D. Cal. May 17, 2007), which Acronis identified for the first time at oral argument, is likewise unhelpful. After CashEdge changed counsel, its new counsel discovered a website that allegedly used the technology at issue. The court granted leave to amend because the rationale for the conservative approach of the patent local rules was not threatened and Yodlee would not be prejudiced. *Id.* at *2. CashEdge's request was not motivated by gamesmanship,

was filed over two months before the fact discovery cutoff, and did not disturb the court's claim construction orders. *Id.* at *3.

In sum, Acronis does not cite a single case in which a party was granted leave to amend contentions under circumstances similar to those here; namely, a party moving to amend five months after the issuance of the claim construction order and upon the close of fact discovery based on evidence that the party possessed all along. There is no such case because such facts do not constitute diligence.

### 2. OS Selector and MigrateEasy 6[3]

Acronis also seeks leave to amend their invalidity contentions to add prior art references for OSS version 5, OSS version 8, and ME. Acronis explains that these two products were not initially investigated because "these were product lines different from True Image, and they did not appear relevant." (Dkt. No. 258 at 4.) Once the mistake regarding the TI 7 release date was discovered, Acronis conducted "an investigation into any earlier products from which this functionality may have originated," and, as a result, identified OSS and ME, two older products that contain the functionality found in TI 7, as relevant prior art. (Dkt. No. 246 at 7.)

This conduct is not diligence. These are Acronis's own products—information about their existence and release dates was not a secret. Merely because Acronis did not initially believe that these products were relevant does not allow them to now, at the close of fact discovery, argue that they are invalidating prior art, regardless of whether their new beliefs are the result of a good faith mistake regarding a related product (TI 7). *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 203 (N.D. Cal. Jan. 7, 2009) (admission by moving party that it "failed to analyze the relevance of the prior art reference until several weeks after close of fact discovery serves only to establish one of two premises: its irrelevance to the merits of the case and/or the dilatoriness of [the moving party]"). Leave to amend is therefore denied.

//

//

---

[3] Also at issue is Acronis Disk Director 9.0, which includes Acronis OSS functionality.

### 3. Backup Exec

Acronis also seeks to amend their invalidity contentions to add versions 8.5, 8.6, 9, and 9.1 of Symantec's BE product as prior art references.

Acronis maintains that, due to Symantec's failure, "whether deliberately or through its own mistake," "to identify its own prior art in response to discovery obligations and the Local Rules," they were not able to discover the BE prior art until the July 17-18, 2013 Rule 30(b)(6) deposition of Kirk Searls – Symantec's corporate designee on its BE products. (Dkt. No. 246 at 11-12.) Acronis argues that, because the support for the catalog element of the relevant claims of the '655 patent derive solely from Mr. Searls' deposition, and because the specific detail on how BE performs synthetic backup using a catalog was not present in the guides for these products, was not apparent from the products themselves, was not available online, and could not be gleaned from any available public sources, they should not have been expected to discover the BE prior art before the deposition of Mr. Searls.

The Court disagrees. Manuals describing the BE prior art were publicly available from the beginning of this litigation. While such manuals may not have disclosed the catalog element, it was not disputed at oral argument that Symantec produced the source code for the BE products in June 2012. Acronis's response at oral argument that they cannot be expected to review all produced source code in light of the shear number of patents and products at issue in this case and in related litigation between the parties is not persuasive. If Acronis lacked sufficient time to investigate potentially relevant prior art they could have sought additional time; instead, they appear to have decided to follow certain paths and eschew others. They must now live with that choice. To hold otherwise would render meaningless the Local Rule's requirement that parties diligently investigate prior art and infringement early in the litigation.

Acronis's lack of investigation, coupled with their delays in seeking the discovery which they allege did finally put them on notice of the catalog element—namely the deposition of Mr. Searls—weighs in favor of a finding of lack of diligence on Acronis's part. Indeed, although Symantec identified Mr. Searls as its Rule 30(b)(6) designee on April 12,

2013, and made him available for deposition on May 30 and May 31, Acronis waited until July 17, 2013—the week before the close of fact discovery—to take his deposition.

Acronis's additional argument that it was misled by Symantec's discovery responses which did not identify the BE products as prior art is likewise unpersuasive. For example, Symantec claims that Interrogatory No. 4, "taken on its face, would require Symantec to identify all reasons why any possible prior art reference did not invalidate any of its patents." (Dkt. No. 255 at 9.) During discovery, Symantec objected to Interrogatory No. 4 as being overbroad and in its supplemental response provided only a limited response: "Symantec is willing to address three prior art references per patent in response to this interrogatory." (Dkt. No. 246-5 at 24.) Thus, Acronis was on notice that Symantec objected to this interrogatory and had not provided an exhaustive response; however, Acronis never moved to compel an additional response. Even if it had, Symantec maintains that it still would not have identified BE as prior art because it does not (nor do any third parties) consider it to be prior art. With respect to Interrogatory No. 6, Symantec claims that it did not have to produce the earlier versions of BE because Acronis only requested discovery of Symantec's embodying products, and Symantec does not consider the earlier versions of BE to be commercial embodiments. However, if Acronis believed that Symantec was impeding their ability to discover relevant information, either by improperly objecting to interrogatories or by claiming that prior BE products are not prior art or embodying products, they should have sought relief from the court. *See Google*, 2010 WL 1838693 at 3 ("To the extent that Netlist believed that Google was impeding its ability to obtain critical information by failing to comply with their discovery obligations, Netlist should have promptly sought relief from the Court.").

In sum, Acronis has not been diligent. Discovery has been open since April 2012. Acronis failed to investigate BE as prior art even though manuals describing the incremental and full back-ups provided by the BE products were publicly available since the beginning of this litigation and Symantec produced other manuals and source code more than a year before Acronis sought leave to amend. Moreover, Acronis delayed taking Mr. Searls' deposition and did not move to compel any further responses to Symantec's allegedly deficient interrogatory

responses. Having failed to follow up on available information and Symantec's discovery objections, Acronis cannot now blame Symantec for the timing of Mr. Searls' deposition and the delay in discovering the BE prior art. Acronis has failed to demonstrate sufficient diligence to warrant leave to amend with respect to the BE prior art.

**B. Amendment Would Prejudice Symantec**

**1. The Acronis Prior Art**

Even if Acronis had been diligent in locating the Acronis prior art and seeking to amend their invalidity contentions, the prejudice that Symantec would suffer requires denial of Acronis's motion.

Acronis maintains that, even though the amendment is sought on the fact discovery cut-off date, it will not cause Symantec any material prejudice because no substantially new technology is being introduced and upon learning of the database error, Acronis promptly produced all discovery relevant to the prior art. Moreover, Acronis asserts that because they will simultaneously drop 14 independent prior art references, their proposed amendment will "reduce the overall number of references through a net reduction of the total number by nine references." (Dkt. No. 255 at 10.) Finally, Acronis alleges that they have offered an extension of fact discovery and assert that if Symantec can specifically identify any further necessary discovery, there is additional time to complete it without any undue delay because Symantec's rebuttal to Acronis's invalidity report is not due until October 4, 2013.

Symantec disputes Acronis's assertion that no new technology will be introduced and that Acronis has provided all discovery relevant to the new prior art references. For example, Symantec notes that Acronis did not produce any source code for OSS 5, TI 8, or Disk Director 9. With respect to the source code that was produced, Symantec claims to not have had a reasonable opportunity to review it before the deposition of Mr. Lyadvinsky because Acronis produced the source code on July 12. As a result, according to Symantec, the code could not be inspected until July 19, 2013 at the earliest.[4] Symantec also claims that Mr.

---

[4] Under the Protective Order, a party must provide "five (5) business days' notice prior to commencing an inspection." (Dkt. No. 102 at 14.)

14

1 Lyadvinsky did not provide complete testimony; for example, he repeatedly testified that he
2 was not able to ascertain the functionality of the Acronis products from their user guides and
3 that he would need to review the source code in order to provide complete answers to many
4 questions. Additionally, Symantec contends that Acronis's document production is
5 insufficient because they produced only "a handful of technical documents regarding the
6 Acronis prior art." (Dkt. No. 255 at 12.) Finally, Symantec claims that, in light of Mr.
7 Lyadvinsky's inability to fully answer deposition questions without referring to source code, it
8 will need to depose three other source code developers knowledgeable about the Acronis prior
9 art: Yuri Per, Andy Zorin and Alexander Pychminstev.

Even though the prior art technology that Acronis seeks to add is not substantially new technology and they have attempted to promptly provide Symantec with relevant discovery, Acronis does not dispute that Symantec would be entitled to additional discovery, that discovery is now closed, and expert discovery is well underway. *See Dynetix Design Solutions Inc. v. Synopsys Inc.*, No. CV 11-05973, 2012 WL 6019898, at *3 (N.D. Cal. Dec. 3, 2012) (finding prejudice where new contentions were added after the claim construction ruling and noting that "[c]laim construction in this case has been completed. Discovery is proceeding apace." "Like all patent cases, this case must narrow as it moves forward, not expand.") Coupled with other various disputes between the parties over what further discovery is necessary, it cannot be said that Symantec will not be prejudiced by granting leave to amend at this late stage in the case. *See CBS Interactive*, 257 F.R.D. at 203 (moving party's right to amend in good faith is far outweighed by its (and the court's) countervailing duty to avoid prejudicing CBSI through eleventh-hour alterations); *see also Abbott Diabetes Care, Inc. v. Roche Diagnostics, Corp.*, No. C05-03117, 2007 WL 2221029, at *2 (N.D. Cal. July 30, 2007) (finding prejudice to the non-moving party where less than two months remained before fact discovery cutoff, and "addition of new products would likely derail the case management schedule, require additional claim construction, and delay trial").

//
//

### 2. The BE Prior Art

Even if Acronis had been diligent in discovering the BE prior art, granting leave to amend would similarly prejudice Symantec.

Acronis argues that adding the BE prior art does not cause Symantec any material prejudice for two reasons. First, the BE products are owned by Symantec, which already possesses all of the relevant information. Second, the amendment does not introduce any substantially new technology into this litigation because the current versions of BE have been among the accused products since the beginning of the case, either accused by Acronis and/or identified by Symantec as embodying products or prior art. Thus, Acronis insists that any prejudice Symantec might suffer will nominal and easily mitigated.

Symantec's response focuses on claim construction; if Acronis is allowed to assert previous versions of BE as prior art, Symantec will be stripped of the opportunity to argue that construction of the term "catalog" in claim 7 of the '655 was necessary to provide further clarity as to what the term meant in the context of the patent. In the February 27, 2013 claim construction order, Judge Chen rejected both parties' constructions of "catalog" and, instead, declined to provide a construction because to do so would be redundant and unnecessary. (Dkt. No. 202 at 26.) According to Symantec, if Acronis had been diligent in locating and identifying the BE prior art, Symantec could have argued to the district court at claim construction that "the inventors clearly would not have intended to encompass within their claims a prior art product from their own company." (Dkt. No. 255 at 16-17.)

The Court agrees that although Symantec possesses the material information with respect to the BE prior art, Symantec would still be prejudiced by this "eleventh-hour" amendment in light of potential claim construction issues. Moreover, Symantec may seek to amend its infringement contentions if this Motion is granted because Symantec did not believe it necessary to establish an earlier conception date for its patented inventions based on Acronis's invalidity contentions. Thus, allowing these amendments could derail case management schedule, interrupt expert preparation and reports, require additional claim construction, and delay trial.

16

### C. Unfairness

Finally, Acronis implores the Court that given that the proposed prior art will invalidate the relevant claims of the '655 and '517 patents, it would be manifestly unjust to deny amendment. In other words, the prior art is so material that leave to amend must be granted. Further, Acronis insists that they are willing to do whatever is necessary to mitigate any prejudice to Symantec.

Symantec, unsurprisingly, disputes Acronis's materiality position. Even assuming Acronis is correct, however, materiality is not the sole consideration of the "good cause" requirement. *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846, 2012 WL 1067548, at *3 (N.D. Cal. Mar. 27, 2012). The primary inquiry is whether Acronis was diligent in discovering the basis of the amendment and whether granting leave to amend will prejudice Symantec. Moreover, Acronis's materiality argument merely serves to highlight its lack of diligence. If the late-identified prior art is as material as Acronis claims, one would expect that it would have done more to investigate such potential art earlier in the case. At oral argument, Acronis explained repeatedly that due to the nature of this case and the number of patents at issue, they had to make choices regarding which prior art to investigate. They apparently chose not to investigate the prior art they now seek to add. Acronis cannot now, at this late date in the litigation, argue that it would be "manifestly unjust" for them endure the consequences of their choices.

## CONCLUSION

For the reasons explained above, Acronis's motion to amend (Dkt. No. 246) is DENIED.

**IT IS SO ORDERED.**

Dated: September 25, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

17